# Vinson&Elkins

Clifford Thau  cthau@velaw.com
**Tel** +1.212.237.0012  **Fax** +1.917.849.5321

November 23, 2022

**Via ECF**

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, New York 10007

**Re:  Pre-Motion Letter—*Augenbaum v. RC Ventures LLC, et al.*, No. 22 Civ. 9327 (S.D.N.Y. 2022)**

Dear Judge Gardephe:

Pursuant to Individual Rule of Practice IV.A, defendant RC Ventures LLC ("***RC Ventures***") respectfully submits this letter in anticipation of filing a motion to dismiss the complaint (the "***Complaint***" or "***Compl.***") filed by plaintiff Todd Augenbaum ("***Plaintiff***") in the referenced matter.  The Complaint should be dismissed because it fails to allege facts supporting its claim for "short-swing profits" under Section 16(b) of the Securities Exchange Act of 1934.  *See id.* ¶¶ 26-31; 15 U.S.C. § 78p(b).

***Background.***  On March 7, 2022, RC Ventures filed a Schedule 13D with the Securities and Exchange Commission ("***SEC***") disclosing beneficial ownership of 9,450,100 shares of Bed Bath & Beyond Inc. ("***BBBY***"), consisting of 7,780,000 shares and 1,670,100 shares underlying certain call options, amounting to beneficial ownership of 9.8% of BBBY's outstanding shares.  Bed Bath & Beyond Inc., Beneficial Ownership Rep. (Sched. 13D) (March 7, 2022) (the "***March 7 13D***").  The March 7 13D disclosed that RC Ventures purchased such BBBY securities between January 13, 2022 and March 3, 2022.  RC Ventures never bought another share or other security of BBBY after March 3, 2022.

The March 7 13D states that RC Ventures calculated its 9.8% ownership interest based on the number of shares BBBY had disclosed as outstanding in its most recent quarterly report.  *See* March 7 13D at Item 5(a) (ownership interest calculated "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission on January 6, 2022").

On March 24, 2022, RC Ventures and BBBY entered into a cooperation agreement that provided for, among other things, the appointment of three new independent directors to BBBY's board.  *See* Bed Bath & Beyond Inc., Current Rep., Exh. 10.1 (Form 8-K) (March 25, 2022) (the "***Cooperation Agreement***" or "***Co-Op. Agr.***").  The second recital of the Cooperation Agreement provides in relevant part that, "as of the date hereof, RC Ventures beneficially owns (as defined herein) Common Stock, $0.01

---

**Vinson & Elkins LLP  Attorneys at Law**
Austin  Dallas  Dubai  Houston  London  Los Angeles  New York
Richmond  Riyadh  San Francisco  Tokyo  Washington

The Grace Building, 1114 Avenue of the Americas, 32nd Floor
New York, NY 10036-7708
**Tel** +1.212.237.0000  **Fax** +1.212.237.0100  velaw.com



par value per share, of the Company (the 'Common Stock') totaling, in the aggregate, 9,450,100 shares, or approximately 9.8% of the Common Stock issued and outstanding on the date hereof." *Id.*

On April 21, 2022, nearly fifty days after RC Ventures made its last purchase of BBBY securities, BBBY disclosed that, due to a series of share repurchases, the number of shares outstanding had decreased to 81,979,000 as of February 26, 2022, and to 79,845,789 as of March 26, 2022. *See* Compl. ¶ 12; Bed Bath & Beyond Inc., Annual Rep., 2 & 42 (Form 10-K) (Apr. 21, 2022) (the "***April 10-K***"). Ultimately, as a result of these share repurchases, RC Ventures' beneficial ownership interest amounted to 11.8%, rather than 9.8%, of BBBY's outstanding shares. *See* Bed Bath & Beyond Inc., Beneficial Ownership Rep. (Sched. 13D) (August 16, 2022).

Over the course of August 16 and 17, 2022, RC Ventures sold all of the BBBY shares and options it had purchased between January and March of 2022 at a profit. *See* Compl. ¶ 23.

