

November 29, 2022

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, N.Y. 10007

      Re:    *Augenbaum v. RC Ventures LLC and Bed Bath & Beyond Inc.,* 22 Civ. 9327

Dear Judge Gardephe:

      I am counsel for Plaintiff Todd Augenbaum and write in response to Defendant's letter of November 23, 2022. As explained below, Plaintiff joins in Defendant's request for a pre-motion conference and requests permission to move for partial summary judgment on part of his claim. In the event Defendant moves to dismiss, Plaintiff also request permission to move to lift the PSLRA's discovery stay, because Defendant's contemplated motion to dismiss is meritless.

      Plaintiff is asserting a single claim against defendant RC Ventures LLC ("RC Ventures" or "Defendant") pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78p(b), which has four elements: "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any one class of the issuer's securities (4) within a six-month period." *Feder v. Frost*, 220 F.3d 29, 32 (2d Cir. 2000) (citations omitted). The issue in this case is whether Defendant was a statutory insider of Bed Bath & Beyond Inc. ("BBBY" or the "Company"), *i.e.,* element (3) above. Plaintiff alleges that RC Ventures was a statutory insider based upon its being: (i) a more than 10% beneficial owner of BBBY's common stock (the "Common Stock"); and (ii) a director by deputization of the Company. *See* Complaint ¶1.

**Defendant's Status as a 10% Beneficial Owner of Common Stock Has Been Properly Alleged and There Exist Sufficient Facts to Grant Plaintiff Partial Summary Judgment on That Basis**

      Defendant contends that it was not a 10% beneficial owner because it relied on the last public statement of total shares outstanding reported by BBBY as it claims is allowed by the safe harbor contained in Rule 13d-1(j), 17 C.F.R. §240.13d-1(j). In doing so, however, RC Ventures ignores the final clause of Rule 13d-1(j) which provides that such reliance is not justified where the reporting person, *i.e.* RC Ventures, "knows or **has reason to believe that the information contained therein is inaccurate**." 17 C.F.R. §240.13d-1(j) (emphasis added). Here, Plaintiff alleges that RC Ventures had precisely such a "reason to believe" that BBBY's most recent reporting of 96,337,713 shares outstanding as of November 27, 2021 was inaccurate based upon BBBY having publicly stated, on November 2, 2021, that it was advancing its three-year $1 billion share repurchase program and expected to repurchase the remaining $400 million by the end of its



Hon. Paul G. Gardephe
November 29, 2022
Page 2 of 5

fiscal year 2021 on February 26, 2021, (Complaint ¶7) with BBBY then estimating, on January 6, 2022, that it would repurchase $275 million in Common Stock during Q4 2021. *Id.* ¶8.

Instead, Defendant fixates on its purportedly not knowing "that it held 10% of BBBY shares as of March 1, 2022" before it made further purchases of Common Stock. D. Ltr. at 4. However, knowledge is not required to trigger the limitation on the Rule 13d-1(j) safe harbor as the "reason to believe" standard "impute[s] to the reporting person knowledge of publicly available data." *See* Arnold S. Jacobs, *The Williams Act—Tender Offers and Stock Accumulations*, §2:84 at nn.42-48 & accompanying text (2022 Update) (citing *SEC v. Fiore*, 416 F. Supp. 3d 306, 329-30 (S.D.N.Y. 2019); *In re Luxottica Group S.p.A., Securities Litigation*, 293 F. Supp. 2d 224, 235 (E.D.N.Y. 2003)). Here, Plaintiff's allegations concerning BBBY's share repurchase program are based upon Company filings made with the SEC, which constitute publicly available data.[1] Indeed, even assuming, *arguendo*, that Defendant had no "reason to believe" the outstanding share count was inaccurate – which is inconceivable given the facts in this case – the issue of whether RC Ventures knew those facts is not susceptible to resolution on a motion to dismiss because "Courts should impose the burden of proving the words on the defendant, who is in the best position to prove its knowledge." Jacobs, *The Williams Act—Tender Offers and Stock Accumulations*, §2:84 at text accompanying n.48.

Defendant also misstates the law in seeking to make the subject of any knowledge or "reason to believe" whether RC Ventures had passed the 10% threshold. Instead, the plain language of the rule precludes the safe harbor from applying where the filer has reason to believe that the prior public disclosure of shares outstanding is "inaccurate." 17 C.F.R. §240.13d-1(j).

