Case 1:22-cv-09327-DEH   Document 15   Filed 12/05/22   Page 1 of 4



December 5, 2022

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, N.Y. 10007

   Re: *Augenbaum v. RC Ventures LLC and Bed Bath & Beyond Inc.,* 22 Civ. 9327;
     *Cohen v. Cohen et al.*, 22 Civ. 09733

Dear Judge Gardephe:

  I am counsel for Plaintiff Todd Augenbaum and write in response to Plaintiff Cohen's November 30, 2022, letter – oddly dated November 21, 2022 – requesting that the above-referenced actions be consolidated and that her counsel at Squitieri & Fearon ("S&F") be allowed to work jointly with my firm Abraham, Fruchter & Twersky, LLP ("AF&T"), presumably as co-lead counsel. Defendant has since written to the Court agreeing that consolidation is appropriate.

  Plaintiff Augenbaum also agrees that consolidation represents an appropriate mechanism to enable this Court to efficiently manage its docket.[1] However, Plaintiff Augenbaum disagrees with Plaintiff Cohen's suggestion that if there are two cases filed then the two law firms, *i.e.*, AF&T and S&F, should simply litigate the case together. Instead, this Court should exercise its inherent authority to appoint lead counsel in these related cases. *See, e.g.*, *In re Wendy's Co. S'holder Deriv. Action*, 44 F.4th 527, 532 (6th Cir. 2022) ("At bottom, the selection of lead counsel is one of the means by which a district court, through its inherent power, manages proceedings."); *cf. Abrams v. Occidental Petroleum Corp.*, 44 F.R.D. 543, 547 (S.D.N.Y. 1968) (consolidating Section 16(b) actions and appointing a "general counsel for pre-trial purposes").

  There is no statute or rule providing a precise mechanism for appointing lead counsel in a Section 16(b) action.[2] However, Plaintiff Augenbaum believes that Rule 23(g)(1)(A), which

---

[1] This Court also has the authority to "issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a)(iii). This could include staying the Cohen Action which Plaintiff Augenbaum also believes would be an appropriate outcome because the claim asserted by Plaintiff Cohen is duplicative of some of the claim asserted in the Augenbaum Action and because Plaintiff Cohen would not be prejudiced by any stay since any net recovery will inure to the benefit of BBBY rather than individually to either Plaintiff. *See, e.g., Readick v. Avis Budget Grp., Inc.*, No. 12 CIV. 3988 PGG, 2014 WL 1683799 (S.D.N.Y. Apr. 28, 2014).

[2] The lead plaintiff test created by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") only applies in class actions asserting claims arising under of the Securities Exchange Act of
NEW YORK tel: 212.279.5050 fax: 212.279.3655  CALIFORNIA tel: 858.764.2580 fax: 858.764.2582  aftlaw.com
450 Seventh Avenue, 38th Floor, New York, NY 10123  11622 El Camino Real, Suite 100, San Diego, CA 92130


governs the appointment of lead counsel, in class actions, provides an appropriate framework to decide the issue. *See, e.g., Sklar v. Bank of Am. Corp.*, 258 F.R.D. 260, 272 (S.D.N.Y. 2009); (applying the Rule 23(g) framework in a shareholder derivative action); *In re Comverse Tech. Inc. Deriv. Litig.,* 2006 WL 3761986, at *3-4 (E.D.N.Y. Sept. 22, 2006) (same, while emphasizing the quality of the pleadings). Here, those factors point decisively in favor of appointing AF&T as sole lead counsel.

The first Rule 23(g) factor is "the work counsel has done in identifying or investigating potential claims in the action." Fed. R. Civ. P. 23(g)(1)(A)(i). Here, AF&T made the first demand on BBBY's board of directors to institute a §16(b) action and filed the first complaint. In addition, AF&T's work in identifying and evaluating potential claims is otherwise superior to that of S&F, especially as they relate to a potential recovery based upon RC Ventures having been a director by deputization of BBBY. In contrast, Plaintiff Cohen's letter confirms that she is not pursuing disgorgement based upon defendants having been a director by deputization, because such claims are not ripe for judgment now. *Compare Cohen* ECF No. 10 (contemplating a motion for summary judgment) *with* Augenbaum ECF No. 13 (contemplating a motion for partial summary judgment based upon 10% beneficial ownership and then prosecution of the claim based upon a director by deputization status).

