

December 16, 2022

<u>Via ECF</u>

Hon. Paul G. Gardephe
United States District Court
Southern District of New York
40 Foley Square, Room 2204
New York, N.Y. 10007

    Re:    *In re Bed Bath & Beyond Inc. Section 16(b) Litigation*, No. 22 Civ. 9327 (PGG)

Dear Judge Gardephe:

I am counsel for Plaintiff Todd Augenbaum and write with respect to this Court's Order of December 12, 2022. As explained in more detail below, the Court has the authority, which it should exercise, to appoint Abraham, Fruchter & Twersky, LLP ("AF&T") as lead counsel, but it should not appoint a lead plaintiff. AF&T's request to be appointed lead counsel is not meant to exclude Squitieri & Fearon LLP ("S&F") from this action but only to have S&F participate based upon AF&T's leadership, an offer which I previously made clear to Mr. Squitieri. *See* Ex. A.

**1. Source of the Court's Authority to Appoint Lead Counsel and Lead Plaintiff**

This Court has the authority to appoint lead counsel because this is a consolidated action in which the Court may "issue any orders necessary to avoid unnecessary costs or delay." *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) (quoting Fed. R. Civ. P. 42(a)(3)). The power to appoint lead counsel also stems from the "broad inherent authority of every court 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants.'" *MacAlister, supra* (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)). The Second Circuit in *MacAlister* did not discuss whether a lead plaintiff should be appointed, but any such appointment would need to stem from the same considerations of judicial efficiency. *MacAlister*, however, suggests that appointing lead counsel is sufficient to achieve those aims, calling into question whether such an appointment is "necessary" within the meaning of Rule 42(a)(3). *See, e.g., In re Comverse Tech., Inc. Derivative Litig.*, 2006 WL 3761986, at *2 (E.D.N.Y. Sept. 22, 2006).

Some cases hold that Fed. R. Civ. P. 23.1 provides courts with the authority to appoint a lead counsel and lead plaintiff in a shareholder derivative action. *See, e.g.*, *Union Asset Mgmt. Holding AG v. Kraft Heinz Co.*, 2021 WL 4902454, at *2 (N.D. Ill. Oct. 21, 2021). However, Rule 23.1 cannot serve as the source of this Court's authority in this action because "Section 16(b) suits are not 'derivative actions'" within the meaning of Rule 23.1. *See, e.g., Chechele v. Elsztain*, 2012 WL 12358221, at *2 & n.8 (S.D.N.Y. Aug. 1, 2012) (Scheindlin, J.) (citing *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 281 (S.D.N.Y. 2003) (Marrero, J.); *Blau*

NEW YORK   tel: 212.279.5050   fax: 212.279.3655        CALIFORNIA   tel: 858.764.2580   fax: 858.764.2582        aftlaw.com
450 Seventh Avenue, 38th Floor, New York, NY 10123      11622 El Camino Real, Suite 100, San Diego, CA 92130



*v. Oppenheim*, 250 F. Supp. 881, 885 (S.D.N.Y. 1966) (Weinfeld, J.)); *see also Dottenheim v. Murchinson*, 227 F.2d 737, 738 (5th Cir. 1955) (§16(b) "creates a new cause of action, which, while similar in some respects to a … derivative right, is not such a right at all.").

Similarly, this Court is undoubtedly familiar with the lead plaintiff provisions of the Securities Exchange Act of 1934, which apply to actions that are "brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Here, this Section 16(b) case is not a class action, making those lead plaintiff provisions inapplicable.

## 2. Appointing Lead Counsel or Lead Plaintiff is Discretionary and the Court Should Exercise its Discretion to Appoint Lead Counsel but not Lead Plaintiff

