UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | No. 1:22-cv-09327-PGG |
| | **AMENDED COMPLAINT** |
| This document relates to: | **JURY TRIAL DEMANDED** |
| No. 1:22-cv-09733-PGG | |

Plaintiff Judith Cohen ("Plaintiff"), by her undersigned attorneys, as and for her amended complaint, alleges as follows on personal knowledge as to herself and hers acts and on information and belief as to all other matters, based upon an investigation by Plaintiff's counsel.

## NATURE OF THE ACTION

1.      Plaintiff brings this action under Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p(b), for the benefit of the nominal defendant Bed Bath & Beyond Inc. ("BBB" or the "Company"), to recover short-swing profits made by Defendants who were Section 16(b) 10% (or more) beneficial owners and/or directors by deputization with a pecuniary interest in the BBB securities both when they bought BBB securities in the open market and then sold their entire position in the open market within a six-month period.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Section 16(b) of the Exchange Act.

3.      This Court has jurisdiction of this litigation pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337.

4.      Venue is properly laid in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b) and (c).  Nominal Defendant BBB is a New York corporation.

5.     In connection with the acts, conduct, and scheme alleged herein, Defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails and telephonic communications and the facilities of a national securities exchange.

**THE PARTIES**

6.     Plaintiff was and is a shareholder of BBB.  Plaintiff has, as required by law, made due demand upon the Company's Board of Directors (the "Board") to recover the short swing profits described herein.  A copy of the demand is attached as Exhibit A.  A copy of BBB's response is attached as Exhibit B.

7.     Nominal Defendant BBB is a New York corporation headquartered at 650 Liberty Avenue, Union, New Jersey 07083.  BBB's common shares are publicly traded on the Nasdaq under the symbol "BBBY."  BBB is party to a March 24, 2022 Cooperation Agreement ("CA") with Defendants whereby the Company agreed to that three of its current directors would not stand for reelection and add three new directors selected by Defendants would be added to the Board. The CA (in ¶ 13) appears to prevent the Company from prosecuting or joining any litigation against Defendants (other than to enforce the CA).

8.     Defendant Ryan Cohen ("Cohen") was, at all times relevant to the matched purchase and sale transactions described herein, an insider subject to Section 16(b) of the Exchange Act as a result of his 10% ownership of the common stock of BBB.  Cohen has been labelled as the "Meme-Stock King" whose bathroom humor social media posts are followed by an army of small investors on Reddit and other forums.[1]

9.     Defendant RC Ventures LLC ("RC Ventures") is a limited liability company headquartered in Florida was, at all times relevant to the matched purchase and sale transactions

---

[1] *See* https://nymag.com/intelligencer/2022/09/ryan-cohen-bed-bath-and-beyond-stock.html.

described herein, an insider subject to Section 16(b) of the Exchange Act as a result of its beneficial ownership of stock and/or as a member of a group constituting owners of 10% or more of the outstanding common stock of BBB and by virtue of having deputized at least three directors to BBB and by virtue of having deputized at least three directors to BBB's board to represent him and his interests as a shareholder of BBB.  RC Ventures is Cohen's investment company.  Cohen is listed as the "manager" of RC Ventures and controls RC Ventures operations.

10.     Defendants Cohen and RC Ventures are referred to collectively herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     Summary of 16(b) Violations

11.     On January 13, 2022, according to their own SEC filings, Defendants began to accumulate BBB securities and, based on publicly available data, and admission of counsel for RC Ventures LLC (ECF No. 12) as to the number of shares outstanding as of February 26, 2022, *i.e.*, 81,979,000, Defendants passed the 10% beneficial owner threshold with their purchases on or before February 26, 2022.

12.     Defendants knew or were reasonably able to calculate that they had become 10% owners at least by February 26, 2022 because Defendants knew the dollar amount of stock buyback approved by the Board and knew the balance remaining as of the last BBB SEC filing with an outstanding share count.  Defendants also knew that BBB announced that it intended to expend all monies under existing buyback program by end of fourth quarter for fiscal 2021-22.  Knowing trading volume and prices, Defendants had the means and opportunity to calculate that they had passed the 10% Rule 16 threshold by February 26, 2022.  The evidence that Defendants knew the

foregoing is in their admission in March 2022 that they were aware of BBB buyback programs and repurchase activity.

13.     After becoming 10% beneficial owners, Defendants continued to acquire BBB securities, including common stock and American style call options.

