**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | Case No. 1:22-cv-09327-PGG |

## RC VENTURES LLC AND RYAN COHEN'S MEMORANDUM OF LAW
## IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS THE COMPLAINTS

VINSON & ELKINS LLP

Clifford Thau
Marisa Antonelli
1114 Avenue of Americas
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantonelli@velaw.com

*Counsel for Defendants RC Ventures LLC and Ryan Cohen*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

I.  BACKGROUND ................................................................................................... 4

    A.  The Parties. ................................................................................................. 4

    B.  RCV Purchases BBBY Securities Between January and March 2022. .................. 4

    C.  RCV Enters Into a Cooperation Agreement with BBBY in March 2022. ............... 5

    D.  In April 2022, BBBY Discloses a Reduced Share Count Due to Share
        Repurchases. ................................................................................................. 6

    E.  RCV Sells Its BBBY Securities in August 2022. ................................................. 8

    F.  The BBBY Board Rejects Plaintiffs' Demands. ................................................. 8

    G.  Procedural History. ...................................................................................... 9

II.  LEGAL STANDARDS ......................................................................................... 9

    A.  Rule 12(b)(6). .............................................................................................. 9

    B.  Section 16(b). .............................................................................................. 10

III.  ARGUMENT ...................................................................................................... 10

    A.  The Complaints Fail to State a Section 16(b) Claim for Short-Swing
        Profits Against the Cohen Defendants as "Beneficial Owners." ........................ 11

        1.  To Be a "Beneficial Owner," a Defendant Must Have Actual or
            Constructive Knowledge that It Holds More than Ten Percent of a
            Company's Outstanding Shares. ................................................................ 12

        2.  The Complaints Do Not Allege that the Cohen Defendants
            Knew—or Should Have Known—that RCV Held More Than Ten
            Percent of BBBY's Shares When It Made Its Last Share Purchases. ......... 14

    B.  The Complaints Fail to State a Section 16(b) Claim for Short-Swing
        Profits Against the Cohen Defendants as Directors. ......................................... 17

        1.  RCV Did Not Deputize Directors via the Cooperation Agreement. .......... 17

2.     Even If RCV Deputized Directors, Then It Still Would Not Be Liable for Short-Swing Profits Under Section 16(b). ...............................20

a.     Under SEC Rules, Directors Are Exempt from Section 16(b) Liability for Transactions Before They Became Directors..................................................................................20

b.     All of RCV's BBBY Purchases Predate the Cooperation Agreement. ...................................................................21

c.     RCV Can Rely on the D/O Exemption. .........................................21

i.     *Adler* Does Not Foreclose the D/O Exemption.................21

ii.     The Exemption Is Entitled to *Chevron* Deference.............22

CONCLUSION....................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Klawans,*
   267 F.2d 840 (2d Cir. 1959) ........................................................................ 21, 22

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................................. 9

*Avalon Holdings Corp. v. Gentile,*
   No. 18 Civ. 7291, 2019 WL 4640206 (S.D.N.Y. Sept. 24, 2019) ............................ 10, 11

*Blau v. Lehman,*
   368 U.S. 403 (1962) ......................................................................................... 17

*Bruh v. Bessemer Venture Partners III L.P.,*
   464 F.3d 202 (2d Cir. 2006) .............................................................................. 23

*C.R.A. Realty Corp. v. Enron Corp.,*
   842 F. Supp. 88 (S.D.N.Y. 1994) ................................................................. 13, 17

*Calenture, LLC v. Pulte,*
   No. 21 Civ. 402, 2022 WL 912947 (S.D.N.Y. Mar. 29, 2022) ........................... 18

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency,*
   846 F.3d 492 (2d Cir. 2017) .............................................................................. 23

*Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,*
   467 U.S. 837 (1984) .................................................................................... 22, 23

*Cohen v. Cohen, et al.,*
   No. 22 Civ. 9733, ECF No. 28 (S.D.N.Y. 2022) .................................................. 1

*Foremost-McKesson, Inc. v. Provident Sec. Co.,*
   423 U.S. 232 (1976) .................................................................................... 11, 24

*Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC,*
   298 F.3d 136 (2d Cir. 2002) ........................................................................ 20, 21

*Gryl v. Shire Pharms. Grp. PLC,*
   No. 00 Civ 9173, 2001 WL 1006628 (S.D.N.Y. Aug. 31, 2001) ........................ 20

*Hassoun v. Searls,*
   968 F.3d 190 (2d Cir. 2020) .............................................................................. 22

*Hu v. City of New York,*
   927 F.3d 81 (2d Cir. 2019) .................................................................................. 4

*Huppe v. WPCS International Inc.,*
   670 F.3d 214 (2d Cir. 2012) .............................................................................. 23

*In Re Bed Bath & Beyond Section 16(b) Litigation,*
   No. 22 Civ. 9327 (S.D.N.Y. Oct. 31, 2022), ECF No. 1 .................................... 1

*In re Facebook, Inc., IPO Sec. & Derivative Litig.,*
   986 F. Supp. 2d 544 (S.D.N.Y. 2014) ................................................................. 3

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011).......................................................... 10

*Levy v. Southbrook Int'l Invs., Ltd.*,
    263 F.3d 10 (2d Cir. 2001)............................................................ 12

*Lipow v. Net1 UEPS Techs., Inc.*,
    131 F. Supp. 3d 144 (S.D.N.Y. 2015).......................................... 16

*Lowinger v. Morgan Stanley & Co. LLC*,
    841 F.3d 122 (2d Cir. 2016)......................................................... 12

*Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005).................................................................... 22

*Olagues v. Perceptive Advisors LLC*,
    902 F.3d 121 (2d Cir. 2018)......................................................... 10

*Packer v. Raging Cap. Mgmt., LLC*,
    981 F.3d 148 (2d Cir. 2020)......................................................... 17

*Reliance Elec. Co. v. Emerson Elec. Co.*,
    404 U.S. 418 (1972)............................................................. 14, 17

*Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*,
    522 F.3d 242 (2d Cir. 2008)................................................... 23, 24

*Rubenstein v. Int'l Value Advisers, LLC*,
    959 F.3d 541 (2d Cir. 2020)......................................................... 17

*Rubenstein v. Very Hungry, LLC*,
    No. 14 Civ. 888, 2015 WL 1509761 (D. Colo. Mar. 30, 2015)......... 18

*Rubenstein v. vTv Therapeutics, Inc.*, No. 15 Civ. 9752,
    2017 WL 1194688 (S.D.N.Y. Mar. 30, 2017) ............................... 17

