**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | Case No. 1:22-cv-09327-PGG |

**RC VENTURES LLC AND RYAN COHEN'S REPLY MEMORANDUM OF LAW**
<u>**IN SUPPORT OF THEIR OMNIBUS MOTION TO DISMISS THE COMPLAINTS**</u>

VINSON & ELKINS LLP

Clifford Thau
Marisa Antonelli
1114 Avenue of Americas
New York, NY 10036
Telephone: (212) 237-0000
Facsimile: (212) 237-0100
Email: cthau@velaw.com
Email: mantonelli@velaw.com

*Attorneys for RC Ventures LLC and  Ryan Cohen*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.     INTRODUCTION ....................................................................................................1

II.    ARGUMENT ..........................................................................................................2

       A.    The Complaints Do Not Plead 10% Beneficial Ownership......................................2

             1.    The Relevant Regulations Expressly Apply the Share Count Rule to
                   Section 16 Claims. ...............................................................................3

             2.    The Share Count Rule Applies to the Cohen Defendants' Purchases. ...........5

             3.    Reliance On The Share Count Rule Is Proper At This Stage. ........................6

       B.    Plaintiffs' Deputization Theory Fails.................................................................7

             1.    Neither Complaint Pleads Director Deputization. ......................................8

             2.    Rule 16a-2(a) Exempts RCV From Liability.............................................9

III.   CONCLUSION.......................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Klawans*,
  267 F.2d 840 (2d Cir. 1959) ......................................................................... 9, 10

*Avalon Holdings Corp. v. Gentile*,
  597 F. Supp. 640 (S.D.N.Y 2022) ...................................................................... 7

*C.R.A. Realty Corp. v. Enron Corp.*,
  842 F. Supp. 88 (S.D.N.Y. 1994) ................................................................. 4, 6, 7

*Calenture, LLC v. Pulte*,
  No. 21-CV-402 (PKC), 2022 WL 912947 (S.D.N.Y. Mar. 29, 2022) ................ 8, 9

*Capitol Recs., LLC v. Vimeo, LLC*,
  826 F.3d 78 (2d Cir. 2016) ................................................................................. 7

*Cogentrix Energy Power Mgmt., LLC v. FERC*,
  24 F.4th 677 (D.C. Cir. 2022) .......................................................................... 10

*Feder v. Martin Marietta Corp.*,
  406 F.2d 260 (2d Cir. 1969) ............................................................................. 10

*Mercer v. Gupta*,
  712 F.3d 756 (2d Cir. 2013) ............................................................................... 7

*Rubenstein v. Int'l Value Advisers, LLC*,
  959 F.3d 541 (2d Cir. 2020) ............................................................................... 8

*Rubenstein v. Very Hungry, LLC*,
  No. 14-CV-00888-CMA-CBS, 2015 WL 1509761 (D. Colo. Mar. 30, 2015) ......... 8

*Segen v. CDR-Cookie Acquisitions, L.L.C.*,
  No. 05 Civ. 3509 (RWS), 2006 WL 59550 (S.D.N.Y. Jan. 4, 2006) .................... 9

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008) ............................................................................... 7

*Strauss on Behalf of Servico, Inc. v. Am. Holdings, Inc.*,
  902 F. Supp. 475 (S.D.N.Y. 1995) ...................................................................... 4

*Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*,
  940 F.2d 685 (D.C. Cir. 1991) ........................................................................... 9

**Statutes**

15 U.S.C. § 77k(b) ................................................................................................ 7

15 U.S.C. § 78p(b) .............................................................................................. 10

**Regulations**

17 C.F.R. § 240.10b5-1(c) ..................................................................................... 7

17 C.F.R. § 240.13d-1(j) .................................................................................... 3, 7

17 C.F.R. § 240.16a-1(a)(1) .................................................................................. 3

17 C.F.R. § 240.16a–2(a)..................................................................................................... 9

17 C.F.R. § 240.16b–3 ......................................................................................................... 9

**Other Authorities**

1991 Adopting Release, 56 Fed. Reg. 7244.......................................................................... 4

Jacobs, *The Williams Act—Tender Offers and Stock Accumulations* § 2:84 ..................... 7