***Section 16(b).***    Section 16(b) is an "insider trading statute" that forces "statutorily defined corporate insiders to disgorge short-swing profits obtained by trading in the securities of the corporation." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018). "Liability under § 16(b) requires (1) a purchase and (2) a sale of securities (3) by a statutory insider (4) within a six-month period." *Avalon Holdings Corp. v. Gentile*, No. 18 Civ. 7291, 2019 WL 4640206, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotations omitted). In addition to officers and directors, one such statutory insider is a "beneficial owner"—i.e., one "who owns more than 10 percent of the corporation's equity securities. . . ." *Olagues*, 902 F.3d at 125. Whether one qualifies as a beneficial owner within the meaning of Section 16(b) is determined using the same analysis as governs beneficial owner filing requirements under Section 13(d). *See Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 130 (2d Cir. 2016) (citing 17 C.F.R. § 240.16a–1(a)(1)). When a complaint seeks to recover short-swing profits from a 10% beneficial owner, it must establish the defendant's 10% beneficial owner status "'***both*** at the time of the purchase and sale.'" *Olagues*, 902 F.3d at 125 (quoting 15 U.S.C. § 78p(b) (emphasis added)); *see also Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 249–50 (1976) ("We hold that, in a purchase–sale sequence, a beneficial owner must account for profits only if he was a beneficial owner before the purchase.") (internal quotations omitted). The same is nearly always true where a complaint seeks to recover from officers and directors. *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 141 (2d Cir. 2002).[1]

---

[1] The single circumstance in which an individual can be liable for short-swing transactions prior to his becoming an officer or director is when the director or officer became subject to Section 16 "solely as a result of the issuer registering a class of equity securities pursuant to section 12 of the Act." 17 C.F.R. § 240.16a–2(a). That circumstance is inapplicable here because the Complaint does not (and cannot) plead that BBBY's registration of securities is the sole reason RC Ventures became subject to Section 16.



The Complaint alleges that RC Ventures is liable for short-swing profits as both a beneficial owner and as a director.  Neither allegation has merit.

*__Beneficial Owner Status__*.  The Complaint fails to state a Section 16(b) claim against RC Ventures as a beneficial owner because it does not plead that RC Ventures had beneficial owner status, within the meaning of the statute, when it purchased the relevant shares.  At the time of RC Ventures' purchases of BBBY stock in February and March, the number of shares outstanding reported in BBBY's most recently filed 10-Q was 96,337,713, which would give RC Ventures a 9.8% interest in BBBY—below the 10% threshold for beneficial owner status under Section 16(b).  *See* March 7 13D.

The Complaint alleges that RC Ventures should qualify as a beneficial owner at the time of its February and March purchases because, at the time of most of these purchases, the actual number of BBBY shares outstanding was lower than the number reported in BBBY's most recently filed 10-Q. Specifically, BBBY disclosed later (in April 2022) that, due to a series of share repurchases, it had only 81,979,000 shares outstanding by February 26, 2022.  Compl. ¶ 12; *see* April 10-K at 42.  Based on these numbers (again, undisclosed until April 2022), RC Ventures' purchases on March 1, 2022 brought its ownership interest above 10% of BBBY's outstanding shares.  *See id.*

Plaintiff's theory fails, however, because Section 16(b) permits RC Ventures to rely on the outstanding share amount in BBBY's most recent filing with the SEC at the time of its purchases (i.e. the 10-Q filed January 6, 2022).  As noted above, whether someone qualifies as a beneficial owner within the meaning of Section 16(b) is determined using the same analysis as governs Section 13(d).  *See Lowinger*, 841 F.3d at 130.  Under the regulations implementing Section 13(d), "any person, in determining the amount of outstanding securities of a class of equity securities, may rely upon information set forth in the issuer's most recent quarterly or annual report, and any current report subsequent thereto, filed with the Commission pursuant to this Act, unless he knows or has reason to believe that the information contained therein is inaccurate."  17 C.F.R. § 240.13d-1(j).

Consequently, even if a stockholder *__in fact__* holds greater than 10% of a company's shares, they do not constitute a beneficial owner subject to Section 16(b) disgorgement if they (1) own less than 10% of the number of outstanding shares disclosed in the company's most recent SEC filing; and (2) could not have known (based on public filings) that they hold more than 10% of outstanding shares.  *See C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994) ("Although the newly available information indeed reveals that Goldman held ten percent of Enron's convertible preferred stock on December 31, 1991, Goldman's ownership on that date does not subject it to disgorgement of short-swing profits because Goldman had no way of knowing of its ten percent status at that time.  On December 31, 1991, there was no publicly available information that would have indicated to Goldman that it had crossed the ten percent threshold.").