*C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994), upon which Defendant relies, is not on point because it did not involve any publicly disclosed share repurchase program and is certainly not analogous to BBBY's disclosure of the amount it would spend repurchasing stock *and* the timeframe during which it would do so. Moreover, *C.R.A. Realty* was resolved on a summary judgment motion (*id*. at 89) with the docket sheet from the case revealing that the defendant Goldman Sachs first filed an answer to the complaint. *See* Ex. A attached hereto.

Moreover, Rule 13d-1(j) does not apply because Rule 16a-1(a)(1), which governs beneficial ownership, only provides that a person "is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and the rules thereunder." 17 C.F.R. §240.16a-1(a)(i). This means only importing the "section 13(d) analysis, such as the exclusion of non-voting securities and counting only those derivative securities exercisable or convertible within 60 days … into the ten percent holder determination for section 16 purposes." *Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 56 FR 7242-01, 7244 (1991) (the "Adopting Release"). However, the Adopting Release does not import Section 13(d)'s safe harbor for *reporting* beneficial ownership into calculating beneficial ownership for purposes of §16(b).

---

[1] The allegations contained in Complaint ¶7 are taken from an exhibit to a Form 8-K Current Report filed by BBBY on November 2, 2021, and the allegations in Complaint ¶8 are taken from an exhibit to a Form 8-K Current Report filed by BBBY on January 6, 2022.

Hon. Paul G. Gardephe
November 29, 2022
Page 3 of 5

Rule 16a-2 further evidences that Rule 13d-1(j) does not apply to Section 16 by providing that: "[a]ny person who is the beneficial owner, directly or indirectly, of more than ten percent of any class of equity securities … registered pursuant to section 12 of the [Exchange] Act … shall be subject to the provisions of section 16 of the Act." 17 C.F.R. §240.16a-2.  Notably absent from Rule 16a-2 is any cross-reference to Rule 13d-1(j)'s safe harbor.  This failure to cross-reference Rule 13d-1(j) cannot be considered accidental given Rule 16a-2's exemptions for certain transactions relating to ten percent beneficial ownership (*see* 17 C.F.R. §240.16a-2(c)) and Rule 16a-1(a)(i) cross referencing §13(d) rules.  *See* 17 C.F.R. §240.16a-1(a)(1)(x) (cross-referencing §240.13d-1(b)(1)(ii)(J)).

*Lowinger v. Morgan Stanley & Co. LLC*, 841 F.2d 122, 130 (2d Cir. 2016), which Defendant relies upon, is not on point because there the SEC rules at issue related only to computing beneficial ownership and did *not* consider or endorse any exemptions from Section 13(d) reporting.  *C.R.A. Realty Corp.*, *supra*, the other case upon which Defendant relies, is not controlling and is unpersuasive because, there, where the plaintiff assumed that the predecessor of Rule 13d-1(j) applied to §16(a) reporting requirements, the court did not address the relevant language of either Rule 16a-1(a)(i) or Rule 16a-2 discussed above.

Accordingly, Plaintiff believes that any Rule 12 motion to dismiss Defendant may make with respect to its status as a 10% beneficial owner cannot possibly succeed.  Instead, Plaintiff should be permitted to move for partial summary judgment with respect to this theory of liability because BBBY's public statements regarding its extensive share repurchase program unquestionably gave RC Ventures "reason to believe" that the November share count was "inaccurate" even assuming *arguendo* that Rule 13d-1(j) can properly be applied to §16(b) claims.

**Defendant's Status as a Director by Deputization Has Been Properly Alleged**

"Under Second Circuit precedent, 'deputization is a question of fact to be settled case by case and not a conclusion of law[.]'" *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 263 (2d Cir. 1969) (quoted in *Calenture, LLC v. Pulte*, 2022 WL 912947, at *3 (S.D.N.Y. Mar. 29, 2022) (denying motion to dismiss §16(b) claims based upon a theory of deputization)).  Nonetheless, Defendant contends that it could not have been a director by deputization because Plaintiffs does not allege that its nominees to the Company's board of directors (the "Board") did not: "(1) advance[] RC Ventures' interest at the expense of BBBY; (2) provide[] RC Ventures with material non-public or otherwise confidential information; or (3) communicate[] regularly with RC Ventures."  D. Ltr. At 4-5 (citing *Calenture LLC, supra*).