Plaintiff Augenbaum proving successful in pursuing the director by deputization theory, as he expects to, will greatly increase the amount of short swing profits which RC Ventures will be required to disgorge. Specifically, §16(b) does not allow for the recovery of short swing trading from a person based upon its 10% beneficial ownership status unless he owned 10% or more of the stock "both at the time of the purchase and sale." 15 U.S.C. §78p(b). In contrast, no such statutory limitation exists with respect to short-swing profits earned by a corporate director. *Id*.[3]

Plaintiff Cohen did name Ryan Cohen as an additional defendant but that is a distinction without a meaningful difference as the relevant U.S. Securities and Exchange Commission ("SEC") filings state that all the trading in BBBY securities was made by RC Ventures. In addition, there appears to be no material risk to collecting on a judgment against RC Ventures since the SEC filings with respect to BBBY and other publicly traded companies reflect that RC Ventures funded its purchases of BBBY securities without taking any loans and owns close to one billion dollars of other assets.

The second Rule 23(g) factor is "counsel's experience in handling class actions, other complex litigation, and ***the types of claims asserted in the action***." Fed. R. Civ. P. 23(g)(1)(A)(ii) (emphasis added). AF&T has more than twenty years of experience in litigating claims for

---

1934. *See* 15 U.S.C. §78u-4(a)(1). By contrast, claims brought under Section 16(b) are not class actions subject to Fed. R. Civ. P. 23. *See, e.g., Chechele v. Elsztain,* No. 11 CIV. 3320 (SAS), 2012 WL 12358221, at *2 (S.D.N.Y. Aug. 1, 2012).

3   Rule 16a-2(a), 17 C.F.R. §240.16a-2(a), would act to insulate at least some of those additional profits from being disgorged. However, as Plaintiff Augenbaum has previously explained, existing Second Circuit precedent demonstrates that Rule 16a-2(a)'s limitations are inconsistent with the statutory language of §16(b) and, therefore, cannot be enforced. *See* ECF No. 13 at 4 (citing cases).

violation of Section 16(b). This experience includes a $20 million recovery, the largest known recovery in any §16(b) action in this District, which then-Judge Martin attributed directly to my firm's "diligence and ingenuity." *Steiner v. Williams*, No. 99 Civ. 10186 (JSM), 2001 WL 604035, at *7 (S.D.N.Y. May 31, 2001). Other notable recoveries include $9.4 million recovered in a case in a §16(b) action before trial and after obtaining a favorable decision from the U.S. Court of Appeals for the Eleventh Circuit reversing a prior dismissal of the action in which AF&T represented the trustee in bankruptcy for PurchasePro.com, Inc. in an action filed against Office Depot, Inc. (*see* Ex. A), and an action brought in this District in which AF&T represented the corporate issuer in obtaining a $4.9 million judgment that was upheld on appeal. *See Analytical Survs., Inc. v. Tonga Partners*, *L.P.*, 684 F.3d 36 (2d Cir. 2012). In contrast, the only Section 16(b) decision which we have been able to locate on Westlaw in which S&F acted as counsel dates from 2007, granting the defendants' motion for reconsideration to dismiss certain claims. *See Tinney v. Genesco Communications, Inc.*, 502 F. Supp. 2d 409 (Del. 2007).

AF&T also has substantial experience in litigating securities class actions and shareholder derivative actions. This includes a $48.75 million recovery Judge Castel approved in 2020 in which the plaintiffs represented by AF&T as sole lead counsel recovered more than 50% of recoverable damages. *See Pyramid Holdings, Inc. v. Terraform Global, Inc. et al.*, No. 16-cv-07981-PKC (S.D.N.Y.). In contrast, the most recent achievement listed on S&F's website is a $5.6 million settlement of a case filed in 2009. *See* http://sfclasslaw.com/achievements/.