Although Rule 42(a)(3) vests in this Court the power to appoint lead counsel, any such appointment is discretionary, especially because the consolidated actions are pending before the same U.S. District Judge. *MacAlister*, 263 F.2d at 69-70; *cf.* Fed R. Civ. P. 23(g)(1) (a court "must" appoint class counsel); 15 U.S.C. §78u-4(a)(3)(B)(i) (the court "shall appoint" a lead plaintiff in a securities fraud class action). Nonetheless, courts traditionally appoint a lead (or general) counsel in consolidated actions recognizing that "in many instances [it] prove[s] the only effective means of channeling the efforts of counsel along constructive lines and its implementation must be considered within the clear contemplation of the rule." *MacAlister*, 263 F.2d at 68; *see also Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774-75 (9th Cir. 1977) (inherent power to consolidate and appoint lead counsel); *Abrams v. Occidental Petroleum Corp.*, 44 F.R.D. 543, 547 (S.D.N.Y. 1968) (appointing general (or lead) counsel in a consolidated Section 16(b) action). Here, there is already evidence that appointing lead counsel will create efficiencies by enabling a single, unified motion for partial summary judgment and a single, unified opposition to any motion to dismiss overlapping claims.

This Court, however, should not appoint a lead plaintiff in this action because where, as here, the claims are being brought to obtain a recovery for the Company, "the benefits of consolidation are not necessarily enhanced by the appointment of a lead plaintiff." *Comverse*, *supra*; *see also Moradi v. Adelson,* 2011 WL 5025155, at *1 (D. Nev. Oct. 20, 2011) ("it is unclear what benefits there are to appointing a lead plaintiff, especially when lead counsel is appointed.") (quoting *In re Arena Pharms., Inc. S'holder Deriv. Litig.,* 2011 WL 830190 at *2 (S.D. Cal. Mar. 3, 2011). The same rationale applies because this Section 16(b) action is being brought to obtain a recovery for BBBY. *See, e.g.,* Augenbaum Complaint ¶1; Cohen Complaint ¶49.

Indeed, this action only asserting a Section16(b) claim makes a lead plaintiff appointment even less necessary as the plaintiff in a §16(b) action is "no[t] a likely trial or deposition witness" (*Strauss v. W. Highland Cap., Inc.*, 2000 WL 1505957, at *2 (S.D.N.Y. Oct. 6, 2000) (Lynch, J.)) and in at least one action in this District a protective order was entered preventing a §16(b) plaintiff from being deposed beyond his ownership of the issuer's stock. *See Spirit Aerosystems Holdings, Inc. v. Scopia Capital Management LP et al*, Docket No. 1:16-cv-06182-LTS-HBP, ECF No. 56 (S.D.N.Y. July 30, 2018) (attached as Ex. B). This reflects the unusually broad standing to assert Section 16(b) claims which, unlike shareholder derivative actions, only require that the plaintiff be a shareholder at the time the lawsuit is instituted and maintain a financial interest in the outcome of the litigation. *See Gollust v. Mendell*, 501 U.S. 115, 124-25 (1991); *cf.* Fed. R. Civ. P. 23.1(a)

and Fed. Riv. P. 23.1(b)(1) (the plaintiff in a shareholder derivative action must be an adequate representative and a shareholder of the company at the time of the relevant transactions).

### 3. The Standards Governing the Selection of any Lead Counsel, and Their Application Here

Plaintiff Augenbaum, consistent with his prior letter to the Court, believes that the Rule 23(g)(1)(A) criteria should be used to determine whether AF&T or S&F is better qualified to serve as lead counsel. In that regard, Plaintiff Cohen does not dispute that AF&T has substantially more experience litigating and obtaining recoveries in Section 16(b) actions. This is particularly important because Section 16(b) represents a unique scheme of statutory liability bearing little or no resemblance to actions brought pursuant to other provisions of the federal securities laws. *See generally*, Arnold S. Jacobs, *Section 16 of the Securities Exchange Act of 1934* §3.4 (discussing differences between §16(b) and other federal securities law remedies). Indeed, the very fact that both actions are pending before this Court reflects my discouraging S&F from filing Plaintiff Cohen's action in the District of New Jersey. *See* Ex. C.