14.     On or about August 16, 2022, but in any event within six months of Defendants' acquisition of BBB securities and while still 10% owners and/or directors by deputization, Defendants sold a matching position for more than the purchase price.  The excess of the sales proceeds over the purchase price calculated at the lowest purchase price and highest sale price imputable to all sales constitutes short swing profits under Rule 16(b).

**B.     Section 13(d) of the Exchange Act Obligated Defendants to Make Mandatory Filings Disclosing their Ownership of BBB Securities**

15.     Section 13(d)(1) of the Exchange Act (15 U.S.C. § 78m(d)) and SEC Rule 13d-1 (17 C.F.R. § 240.13d-1) require any person who has acquired more than 5% of any voting class of a Section 12 registered equity security to file, within 10 days of the acquisition of the 5%, a statement with the SEC containing the information required by Schedule 13D.  This statement must be complete and accurate.  *S.E.C. v. Savoy Indus., Inc.*, 587 F.2d 1149, 1165 (D.C. Cir. 1978). For purposes of Section 13, but not for purposes of Section 16(b), a filer may rely upon the issuer's latest share count in its latest SEC filing.  Accordingly, even if a filer does not "believe" he/she/it has become a 10% owner for Section 16(b) purposes, it is not the subjective belief of the filer that governs his/her/its liability under Section 16(b), it is the numbers that govern.  *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 426 (1972) (the Court rejected the notion that 16(b) would apply not if a holder became a 10% owner "'involuntarily,' as for example, by legal succession or by reduction in the total number of outstanding shares of the corporation").

C.      Section 16(a) of the Exchange Act

16.      In addition to Section 13(d), Section 16(a) of the Exchange Act imposes an additional reporting requirement for officers and directors of a public company, as well as "every person who is directly or indirectly the beneficial owner of more than 10 person of any class of any equity security." 15 U.S.C. § 78p(a)(1). Such persons are deemed to be insiders and must file statements reporting their ownership to the SEC by filing initial statements of beneficial ownership of equity securities on Form 3 and a subsequent changes in beneficial ownership filed on Form 4. 15 U.S.C. § 78p(a); 17 C.F.R. § 240.1613. Sec. & Exch. Comm'n, Form 3, General Instruction 2(a).

17.      Section 16(a) requires these insiders to file these disclosures under Section 16(a) when their existing ownership stake increases, even if they did not affirmatively engage in any transactions. For instance, the SEC has explained that "[f]ollowing a company's buyback of its stock, a person who previously owned less than 10 percent of the company's stock may own more than 10 percent of the stock without having purchased additional shares." *Exchange Act Section 16 and Related Rules and Forms*, S.E.C. (Aug. 11, 2010).[2]

D.      BBB Publicly Announced its Acceleration of an Already Aggressive Stock Repurchase Program

18.      On November 2, 2021, after the markets had closed for the day, BBB issued a press release announcing that it would accelerate its $1 billion three-year share repurchase plan by the end of fiscal 2021 (ending February 26, 2022), two years ahead of schedule. In the press release, BBB disclosed that in the first six months of the 2021 fiscal year, the Company executed approximately $225 million in repurchases with $100 million remaining under its $325 million

---

[2] https://www.sec.gov/divisions/corpfin/guidance/sec16interp.

plan for fiscal 2021.  With the acceleration, BBB said the total expected share repurchase amount for fiscal 2021 had increased to approximately $625 million, nearly doubling the initial share repurchase plan of $325 million for the fiscal year.

19.     The next day, BBB's stock price climbed as much as 54% before closing at $19.30 per share, a 15% increase from the day before, with more than 104 million shares traded.  That same day, *The Wall Street Journal* published an article entitled "Bed Bath & Beyond Stock Surge Recalls Meme Mania," reporting that retail investors' enthusiasm for BBB's stock had increased as short interest in the Company had grown, with 28% of the retailer's free float sold short at the time, up from 21% at the start of September 2021.[3]

20.     From January to early March 2022, Defendants' acquired millions of shares of BBB's stock in multiple transactions, acquiring more than 10% of the Company's total outstanding shares by or before February 26, 2022.