*Sec. & Exch. Comm'n v. Nutra Pharma Corp.*,
    No. 18 Civ. 5459, 2022 WL 3912561 (E.D.N.Y. Aug. 31, 2022) ............... 5, 12

*St. Clair-Hibbard v. Am. Fin. Tr., Inc.*,
    812 F. App'x 36 (2d Cir. 2020) ...................................................... 4

*Stratte-McClure v. Morgan Stanley*,
    598 F. App'x 25 (2d Cir. 2015) .................................................... 16

*White v. UMG Recordings, Inc.*,
    No. 20 Civ. 9971, 2021 WL 6052106 (S.D.N.Y. Dec. 21, 2021).................... 10

**Statutes**

15 U.S.C. § 78p(a)(1), (b) ............................................................... 10

15 U.S.C. § 78p(b) ................................................................... 10, 22

**Rules**

17 C.F.R. § 240.13d-1(j) .................................................... 8, 12, 13, 14

17 C.F.R. § 240.16a–1(a)(1) ............................................................................ 11, 12

17 C.F.R. § 240.16a–2(a)................................................................................ 20, 21

Fed. R. Civ. P. 12(b)(6)....................................................................................... 9

**Other Authorities**

Related Rules and Forms, Interp. 209.02 (May 23, 2007)...................................... 13

Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv)
    (5th ed. 2019) .............................................................................. 8, 13, 15, 18

SEC Division of Corporation Finance, Compliance and Disclosure Interpretations,
    Exchange Act Section 16.................................................................................. 13

SEC, Securities Exchange Act,
    Release No. 34-27148, 44 SEC Docket 526, § III.A.2. (Sept. 6, 1989) ........................... 23

Defendants RC Ventures LLC ("*RCV*") and Ryan Cohen (collectively, the "*Cohen Defendants*") submit this memorandum of law in support of their omnibus motion to dismiss the complaints of Todd Augenbaum and Judith Cohen (collectively, "*Plaintiffs*") filed in this consolidated action.  *See* Compl., *In Re Bed Bath & Beyond Section 16(b) Litigation*, No. 22 Civ. 9327 (S.D.N.Y. Oct. 31, 2022), ECF No. 1 (the "*Augenbaum Complaint*" or "*Augen. Compl.*"); Am. Compl., *Cohen v. Cohen, et al.*, No. 22 Civ. 9733, ECF No. 28 (S.D.N.Y. 2022) (the "*Cohen Amended Complaint*" or "*Cohen Am. Compl.,*" and collectively with the Augenbaum Complaint, the "*Complaints*").

## INTRODUCTION

Section 16(b) is a strict liability statute that requires directors, officers, and more than 10% holders (termed "*beneficial owners*") of public companies to disgorge deemed profits made from certain purchases and sales that occur within the same six-month period.  For liability to attach, beneficial owners and (with one exception not applicable here) officers and directors, must be subject to the statute—i.e. hold more than 10% of outstanding shares or serve as a director or officer—at the time they purchase the company's shares.  Defendants here, Ryan Cohen and RCV, are not subject to Section 16(b) for the straightforward reason that they were not beneficial owners, directors, or officers at the time of the purchases at issue.  For that reason, these cases should be dismissed.

In their attempt to create Section 16(b) liability where none exists, Plaintiffs ask the Court to ignore longstanding, bright-line rules established by the Securities and Exchange Commission ("*SEC*") and the courts to give shareholders, directors, and officers clear guidance with respect to this statute.  Specifically, Plaintiffs allege that the Cohen Defendants should be deemed beneficial owners of Bed Bath & Beyond Inc. ("*BBBY*") because certain (then-undisclosed) stock buybacks decreased the number of BBBY shares outstanding and, unbeknownst to the Cohen Defendants,

pushed RCV above the 10% ownership threshold by the time of RCV's final BBBY purchases.[1] Plaintiffs' legal theory is in direct conflict with SEC regulations, which make clear that whether a shareholder is a beneficial owner at the time of purchase is determined by the number of outstanding shares reported in the issuer's then-current public disclosures.  Here, based on BBBY's disclosures at the time RCV last purchased BBBY shares, RCV held less than 10% of outstanding shares and therefore was not a beneficial owner.  It was not until nearly ***50 days later*** that BBBY disclosed the lower share count on which Plaintiffs now rely.  Under these circumstances, the Cohen Defendants were not beneficial owners under Section 16(b) at the time of RCV's BBBY purchases.

While SEC regulations alter this result when a shareholder has actual or constructive knowledge of a share count not yet reported in company filings, Plaintiffs plead no facts showing that the Cohen Defendants had access to such information and knew or should have known that RCV held more than 10% of BBBY's shares at the time of its last purchases.  RCV entered into an agreement with BBBY ***three weeks after*** its last BBBY purchase which recited that RCV owned only 9.8% of BBBY shares.  Plaintiffs' sole basis for alleging constructive knowledge on the part of the Cohen Defendants is that BBBY had previously announced plans to repurchase shares.  But, as the leading Section 16(b) treatise makes clear, such an announcement is insufficient to put an investor on notice that it owns more than 10% of a company's shares.  This is particularly true where—as here—BBBY disclosed that its repurchase plans were subject to change, never disclosed the precise number of shares to be repurchased, and did not even complete its repurchase on the announced timeline.  Plaintiffs' proposed basis for Section 16(b) liability would force

---

[1] Only RCV owned BBBY securities; however, the Cohen Amended Complaint alleges that Mr. Cohen is jointly and severally liable with RCV as a beneficial owner under Section 16(b).  *See* Cohen Am. Compl. ¶ 57.

investors to guess whether they are subject to this strict liability statute, which runs contrary to the text and purpose of Section 16(b).

Similarly deficient are Plaintiffs' claims that RCV was itself a director of BBBY at the time of its purchases (or at any point) by virtue of its appointment of three ***independent*** directors to the BBBY board. To adequately allege Section 16(b) liability based on this "director by deputization theory," Plaintiffs must allege facts showing that RCV "actually functioned as a director" of BBBY because its appointed directors were performing their duties for RCV's benefit. But beyond the bare fact of the director appointments, Plaintiffs allege no facts to support their deputization theory. The agreement between RCV and BBBY appointing the directors makes clear that they were independent and were prohibited from sharing confidential information with RCV. Moreover, the director appointments occurred three weeks ***after*** RCV made its final BBBY purchases. Accordingly, even if Plaintiffs had adequately alleged that RCV was a "director by deputization" (they have not), RCV was not a director at the time of its BBBY purchases and therefore not subject to Section 16(b) liability under governing SEC regulations. Plaintiff Augenbaum's attempts to argue that these 30-year old regulations are an invalid exercise of the SEC's rulemaking authority fail as well.