Romeo & Dye, Section 16 Treatise and Reporting Guide § 2.03(3)(j)(iv) n.77 (5th ed. 2019) ................................................................................................................................. 5

SEC Division of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007) ......... 5

The Cohen Defendants submit this reply memorandum of law in support of their omnibus motion to dismiss the Complaints in this consolidated action (the "Motion" or "Mot at __").[1]

## I.     INTRODUCTION

The Cohen Defendants demonstrated in the Motion that the Complaints must be dismissed because neither RCV nor Ryan Cohen was a 10% beneficial owner, officer or director of BBBY at the time of the stock purchases at issue.  Accordingly, Plaintiffs have not (and cannot) allege a foundational and required element of their claim under Section 16(b) of the Exchange Act.

Plaintiffs' memoranda of law in opposition to the Motion (each an "Opposition" or "Opp.") do not contest that, based on BBBY's then-current disclosures, RCV held less than 10% of BBBY's outstanding shares at the time of its last purchases.  Nor do they argue that the Cohen Defendants were privy to some sort of inside information that revealed to them the actual (then-undisclosed) share count at the time of these purchases.  Rather, Plaintiffs ask the Court to ignore the plain language of the well-established and bright-line rules governing Section 16(b) liability and reporting, and hold that investors are not entitled to rely on an issuer's most recently disclosed share count in determining whether they are 10% beneficial owners.  Plaintiffs' position is contrary to the text of the relevant regulations, governing case law, and other guidance routinely relied upon by investors in making reporting and trading decisions.  Similarly unsupported is Plaintiffs' argument that the Cohen Defendants must prove that they lacked knowledge of the current (but not publicly-disclosed) BBBY share count at the time of RCV's purchases.

In addition, neither Opposition offers any argument to save Plaintiffs' deficient theory that the Cohen Defendants were subject to Section 16(b) because they were "directors by deputization." As demonstrated in the Motion, the Complaints fall far short of pleading the array of facts

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

necessary to show that the directors suggested by RCV had been "deputized," and even if they did, such "deputization" would not have occurred until several weeks after RCV completed its last BBBY purchase.  Accordingly, under governing SEC rules, these purchases cannot be the basis of Section 16(b) liability.  Plaintiffs' efforts to escape the consequences of this longstanding rule by contending that it is contrary to a more than 60-year old case examining an entirely different regulation misconstrues the text and holding of that case, and the text of Section 16(b) itself.

The Cohen Defendants made their investment and reporting decisions based on well-established regulations and other guidance adopted to clarify for investors when they are subject to Section 16(b).  Plaintiffs do not contest that Section 16(b) and its rules must be construed narrowly because Section 16(b) imposes strict liability.  Yet their novel theories find no support in governing regulations, case law, or other guidance and would radically (and impermissibly) expand the statute's reach.  The Court should dismiss the Complaints with prejudice.

## II.   ARGUMENT

### A.   The Complaints Do Not Plead 10% Beneficial Ownership.

Plaintiffs have failed to plead that the Cohen Defendants were 10% beneficial owners at the time of their BBBY purchases because governing SEC regulations entitled the Cohen Defendants to rely on the share count published in BBBY's most recent periodic or current reports to determine their percentage ownership.  *See* Mot. at 12-13.  Based on those filings, the Cohen Defendants were indisputably ***not*** 10% holders of BBBY shares.  *Id.* at 14.  Nevertheless, Plaintiffs claim that the Cohen Defendants should be deemed 10% owners as of their March purchases; urging the Court to adopt the novel positions that (1) Rule 13d-1(j) (the Share Count Rule) does not apply to Section 16 claims and (2) the Share Count Rule is an affirmative defense that cannot be decided at the pleading stage.  Both arguments fail.