The Complaint does not plead facts plausibly showing that RC Ventures could have known—based on public filings or otherwise—that it held 10% of BBBY shares as of March 1, 2022.  As the Complaint acknowledges, BBBY did not disclose that it only had 81,979,000 shares outstanding as of February 26, 2022, until April 2022—after RC Ventures completed its purchases in February and March of 2022.  *See* Compl. ¶ 12.  And while BBBY had announced that it had accelerated its buy-back program in November 2021 and January 2022, *see id.* ¶¶ 7-8, RC Ventures had no way to know the timing and amount of BBBY's share repurchases when it bought BBBY securities in February and March 2022, *see* Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77 (5th ed. 2019) ("[A]n issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold."); *see also* Bed Bath & Beyond Inc., Current Rep., Exh. 99.3 (Form 8-K) (Nov. 2, 2021) (BBBY's planned repurchases are subject to "a variety of factors, including price, general business and market conditions, and alternative investment opportunities").  Accordingly, "[i]t would be unjust and would not promote the purpose of Section 16(b) to treat" RC Ventures "as a company insider, subject to disgorgement, at a time when" it "was unable to know of that status and behave accordingly."  *C.R.A.*, 842 F. Supp. at 91; *cf. Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (defendants "cannot be held liable for failing to disclose what would have been pure speculation").

Further, as noted above, the Cooperation Agreement provides that "RC Ventures beneficially owns . . . in the aggregate, 9,450,100 shares, or approximately 9.8% of the Common Stock issued and outstanding on the date hereof."  Co-Op. Agr. at 1.  Based off of the Cooperation Agreement, to which the Company was a party, RC Ventures understood that it continued to beneficially own 9.8% of BBBY's outstanding shares as of March 24, 2022—three weeks after its last purchase.

***Director Status.***  The Complaint asserts that—even if RC Ventures was not a beneficial owner—it is, nevertheless, subject to disgorgement because it appointed three independent directors to BBBY's board under the Cooperation Agreement.  *See* Compl. ¶ 1.  This allegation fails for two primary reasons.

• The Complaint does not plead facts sufficient to support a finding that RC Ventures became a *de facto* director.  Under a "director by deputization theory," an investor can become "a statutory insider when it deputizes an individual to serve as its representative on an issuer's board of directors." *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 550 (2d Cir. 2020).  The core inquiry is whether the shareholder "actually functioned as a director" because the appointee "who had been deputized" performed their "director's duties not for himself but for" the shareholder. *Blau v. Lehman*, 368 U.S. 403, 410 (1962). The Complaint's allegations regarding RC Ventures' supposed deputization of the ***independent*** directors appointed under the Cooperation Agreement are conclusory.  The Complaint pleads no facts showing that the three independent directors:  (1) advanced RC Ventures' interests at the expense of BBBY; (2) provided RC Ventures with material non-public or otherwise confidential information; or



(3) communicated regularly with RC Ventures.  *See Calenture, LLC v. Pulte*, No. 21 Civ. 402, 2022 WL 912947, at *3-4 (S.D.N.Y. Mar. 29, 2022) (collecting factors courts consider regarding deputization). Indeed, the Cooperation Agreement did not grant RC Ventures any information rights or permit the independent directors to share confidential information with RC Ventures.  Rather, the Cooperation Agreement required the newly-appointed directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board."  Co-Op. Agr. § 1(d).

- RC Ventures did not enter into the Cooperation Agreement—and appoint three independent directors—until *__after__* its last share purchase in March of 2022.  *Compare* Co-Op Agr. (dated March 24, 2022), *with* Compl. ¶ 9 (RC Ventures' last purchase on March 3, 2022).  Accordingly, even if RC Ventures could be considered a director after entering into the Cooperation Agreement, no Section 16(b) liability would exist since it did not make any purchases after such time.  *See Gryl*, 298 F.3d at 141.

***

Given the above, there are strong grounds for dismissal of the Complaint.  RC Ventures respectfully requests that the Court calendar a pre-motion conference in accordance with Individual Rule IV.A, or otherwise grant RC Ventures leave to move to dismiss.[2]

Respectfully Submitted,

*/s/ Clifford Thau*
Clifford Thau
VINSON & ELKINS LLP
1114 Avenue of Americas
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
*Attorneys for RC Ventures LLC*

---

[2] On November 15, 2022, a different plaintiff, Judith Cohen, filed a complaint making virtually identical claims against RC Ventures and Ryan Cohen based on the same facts as Plaintiff's Complaint.  *See Cohen v. Cohen, et al.*, No. 22 Civ. 9733, ECF 1 (S.D.N.Y. 2022).  That case, which has been designated as related to this action, should be dismissed for the same reasons.