Even assuming they have to be pled with particularity, these three factors are not found in *Calenture*, the sole case upon which Defendant relies, at least in the form discussed in their letter.  Instead, *Calenture* identifies five factors based on a treatise authored by Peter Romeo and Allen Dye, partners at the Hogan Lovells law firm, purporting to distill existing case law.  Those five factors, as discussed in *Calenture*, together with Plaintiff's analysis of each factor, is as follows:

1. **Whether the shareholding entity recommended the director for election or appointment to the board**.  Here RC Ventures secured Board spots for Marjorie L. Bowen, Shelly C. Lombard and Benjamin Rosenzweig (the "New Directors").  Complaint ¶14.

**2. Whether the shareholding entity recommended the director for the purpose of protecting or representing the entity's interests rather than for the purpose of guiding or enhancing the issuer's business activities.** This is an issue of fact which must be resolved through discovery.

**3. Whether the director regularly gained access to material nonpublic information about the issuer**. Further discovery is required to prove this fact, but it is at least plausible that the New Directors gained access to material nonpublic information and Plaintiff believes that he will be able to prove this factor through pre-trial discovery.

**4. Whether the director shared the confidential information with the shareholding entity**. Defendant can be considered a director by deputization even if the New Directors did not share with RC Ventures confidential information. *See, e.g.*, *Feder*, 406 F.2d at 264. However, such a sharing of confidential information, if demonstrated, would conclusively establish that RC Ventures was a director by deputization. *See, e.g.*, *Roth ex rel. Beacon Power Corp. v. Perseus, L.L.C.*, 2006 WL 2129331, at *9-10 (S.D.N.Y. July 31, 2006), *aff'd*, 522 F.3d 242 (2d Cir. 2008).

**5. Whether the shareholding entity used the information to inform its investment strategy regarding the issuer's securities**. The analysis for this factor is the same as for factor 4. Plaintiff, however, notes that the timing of Defendant's sale of BBBY stock starting on August 16, 2022 is suspicious in light of the Company's August 31, 2022 announcement that it would be conducting an at-the-market offering of Common Stock. Complaint ¶25.

Defendant also claims an exemption from liability based upon its trading in BBBY securities based upon Rule 16a-2(a), 17 C.F.R. §240.16a-2(a). However, as Plaintiff pled, that exemption is inconsistent with the language of §16(b). Complaint ¶30 (citing *Adler v. Klawans*, 267 F.2d 840, 847 (2d Cir. 1959)). The SEC, therefore, cannot exempt such transactions by rule. *See, e.g., Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 1004 (2005) (agency cannot promulgate rule inconsistent with statutory language); *Feder*, 406 F.2d at 268 (short-swing profits earned by a person who was only a director at the time of one of the transactions comprehended within the purpose of §16(b) and, therefore, "to the extent [an SEC Rule] exempts such a transaction from §16(b) the Rule is invalid.").

**Plaintiff Should be Permitted to Proceed With Pre-Trial Discovery**

Since the claims in this action arise under the Exchange Act, a motion to dismiss would trigger a statutory stay of discovery. *See* 15 U.S.C. §78u-4(b)(3)(B). However, staying discovery here would unduly prejudice Plaintiff, who has unquestionably alleged enough facts to make his claim plausible within the controlling framework of Fed. R. Civ. P. 12(b)(6). Any such stay would cause Plaintiff undue prejudice because any motion to dismiss made by Defendant would lack merit. At the same time, Plaintiff expects that any discovery he needs to take will be substantially more limited in scope than that in a Section 10(b) action, to which the statutory stay of discovery was primarily addressed, because, in this action, no discovery is necessary with respect to the issues of fraud or reliance and damages are based upon the actual transactions in the Common Stock engaged in by Defendant.

Hon. Paul G. Gardephe
November 29, 2022
Page 5 of 5

*   *   *

  Plaintiff, therefore, joins in Defendant's request for a pre-motion conference. In the alternative, Plaintiff requests leave to file either a free-standing motion for partial summary judgment based upon RC Ventures' status as a 10% beneficial owner of the Common Stock or, in the event Defendant is given leave to file a Rule 12(b)(6) motion to dismiss, a cross-motion for partial summary judgment.

Respectfully submitted,<br><br>/s/ Jeffrey S. Abraham<br>Jeffrey S. Abraham