The third factor is "counsel's knowledge of the applicable law." Fed. R. Civ. P. 23(g)(1)(A)(ii). Plaintiff Augenbaum respectfully submits that his pre-motion letter (*Augenbaum* ECF No. 13) demonstrates a superior knowledge of §16(b) law. This superior knowledge is evident in Plaintiff Cohen asserting that the total amount of short-swing profits subject to disgorgement based upon RC Ventures' status as 10% beneficial owner being $58 million (*see* Cohen ECF No. 10 at 2) which is – unfortunately – mistaken by a wide margin. The facts, instead, are that RC Ventures only purchased 779,546 shares of BBBY common stock after becoming a 10% beneficial owner which were made for between $16.68 and $17.25 per share while the highest price sale was $29.22. Augenbaum Complaint ¶¶9, 23. The resulting short-swing profits based upon RC Ventures' status as a 10% beneficial owner are, therefore, significantly less than Plaintiff Cohen suggests.

Plaintiff Cohen seems to have, instead, counted all of Defendant's purchases and sales presumably because they were part of a single scheme. *See Cohen* ECF No. 10 (calculating short-swing profits based using purchases beginning on January 13, 2022 which is more than six months before reported sales began on August 16, 2022). That is a fool's errand since §16(b) is pellucid in providing that "this subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale." 15 U.S.C. §78p(b). The Supreme Court, more than 50 years ago, construed that statutory language of §16(b) to exclude from liability all the shares purchased in a single transaction causing a shareholder to exceed 10% beneficial ownership, noting only Congress could change the meaning of the plain text. *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 423-25 (1972).

The final factor is the "resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A)(iv). AF&T will commit the resources necessary to litigating this action and

has, in the past, demonstrated its willingness to litigate claims, including Section 16(b) claims, through to judgment, as demonstrated by the actions demonstrated in past actions discussed above with respect to Rule 23(g)(a)(ii). Ordinarily, we would view this factor as being in equipoise. However, although it is uncomfortable to say, S&F appears to lack the necessary resources to properly litigate this action given that is the subject of a $449,468.27 judgment filed by its former landlord in New York State court. *See 32 East 57th Street LLC vs. Squitieri & Fearon LLP*, Docket No. 4097494 (Judgments and Liens May 16, 2022); *East 57th Street LLC vs. Squitieri & Fearon, LLP,* Docket No. 652545/2021 (N.Y. Sup Ct., N.Y. Cty).[4] S&F's apparent financial condition creates a risk that it would agree to a sub-optimal result to resolve this action and expedite its receipt of attorneys' fees or unreasonably minimize its need to outlay expenses. *See, e.g.*, *In re Apple & AT & TM Antitrust Litig.*, No. C 07-05152 JW, 2008 WL 1766761, at *2 (N.D. Cal. Apr. 15, 2008) (declining to appoint a law firm as a lead counsel because it lacked the necessary financial resources); Lucian A. Bebchuk, *The Questionable Case for Using Auctions to Select Lead Counsel*, 80 Wash. U. L.Q.. 889, 892-93 (2002) (counsel's financial resources strengthens its bargaining power).

Accordingly, the relevant Rule 23(g) factors weigh heavily in support of appointing AF&T as sole lead counsel. This Court should not force AF&T to work together as co-lead counsel with S&F, let alone on equal terms, "[w]here, as here, there is no demonstrable need for more than one law firm" to prosecute claims. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015); *see also Rasella v. Musk*, 342 F.R.D. 74, 84 (S.D.N.Y. 2022) (Report & Recommendation); *In re J. Ezra Merkin & BDO Sideman Sec. Litig.*, No. 08 CIV. 10922 (DAB), 2010 WL 11597482, at *2 (S.D.N.Y. Jan. 28, 2010).

\* \* \*

Plaintiff Augenbaum, therefore, requests that AF&T be appointed sole lead counsel of the consolidated action.

Respectfully submitted,

Jeffrey S. Abraham

---

[4] New York law provides for filing a satisfaction of judgment once it has been fully paid. *See* CPLR 5021. Mr. Squitieri has informed us that S&F only need pay an additional $60,000 to satisfy the judgment. However, S&F's inability to fully satisfy a judgment for over six months still raises uncomfortable questions with respect to S&F's ability to devote the resources necessary to vigorously prosecute this action.