S&F is contending that it should be appointed co-lead counsel because Plaintiff Augenbaum has acted improperly in settling prior Section 16(b) actions. *Cohen* ECF No. 18 at 2-3. That contention, which is also a thinly veiled attack on AF&T, lacks merit as it oddly focuses on *Augenbaum v. Genovese et al.,* 04-cv-80665 (S.D. Fla.) – which S&F mistakenly refers to as *Augenbaum v. Spectrum*, 04-cv-5627 – a case settled for $3.25 million including a promissory note secured by one million shares of the company's common stock placed into an escrow account to secure payment. The terms of the settlement, as well as the proposed attorneys' fees, were submitted and fully explained before the court's approval was granted. *See* Ex. D. *Augenbaum v. Feinberg,* C.A. No. 04-cv-05627-SAS-AJP (S.D.N.Y.), the other case identified in the same letter, was mediated before then-Magistrate Judge Peck with the settlement approved by then-Judge Scheindlin, "find[ing] and conclud[ing] that the Settlement was arrived at in good faith, involved arms'-length negotiations in which all interested parties have been represented and is fair, reasonable and equitable." Ex. E at ¶1.

Similarly, S&F's assertion that these settlements were deliberately hidden from this Court lacks any reasonable factual foundation because those settlements represent two of many recoveries in §16(b) actions by AF&T. The cases identified in the December 5 letter, in contrast, represent larger settlements while also demonstrating that a corporate issuer and a bankruptcy trustee chose to retain or work with AF&T in cases which produced meaningful results including a substantial settlement achieved following the U.S. Court of Appeals for the Eleventh Circuit reversing a prior dismissal and a judgment upheld on appeal by the U.S. Court of Appeals for the Second Circuit.

Plaintiff Augenbaum having appeared as a plaintiff in several cases over the past 20 years is not unusual given that he is both an active investor and a lawyer, which help drive his interest in shareholder litigation. By way of example, the most recent representative action Plaintiff Cohen references is *Employees Retirement Sys. of the City of St. Louis v. Jones,* No. 2:20-cv-04813 (S.D. Ohio). *See Cohen* ECF No. 18 at 3 n.5. However, Plaintiff Cohen neglects to mention that another Article III Judge overseeing a parallel action pending in the Northern District of Ohio opined that

the settlement to which Mr. Augenbaum objected was premature, and indicated that he was selecting AF&T, as co-counsel for Mr. Augenbaum, to continue litigating the matter. *See* Ex. F. Moreover, approval of the proposed settlement there has been the subject of a motion for reconsideration first filed on September 20, 2022 and remaining *sub judice*, demonstrating that the issues raised by Mr. Augenbaum are of a serious nature.[1]

Plaintiff Cohen's *ad hominem* attack, regrettably, appears to be part of a previously rejected playbook in which S&F sought to be appointed co-lead counsel in a case in which it lacked the necessary experience. *See Fan v. PHL Variable Life Ins. Co.*, 2019 WL 10948633, at *4 & n.3 (S.D.N.Y. May, 29, 2019) (Crotty, J.). Here too, S&F's lack of relevant expertise is evidenced by Plaintiff Cohen: (1) failing to make any allegations regarding RC Ventures having been a director by deputization; (2) pressing a damage theory for the claim it asserted based upon RC Ventures' beneficial ownership of 10% or more of BBBY's common stock which is inconsistent with controlling principles of law; (3) failing to advance well-developed arguments responding to RC Ventures' effort to make use of the safe harbor afforded by Rule 13d-1(j), 17 C.F.R.§240.13d-1(j), and; (4) failing to point to *any* successful Section 16(b) prosecutions by S&F.[2]

S&F also suggests that it has been more vigorous in prosecuting these claims because AF&T only filed a pre-motion letter seeking partial summary judgment after learning that Plaintiff Cohen had done so the day before. *Cohen* ECF No. 10 at 2 n.2. That is incorrect as no one at AF&T knew about Plaintiff Cohen's pre-motion letter, which was not filed in the *Augenbaum* action until early afternoon of the next day, when S&F first e-mailed me a copy. Also, it would be absurd to suggest that AF&T somehow conjured up a detailed letter including different arguments and requests for relief because a letter arrived in my inbox four hours earlier. In fact, AF&T prepared a draft pre-motion letter awaiting RC Ventures appearing in the action, which occurred on November 23, 2022, *i.e.*, the day before Thanksgiving, at which time RC Ventures also filed its pre-motion letter. *See* ECF Nos. 9-12.