21.     On March 7, 2022, Cohen filed a Schedule 13D that disclosed his total beneficial ownership, acquired through RC Ventures, of a total of 9,450,100 shares of BBB's stock, including 7,780,000 shares of common stock, as well as 1,670,100 shares underlying call options, with strike prices ranging from $60 to $80 and an expiration date of January 2023, as follows:

| Nature of Transaction | Amount of Securities Purchased | Price per Share ($) | Date of Purchase |
|---|---|---|---|
| Purchase of Common Stock | 1,000,000 | 14.7690 | 01/13/2022 |
| Purchase of Common Stock | 500,000 | 15.2860 | 01/14/2022 |
| Purchase of Common Stock | 300,717 | 14.3930 | 01/20/2022 |
| Purchase of Common Stock | 99,283 | 13.0760 | 01/21/2022 |
| Purchase of Common Stock | 50,000 | 14.9100 | 01/25/2022 |
| Purchase of Common Stock | 200,000 | 15.0480 | 01/26/2022 |
| Purchase of Common Stock | 251,336 | 13.8440 | 01/27/2022 |
| Purchase of Common Stock | 440,981 | 14.4890 | 01/28/2022 |

---

[3] https://www.wsj.com/articles/bed-bath-beyond-stock-surge-recalls-meme-mania-11635954958.

| | | | |
|---|---|---|---|
| Purchase of Common Stock | 44,333 | 16.5810 | 01/31/2022 |
| Purchase of Common Stock | 609,941 | 16.4710 | 01/31/2022 |
| Purchase of Common Stock | 187,962 | 16.9760 | 02/01/2022 |
| Purchase of Common Stock | 156,574 | 17.1020 | 02/02/2022 |
| Purchase of Common Stock | 75,000 | 16.0790 | 02/04/2022 |
| Purchase of Common Stock | 83,873 | 16.2780 | 02/07/2022 |
| Purchase of Common Stock | 70,000 | 15.8230 | 02/14/2022 |
| Purchase of Common Stock | 30,000 | 16.2280 | 02/16/2022 |
| Purchase of Common Stock | 75,000 | 14.0310 | 02/22/2022 |
| Purchase of Common Stock | 367,833 | 15.2060 | 02/24/2022 |
| Purchase of Common Stock | 500,000 | 13.6600 | 02/24/2022 |
| Purchase of Common Stock | 500,000 | 14.5770 | 02/24/2022 |
| Purchase of Common Stock | 300,000 | 13.4260 | 02/24/2022 |
| Purchase of Common Stock | 542,621 | 16.2230 | 02/25/2022 |
| Purchase of Common Stock | 115,000 | 16.1140 | 02/25/2022 |
| Purchase of Common Stock | 500,000 | 16.6010 | 02/28/2022 |
| January 2023 Call Option ($60 Exercise Price) | 4,757 | 0.9324 | 02/28/2022 |
| January 2023 Call Option ($75 Exercise Price) | 243 | 0.7603 | 02/28/2022 |
| January 2023 Call Option ($60 Exercise Price) | 5,000 | 1.4693 | 03/01/2022 |
| January 2023 Call Option ($60 Exercise Price) | 1,500 | 1.4115 | 03/01/2022 |
| January 2023 Call Option ($75 Exercise Price) | 201 | 1.0803 | 03/01/2022 |
| January 2023 Call Option ($80 Exercise Price) | 5,000 | 0.7103 | 03/01/2022 |
| Purchase of Common Stock | 307,341 | 16.9429 | 03/01/2022 |
| Purchase of Common Stock | 311,660 | 16.7564 | 03/01/2022 |
| Purchase of Common Stock | 70,545 | 16.6800 | 03/01/2022 |
| Purchase of Common Stock | 69,516 | 17.2540 | 03/02/2022 |
| Purchase of Common Stock | 20,484 | 16.8090 | 03/03/2022 |

22.     Cohen's reported transactions show that he paid approximately $119.39 million between mid-January and March 3 to acquire the shares and call options, including $119.37 million for the common stock and $17,852.57 for the call options.

23.     As a result of the acquisitions, Cohen erroneously reported that he beneficially owned 9.8% of the total outstanding shares of BBB's stock, which the Schedule 13D Cohen stated was based on the Company's 96.3 million shares outstanding as of November 27, 2021, as reported in BBB's then most recent Form 10Q filed on January 6, 2022. However, by February 26, 2022, BBB had completed its stock repurchase program and any diligent market participant such as

Defendants knew that the 96.3 million shares outstanding number was stale and did not reflect the lower number of outstanding shares resulting from the buyback.