Ultimately, Plaintiffs' allegations find no support in the case law or in the well-established regulations relied upon by investors in determining the confines of Section 16(b). The Court should reject Plaintiffs' novel efforts to expand radically the reach of this strict liability statute, which this Court has ruled "must be confined within narrowly drawn limits," and dismiss the Complaints with prejudice. *See In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 551 (S.D.N.Y. 2014).

## I.     BACKGROUND

The following background is drawn from the Complaints and assumed true only for this motion.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).  Background is also taken from "documents attached to or incorporated by reference in the complaint, legally required public disclosure documents filed with the SEC, and documents on which the plaintiff relied in bringing suit."  *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 812 F. App'x 36, 38 (2d Cir. 2020) (summary order) (citation omitted).

### A.     The Parties.

Plaintiffs are both purported shareholders of defendant BBBY and seek to recoup short-swing profits from the Cohen Defendants on BBBY's behalf.  *See* Augen. Compl. ¶¶ 1-2; Cohen Am. Compl. ¶¶ 1, 6.  Defendant BBBY is a New York corporation, headquartered in New Jersey, which "sell[s] merchandise in the home, baby, beauty, & wellness markets."  Augen. Compl. ¶¶ 4, 6.  Defendant RCV is a Delaware limited liability company that is headquartered in Florida.  *Id.* ¶ 3.  RCV's principal business is to hold Defendant Ryan Cohen's investments; Mr. Cohen also serves as RCV's manager.  *Id.*

### B.     RCV Purchases BBBY Securities Between January and March 2022.

On March 7, 2022, RCV filed a Schedule 13D with the SEC, disclosing beneficial ownership of 9,450,100 shares of BBBY—consisting of 7,780,000 shares and 1,670,100 shares underlying certain call options.  *See Bed Bath & Beyond Inc.*, Beneficial Ownership Rep. (Sched. 13D) (March 7, 2022) (the "*March 7 13D*"), attached as Exh. 1 to the Declaration of Clifford Thau in Support of Defendants' Omnibus Motion to Dismiss ("*Thau Decl.*").[2]  The March 7 13D

---

[2] "Section 13(d)(1) and Rule 13d-1(a) obligate a stock purchaser who acquires beneficial ownership of 5% or more of a company's securities to disclose his ownership to the SEC by filing

discloses that RCV had purchased these securities between January 13, 2022 and March 3, 2022. *See id.* at Sched. A.  The Complaints do not allege that RCV purchased—and in fact RCV did not purchase—another share or security of BBBY after March 3, 2022.  *See id.*; Augen. Compl. ¶ 9; Cohen Am. Compl. ¶ 20.

RCV's March 7 13D further states that its 9,450,100 shares amounted to ownership of 9.8% of BBBY's then-outstanding shares—calculated based on BBBY's most recent share count disclosure.  *See* Thau Decl. Exh. 1 at Item 5(a) (ownership interest calculated "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission on January 6, 2022").  The March 7 13D also includes a letter the Cohen Defendants had sent to BBBY's board of directors (the "***Board***").  *See id.* at Exh. 99.1.  The letter calls for BBBY to enact certain changes to improve shareholder value, including spinning-off BBBY's buybuy BABY business.  *Id.*

### C.    RCV Enters Into a Cooperation Agreement with BBBY in March 2022.

On March 24, 2022, three weeks after RCV's last BBBY purchase, BBBY and RCV entered into a cooperation agreement.  *See* Bed Bath & Beyond Inc., Current Rep., Exh. 10.1 (Form 8-K) (March 25, 2022) (the "***Cooperation Agreement***"), attached as Thau Decl. Exh. 2.  In the Cooperation Agreement, BBBY and RCV reiterated that RCV owned 9.8% of BBBY's outstanding shares.  *See id.* at Recital 2 ("WHEREAS, as of the date hereof, RC Ventures beneficially owns . . . 9,450,100 shares, or approximately 9.8% of the Common Stock issued and outstanding on the date hereof. . . .").

---

a Schedule 13D."  *Sec. & Exch. Comm'n v. Nutra Pharma Corp.*, No. 18 Civ. 5459, 2022 WL 3912561, at *13 (E.D.N.Y. Aug. 31, 2022) (citations omitted).

Under the Cooperation Agreement, BBBY agreed to increase the Board from eleven to fourteen directors. *Id.* § 1(a)(i)(A). BBBY agreed to add three independent directors to the Board—Marjorie L. Bowen, Shelly C. Lombard, and Benjamin Rosenzweig (the "***New Directors***")—until BBBY's 2022 annual shareholder meeting, at which time BBBY would revert to an eleven-member Board, and BBBY would support the New Directors' re-election. *Id.* § 1(a)(i)(B).[3] Two New Directors would also serve on a four-member strategy committee of independent directors to review strategic alternatives for the buybuy BABY business. *Id.* § 1(b)(i). In exchange, RCV agreed to "standstill restrictions" for a designated period. *Id.* § 2(a). During the standstill, RCV agreed to vote its shares in favor of the Board's nominated directors and in favor of the Board's recommendations—unless Institutional Shareholder Services Inc. and Glass Lewis & Co., LLC recommended against any Board proposals (other than the election of directors), provided that RCV was permitted to vote in its sole discretion with respect to any extraordinary transactions. *Id.* § 1(e)(iii).

The Cooperation Agreement did not grant RCV any information rights or permit the New Directors to share confidential information with RCV. Rather, the Cooperation Agreement required the New Directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board." *Id.* § 1(d).

### D.   In April 2022, BBBY Discloses a Reduced Share Count Due to Share Repurchases.

In November 2021 and January 2022, BBBY disclosed that it was "accelerat[ing]" its previously announced $1 billion three-year share repurchase program—anticipating completing

---

[3] If a New Director resigned or was removed during the standstill period, then RCV also received the right to appoint a replacement, subject to the Board's approval and certain other conditions. *See* Thau Decl. Exh. 2 § 1(a)(ii).

the program "by the end of fiscal 2021, two years ahead of schedule."  Bed Bath & Beyond Inc.,
Current Rep., Exh. 99.3 (Form 8-K) (Nov. 2, 2021), attached as Thau Decl. Exh. 3; *see* Augen.
Compl. ¶¶ 7-8; Cohen Am. Compl. ¶ 18.  BBBY's 2021 fiscal year ended on February 26, 2022.
*See* Bed Bath & Beyond Inc., Annual Rep., 1 (Form 10-K) (Apr. 21, 2022), attached as Thau Decl.
Exh. 4.  BBBY disclosed that it "expect[ed] to repurchase the remaining $400 million of the
program by the end of fiscal 2021, specifically over the third and fourth quarters."  Augen. Compl.
¶ 7.  And BBBY told investors that it estimated that it would repurchase $275 million in shares in
the fourth quarter of 2021.  *Id.* ¶ 8.