2

### 1.  The Relevant Regulations Expressly Apply the Share Count Rule to Section 16 Claims.

As the Cohen Defendants explained in the Motion, Rule 16a-1—which defines relevant terms for all of Section 16—expressly states that the term "beneficial owner" shall mean "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder." 17 C.F.R. § 240.16a-1(a)(1). Mot at 13.  Pursuant to Section 13(d), in turn, investors rely on the number of outstanding shares provided "in the issuer's most recent quarterly or annual report, and any current report subsequent thereto" to determine whether they are beneficial owners, unless they know that the number was wrong in the report itself.  17 C.F.R. § 240.13d-1(j) (*i.e.*, Rule 13d-1(j) or the Share Count Rule).  Mot. at 12.  The well-established Share Count Rule has been in place for decades and investors rely on it to determine whether they are subject to Section 16 reporting obligations and short swing liability.

Plaintiffs' efforts to cast doubt on these well-established rules by contorting the text of the relevant regulations are unavailing.  Plaintiffs claim that because neither Rule 16a-1 (defining terms for Section 16) or Rule 16a-2 (describing "persons and transactions subject to Section 16") mentions the Share Count Rule, it does not apply to Section 16.  Augen. Opp. at 6-7; Cohen Opp. at 15.  But a specific reference to the Share Count Rule—one of the many rules governing beneficial ownership under Section 13(d)—is unnecessary when Section 16 specifically provides that beneficial ownership shall be defined "pursuant to section 13(d) of the Act and the rules thereunder." 17 C.F.R. § 240.16a-1(a)(1).  "The rules thereunder" include the Share Count Rule.

Likewise deficient is Plaintiffs' argument that the Share Count Rule does not apply to Section 16 because the Share Count Rule does not specifically reference it.  Section 16 rules specifically incorporate the standards for beneficial ownership under Section 13(d) "and the rules thereunder." 17 C.F.R. § 240.16a-1(a)(1).  In light of the SEC's express incorporation of the

Section 13(d) beneficial ownership analysis into Section 16 through Rule 16a-1, the SEC did not

need to amend the Share Count Rule to refer specifically to Section 16.[2]

Finally, Plaintiffs argue that the Share Count Rule does not apply because the 1991

Adopting Release, which proposed incorporating Section 13(d)'s beneficial ownership analysis

into Section 16, did not specifically reference the Share Count Rule.  Augen. Opp. at 6.  But the

language Plaintiffs quote—more fully excerpted below—makes clear that it is summarizing a non-

exhaustive list of the aspects of the Section 13(d) analysis proposed to apply to Section 16 claims.

> As proposed, the rules adopted today define ten percent holders under section 16 as
> persons deemed ten percent holders under section 13(d) of the Exchange Act and
> the rules thereunder.  The section 13(d) analysis, ***such as*** the exclusion of non-
> voting securities and counting only those derivative securities exercisable or
> convertible within 60 days, are imported into the ten percent holder determination
> for section 16 purposes.

1991 Adopting Release, 56 Fed. Reg. 7244 (emphasis added).  Notably in *C.R.A. Realty Corp. v.*

*Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994)[3], the plaintiff argued that Rule 16a-1

incorporated only "the definition of 'beneficial owner' found in Section 13(d), but did not

necessarily incorporate the rules defining 'ten percent' under Section 13(d)."  Rejecting this

argument, the court cited the 1991 Adopting Release in holding that the Share Count Rule "was

incorporated into the rules under Section 16(b)" and thus defendant was "entitled to rely on [it]

and use public information in calculating its percentage of ownership."  *Id.*

---

[2] Augenbaum cherry-picks language from *Strauss on Behalf of Servico, Inc. v. Am. Holdings, Inc.*,
902 F. Supp. 475, 476 (S.D.N.Y. 1995), arguing that because *Strauss* found the figures provided
in an issuer's most recent quarterly report to be "[in]conclusive for Section 16 purposes," the Share
Count Rule must not apply.  Augen. Opp. at 7.  But the court in *Strauss* found that the most recent
quarterly report was not conclusive because ***it contained two inconsistent share count numbers***,
and the parties disputed which one was correct.  *See Strauss*, 902 F. Supp. at 476.

[3] The Court should reject Plaintiff Augenbaum's suggestion that *C.R.A. Realty* is "neither
controlling nor persuasive" because the litigants in that case did not raise the same novel,
convoluted, and baseless interpretation arguments he raises here.  Augen. Opp. at 7-8.