---

[1] S&F also criticizes Mr. Augenbaum for having brought three Section 14(a) disclosure cases but ignores that they were brought on an individual, *i.e.*, non-representative, basis and had a limited objective of obtaining additional disclosures in connection with a pending vote of shareholders. *In re Walgreen Co. S'holder Litig.*, 832 F.3d 718, 721 (7th Cir. 2016), upon which Plaintiff Cohen relies, is not on point, because that case involved a class action settlement including a release of all shareholders' claims in exchange for disclosures the court deemed immaterial. *See also In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 894 (Del. Ch. 2016) (rejecting broad release of claims in a class action in exchange for disclosures the court deemed immaterial). The attack also ignores that S&F has been counsel in disclosure settlements albeit involving a class release of claims. *See, e.g., In re Schering-Plough/Merck Merger Litig.*, 2010 WL 1257722, at *1 (D.N.J. Mar. 26, 2010) (listing S&F as one of the plaintiffs' counsel); *Landesbank Berlin Investment GmbH v. Schering-Plough Corporation et al.*, Dkt. No. 2:09-cv-01099, ECF No. 22 (D.N.J. Apr. 10, 2009) (S&F and co-counsel moving to intervene to keep disclosure case in New Jersey State court).

[2] S&F relies upon its having served as co-counsel with AF&T in *In re SmileDirectClub, Inc. Derivative Litigation*, Docket No. 2019-0940 (Del. Ch.), ignoring the more recent *In Re Rocket Co. Inc Stockholder Der. Litigation*, Docket No. 2021-1021 (Del. Ch.), is which S&F stipulated to AF&T and its Delaware counsel being co-lead counsel with S&F and its co-counsel assisting co-lead counsel. *See* Ex. G.

Hon. Paul G. Gardephe
December 16, 2022
Page 5 of 5

  S&F's argument also ignores that Plaintiff Augenbaum's complaint is more comprehensive because it alleges that RC Ventures was subject to Section 16(b) liability by virtue of being a director by deputization. *See* Order at 4. Those allegations, if successfully proven, will substantially increase the amount of short swing profits earned by RC Ventures to more than $40 million from the approximately $3 million recoverable based solely on RC Ventures having been a beneficial owner of 10% or more of BBBY's stock. This fact standing alone also supports appointing AF&T as lead counsel. *See. e.g., Comverse,* 2006 WL 3761986, at *4.

  A lead plaintiff, in contrast, should not be appointed for the reasons discussed above. *See* Point 2, *supra*. However, assuming *arguendo* this Court wishes to appoint a lead plaintiff, Plaintiff Augenbaum should be that lead plaintiff because he has standing to pursue the claims, has demonstrated an ability to achieve favorable results in previous §16(b) actions and has been a practicing lawyer for almost 40 years with a spotless ethical record. *See* Ex. H. Plaintiff Augenbaum has also demonstrated his vigor in prosecuting the claims by making the required demand as soon as the facts concerning RC Ventures' §16(b) violation became public, retaining counsel with substantial experience in litigating §16(b) actions, and at the first opportunity after RC Ventures appeared in this action, presenting a detailed pre-motion letter explaining the bases for opposing any motion to dismiss, moving for partial summary judgment and lifting any stay of discovery. *See* ECF No. 13. If this case is resolved by settlement rather than judgment, Plaintiff Augenbaum will present any such settlement to this Court for approval as he has done in his prior Section 16(b) actions, as he has previously committed to do to Plaintiff Cohen. *See* Ex. I.

  In contrast, there is nothing in the Court's record supporting appointing Plaintiff Cohen as the lead plaintiff. Plaintiff Cohen, like Plaintiff Augenbaum, did not verify her complaint or allege that she is an adequate plaintiff (*e.g.*, Cohen Complaint ¶6) and she is plainly not an institutional investor with a superior ability to oversee the litigation. Instead, Plaintiff Cohen, through an unknown process, chose S&F as her counsel despite that firm not having material experience litigating Section 16(b) claims and then filed an almost duplicative claim – albeit leaving out the theory of director by deputization offering the greatest potential source of recovery – which has prompted substantial additional motion practice.

*  *  *

  Plaintiff Augenbaum, therefore, respectfully requests that the Court appoint AF&T as lead counsel and not appoint any lead plaintiff.

                Respectfully submitted,

                /Jeffrey S. Abraham