24.     On April 21, 2022, BBB filed its annual report on Form 10-K for the fiscal year ended February 26, 2022, disclosing that the number of shares outstanding for BBB common stock was about 79.8 million as of March 26, 2022, a decrease of more than 17 million shares from amount disclosed in BBB's previous quarterly report.

25.     The decrease in outstanding shares resulted in part from the completion of the Company's $1 billion share repurchase program, with the Company reporting that it had completed share repurchases of $950 million by February 26, 2022, and repurchasing approximately $40 million in March 2022.  Because of these repurchases, the Company's total outstanding shares decreased to approximately 81.98 million shares by February 26 and approximately slightly less than 80 million shares by March 26.

26.     Because of BBB's repurchases, by February 26, 2022, Cohen's disclosed beneficial ownership of the Company exceeded 10% of the Company's total number of outstanding shares.  By March 3, 2022 Cohen's total beneficial ownership stake had increased to 11.5%.  When the Company completed the rest of its repurchases by March 26, 2022 Cohen's ownership stake then increased to approximately 11.8%.  As Cohen's ownership stake exceeded 10%, he was required under Section 16(a) of the Exchange Act to file an Initial Statement of Beneficial Ownership of Securities on Form 3 disclosing his status as a 10% stockholder within 10 days after the buyback but in any event, under the best of circumstances by at least 10 days after BBB's April 21, 2022 public disclosure of 79.8 million outstanding shares.

27.     Cohen was aware of BBB's $1 billion share repurchase program, which he mentioned in his March 6 letter to the Company's board, and which had been covered widely in

the financial press for months. Cohen did not file a Form 3 disclosing his status as a 10% stockholder until August 15, 2022, more than five and one half months after he became a 10% beneficial owner.

28. When a sophisticated market participant such as Defendants, advised by highly experienced attorneys, fail to make very simple SEC filings to disclose their 10% ownership position as soon as required, the inference is that Defendants were likely to sell their position within six months of acquisition but wanted to obscure their position until it suited them to disclose it.

29. On March 6, 2022, Defendants sent a letter to the Board outlining concerns with the Company's leadership and a proposed turnaround strategy. The centerpiece of Defendant's strategy was an allocation to defendants of three board seats a proposal to spin-off or sell the Company's buybuy Baby banner.

30. On March 24, 2022, BBB and Cohen both filed public reports with the SEC announcing that they entered into the CA whereby BBB permitted Cohen to appoint three new members to the Board and also required the creation of a four-member "Strategy Committee" to oversee and review a strategic analysis of the Company's buybuy Baby banner.

31. Pursuant to the CA, immediately after its execution, BBB appointed three new directors selected by Defendants to its board: Marjorie L. Bowen, Shelly L. Lombard, and Benjamin Rosenweig (the "New Directors"). BBB agreed to nominate each of the New Directors for election at the 2022 Annual Meeting. BBB knew the identify and backgrounds of the New Directors. BBB also agreed that three of its current directors would not stand for reelection at the next annual meeting.

32.     The CA also gave Defendants the right to recommend a replacement director if any New Director was unable or unwilling to serve but only if Defendants maintained ownership of at least 4.04% of BBB's then outstanding common stock or 3,900,000 shares. Accordingly, it is reasonably inferable that the New Directors' primary mission was to protect Defendants' interest while such interest remained higher than 4.04% of the shares outstanding. The CA also provide for creation of a Strategy Committee of the Board "to support the Board's" oversight and review of a strategic analysis of the "buybuy Baby business" consisting of four directors, two of whom would be new directors. The disposition of the buybuy Baby business segment was Defendants' focus of their activist assault on BBB in February/March 2022.

33.     Acknowledging that the New Directors were placed on the BBB to primarily serve Defendants' interests rather than BBB's bests interests, BBB and Defendants agreed to "Standstill Provisions" designed to prevent the New Directors from exercising certain rights or engaging in certain actions on behalf of Defendants, such as proxy solicitations, for the life of the CA.

34.     In a March 25, 2022 press release, Defendants admitted that the results of the CA was that BBB "management and the Board" were "willing to promptly embrace our ideas and look forward to supporting them in the year ahead." Accordingly, it is reasonable to infer that the mission of the New Directors was to implement "our [*i.e.*, Defendants'] ideas."