BBBY also disclosed that these contemplated buybacks were subject to "a variety of
factors, including price, general business and market conditions, and alternative investment
opportunities."  Thau Decl. Exh. 3 at Exh. 99.3*; see also* Thau Decl. Exh. 4 at 34 ("The Company's
share repurchase program could change, and could be influenced by several factors, including
business and market conditions, such as the impact of the COVID-19 pandemic.  Any future share
repurchases will be subject to the determination of the Board of Directors, based on an evaluation
of the Company's earnings, financial condition and requirements, business conditions and other
factors, including the restrictions on share repurchases under the ABL Facility. . . .").  These
disclosures proved appropriate, because BBBY did ***not*** end up completing its $1 billion share
repurchase program on schedule.  *See* Bed Bath & Beyond Inc., Press Release (Form 8-K) at Exh.
99.1 (Apr. 13, 2022), attached as Thau Decl. Exh. 5 (noting that the repurchase program was
completed in March 2022).

On April 21, 2022 (nearly fifty days after RCV's last purchase of BBBY securities), BBBY
disclosed that, because of the repurchases, the number of shares outstanding had decreased to
81,979,000 as of February 26, 2022 and 79,845,789 as of March 26, 2022.  *See* Augen. Compl. ¶

12; Thau Decl. Exh. 4 at 2, 71.  The subsequent disclosure of this reduced share count indicated that RCV had held 11.5% of BBBY's shares following its last purchase, and 11.8% of BBBY's shares by March 26, 2022.  *See* Cohen Am. Compl. ¶ 26.

  **E. RCV Sells Its BBBY Securities in August 2022.**

  On August 16 and August 17, 2022, RCV sold all the BBBY shares and options it had purchased between January and March 2022 at a profit.  *See* Bed Bath & Beyond Inc., Am. Beneficial Ownership Rep. (Sched. 13D/A) (Aug. 18, 2022), attached as Thau Decl. Exh. 6.

  **F. The BBBY Board Rejects Plaintiffs' Demands.**

  On August 2, 2022 and September 9, 2022 respectively, Plaintiffs Augenbaum and Cohen made litigation demands on BBBY's Board.  Augen. Compl. ¶ 32; Cohen Am. Compl. Exh. A. BBBY rejected both demands.  Aug. Compl. ¶ 33; Thau Decl. Exh. 7, Cohen Am. Compl. Exh. B. Addressing Plaintiffs' demands, the Board reasoned that because "RC Ventures did not become a beneficial owner . . . for the purposes of Section 16(b) until after making the purchase identified," and because RCV was permitted to rely on the number of shares outstanding as "set forth in the issuer's most recent quarterly or annual report," RCV could not be held liable as a 10% beneficial owner.  Thau Decl. Exh. 7 at 2; Cohen Am. Compl. Exh. B at 3 (both citing 17 C.F.R. § 240.13d-1(j)).  BBBY also rejected Plaintiffs' "director by deputization" theory, citing the fact that all of the New Directors were appointed *after* RCV had completed its purchases.  *See* Thau Decl. Exh. 7 at 2-3; Cohen Am. Compl. Exh. B at 3.

  In its response to Plaintiff Augenbaum's letter, the BBBY Board further observed that "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold."  Thau Decl. Exh. 7 at 2 (quoting *Romeo & Dye* § 2.03(3)(j)(iv) n.77).  The Board further observed that the "heavy burden" imposed by the

Supreme Court on those seeking to establish deputization "is not met because RC Ventures' nominees to the Company's Board of Directors are independent of RC Ventures, and each possesses substantial prior experience serving as a director of other public companies." Thau Decl. Exh. 7 at 2.

### G. Procedural History.

Plaintiff Augenbaum filed his Complaint on October 31, 2022 naming RCV and BBBY as Defendants. *See* Augen. Compl. Plaintiff Cohen filed her Complaint on November 15, 2022, naming RCV and Ryan Cohen as Defendants, and BBBY as a nominal defendant. *See* Cohen Compl. On December 12, 2022, the Court consolidated the Augenbaum and Cohen actions. *See* ECF No. 20. On January 26, 2023, the Court denied Plaintiffs' respective motions to appoint a lead plaintiff and counsel. *See* ECF No. 27. On February 13, 2023, Plaintiff Cohen filed her Amended Complaint. *See* Cohen Am. Compl. The next day, the Court granted the Cohen Defendants' request for leave to file an omnibus motion to dismiss both complaints, so that briefing could proceed in a consolidated manner. ECF No. 34. Accordingly, the Cohen Defendants file this omnibus motion to dismiss both Complaints.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6).

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). To be plausible, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although courts must draw all reasonable inferences in the plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not bound to accept conclusory allegations or legal

conclusions masquerading as factual conclusions." *White v. UMG Recordings, Inc.*, No. 20 Civ. 9971, 2021 WL 6052106, at *2 (S.D.N.Y. Dec. 21, 2021) (quotations omitted).