## 2.   The Share Count Rule Applies to the Cohen Defendants' Purchases.

The Cohen Defendants demonstrated in the Motion that the Complaints do not allege facts showing that the Cohen Defendants had actual or constructive knowledge that RCV owned more than 10% of BBBY's outstanding shares when RCV made its last purchases of BBBY stock on March 3, 2022.  Mot. at 14-17.  Notably, Plaintiffs do not dispute this point, or even argue that the Cohen Defendants had access to nonpublic information concerning the actual (then-undisclosed) BBBY share count at the time.  Instead, Plaintiffs argue that because of information in BBBY's public filings regarding its planned share repurchases, the Cohen Defendants had "reason to believe" that BBBY's most recently disclosed share count was "inaccurate," and that is sufficient to preclude their reliance on the Share Count Rule.  Augen. Opp. at 9; Cohen Opp. at 15.

As an initial matter, Plaintiffs' arguments fail to address guidance from the leading Section 16(b) treatise that "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold."  Romeo & Dye, Section 16 Treatise and Reporting Guide § 2.03(3)(j)(iv) n.77 (5th ed. 2019); *see also* Mot. at 15. Plaintiffs similarly fail to address the uncertainty surrounding BBBY's repurchase plan, *see* Thau Decl. Exh. 8 ("The Company's share repurchase program could change, and could be influenced by several factors . . .").  Nor do Plaintiffs respond to the fact that the repurchase was not ultimately completed on the timeline announced, or that three weeks after BBBY's last purchases, it entered into an agreement with BBBY reciting that RCV owned only 9.8% of BBBY shares.  Mot. at 16. Accordingly, Plaintiffs have not alleged that the Cohen Defendants knew that BBBY's then-current share count was inaccurate at the time of RCV's last BBBY purchases.

Plaintiffs attempt to twist the plain language of the Share Count Rule to argue that an issuer's most recently-disclosed share count may be relied on only if there is no other indication

5

of a *subsequent* change in outstanding shares.  This interpretation would destroy the rule entirely because almost all companies experience changes in their share count after their periodic or current report because of stock compensation issuances, forfeitures, repurchases, and other transactions. In the event any such changes are announced, Plaintiffs' theory would require significant investors to ask the issuer for its current share count before any stock purchase.  This novel, alleged duty is contrary to the plain language of the SEC's rules, governing case law, and other guidance on which investors rely in making their reporting and trading decisions.

Plaintiffs' argument also ignores *C.R.A. Realty*.  There, plaintiff argued that defendant's awareness of circumstances leading to a decline in the outstanding share count (there, a stock "conversion feature") meant that defendant "should have known that the data contained in [the issuer's most recent quarterly reports] were 'inaccurate.'" *C.R.A. Realty*, 842 F. Supp. at 91.  The plaintiff suggested that defendant, knowing the share count was wrong, should have called the issuer to ask what the share count was.  *Id.*  But the court held that imposing such a requirement on shareholders "would impose an unwarranted burden," "be needlessly inefficient," and "be inconsistent with the SEC's goal of 'streamlining' and 'minimizing' compliance costs." *Id.*

### 3.    Reliance On The Share Count Rule Is Proper At This Stage.

Plaintiffs' final argument is that the Share Count Rule is an affirmative defense that defendants have the burden of proving.  Augen. Opp. at 9; Cohen Opp. at 15.  But the plain language of the Rule presumes reliance on "the issuer's most recent quarterly or annual report . . . **unless** [the defendant] knows or has reason to believe that the information contained therein is inaccurate." 17 C.F.R. § 240.13d-1(j) (emphasis added).  This suggests a rebuttable presumption, not an affirmative defense.[4]  When Congress or the SEC wishes to establish a securities statute or