35.     In June 2022, BBB CEO Mark Tritton ("Tritton") was relieved of his officer and director duties at BBB. Bloomberg reported that Defendants "pushed the board" to fire Tritton.[4]

36.     The foregoing facts establish that, or at least raise a compelling inference that the New Directors performed their director duties for Defendants after they were deputized to serve

---

[4] https://www.bloomberg.com/news/articles/2022-06-29/bed-bath-beyond-recovery-prospects-look-bleak-as-ryan-cohen-hangs-in?leadSource=uverify+wall.

as Defendants' representatives on BBB's board of directors and thus for Rule 16(b) purposes

Defendants are "directors."

37.     In a press release that BBB issued on March 25, Harriet Edelman, the independent

chair of the Board, stated: "We are pleased to have reached this constructive agreement with RC

Ventures, which we believe to be in the best interest of all our shareholders."  BBB CEO Tritton

was quoted as stating the following:

> Our Company and Board have always been committed to evaluating all options to
> maximize long term shareholder value, and we look forward to integrating our new
> directors' ideas to drive our continued transformation.  Our buybuy BABY business
> is a tremendous asset, and we are committed to unlocking its full value.  As we move
> forward, our goals will continue to focus on delivering value for our shareholders,
> enhancing experiences for our customers, executing on the transformation
> throughout our business, and creating new and exciting opportunities for our
> dedicated employees across all our banners.

38.     In the same press release, Cohen was quoted as stating the following:

> The resolution announced today represents a positive outcome for all of Bed Bath's
> shareholders.  By refreshing the Board with shareholder-designated individuals who
> possess capital markets acumen and transaction experience, the Company is well
> positioned to review alternatives for buybuy BABY.  I appreciate that management
> and the Board were willing to promptly embrace our ideas and look forward to
> supporting them in the year ahead.

39.     Over the next three trading days, the stock price increased by 23.21% on the news,

rising from $22.10 to $27.23 per share from March 24 to March 29, with an average daily trading

volume of about 12.39 million shares compared to a daily average of 4.6 million shares traded

over the previous two weeks.

### E.    Less Than Six Months After Becoming a 16(b) 10% Owner, Defendants Plan and Execute a Profitable Exit From their BBB Investment

40.     When the markets opened on Monday, August 15, 2022 BBB's stock continued to

rise, opening at $15 per share and rising by 23.55% to close at $16 per share, with a trading

volume of 164.66 million shares, more than double the number of shares traded on the previous

trading day.  By closing at $16 per share, the price of BBB's common stock reached a value just above the minimum price that Cohen needed to be able to profit by selling his holdings.

41.     On August 15, after the markets had closed, Cohen began the process of selling his holdings by filing an Initial Statement of Beneficial Ownership on Form 3, which disclosed that, through RC Ventures, Cohen owned more than 10% of BBB's outstanding shares of common stock and thus qualified as an affiliate under Section 16(a) and identified as his holdings the same 9,450,100 shares that he beneficially owned as of March 7, 2022, consisting of 7,780,000 shares of common stock and 1,670,100 shares underlying call options.

42.     On August 16, 2022, shortly before the markets opened, Cohen filed an amended Schedule 13D/A ("August 16 Schedule 13D/A"), amending the Schedule 13D that he originally filed in March 2022.  Like Cohen's Form 3 filed the previous day, Cohen's August 16 Schedule 13D/A did not disclose any new transactions.  Instead, Cohen stated that the amendment "was triggered solely due to a change in the number of outstanding Shares of the Issuer," reporting that he now owned 11.8% of BBBY's total outstanding stock.  In Item 5 of the amended filing, entitled "Interest in Securities of the Issuer," Cohen stated: "There have been no transactions in securities of the Issuer by the Reporting Persons during the past sixty days nor since the filing of Amendment No. 1 to the Schedule 13D."  By signing the filing, Cohen falsely certified that "[a]fter reasonable inquiry and to the best of [his] knowledge and belief…that the information set forth in this statement is true, complete and correct."