### B.    Section 16(b).

Section 16(b) is an "insider trading statute" that requires certain individuals defined as "insiders" to "disgorge short-swing profits obtained by trading in the securities of the corporation." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018).  Liability "requires (1) a purchase and (2) a sale of securities (3) by a statutory insider (4) within a six-month period." *Avalon Holdings Corp. v. Gentile*, No. 18 Civ. 7291, 2019 WL 4640206, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotations omitted).  In addition to directors and officers, one such statutory insider is a "beneficial owner"—i.e., one "who owns more than 10 percent of the corporation's equity securities. . . ."  *Olagues*, 902 F.3d at 125 (citing 15 U.S.C. § 78p(a)(1), (b)).  Because Section 16(b) is a "strict liability" statute, courts are "reluctant to exceed a literal, 'mechanical' application of the statutory text in determining who may be subject to liability." *Id.* at 126.  The "strict liability remedy should be employed cautiously to avoid unfair application."  *Id.*; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.,*  986 F. Supp. 2d at 551 (Section 16(b) is "a blunt instrument" and "must be confined within narrowly drawn limits") (quotations omitted).[4]

### III.   ARGUMENT

Both Complaints allege that RCV and (according to the Cohen Amended Complaint) Ryan Cohen are liable under Section 16(b) as "beneficial owners" and directors.  *See* Augen. Compl. ¶ 1; Cohen Am. Compl. ¶ 1.  For the reasons below, the Complaints fail to plead adequately that

---

[4] This comports with the general principle that strict liability statutes should be interpreted narrowly and against liability.  *See, e.g., In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (statutes that "give rise to liability more readily" apply "more narrowly") (quotations omitted).

the Cohen Defendants were "statutory insiders" at the time of both the purchases and sales at issue in this case—and therefore do not state a claim under either theory. *Avalon Holdings*, 2019 WL 4640206, at *6.

A.   **The Complaints Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as "Beneficial Owners."**

Under Section 16(b), a defendant is liable for short-swing profits only if the defendant was a beneficial owner ***both*** when they purchased and sold the relevant securities. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale. . ."); *see also Foremost-McKesson, Inc. v. Provident Sec. Co.*, 423 U.S. 232, 249–50 (1976) ("We hold that, in a purchase–sale sequence, a beneficial owner must account for profits only if he was a beneficial owner before the purchase.") (internal quotations omitted).

The Complaints fail to state a Section 16(b) claim against the Cohen Defendants as beneficial owners, because they do not adequately allege that RCV was a beneficial owner when it ***purchased*** BBBY securities.[5]   To qualify as a beneficial owner within the meaning of the statute, a shareholder must have had actual or constructive knowledge that it owns 10% or more of the issuer's securities.   Plaintiffs fail to plead facts showing either actual or constructive knowledge on the part of the Cohen Defendants that RCV owned more than 10% of BBBY's shares at the time of its purchases.   Accordingly, the bare circumstance that BBBY's undisclosed share

---

[5] The Cohen Amended Complaint alleges that Mr. Cohen is jointly and severally liable with RCV as a beneficial owner because he had "power to vote and dispose of the Shares reported owned by RC Ventures." *See* Cohen Am. Compl. ¶ 57; Thau Decl. Exh. 1 at Item 5(b).   Because Plaintiffs do not state a claim against RCV as a beneficial owner, Plaintiff Cohen's claim against Ryan Cohen as a beneficial owner must also be dismissed.

repurchases brought RCV above the 10% threshold prior to RCV's last purchases does not make the Cohen Defendants beneficial owners subject to Section 16(b).

> **1.    To Be a "Beneficial Owner," a Defendant Must Have Actual or Constructive Knowledge that It Holds More than Ten Percent of a Company's Outstanding Shares.**

"Section 16(b) does not define the term 'more than 10% beneficial owner'. . ."  *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001).  Instead, whether one qualifies as a beneficial owner under Section 16(b) is determined using the same definition of beneficial ownership as Section 13(d).  *See Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 130 (2d Cir. 2016) (citations omitted); *see also* 17 C.F.R. § 240.16a–1(a)(1) ("[T]he term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder. . . .").

The regulations implementing Section 13(d) contain a "safe harbor" provision regarding the calculation of share counts in determining beneficial ownership; it states:

> For the purpose of sections 13(d) and 13(g), any person, in determining the amount of outstanding securities of a class of equity securities, ***may rely upon information set forth in the issuer's most recent quarterly or annual report***, and any current report subsequent thereto, filed with the Commission pursuant to this Act, ***unless he knows or has reason to believe that the information contained therein is inaccurate***.

17 C.F.R. § 240.13d-1(j) (emphasis added) (the "***Share Count Rule***").  Although this provision is contained in the regulations governing "Filing of Schedules 13D and 13G," the Share Count Rule applies across all aspects of Section 13(d)—including the definition of beneficial ownership.  *See* 17 C.F.R. § 240.13d-1(j) ("For the purpose of sections 13(d) and 13(g). . . ."); *see also Nutra Pharma*, 2022 WL 3912561, at *13 ("The number of outstanding shares found in the company's most recent quarterly, annual, or current reports filed with the SEC is used to calculate whether [Section 13(d)'s]  1% or 5% thresholds have been reached.") (citing 17 C.F.R. § 240.13d-1(j)).

Accordingly, the Share Count Rule also governs how to determine the percentage of shares beneficially owned under Section 16(b). *See* 17 C.F.R. § 240.16a–1(a)(1) ("[T]he term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder. . . .").[6]

Consequently, even if an investor holds greater than 10% of a company's shares, it does not constitute a beneficial owner subject to Section 16(b) disgorgement, if it (1) owns less than 10% of the number of outstanding shares disclosed in the company's most recent SEC filing; and (2) could not have known (based on public filings) that it holds more than 10% of outstanding shares. *See C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994) ("Although the newly available information indeed reveals that Goldman held ten percent of Enron's convertible preferred stock on December 31, 1991, Goldman's ownership on that date does not subject it to disgorgement of short-swing profits because Goldman had no way of knowing of its ten percent status at that time. . .").

Put differently, an investor who "is not a ten percent owner based on" the issuer's most recent SEC filing "is free to engage in transactions in the issuer's securities ***without regard for Section 16***" until a new SEC filing shows "a reduction in the number of shares outstanding sufficient to make the person a ten percent owner"—unless "the person otherwise knows that he or she has become a ten percent owner." Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) (5th ed. 2019) (emphasis added); *see also* SEC Division of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007) (investor becomes a "beneficial owner" under Rule 16a-1

---

[6] The plain language of this regulation directly contradicts Plaintiff Cohen's unsupported assertion that individuals can rely on the publicly reported number of shares outstanding "[f]or purposes of Section 13, but not for purposes of Section 16(b)." *See* Cohen Am. Compl. ¶ 15.