---

[4] Plaintiffs' authorities do not say otherwise.  *See* Jacobs, *The Williams Act—Tender Offers and Stock Accumulations* § 2:84 ("Rule 13d-1(j) does not state whether or not the quoted words are an

rule as an affirmative defense, it knows how to make that clear.  *See* 15 U.S.C.A. § 77k(b) ("no person, other than the issuer, shall be liable as provided therein who shall sustain the burden of proof . . .); 17 CFR § 240.10b5-1(c) ("Affirmative defenses . . .  a person's purchase or sale is not on the basis of material nonpublic information if the person making the purchase or sale demonstrates that. . . .).  The Share Count Rule contains no similar language.  Therefore, Plaintiffs must prove that the Cohen Defendants violated Section 16(b) by purchasing securities (and later selling securities within six months) after they beneficially owned more than 10% of BBBY stock. *See Avalon Holdings Corp. v. Gentile*, 597 F. Supp. 3d 640, 650 (S.D.N.Y. 2022).

Furthermore, Plaintiffs' proposed rule would require defendants to engage in the costly and burdensome exercise of establishing that they ***were not aware*** of non-public information regarding the number and dates of BBBY's share repurchases.  They would be forced to shoulder this burden notwithstanding the fact that Plaintiffs have failed to allege any facts suggesting that the Cohen Defendants were aware of such information.  Such a requirement (much like the one rejected by the court in *C.R.A. Realty*) would "be needlessly inefficient" and "inconsistent with the SEC's goal of 'streamlining' and 'minimizing' compliance costs."  *See C.R.A. Realty*, 842 F. Supp. at 91.[5]

### B.    Plaintiffs' Deputization Theory Fails.

The Cohen Defendants demonstrated in the Motion that, not only do the Complaints fail to allege facts showing that they were "directors by deputization" by virtue of the New Directors'

---

affirmative defense."); *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 94 (2d Cir. 2016) (different safe harbor provision); *Mercer v. Gupta*, 712 F.3d 756, 759 (2d Cir. 2013) (same).

[5] Even if the Share Count Rule were an affirmative defense, it still warrants dismissal.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  The facts alleged in the Complaints, and documents incorporated therein by reference, demonstrate that (i) the Cohen Defendants were not 10% owners according to BBBY's most recent public share count and (ii) public information (the only basis through which Plaintiffs allege that the Cohen Defendants knew or should have known that they were 10% holders) did not provide them with knowledge or constructive knowledge that RCV was a 10% holder at the time of its last BBBY purchases.

appointment to the BBBY Board, any such "deputization" would be irrelevant because it would have occurred *after* the Cohen Defendants purchased their BBBY shares. Mot. at 17-24. Nothing in Plaintiffs' Oppositions can shore up their conclusory claims of "deputization," or save their specious argument that this Court should not enforce the longstanding SEC regulations exempting transactions from Section 16(b) if they occurred prior to an investor's directorship.

### 1.    Neither Complaint Pleads Director Deputization.

The parties agree that five factors are relevant in determining whether directors were deputized. *See* Augen. Opp. at 12-14 (citing *Calenture, LLC v. Pulte*, No. 21 Civ. 402, 2022 WL 912947, at *3 (S.D.N.Y. Mar. 29, 2022)). But Plaintiffs allege only one of those factors—that RCV appointed the New Directors to the Board. Their attempts to plead the others are based on conclusory assertions or unsupported inferences. *See* Mot. at 17-19.[6] Nor is the dismissal of a deputization claim generally improper at the pleading stage, as Plaintiffs suggest. *See, e.g. Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 550 (2d Cir. 2020).

Augenbaum attempts to distinguish *Rubenstein v. Very Hungry, LLC*, No. 14 Civ. 00888, 2015 WL 1509761, at *1 (D. Colo. Mar. 30, 2015), but in *Rubenstein,* as in this case, the director "did not have dispositive power over [Defendants'] investment" in the Company, was "nominated to the board at the suggestion of [Defendants]," was "directly compensated" and "reimbursed . . . for expenses" by the Company and not Defendants, and was "described to shareholders in public filings submitted to the SEC as [] 'independent' director[s] under [the relevant] rules." 2015 WL 1509761, at *2-3. Based on these facts, the court found that the defendant's appointed director

---

[6] That two of the New Directors resigned months after RCV sold its shares (Augen Opp. at 13), is pleaded nowhere in the Complaints and does not suggest that the New Directors were serving RCV's interests in any event. If they were, there would have been no reason for them to stay on the BBBY Board four and six months, respectively, after RCV exited BBBY. *See id.* at 4.