43.     Although Cohen's Form 3 and August 16 Schedule 13D/A showed that he beneficially owned the same amount of shares that he owned months earlier, reporting by some financial news outlets suggested that filing revealed Cohen had increased his stake in the company.  For example, *CNBC* reported that "GameStop Chairman Ryan Cohen placed another bet on the

struggling retailer," explaining that "[a] regulatory filing Monday evening showed that Cohen's venture capital firm RC Ventures bought distant out of the money call options on more than 1.6 million [BBB] shares with strike prices between $60 and $80 a share."[5]

44.      Following Cohen's filing of the August 16 Schedule 13D/A, BBB's stock price surged by more than 70% to an intraday high of $28.04 per share amid multiple halts due to volatility, closing 29% higher than the previous day at $20.65 per share.  That day, trading volume soared to more than 395 million shares compared to only about 80 million shares outstanding, more than double the 164 million shares traded the previous day.  The following day, *Bloomberg* published an article entitled, "Bed Bath & Beyond 402% Rally Is Supercharged by Retail Money," reporting that retail traders bought an all-time high of $73.2 million of the stock on August 16, 2022 bringing their total net purchases in three weeks to $171.4 million, according to data compiled by Vanda Research.[6]

45.      Unbeknownst to investors, however, Cohen sold 5 million shares of Bed Bath stock on August 16, 2022, representing 64% of his holdings, at prices between $18.06 and $26.45, for total proceeds of roughly $105.84 million, as follows:

| Nature of the Transaction | Securities Sold | Price per Security ($) | Date of Sale |
|---|---|---|---|
| Sale of Common Stock | 446,399 | 18.6848 | 08/16/2022 |
| Sale of Common Stock | 812,448 | 19.4817 | 08/16/2022 |
| Sale of Common Stock | 1,443,818 | 20.7834 | 08/16/2022 |
| Sale of Common Stock | 1,059,021 | 21.4209 | 08/16/2022 |
| Sale of Common Stock | 795,559 | 22.7093 | 08/16/2022 |
| Sale of Common Stock | 169,335 | 23.3293 | 08/16/2022 |

---

[5] https://www.cnbc.com/2022/08/16/bed-bath-beyond-soars-70percent-as-meme-traders-bet-on-ryan-cohen.html

[6] https://www.bloomberglaw.com/product/blaw/document/RGRZKZDWRGG5?criteria_id=ddc558747700b97b45d4271144932a51&searchGuid=bc3ad964-eb13-4aaf-ad4b-fb12bb48c3c8.

| | | | |
|---|---|---|---|
| Sale of Common Stock | 103,901 | 24.8685 | 08/16/2022 |
| Sale of Common Stock | 104,077 | 25.5918 | 08/16/2022 |
| Sale of Common Stock | 65,442 | 26.2713 | 08/16/2022 |

46.     On August 17, 2022, investors continued to buy millions of shares of BBB stock, unaware that Cohen had already sold nearly his entire holdings the day before.  That day, BBB's stock price opened at $26.93, rising to an intraday high of $30 before closing up by 11.77% at $23.08 per share, with trading volume of more than 261 million shares.  According to *Bloomberg,* retail investors continued to drive BBB's rally, reporting that BBB's stock was the most purchased asset on Fidelity on August 17, 2022, with buy orders that markedly outpaced those to sell and net purchases that were more than double the size for Tesla, Inc., the next most-bought stock.[7] *Bloomberg* continued: "That demand mirrors the optimism expressed on day trader chatroom StockTwits where Bed Bath & Beyond has the number one trending ticker and on Reddit's WallStreetBets where it continued to be the most discussed company."

47.     Throughout the day on August 17, 2022 however, and unbeknownst to investors, Cohen sold the rest of his holdings of BBB securities, selling his remaining 2.78 million shares at prices between $23.06 and $29.99, for a total amount of about $72.17 million, as follows:

| Nature of the Transaction | Securities Sold | Price per Security ($)[8] | Date of Sale |
|---|---|---|---|
| Sale of Common Stock | 189,689 | 23.7337 | 08/17/2022 |
| Sale of Common Stock | 512,185 | 24.6266 | 08/17/2022 |
| Sale of Common Stock | 896,238 | 25.4997 | 08/17/2022 |
| Sale of Common Stock | 610,828 | 26.4432 | 08/17/2022 |
| Sale of Common Stock | 323,483 | 27.5756 | 08/17/2022 |
| Sale of Common Stock | 140,788 | 28.5122 | 08/17/2022 |

---

[7] https://www.bloomberg.com/news/articles/2022-08-17/bed-bath-beyond-s-492-rally-is-supercharged-by-retail-traders.