"within ten days after information in the company's most recent quarterly, annual or current report indicates the amount of securities outstanding following the buy-back" brought them above 10%— "[i]f the person does not have advance awareness of the buy-back and/or its consequences").[7]

> **2.** **The Complaints Do Not Allege that the Cohen Defendants Knew—or Should Have Known—that RCV Held More Than Ten Percent of BBBY's Shares When It Made Its Last Share Purchases.**

The Complaints do not allege facts showing that the Cohen Defendants had actual or constructive knowledge that RCV owned more than 10% of BBBY's outstanding shares in late February and early March of 2022.  RCV purchased its final shares on March 3, 2022.  *See* Thau Decl. Exh. 1 at Sched. A.  On March 7, 2022, RCV filed a Schedule 13D, disclosing beneficial ownership of 9,450,100 BBBY shares—amounting to 9.8% of outstanding shares.  *Id.* at Item 5(a). The March 7 13D discloses that RCV calculated its ownership percentage based upon the number of shares reported in BBBY's November 27, 2021 quarterly report—the most recent share count disclosure available at the time of RCV's final share purchases.  *See id.* (ownership percentage "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form 10-Q. . .").[8]  Under the Share Count Rule, RCV was entitled to rely on

---

[7] The Cohen Amended Complaint argues that Section 16(b) applies to those who become beneficial owners "involuntarily"—including "by a reduction in the total number of outstanding shares of the corporation."  Cohen Am. Compl. ¶ 15 (quoting *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 426 (1972)).  This is neither controversial nor relevant.  And it does not undermine the requirement that a beneficial owner have actual or constructive knowledge that it has crossed the 10% threshold as a result of an "involuntary" share count reduction.  *See* 17 C.F.R. § 240.13d-1(j).

[8] SEC filings show that six other entities made Section 13 filings in the month of February 2022, each relying on the same share count from the Quarterly Report to calculate their percent interest. *See*, *e.g.*, https://www.sec.gov/Archives/edgar/data/895421/000089542122000132/0000895421-22-000132-index.html (Morgan Stanley disclosing a 7.3% interest at 7,011,265 shares); https://www.sec.gov/Archives/edgar/data/1364742/000083423722007880/0000834237-22-007880-index.html (BlackRock disclosing a 17.2% interest at 16,527,076 shares); https://www.sec.gov/Archives/edgar/data/1009268/000110465922022706/0001104659-22-022706-index.html (D.E. Shaw & Co, L.P. disclosing a 0.6% interest at 552,294 shares).

the share count in BBBY's most recent 10-Q, unless RCV knew—or should have known—that share count to be inaccurate.  *See* 17 C.F.R. § 240.13d-1(j).

The Complaints fail to allege facts showing that the Cohen Defendants knew or should have known about the share count reduction in late February or early March 2022.  BBBY did not disclose that it only had 81,979,000 shares outstanding as of February 26, 2022, until ___*April 2022*___— almost fifty days after RCV's last purchases.  *See* Augen. Compl. ¶ 12.  Moreover, the Cooperation Agreement language—which the Cohen Defendants agreed upon with BBBY ___*several weeks after*___ RCV's last March 2022 purchases—states that RCV owns "9.8% of the Common Stock issued and outstanding on the date hereof."  Thau Decl. Exh. 2 at Recital 2.  The Cooperation Agreement confirms that the Cohen Defendants had every reason to believe that RCV continued to own 9.8% of BBBY's outstanding shares as of March 24, 2022—three weeks after RCV's last purchase.

All the Complaints plead is that BBBY announced that it accelerated its buyback program in November 2021 and January 2022.  *See* Augen. Compl. ¶¶ 7-8; Cohen Am. Compl. ¶¶ 18-19.  But, as noted in the leading Section 16(b) treatise, "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold."  Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77 (5th ed. 2019).

The facts surrounding BBBY's repurchase announcement illustrate the sound rationale for this rule.  For several reasons, the Cohen Defendants could not know the exact timing and amount of BBBY's share repurchases when RCV bought BBBY securities in February and March 2022:

- BBBY's public filings expressly warned that its announced share repurchases might not take place on the timeline anticipated—or at all.  *See* Thau Decl. Exh. 3

(repurchases subject to "a variety of factors, including price, general business and market conditions, and alternative investment opportunities"); Bed Bath & Beyond Inc., Quarterly Rep. 24 (Form 10-Q) (Jan. 6, 2022), attached as Thau Decl. Exh. 8 ("The Company's share repurchase program could change, and could be influenced by several factors . . . Any future share repurchases will be subject to the determination of the Board of Directors, based on an evaluation of the Company's earnings, financial condition and requirements, business conditions and other factors. . . .").

- BBBY expressed the scale of its repurchases only in terms of dollar amounts—not in terms of number of shares repurchased. *See, e.g.*, Augen. Compl. ¶ 8 ("$275 million in Common Stock during Q4'2021"). And BBBY's stock price fluctuated significantly and constantly throughout the relevant period—making it impossible to predict exactly how many shares BBBY would repurchase based on the disclosed dollar amounts. *See* Thau Decl. Exh. 9.[9]

- Any calculation of the impact of the announced share repurchase program on BBBY's outstanding share count would assume that the program would be completed on time, which it was not. *See* Thau Decl. Exh. 5.

The Cohen Defendants should not be forced to guess whether they qualify as more than 10% beneficial owners under Section 16(b). *Cf. Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 170 (S.D.N.Y. 2015) (defendants "cannot be held liable for failing to disclose what would have been pure speculation"). To impose liability under Section 16(b) based on unconfirmed,

---

[9] Courts may consider publicly-available stock price data upon a motion to dismiss. *See Stratte-McClure v. Morgan Stanley*, 598 F. App'x 25, 27 (2d Cir. 2015) (summary order).

imprecise, and highly qualified, announced plans of the issuer would radically expand the obligations of investors under this strict liability statute and run afoul of the mandate that it be interpreted narrowly.  *See Packer v. Raging Cap. Mgmt., LLC*, 981 F.3d 148, 154 (2d Cir. 2020); *see also Rubenstein v. vTv Therapeutics, Inc.*, No. 15 Civ. 9752, 2017 WL 1194688, at *3 (S.D.N.Y. Mar. 30, 2017) (Section 16(b) is "construed narrowly to favor the insider").  "It would be unjust and would not promote the purpose of Section 16(b) to treat" RCV "as a company insider, subject to disgorgement, at a time when" it "was unable to know of that status and behave accordingly." *C.R.A.*, 842 F. Supp. at 91; *see also Reliance Elec.*, 404 U.S. at 422 (investors are entitled to "structure[]" their "transaction[s] with the intent of avoiding liability" as long as "the method used to 'avoid' liability is one permitted by the statute").

**B.    The Complaints Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as Directors.**

The Complaints also assert that the Cohen Defendants are liable under Section 16(b) because they were directors of BBBY under a "director by deputization theory."  *See* Augen. Compl. ¶ 1; Cohen Am. Compl. ¶1.  This theory fails as well.