had not been deputized.[7]

## 2. Rule 16a-2(a) Exempts RCV From Liability.

Under longstanding SEC regulations, whether the appointment of the New Directors to the BBBY Board resulted in the "deputization" of RCV is irrelevant because the New Directors were not appointed until several weeks after RCV's last BBBY share purchases. Mot. at 20-24. Pursuant to 17 C.F.R. § 240.16a–2(a) (the D/O Exemption), courts dismiss Section 16(b) claims predicated on transactions that predate a defendant's directorship. *Id.*

In the Motion, the Cohen Defendants demonstrated that Plaintiffs' argument that the 30-year old D/O Exemption was an invalid exercise of SEC rulemaking authority is wholly without merit. *See* Mot. at 21-24. Specifically, *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959)—which Plaintiffs argue forecloses the D/O Exemption—specifically left open the possibility that the SEC could enact regulations exempting directors from 16(b) liability for transactions prior to becoming directors. *See* Mot. at 22 (citing *Adler*, 267 F.2d at 847). Moreover, Section 16(b) expressly delegates to the SEC power to exempt transactions from liability, is silent on the contours of those exemptions, and the D/O Exemption is a reasonable construction of Section 16(b) that furthers the statute's purpose. *See* Mot. at 23.[8]

---

[7] Plaintiffs' cases are not contrary. *Calenture*, 2022 WL 912947, at *1, does not hold that deputization claims **cannot** be dismissed at the pleading stage. *See* Augen. Opp. at 11. The denial of the motion in *Calenture*, moreover, was due not merely to defendants' right to "communicate privately with the Board," but also in large part to allegations that the deputized director's tenure was a "continuation of [his predecessor]'s role," which involved sharing confidential information with defendants. *Id.* at *5. Similarly, *Segen v. CDR-Cookie Acquisitions, L.L.C.*, No. 05 Civ. 3509 (RWS), 2006 WL 59550 (S.D.N.Y. Jan. 4, 2006), did not hold that the appointment of a director is sufficient to allege deputization. Augenbaum at 11-12. *Segen* involved not just director appointments, but also the purchase of a **controlling interest** in the company.

[8] Although these conclusions follow from the plain language of Section 16(b) and its legislative history, it also bears noting that the *expressio unius* canon, relied upon by Plaintiffs, does not generally apply in the context of agency statutory interpretation. *See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 694 (D.C. Cir. 1991) (*Expressio Unius* "has little force in the

*Feder v. Martin Marietta Corp.*, 406 F.2d 260 (2d Cir. 1969), did not "reject" this argument. The issue in *Feder* was whether Section 16(b) liability existed where a deputized director was seated at the time of his stock purchase but not at the time of sale. *Id.* at 266. The court held that the statute's coverage of a "resigning director" was consistent with congressional intent because "it is possible for both the purchase and sale to have been unfairly motivated by insider knowledge." *Id.* at 268. This is not true, however, in the opposite situation presented here: where the directors were allegedly deputized ***after*** the Cohen Defendants completed all stock purchases. The *Feder* court recognized this point, noting that "if the purchase were made prior to the directorship only the sale could be motivated by inside information." *Id. Feder* thus does not prohibit application of the D/O Exemption here.

### III.    CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety with prejudice.

Dated:  April 7, 2023                                           Respectfully submitted,

                                                                VINSON & ELKINS LLP

                                                                */s/ Clifford Thau*

                                                                Clifford Thau
                                                                Marisa Antonelli
                                                                1114 Avenue of Americas
                                                                New York, NY 10036
                                                                Telephone: (212) 237-0000
                                                                Facsimile: (212) 237-0100
                                                                Email: cthau@velaw.com
                                                                Email: mantonelli@velaw.com

                                                                *Attorneys for RC Ventures LLC and Ryan Cohen*

---

administrative setting"); *accord Cogentrix Energy Power Mgmt., LLC v. FERC*, 24 F.4th 677, 683 (D.C. Cir. 2022).