[8] According to Cohen's later-filed amended Schedule 13D dated August 18, 2022, these prices represent a weighted average price of shares sold in multiple transactions at prices ranging from $23.06 to $29.99.

| | | | |
|---|---|---|---|
| Sale of Common Stock | 106,789 | 29.2192 | 08/17/2022 |

48.     That same day, Cohen also sold all his call options at prices from $6.4 to $8.9, for a total amount of $112,733.30.  Cohen's sales earned him a total profit of approximately $58.64 million, before taxes, compared to his purchases just five months earlier.[9]

**F.     Defendants Acted Deliberately to Maximize their Profits by Obscuring their Sales While BBB Shares Were Liquid Enough to Allow Defendants' "Dump" Without Depressing Prices**

49.     At approximately 3:45 PM on August 17, 2022, Cohen's Form 144 was released publicly.   In the Form 144, Cohen provided notice of his intent to sell up to all his shares and call options.  While the Form 144 was dated August 16, 2022, Cohen filed his submission via paper and not via EDGAR, the SEC's electronic filing system, which delayed the public release of the filing.  Bed Bath's stock price immediately dropped by more than 10% on the news, before closing at $23.08, representing a 11.8% increase from the previous trading day and a 300% increase from the price at the end of July 2022.

50.     Sixteen minutes after markets closed on August 18, 2022, Cohen filed another amended Schedule 13D, which finally disclosed that he had liquidated his entire position in Bed Bath securities, selling his remaining stock and call options on August 17, 2022.   Cohen's filing listed the following transactions:

| Nature of the Transaction | Securities Sold | Price per Security ($) | Date of Sale |
|---|---|---|---|
| Sale of Common Stock | 446,399 | 18.6848 | 08/16/2022 |
| Sale of Common Stock | 812,448 | 19.4817 | 08/16/2022 |
| Sale of Common Stock | 1,443,818 | 20.7834 | 08/16/2022 |
| Sale of Common Stock | 1,059,021 | 21.4209 | 08/16/2022 |
| Sale of Common Stock | 795,559 | 22.7093 | 08/16/2022 |
| Sale of Common Stock | 169,335 | 23.3293 | 08/16/2022 |

---

[9] This figure is based on the weighted average prices of shares bought and sold by Cohen from January to August 2022, as disclosed in his Schedule 13D filings.

| | | | |
|---|---|---|---|
| Sale of Common Stock | 103,901 | 24.8685 | 08/16/2022 |
| Sale of Common Stock | 104,077 | 25.5918 | 08/16/2022 |
| Sale of Common Stock | 65,442 | 26.2713 | 08/16/2022 |
| Sale of Common Stock | 189,689 | 23.7337 | 08/17/2022 |
| Sale of Common Stock | 512,185 | 24.6266 | 08/17/2022 |
| Sale of Common Stock | 896,238 | 25.4997 | 08/17/2022 |
| Sale of Common Stock | 610,828 | 26.4432 | 08/17/2022 |
| Sale of Common Stock | 323,483 | 27.5756 | 08/17/2022 |
| Sale of Common Stock | 140,788 | 28.5122 | 08/17/2022 |
| Sale of Common Stock | 106,789 | 29.2192 | 08/17/2022 |
| Sale of 01/23 Call Option ($60 Strike Price) | 7,475 | 6.5466 | 08/17/2022 |
| Sale of 01/23 Call Option ($60 Strike Price) | 3,782 | 8.6177 | 08/17/2022 |
| Sale of 01/23 Call Option ($75 Strike Price) | 444 | 5.6596 | 08/17/2022 |
| Sale of 01/23 Call Option ($80 Strike Price) | 3,826 | 5.3433 | 08/17/2022 |
| Sale of 01/23 Call Option ($80 Strike Price) | 1,174 | 7.0264 | 08/17/2022 |

51.     Soon thereafter, at around 4:42 PM, Cohen filed a Form 4 that disclosed the same transactions listed in his amended Schedule 13D.

52.     After the market learned about Cohen's sales, Bed Bath's stock price immediately collapsed, sliding by 46% in afterhours trading, and closing at $11.03 on August 19, 2022, representing a 40.54% drop from the previous day, with a trading volume of 136.5 million.

## COUNT I

### (Against All Defendants for Violations of Section 16(b) of the Exchange Act)

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     Section 16(b) of the Exchange Act provides in pertinent part:

For the purpose of preventing the unfair use of information which may have been obtained by … [a] beneficial owner [of 10% or more of any class of equity security], director or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer … within any period of less than six months … shall inure to and be recoverable by the issuer, irrespective of any intent on the part of such beneficial owner, director or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period not exceeding six months.