**1.    RCV Did Not Deputize Directors via the Cooperation Agreement.**

Under a "director by deputization theory," an investor becomes "a statutory insider when it deputizes an individual to serve as its representative on an issuer's board of directors." *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 550 (2d Cir. 2020).  The core inquiry is whether the shareholder "actually functioned as a director" because the appointee "who had been deputized" performed the "director's duties not for himself but for" the shareholder.  *Blau v. Lehman*, 368 U.S. 403, 410 (1962).  Plaintiffs' barebones allegations regarding RCV's deputization of the New Directors are conclusory and devoid of any facts showing that the Cohen Defendants "actually functioned as directors" of BBBY.  *See* Augen. Compl. ¶ 29 ("RC Ventures

was also a director of the Company within the meaning of Section 16(b) by virtue of the New Directors' appointments to the Board."); Cohen Am. Compl. ¶¶ 32-36 (series of conclusory assertions that the New Directors were appointed to "serve Defendants' interests rather than [BBBY's] best interests").

In determining whether an investor should be considered a "director by deputization," courts consider various factors, including:

> (1) Whether the shareholding entity recommended the director for election or appointment to the board; (2) Whether the shareholding entity recommended the director for the purpose of protecting or representing the entity's interests rather than for the purpose of guiding or enhancing the issuer's business activities; (3) Whether the director regularly gained access to material nonpublic information about the issuer; (4) Whether the director shared the confidential information with the shareholding entity; and (5) Whether the shareholding entity used the information to inform its investment strategy regarding the issuer's securities.

*Calenture, LLC v. Pulte*, No. 21 Civ. 402, 2022 WL 912947, at *3-4 (S.D.N.Y. Mar. 29, 2022) (citing Peter J. Romeo & Alan L. Dye, *Section 16 Treatise and Reporting Guide*, 229–30 (5th ed. 2019)). Here, Plaintiffs plead the existence of only one of these factors—that RCV appointed the New Directors. Augen. Compl. ¶ 14. This allegation is plainly insufficient, particularly where— as here—the appointed directors were independent of both BBBY management ***and*** RCV. *See Rubenstein v. Very Hungry, LLC*, No. 14 Civ. 888, 2015 WL 1509761, at *3 (D. Colo. Mar. 30, 2015) (director not deputized where listed in SEC filings as an "independent" director "under NASDAQ rules"); *see also* Bed Bath & Beyond Inc., Definitive Proxy, 8 (DEF 14A) (June 1, 2022), attached as Thau Decl. Exh. 10 (New Directors are independent).

While Plaintiff Cohen attempts to plead that the New Directors were recommended to protect the Cohen Defendants' interests rather than BBBY's, her allegations on this point are wholly conclusory and predicated on a series of unsupported "inferences." Specifically, Plaintiff Cohen alleges that because (1) RCV could recommend a replacement for a departing New Director

under the Cooperation Agreement, (2) BBBY and RCV agreed to certain standstill provisions under the Cooperation Agreement, (3) the Cohen Defendants stated publicly that BBBY was "willing to promptly embrace our ideas," and (4) a news article reported that the Cohen Defendants "pushed the [BBBY] Board" to fire its CEO, "it is reasonably inferable" that the New Directors performed their duties for the Cohen Defendants. *See* Cohen Am. Compl. ¶¶ 32-26. But Plaintiff Cohen does not explain why these allegations support the stated inference, nor is any explanation apparent. Similarly, the fact that the New Directors sat on a committee of independent directors tasked with reviewing strategic alternatives for buybuy BABY, *id.* ¶ 32, supports the inference that they were "guiding or enhancing the issuer's business activities," not solely protecting the Cohen Defendants' interests. Despite the Cohen Defendants' alleged focus on a "disposition of the buybuy BABY business segment," *id.*, and the New Directors seats on the strategy committee, Plaintiff Cohen does not allege (nor could she) that the business was ever sold.[10]

Accordingly, Plaintiffs' director deputization theory is unsupported by any factual allegations and cannot form the basis of a Section 16(b) claim.

---

[10] Plaintiff Cohen also alleges that the sales at issue were timed "in advance of adverse events for BBBY, leading to the "inference" that RCV sold because it was acting on inside information. *Id.* ¶ 60. However, that RCV sold before an already-floundering BBBY experienced further difficulties hardly supports such an inference. This is especially true in light of the fact that the Cooperation Agreement did not give RCV any information rights, and expressly prohibits the New Directors from sharing confidential information with the Cohen Defendants. *See* Thau Decl. Exh. 2 § 1(d) (requiring the appointed directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board"). Neither Plaintiff makes any factual allegation that the New Directors violated this provision of the Coooperation Agreement, or their obligations as directors, by providing the Cohen Defendants with inside information.

### 2. Even If RCV Deputized Directors, Then It Still Would Not Be Liable for Short-Swing Profits Under Section 16(b).

Even if RCV "deputized" the New Directors, it still would not qualify as a statutory insider under Section 16(b) at the time of its purchases of BBBY shares. This is because RCV did not enter into the Cooperation Agreement—through which it appointed the New Directors—until three weeks after it finished purchasing BBBY securities.

### a. Under SEC Rules, Directors Are Exempt from Section 16(b) Liability for Transactions Before They Became Directors.

Directors and officers are generally not liable under Section 16(b) for transactions that occurred prior to the date when they became directors or officers. Under SEC regulations, there is only a "single circumstance in which an individual can be held liable for short-swing transactions conducted prior to his becoming an officer or director of the issuer." *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 141 n.3 (2d Cir. 2002) (citations omitted). Under the operative regulation:

> A transaction(s) carried out by a director or officer in the six months prior to the director or officer becoming subject to section 16 of the Act shall be subject to section 16 of the Act and reported on the first required Form 4 ***only if*** the transaction(s) occurred within six months of the transaction giving rise to the Form 4 filing obligation ***and*** the director or officer became subject to section 16 of the Act solely as a result of the issuer registering a class of equity securities pursuant to section 12 of the Act.

17 C.F.R. § 240.16a–2(a) (emphasis added) (the "***D/O Exemption***"). Accordingly, outside of directors who serve on a company's board in the six months prior to the company's initial public offering, courts dismiss Section 16(b) claims predicated on transactions that predate the defendant's directorship. *See Gryl v. Shire Pharms. Grp. PLC*, No. 00 Civ 9173, 2001 WL 1006628, at *2 (S.D.N.Y. Aug. 31, 2001) (dismissing because "a director is not liable under 16(b) for a transaction that took place prior to his or her becoming a director").