55.     SEC Rule 16a-1(a), 17 C.F.R. § 240.16a-1(a), deems a "beneficial owner" under Section 16 as any person who is deemed a beneficial owner under Section 13(d) and who has a "pecuniary interest" in the securities at issue.

56.     17 C.F.R. § 240.16a-1(a)(2)(i) defines pecuniary interest as "the opportunity, directly or indirectly, to profit or share in any profit derived from a transaction in the subject securities."

57.     By virtue of Defendants' role as owner of greater than 10% of BBB stock with a pecuniary interest for Section 16(b) purposes both before their purchase of BBB stock and at the time of sale, and as "directors" they are required to disgorge any short swing profits to BBB.

58.     All of the Defendants as a "group" purchased and sold securities of the issuer within a six-month period ending on August 16, 2022.

59.     All of Defendants sales on August 16 and 17, 2022 are eligible to be matched with purchases after February 26, 2022 because Defendants were still a "director" for 16(b) purposes on August 16 and 17, 2022, and Defendants sales were part of a single transaction or plan.

60.     Defendants' sales in August 2022 took place only days before several material adverse events occurred at BBB which were not made public when Defendants sold their shares and which Defendants could only have known from the New Directors.  Such information included BBB's preparation for a dilutive "at-the-market" offering of 12 million shares or 15% of BBB's outstanding shares; the fact that BBB suppliers had restricted or halted shipments because of BBB's failure to make payments and that BBB's credit insurance had been revoked; and that BBB had decided not to sell or spinoff buybuy Baby.  None of the foregoing became public knowledge before August 19, 2022.  Thus, the timing of Defendants' sales appears to have been the product

of a plan to sell all of their holdings before the imminent release of material adverse nonpublic information on or after August 18, 2022.

61. Defendants' filing of a Form 144 for sale of all of their BBB securities further establishes that all of the August 16 and 17th sales were sold as part of single plan to bring Defendants' ownership of their BBB holdings down to zero all at once. A Form 144 is required to be filed by an "affiliate" of an issuer (a director such as are defendants are typically considered an "affiliate."). If sales are by an "affiliate" then a Form 144 needs to be filed even for freely tradeable securities.

62. Form 144 is a "Notice of Proposed Sale of Securities" it must be filed if there is a bona fide intention to sell the securities referred to in the form within a reasonable time after filing of the form. Accordingly, Defendants filing of one Form 144 for all of their BBB securities indicates that Defendants' entire position was sold as part of a single plan.

63. Defendants' Form 4s describing the sale and price of Defendants BBB securities also further establish their plan to dispose of all of their BBB securities at once. The Form 4s contain average weighted prices of the shares rather than single pinpoint prices for each share/block. Thus, it is apparent that Defendants entered sell orders at market for their entire position at one time and the sales were executed at market or the sales were intentionally disaggregated to allow Defendants to avoid "spooking" the market and slamming BBB's stock price during the time Defendants were selling.

64. All of the Defendants earned profits from the sale of the issuer securities which were purchased within the meaning of the statute within six months of their sale.

65.     The transactions described herein constitute short swing trading by Defendants and the retention of profits from such trades is in violation of Section 16(b) and rules of the SEC promulgated thereunder.

66.     Under Section 16(b), profits earned by Defendants from these short swing trades must be disgorged to the Company.  The profits to be disgorged are subject to calculation when Defendants' trading records are produced and may be more than $50 million.

67.     Plaintiff has made due demand upon the Board to require Defendants to return such profits to the Company.

68.     Plaintiff's demand has been rejected and more than 60 days has passed since the demand has been made.

69.     There are no exemptions applicable to the short swing transactions which are the subject of this lawsuit.

70.     The Company has suffered loss and damage as a result of the transactions described herein and is owed disgorgement of short swing profits by Defendants herein jointly and severally.

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A.      For an order declaring that the transactions described herein constitute short swing trading under applicable laws and rules;

B.      For judgment against Defendants in favor of the nominal defendant in the amount of any short swing profits;

C.      Awarding Plaintiff her reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands trial by jury.

Dated: February 13, 2023

**SQUITIERI & FEARON, LLP**

By: s/ *Lee Squitieri*
      Lee Squitieri
305 Broadway, 7th Floor
New York, New York 10007
lee@sfclasslaw.com
(212) 421-5492

James S. Notis
**GARDY & NOTIS, LLP**
126 East 56th Street, 8th Floor
New York, New York 10022
jnotis@gardylaw.com
(212) 905-0509

*Counsel for Plaintiff*