### b. All of RCV's BBBY Purchases Predate the Cooperation Agreement.

The D/O Exemption bars the Complaints.  RCV did not enter into the Cooperation Agreement—i.e., appoint the New Directors—until several weeks ***after*** its last BBBY share purchases in March of 2022.  *Compare* Thau Decl. Exh. 2 (Cooperation Agreement dated March 24, 2022), *with* Augen. Compl. ¶ 9 (RCV's last purchase on March 3, 2022).  And RCV did not become subject to Section 16 as a consequence of BBBY registering securities under Section 12; therefore, the D/O Exemption's one carve out does not apply.   17 C.F.R. § 240.16a–2(a). Consequently, even if RCV "deputized" the New Directors, no Section 16(b) liability would exist based on the transactions before the deputizations.  *See Gryl*, 298 F.3d at 141 (affirming dismissal based on the D/O Exemption).

### c. RCV Can Rely on the D/O Exemption.

Augenbaum argues that RCV cannot rely on the D/O Exemption because it is contrary to a Second Circuit decision from 1959 interpreting Section 16(b)'s text.  *See* Augen. Compl. ¶¶ 30-31 (citing *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959)).  Accordingly, Augenbaum argues that the D/O exemption—which has been in place since 1991—exceeded the SEC's rulemaking authority.  Augenbaum is wrong.

### i. *Adler* Does Not Foreclose the D/O Exemption.

In 1959, the Second Circuit held that "Section 16(b) is applicable to a short swing transaction even though the person involved was a director only at the time of the sale and not at the time of the purchase."  *Adler*, 267 F.2d at 847.  *Adler* applied the "*expression unius est exclusion alerius*" canon; the Second Circuit reasoned that, because Section 16(b) states that beneficial owners must have insider status at both the purchase and sale—and does not say the same thing about directors and officers—Congress did not mean to require that directors and

officers have their status at both the purchase and sale.  *See Adler*, 267 F.2d at 845.  In 1991, the SEC enacted the D/O Exemption, which immunizes directors from Section 16(b) liability for purchases of a company's securities prior to becoming a director.  *See* 17 C.F.R. § 240.16a–2(a).

*Adler* does not foreclose the D/O Exemption.  "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."  *Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005); *accord Hassoun v. Searls*, 968 F.3d 190, 199 (2d Cir. 2020).  *Adler* did not find Section 16(b) to be unambiguous.  In *Adler*, the Second Circuit determined that a then-existing SEC regulation did not exempt directors from Section 16(b) liability for transactions prior to becoming directors.  *Adler*, 267 F.2d at 847.  But the Second Circuit left open the possibility that the SEC could adopt such a (contrary) regulation.  *See id.* ("***Perhaps the Commission has the power to do so*** under the last clause of the subsection.  ***We need not decide whether it does or not***, however, since we find that it has not sought to exercise that power.") (internal citations omitted, emphasis added).  Accordingly, *Adler* did not find that Section 16(b) unambiguously requires directors to disgorge short-swing profits for transactions entered into before becoming directors; it does not prevent a contrary SEC regulation that is entitled to *Chevron* deference.  *See Brand X*, 545 U.S. at 982.

### ii.    The Exemption Is Entitled to *Chevron* Deference.

Because "prior precedent does not categorically prohibit" the D/O Exemption, *Hassoun*, 968 F.3d at 200, it is analyzed under the two-step procedure for determining deference to agency statutory interpretations, *see Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984).  First, the court assesses if the statute is unambiguous using "traditional tools of statutory construction."  *Id.* at 842-43.  If the statute is unambiguous, then the court "must give

effect to the unambiguously expressed intent of Congress." *Id*. But "if the statute is silent or ambiguous," then the court asks if the regulation is "a permissible construction of the statute." *Id.*

      **_Silence and Ambiguity_**. Section 16(b)'s text does not reveal an "unambiguously expressed intent of Congress" about whether a director must be liable for transactions predating their directorship. *Chevron*, 467 U.S. at 842-43. Section 16(b) expressly delegates to the SEC power to exempt transactions from liability, and it is silent on the contours of those exemptions. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover . . . any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."). Not only did "Congress explicitly delegate[] to the Commission the policymaking authority to exempt certain transactions"—but it "took the further step of admonishing the courts that the statute 'shall not be construed' otherwise." *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 208 (2d Cir. 2006); *see also Huppe v. WPCS Intern. Inc.*, 670 F.3d 214, 220 (2d Cir. 2012) (SEC has "broad exemptive authority under [Section 16(b)] not shared by the courts"). Because "Congress clearly left open a 'gap' in Section 16(b) for the SEC to fill," courts proceed to the second *Chevron* step in evaluating exemptions. *Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 242, 249 (2d Cir. 2008) (citations omitted). Courts "give *Chevron* deference to the SEC's opinion on whether the transactions exempted" under its rules "are comprehended within the purpose of Section 16(b)." *Id.* The "SEC's views are entitled to 'controlling weight' unless the regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron*, 467 U.S. 837, 843-44).[11]

---

[11] While *Chevron* uses the terms "arbitrary" and "capricious" regarding evaluation of express delegations of authority, courts analyze "initial interpretation[s]" of statutes for "reasonableness"—not "flaws in the agency's decisionmaking process." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 521-25 (2d Cir. 2017) (citations omitted).

***Reasonableness***.   The SEC reasonably determined that the D/O Exemption furthers Section 16(b)'s purpose.   The SEC enacted the D/O Exemption because it would be "unnecessarily harsh" to subject directors and officers to strict liability "even though they may not have known at the time of the transactions that they would become officers or directors in the future."   SEC, Securities Exchange Act, Release No. 34-27148, 44 SEC Docket 526, § III.A.2. (Sept. 6, 1989); *see also Foremost-McKesson*, 423 U.S. at 252 ("[S]erving the congressional purpose does not require resolving every ambiguity in favor of liability under § 16(b) . . . Indeed, the legislative history of s[ection] 16(b) indicates that by adding the exemptive provision Congress deliberately expressed a contrary choice.").   This determination is reasonable and, therefore, entitled to deference.  *See Roth ex rel. Beacon*, 522 F.3d at 249.

## CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety, with prejudice.

Dated:  March 3, 2022

Respectfully submitted,

VINSON & ELKINS LLP

*/s/ Clifford Thau*
Clifford Thau
Marisa Antonelli
1114 Avenue of Americas
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantonelli@velaw.com

*Counsel for Defendants RC Ventures LLC and Ryan Cohen*