**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE BED BATH & BEYOND INC.
SECTION 16(b) LITIGATION

Case No. 1:22-cv-09327-PGG

**PLAINTIFF AUGENBAUM'S MEMORANDUM OF LAW IN OPPOSITION TO**
<u>**RC VENTURES LLC AND RYAN COHEN'S MOTION TO DISMISS**</u>

**ABRAHAM, FRUCHTER & TWERSKY, LLP**

Jeffrey S. Abraham
Michael J. Klein
450 7th Avenue, 38th Floor
New York, New York 10123
Telephone: (212) 279-5050
Email: jabraham@aftlaw.com
        mklein@aftlaw.com

*Counsel for Plaintiff Todd Augenbaum*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

SUMMARY OF RELEVANT FACTS .............................................................................. 2

ARGUMENT ...................................................................................................................... 4

A.    SECTION 16(b) IS A STRICT LIABILITY STATUTE HAVING FOUR ELEMENTS,
      EACH OF WHICH IS SATISFIED BY PLAINTIFF'S COMPLAINT ........................... 4

      1.    Plaintiff Properly Alleges that RCV Was a 10% Beneficial Owner of Common
            Stock at the Time of Some of Its Purchases ........................................................ 5

            a.    Rule 13d-1(j) Does Not Apply to Computing Beneficial Ownership for
                  Purposes of Section 16 ............................................................................... 6

            b.    Defendants Have Failed to Establish That They May Rely on the Safe
                  Harbor Contained in Rule 13d-1(j) to Dismiss Plaintiff's Claims.............. 8

      2.    Defendants Do Not Dispute That Plaintiff Properly Alleges the Other Elements of
            Section 16(b) ..................................................................................................... 10

B.    PLAINTIFF PROPERLY ALLEGES THAT RCV IS SUBJECT TO LIABILITY AS A
      DIRECTOR BY DEPUTIZATION ................................................................................. 10

      1.    Plaintiff Plausibly Alleges that RC Ventures Acted as a Director by Deputizing
            the New Directors to Serve on the Board ........................................................... 10

      2.    The Rule 16a-2(a) Exemption is at Odds with the Plain Language of Section 16(b)
            Making the Exemption a Nullity......................................................................... 14

C.    THE REMEDIAL PURPOSE OF §16(b) IS WELL-SERVED BY IMPOSING
      LIABILITY ON RCV IN THIS ACTION ...................................................................... 16

CONCLUSION.................................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Cases**

*Adler v. Klawans*,
    267 F.2d 840 (2d Cir. 1959) .......................................................................... 14, 15

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................ 4

*Bittner v. United States*,
    598 U.S. ___, 143 S. Ct. 713 (2023) ................................................................. 15

*Blau v. Lehman*,
    368 U.S. 403 (1962) .................................................................................... 10, 15

*C.R.A. Realty Corp. v. Enron Corp.*,
    842 F. Supp. 88 (S.D.N.Y. 1994) ....................................................................... 7

*Calenture, LLC v. Pulte*,
    No. 21 Civ. 402, 2022 WL 912947 (S.D.N.Y. Mar. 29, 2022) ............ 11, 12, 13

*Capitol Recs., LLC v. Vimeo, LLC*,
    826 F.3d 78 (2d Cir. 2016) .................................................................................. 9

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ............................................................................................ 7

*Chevron U.S.A. Inc. v. Nat. Res. Def. Council*,
    467 U.S. 837 (1984) .......................................................................................... 15

*Department of Homeland Security v. MacLean*,
    574 U.S. 383 (2015) .......................................................................................... 15

*DPC New York, Inc. v. Scottsdale Ins. Co.*,
    No. 19 CIV. 1743 (PGG), 2020 WL 2555241 (S.D.N.Y. May 19, 2020) ........... 4

*Feder v. Frost*,
    220 F.3d 29 (2d Cir. 2000) ............................................................................ 5, 16

*Feder v. Martin Marietta Corp.*,
    406 F.2d 260 (2d Cir. 1969) ............................................................. 11, 13, 15, 16

*Gallardo v. Marstiller*,
    596 U. S. ___, 142 S. Ct. 1751 (2022) .............................................................. 15

*Ganino v. Citizens Utils. Co.*,
    228 F.3d 154 (2d Cir. 2000) ................................................................................ 4

*Gollust v. Mendell*,
    501 U.S. 115 (1991) .................................................................................... 15, 17

*In re Evolus Inc. Sec. Litig.*,
    No. 20 CIV. 8647 (PGG), 2021 WL 4251957 (S.D.N.Y. Sept. 17, 2021) ........................ 3

*In re Luxottica Group S.p.A., Securities Litigation*,
    293 F. Supp. 2d 224 (E.D.N.Y. 2003) ................................................................. 9

*In re VimpelCom, Ltd.*,
    No. 1-15-cv-8672 (ALC), 2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016) ........................ 4

*Kramer v. Time-Warner Inc.*,
    937 F.2d 767 (2d Cir. 1991) .......................................................................... 4

*Lewis v. Dekcraft Corp.*,
    No. 69 Civ. 2982, 1974 WL 418 (S.D.N.Y. June 27, 1974) ........................................ 11

*Lowinger v. Morgan Stanley & Co. LLC*,
    841 F.3d 122 (2d Cir. 2016) .......................................................................... 7

*Magma Power Co. v. Dow Chem. Co.*,
    136 F.3d 316 (2d Cir. 1998) .......................................................................... 17

*Mercer v. Gupta*,
    712 F.3d 756 (2d Cir. 2013) .......................................................................... 9

*Panther Partners Inc. v. Jianpu Tech. Inc.*,
    No. 18 CIV. 9848 (PGG), 2020 WL 5757628 (S.D.N.Y. Sept. 27, 2020) ........................ 4

*Ragsdale v. Wolverine World Wide, Inc.*,
    535 U.S. 81 (2002) ...................................................................................... 15

*Reliance Elec. Co. v. Emerson Elec. Co.*,
    404 U.S. 418 (1972) ................................................................................. 15, 17

*Roth ex rel. Beacon Power Corp. v. Perseus, L.L.C.*,
    2006 WL 2129331 (S.D.N.Y. July 31, 2006), *aff'd*, 522 F.3d 242 (2d Cir. 2008).......... 13

*Rubenstein v. Very Hungry, LLC*,
    No. 14 Civ. 888, 2015 WL 1509761 (D. Colo. Mar. 30, 2015) ................................ 11, 12

*SEC v. Fiore*,
    416 F. Supp. 3d 306 (S.D.N.Y. 2019) ............................................................... 8

*Segen v. CDR-Cookie Acquisitions, L.L.C.*,
    No. 05 Civ. 3509 (RWS), 2006 WL 59550 (S.D.N.Y. Jan. 4, 2006) ........................ 11, 12

*Smolowe v. Delendo Corp.*,
    136 F.2d 231 (2d Cir. 1943)...................................................................... 17

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)........................................................................ 9

*Strauss on Behalf of Servico, Inc. v. Am. Holdings, Inc.*,
    902 F. Supp. 475 (S.D.N.Y. 1995)............................................................. 7

*United States v. Home Concrete & Supply, LLC*,
    566 U.S. 478 (2012).................................................................................. 15

**Statutes, Rules & Regulations**

15 U.S.C. §78b.................................................................................................. 17

15 U.S.C. §78c(a)(7)......................................................................................... 10

15 U.S.C. §78l(b).............................................................................................. 2

15 U.S.C. §78p(a)....................................................................................... 5, 6, 7

15 U.S.C. §78p(b)...................................................................................... *passim*

17 C.F.R. §240.13d-1(b)(1)(ii)(j)................................................................ 6, 7, 8

17 C.F.R. §240.13d-3(a)................................................................................... 7

17 C.F.R. §240.13d-5....................................................................................... 7

17 C.F.R. §240.16a-1(a)(1)............................................................................... 9

17 C.F.R. §240.16a-1(a)(1)(x).......................................................................... 6

17 C.F.R. §240.16a-2................................................................................. *passim*

17 C.F.R. §240.16a-2(c)................................................................................... 6

Fed. R. Civ. P. 12(b)(6)......................................................................... 4, 8, 9, 11

Fed. R. Evid. 201 ............................................................................................. 3

*Interpretative Release on Rules Applicable to Insider Reporting and Trading*,
    Exchange Act Release No. 18114, 1981 WL 31301 (Sept. 24, 1981)............................. 17

*Ownership Reports and Trading by Officers, Directors and Principal Security Holders*,
    56 FR 7242 (1991)............................................................................. 5, 6, 11

Securities Exchange Act Release No. 34-27148,
44 SEC Docket 526 (Sept. 6, 1989) ................................................................................ 16

**Other Authorities**

Arnold S. Jacobs, *The Williams Act—Tender Offers and Stock Accumulations*, §2:84 (2022 Update) .............................................................................................................................. 8, 9

Romeo and Dye, *Comprehensive Section 16 Outline* at 117 (Dec. 2004) ................................... 16

S. Thel, *The Genius of Section 16: Regulating the Management of Publicly Held Companies*, 42 Hastings L.J. 391 (1991) .......................................................................................... 17

Plaintiff Todd Augenbaum, by his undersigned attorneys, respectfully submits this memorandum of law in opposition to the motion to dismiss made by Defendants RC Ventures LLC ("RC Ventures" or "RCV") and Ryan Cohen ("Cohen" and, with RCV, "Defendants").

## INTRODUCTION

Plaintiff has plausibly alleged all four elements of a claim seeking the disgorgement of short-swing insider trading profits earned by RC Ventures from trading in Bed Bath & Beyond Inc. ("BBBY" or the "Company") securities pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act").  Defendants' efforts to obtain dismissal of Plaintiff's claims relating to RCV's trading while a more than 10% beneficial owner of BBBY's common stock (the "Common Stock") fail because Defendants mistakenly rely on U.S. Securities and Exchange Commission ("SEC" or the "Commission") Rule 13d-1(j), which does not apply to Section 16(b) claims and, in any event, constitutes an affirmative defense that RCV is unable to prove on this motion to dismiss.

Similarly, Plaintiff plausibly alleges that RC Ventures functioned as a director through three (3) new members Defendants who joined the Company's board of directors (the "Board") at RCV's behest pursuant to the terms of a written agreement between RC Ventures and BBBY.  SEC Rule 16a-2(a), upon which Defendants rely in seeking an exemption from liability, is directly contrary to the plain language of Section 16(b) based upon U.S. Court of Appeals for the Second Circuit precedent and, therefore, must be set aside as exceeding the scope of the SEC's authority to exempt transactions from §16(b) liability.

RCV being subject to liability in this action is also consistent with the statutory purpose of Section 16(b) given that RC Ventures profited handsomely by dumping its BBBY securities on August 16, 2022, some two weeks before BBBY disclosed news adversely causing the Common Stock's trading price to tumble.  Indeed, had RC Ventures not sold at that time and, instead, waited

to hold the Common Stock for six months from its purchases, it would have suffered a significant loss on its investment in BBBY.

## SUMMARY OF RELEVANT FACTS

BBBY Common Stock is publicly traded on The Nasdaq Capital Market ("NASDAQ") and registered with the SEC pursuant to Section 12(b) of the Exchange Act, 15 U.S.C. §78l(b). Augenbaum Complaint ("Cplt.") ¶4. RC Ventures is an investment vehicle for Ryan Cohen, a highly sophisticated investor. *Id.* ¶3; Defs. Ex. 2 at Schedule A.

On January 6, 2022, BBBY filed a Form 10-Q with the SEC disclosing that the Company had 96,337,713 shares of Common Stock outstanding as of November 27, 2021. *Id.* ¶11. At that time, BBBY was one year into a well-publicized three-year program to repurchase shares of Common Stock, and had disclosed, on November 2, 2021, that it was advancing that program by two years and expecting to repurchase $400 million of its Common Stock by February 26, 2022, the end of its 2021 fiscal year. *Id.* ¶7; *see also* Defs. Ex. 3 at 1. On January 6, 2021, approximately half-way through that quarter, BBBY reiterated that it expected to repurchase $275 million of Common Stock during its fiscal fourth quarter ending February 26, 2022. Cplt. ¶8.

On January 13, 2022, RCV began acquiring the Common Stock and on March 7, 2022, it filed a Schedule 13D with the SEC disclosing that it beneficially owned 9,450,100 shares of Common Stock. *Id.* ¶11; *see also* Defs. Ex. 1 at 5/8. The Schedule 13D also stated that RC Ventures' ownership position amounted to 9.8% of the total shares of Common Stock outstanding based upon the 96,337,713 shares reported outstanding as of November 27, 2021. *Id.*

However, by March 1, 2022, Defendants beneficially owned 10% or more of the Common Stock outstanding based upon the actual 81,979,000 shares outstanding on February 26, 2022. Cplt. ¶¶9, 12, 28. After RCV owned 10% of the Common Stock, it purchased approximately

770,00 additional shares from March 1, 2022 through March 3, 2022 at prices ranging between $16.68 and $17.25 per Share.  *Id.* ¶9.

On or about March 24, 2022, RC Ventures entered into a Cooperation Agreement with BBBY pursuant to which the Company increased the size of the Board from eleven to fourteen members and appointed Marjorie L. Bowen, Shelly C. Lombard and Benjamin Rosenzweig (collectively the "New Directors") as directors. *Id.* ¶¶14 and 16; *see also* Defs. Ex. 2 (Cooperation Agreement) §1(a)(i)(B).  The Cooperation Agreement, among other things, gave RCV the right to appoint other directors to the Board if the New Directors were unwilling or unable to serve, provided that RCV continued to own the lesser of 3,900,000 shares of Common Stock or 4.04% of the Outstanding Common Stock.  Cooperation Agreement §1(a)(ii).

Less than six months later, on August 16 and August 17, 2022,  RCV liquidated its position in BBBY Common Stock by selling over $178 million of Common Stock at prices ranging from $18.68 to $29.22 per share.  Cplt. ¶23, 28.  Those sale prices far exceeded the prices paid by RCV less than six months earlier of as low as $13.43 per Share to acquire the Common Stock and call options.  *Id.* ¶9.  Similarly, RCV liquidated its position in call options it had purchased less than six months earlier at a substantial profit.  *Id.* ¶23.

The Common Stock's price began to tumble once RCV's sales were publicly disclosed on August 18, 2022 with the Common Stock closing the next day at $11.03 per share, down more than 40% from its previous closing price of $18.55 per share.  *See* Declaration of Jeffrey S. Abraham ("Abraham Declaration") Ex. A.[1]  Investors' fears about RCV's actions signaling bad

---

[1]     Stock market trading prices, which can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned, are subject to judicial notice.  *See, e.g.*, Fed. R. Evid. 201(b)(2); *In re Evolus Inc. Sec. Litig.*, No. 20 CIV. 8647 (PGG), 2021 WL 4251957, at *5 n.6 (S.D.N.Y. Sept. 17, 2021) (quoting *In re VimpelCom, Ltd.*, No. 1-15-cv-8672 (ALC), 2016

news were confirmed when on August 31, 2022, BBBY announced a significant capital raise including an at-the-market offering of Common Stock (Cplt. ¶25) causing the trading price of Common Stock to tumble further to close at $9.53 per share.  *See* Abraham Decl. Ex. A.

On December 23, 2022, Benjamin Rosenzweig, one of the New Directors, resigned from the Board.  *See* Abraham Decl. Ex. B.  On February 11, 2023, Marjorie Bowen, another one of the New Directors, resigned from the Board. *See* Abraham Decl. Ex. C.  The only New Director remaining on the Board is Shelly C. Lombard.  *See* Abraham Decl. Ex. D.[2]

## ARGUMENT

Rule 12(b)(6) requires that a complaint must "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A court should not dismiss a complaint for failure to state a claim if the complaint's factual allegations "raise a right to relief above the speculative level[.]" *Id.* at 555.  The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See, e.g., Panther Partners Inc. v. Jianpu Tech. Inc.*, No. 18 CIV. 9848 (PGG), 2020 WL 5757628, at *5 (S.D.N.Y. Sept. 27, 2020) (Gardephe, J.) (citations omitted).  Here, Plaintiff has more than adequately satisfied this standard.

## A.   SECTION 16(b) IS A STRICT LIABILITY STATUTE HAVING FOUR ELEMENTS, EACH OF WHICH IS SATISFIED BY PLAINTIFF'S COMPLAINT

There are four elements to a §16(b) claim: "(1) a purchase and (2) a sale of securities (3) by an officer or director of the issuer or by a shareholder who owns more than ten percent of any

---

WL 5390902, at *3 (S.D.N.Y. Sept. 26, 2016) and citing *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000)).

[2]    This Court may also take judicial notice of filings made with the SEC.  *See, e.g.*, *DPC New York, Inc. v. Scottsdale Ins. Co.*, No. 19 CIV. 1743 (PGG), 2020 WL 2555241, at *5 (S.D.N.Y. May 19, 2020) ("courts may take judicial notice of publicly filed records" including SEC filings) (citing *Kramer v. Time-Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

one class of the issuer's securities (4) within a six-month period." *Feder v. Frost*, 220 F.3d 29, 32 (2d Cir. 2000) (citations omitted).  "No showing of actual misuse of inside information or of unlawful intent is necessary to compel disgorgement." *Id.* (citations omitted).

While Section 16(b) does "not … cover any transaction where such [10%] beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security[,]" no such statutory limitation on liability exists requiring directors or officers to be statutory insiders at the time of both their purchases and sales to trigger Section 16(b) liability.  15 U.S.C. §78p(b). However, in 1991 the SEC adopted a rule exempting from Section 16(b) transactions occurring before a director was appointed to a board unless the earlier transaction occurred "as a result of the issuer registering a class of equity securities pursuant to section 12 of the Act."  17 C.F.R. §240.16a-2; *see also Ownership Reports and Trading by Officers, Directors and Principal Security Holders*, 56 FR 7242, 7244 (1991) (the "1991 Adopting Release").

### 1.     Plaintiff Properly Alleges that RCV Was a 10% Beneficial Owner of Common Stock at the Time of Some of Its Purchases

Defendants do not, nor could they reasonably, dispute that they became 10% beneficial owners of the Common Stock by March 1, 2022. *See* Cplt. ¶¶11-12.  Instead, Defendants contend that they are exempt from Section 16(b) liability based upon the safe harbor afforded by SEC Rule 13d-1(j), 17 C.F.R. §240.13d-1(j).  Defendants are in error because: (a) Rule 13d-1(j) does not apply to §16(a) reporting requirements or the liability imposed by §16(b) and, instead, only serves as a safe harbor with respect to the reporting requirements relating to §13(d) of the Exchange Act; (b) even if Rule 13d-1(j) applied to Section 16(b) claims – which it does not – it would still constitute an affirmative defense that cannot support dismissal on this motion.

**a.      Rule 13d-1(j) Does Not Apply to Computing Beneficial Ownership for Purposes of Section 16**

Rule 16a-1(a)(1), 17 C.F.R. §240.16a-1(a)(1), governs reporting of beneficial ownership of Section 16(a) of the Exchange Act, 15 U.S.C. §78p(a) providing that a person "is deemed a beneficial owner pursuant to section 13(d) of the [Exchange] Act and the rules thereunder."  17 C.F.R. §240.16a-1(a)(i).  However, Rule 16a-1(a)(1) only imports the "section 13(d) analysis, such as the exclusion of non-voting securities and counting only those derivative securities exercisable or convertible within 60 days … into the ten percent holder determination for section 16 purposes." 1991 Adopting Release, 56 FR at 7244.  Accordingly, neither Rule 16a-1(a)(1) nor the 1991 Adopting Release makes any mention of importing Section 13(d)'s safe harbor for *reporting* beneficial ownership into calculating beneficial ownership for purposes of §16(b).

Instead, Rule 16a-2, 17 C.F.R. §240.16a-2, governs and provides that: "[a]ny person who is the beneficial owner, directly or indirectly, of more than ten percent of any class of equity securities … registered pursuant to section 12 of the [Exchange] Act … shall be subject to the provisions of section 16 of the Act."  17 C.F.R. §240.16a-2.  Notably absent from Rule 16a-2 is any cross-reference to Rule 13d-1(j)'s safe harbor.  This failure to cross-reference Rule 13d-1(j) cannot be considered accidental given Rule 16a-2's exemptions for certain transactions relating to ten percent beneficial ownership (*see* 17 C.F.R. §240.16a-2(c)) and Rule 16a-1(a)(1) cross referencing §13(d) rules.  *See*, *e.g.*, 17 C.F.R. §240.16a-1(a)(1)(x) (cross-referencing 17 C.F.R. §240.13d-1(b)(1)(ii)(j)).

Similarly, Rule 13d-1(j) only refers to "section 13(d) and 13(g)" while making no reference to either Section 16(a) reporting requirements or Section 16(b) liability.  17 C.F.R. §240.13d-1(j). Had the SEC intended for that rule to also apply to Section 16(a) reporting and Section 16(b) liability, it could easily have provided for such in the language of the rule or at least not consciously

limited the rule's application to Sections 13(d) and 13(g).  *See, e.g.*, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 176 (1994) (no claiming for aiding and abetting a violation of §10(b) of the Exchange Act exists because "[w]hen Congress wished to provide a remedy … it had little trouble doing so expressly.")

*Strauss on Behalf of Servico, Inc. v. Am. Holdings, Inc.*, 902 F. Supp. 475 (S.D.N.Y. 1995), is instructive on this point.  In *Strauss,* the parties disagreed as to whether the issuer's statement concerning the number of shares outstanding in a quarterly report filed on Form 10-Q or an annual report filed on Form 10-K with the SEC governed the number of shares to be used in computing whether the defendant was a 10% or more beneficial owner of the issuer's outstanding common stock.  The court held that it was "not aware of any statute or regulation making any of these figures conclusive for Section 16 purposes."  *Id*. at 476.  In so holding, Judge Kaplan cited as a "compare" 17 C.F.R. §240.13d–1(e), which is the predecessor regulation identical in form to current Rule 13d-1(j), further evidencing that the rule does not apply to Section 16(b) actions.

*Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 130 (2d Cir. 2016), which Defendants rely upon, is not on point.  Instead, *Lowinger* involved applying SEC Rules 13d-3(a) and Rule 13d-5, 17 C.F.R. §§240.13d-3(a) and 240.13d-5, to computing or attributing beneficial ownership to a party and did *not* consider or endorse any exemptions from Section 13(d) reporting much less even mention Rule 13d-1(j).

*C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994), upon which Defendants rely, applied Rule 13d-1(e), the predecessor of Rule 13d-1(j), to a Section 16(b) action. However, that decision is neither controlling nor persuasive because the plaintiff assumed that Rule 13d-1(j) applied to §16(a) reporting requirements and §16(b) liability without examining the actual language of Rule 13d-1(j) or comparing the rule to the relevant language of either Rule 16a-

1(a)(1) or Rule 16a-2.  The language of the relevant rules, as discussed above, demonstrate that Rule 13d-1(j), in fact, does not apply to cases of Section 16(b) liability and then-Judge Mukasey was deprived of that argument in making his decision.

Applying Section 16(b) liability in the manner directed by the statute also does not create any unfair surprise.  Specifically, RCV knew at the time it sold BBBY securities in August that it was a more than 10% beneficial owner at that time (Cplt. ¶21) and knew or had a strong reason to believe that it had been a 10% or more beneficial owner of the Common Stock since March 1, 2022 based on the Company's April 21, 2022, Form 10-K stating that, as of March 26, 2022, BBBY had 79,845,789 outstanding shares of Common Stock.  *See* Defs. Ex. 4 at 2.  RC Ventures, therefore, could easily have avoided potential Section 16(b) liability by just waiting an additional two weeks – until after BBBY disclosed its financing plans including its planned at-the market offering of Common Stock – before selling its shares of Common Stock.

> **b.    Defendants Have Failed to Establish That They May Rely on the Safe Harbor Contained in Rule 13d-1(j) to Dismiss Plaintiff's Claims**

Defendants contend that Rule 13d-1(j) applies to exempt their March 2022 purchases from Section 16(b) because they did not have constructive knowledge that RCV was a 10% beneficial owner of the Common Stock.  *See* Defs. Memo. at 12-14.  Defendants, however, misconstrue the scope of the Rule 13d-1(j) safe harbor which – even assuming *arguendo* that it is relevant to this action – only applies if RCV did not have constructive knowledge, *i.e.*, "reason to believe that the information contained therein is inaccurate." 17 C.F.R. §240.13d-1(j).

The "reason to believe" or constructive knowledge standard "impute[s] to the reporting person knowledge of publicly available data."  *See* Arnold S. Jacobs, *The Williams Act—Tender Offers and Stock Accumulations*, §2:84 at nn.42-48 & accompanying text (2022 Update) (citing *SEC v. Fiore*, 416 F. Supp. 3d 306, 329-30 (S.D.N.Y. 2019); *In re Luxottica Group S.p.A.*,

*Securities Litigation*, 293 F. Supp. 2d 224, 235 (E.D.N.Y. 2003)).  Here, Plaintiff plausibly alleges RCV's constructive knowledge based upon BBBY publicly stating on November 2, 2021, that it expected to repurchase $400 million of its Common Stock by the end of its fiscal year 2021 on February 26, 2022, (Cplt. ¶7) and then publicly reaffirming on January 6, 2022, that it still intended to repurchase $275 million in Common Stock during the then-current fiscal quarter.  *Id.* ¶8.[3]

Defendants seek to flip the script by contending that RC Ventures "could not know the exact timing and amount of BBBY's share repurchases when RCV bought BBBY securities in February and March 2022."  Defs. Memo. at 15-17.  That argument, however, is inherently flawed because Defendants' *knowledge* is not an essential element for causing Rule 13d-1(j)'s safe harbor to be inapplicable with the safe harbor, instead, inapplicable where, as here, RC Ventures had "reason to believe that the information contained therein is inaccurate."  17 C.F.R. §240.13d-1(j).

In any event, at most, the Rule 13d-1(j) safe harbor constitutes an affirmative defense.  *See, e.g.*, *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 94 (2d Cir. 2016) (the Digital Millennium Copyright Act of 1998's "safe harbor is properly seen as an affirmative defense, and therefore must be raised by the defendant."); *Mercer v. Gupta*, 712 F.3d 756, 759 (2d Cir. 2013) (Exchange Act Rule 16a-1 safe harbor is an affirmative defense).  As such, it is RC Ventures' burden to establish that it lacked constructive knowledge of the relevant facts.  *See, e.g.*, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion [only] if the defense appears on the face of the complaint."); *see also* Jacobs, *The Williams Act—Tender Offers and Stock Accumulations*, §2:84

---

[3]      These allegations are taken from Form 8-K Current Reports filed by BBBY.  *See* Abraham Declaration Ex. E (compilation of current reports).

at text accompanying n.48 ("Courts should impose the burden of proving" the existence of the affirmative defense on Defendants.).

### 2. Defendants Do Not Dispute That Plaintiff Properly Alleges the Other Elements of Section 16(b)

Defendants do not, and cannot reasonably, challenge that they sold securities within a six-month period and were 10% holders at the time of some of their sales.  Their arguments for dismissal fall if they made any purchases while being subject to liability as a beneficial owner of 10% of the outstanding Common Stock.

### B. PLAINTIFF PROPERLY ALLEGES THAT RCV IS SUBJECT TO LIABILITY AS A DIRECTOR BY DEPUTIZATION

Defendants contend that: (i) Plaintiff has not properly alleged that RCV acted as a director of BBBY; and (ii) even if RCV's status as a director has been properly alleged, its transactions in the Company's securities are exempt from liability pursuant to SEC Rule 16a-2(a), 17 C.F.R. §240.16a-2(a).  Defendants are in error on both points.

### 1. Plaintiff Plausibly Alleges that RC Ventures Acted as a Director by Deputizing the New Directors to Serve on the Board

Directors are one of the classes of persons subject to Section 16(b) liability.  *See* 15 U.S.C. §78p(b).  The Exchange Act defines "director" to mean "any director of a corporation or any person performing similar functions with respect to any organization."  15 U.S.C. §78c(a)(7).  The Supreme Court, in analyzing the statutory language, held that a person need not formally be titled as a "director" to be liable under Section 16(b) but instead, could also "function through a deputy." *Blau v. Lehman,* 368 U.S. 403, 409-10 (1962).

The Supreme Court in *Blau* gave little guidance on how to spot a director by deputization but opined that the necessary relationship existed where a director had been deputized to perform a director's duties not for himself but for the entity at issue.  *Id.* at 410.  As a result, under Second

Circuit precedent, "deputization is a question of fact to be settled case by case and not a conclusion of law[.]'" *Feder v. Martin Marietta Corp.*, 406 F.2d 260, 263 (2d Cir. 1969) (quoted in *Calenture, LLC v. Pulte*, No. 21 Civ. 402, 2022 WL 912947, at *3 (S.D.N.Y. Mar. 29, 2022) (denying motion to dismiss §16(b) claims based upon a theory of deputization)); *see also* 1991 Adopting Release, 56 FR 7242, 7244 & n.27 (leaving development of deputization doctrine to case law).

Here, that RC Ventures owned a significant portion of the outstanding Common Stock, and in connection with that investment obtained the power, which RCV exercised, to appoint directors to the Board (Cplt. ¶¶14-15). *Segen v. CDR-Cookie Acquisitions, L.L.C.*, No. 05 Civ. 3509 (RWS), 2006 WL 59550 (S.D.N.Y. Jan. 4, 2006), is on point in holding that those facts at least plausibly allege that an investor deputized directors to represent its interests on a board of directors. Specifically, in *Segen*, the late Judge Sweet held that deputization was sufficiently alleged where the defendants, in connection with their investment, obtained the power to appoint three directors to company's board which the defendants then exercised to, in fact, appoint three directors. *Id.* at *7 (citing *Lewis v. Dekcraft Corp.*, No. 69 Civ. 2982, 1974 WL 418, at *3 (S.D.N.Y. June 27, 1974) (deputization was established based on the undisputed facts that the deputizing company had acquired 36% of the issuer, thereby gaining control, and pursuant to that transaction gained and exercised the right to appoint four members to the issuer's board)).

*Rubenstein v. Very Hungry, LLC*, No. 14 Civ. 888, 2015 WL 1509761 (D. Colo. Mar. 30, 2015), is the only case Plaintiff is familiar with in which a complaint alleging a deputization theory has been dismissed on a Rule 12(b)(6) motion. *Rubenstein*, however, is inapposite to the case at Bar because there the plaintiff pleaded himself out of court by "alleg[ing] facts indicating that Mr. Schatz was not, indeed, deputized and that his actions were contrary to those of a 'deputy.'" *Id.* at *2. Also, unlike the case at Bar, the defendant in *Rubenstein* "did not have a contractual right

to appoint a director to the … Board, and in [SEC filings] expressly stated that it had no intention to seek board representation…." *Id.* at *4.

Defendants seek to avoid the plausible inference of deputization created by RCV securing Board positions for the New Directors by contending that the New Directors were described as "independent" in the Company's proxy statement. *See* Defs. Memo. at 18; Defs. Ex. 7. However, independence for purposes of BBBY's proxy statement refers only to "***relationships and transactions between a director or their immediate family and the Company or members of executive management***." Abraham Decl. Ex. F. Independence in the context of the proxy statement does ***not*** relate to the relationship the New Directors had with RCV, which is the relevant issue for determining whether deputization exists.

Defendants contend that RCV could not have been a director by deputization because the Complaint does not satisfy a five-factor test which Judge Castel referred to in *Calenture*. *See* Defs. Memo. at 17-19. That multi-part test, however, is better suited to a summary judgment motion rather than the Rule 12(b)(6) motion to dismiss being decided by this Court and, in any event, Plaintiff has properly alleged facts sufficient to satisfy those five factors as demonstrated in the following analysis:

      **i.** **Whether the shareholding entity recommended the director for election or appointment to the board**. RCV secured Board spots for the New Directors. Cplt. ¶14; *see also* Cooperation Agreement §1(a). This factor is the end of the necessary analysis on a Rule 12(b)(6) motion. *See Segen v. CDR-Cookie Acquisitions, L.L.C.*, *supra*.

      **ii.** **Whether the shareholding entity recommended the director for the purpose of protecting or representing the entity's interests rather than for the purpose of guiding or enhancing the issuer's business activities.** This is an issue of fact to be resolved

through discovery.  Nonetheless, Plaintiff notes that RCV was agitating for BBBY to spin off the buybuy BABY business (*see, e.g.*, Defs. Ex.1 at p.2/4) and at least two of the New Directors were to be placed on the Strategy Committee for a "review of a strategic analysis of the buybuy BABY business."  Cooperation Agreement §1(b).  Plaintiff also notes, in consideration of appointing the New Directors to the Board, BBBY agreed to various standstill provisions preventing it from unseating the incumbent directors and management.  *See* Cooperation Agreement §2(a).  Finally, two of the New Directors, Marjorie Bowen and Benjamin Rosenzweig, resigned from the Board within months of RC Ventures selling out its interest in BBBY (*see* p. 4, *supra* (citing Exs. C and D)) evidencing that they were placed on the Board to protect RC Ventures' interests.

   **iii.**  **Whether the director regularly gained access to material nonpublic information about the issuer**.  RCV specifically retained for itself the right to "communicat[e] privately with the Board."  Cooperation Agreement §2(c).  A similar provision has been held by Judge Castel to factually support the claim that a director was deputized to represent the interests of an entity placing him on the board of directors.  *See Calenture*, 2022 WL 912947, at *5.

   **iv.**  **Whether the director shared the confidential information with the shareholding entity**.  Defendants can be considered a director by deputization even if the New Directors did not share confidential information with RCV.  *See, e.g.*, *Feder*, 406 F.2d at 264.  However, such a sharing of confidential information, if demonstrated, would conclusively establish that RCV was a director by deputization.  *See, e.g.*, *Roth ex rel. Beacon Power Corp. v. Perseus, L.L.C.*, 2006 WL 2129331, at *9-10 (S.D.N.Y. July 31, 2006), *aff'd*, 522 F.3d 242 (2d Cir. 2008).  Here, as discussed above with respect to factor (ii), the Cooperation Agreement envisioned a sharing of confidential information with RCV.

v.     **Whether the shareholding entity used the information to inform its investment strategy regarding the issuer's securities**.  The analysis for this factor is the same as for the fourth factor.  Plaintiff, however, notes that the timing of RCV's sales of BBBY Securities starting on August 16, 2022 is suspicious in light of the Company's August 31, 2022 announcement that it would be conducting an at-the-market offering of Common Stock.  Cplt. ¶25. That suspicion is further heightened by the fact that, as discussed above, Defendants would have escaped Section 16(b) liability by holding their BBBY securities for six months after the dates of purchase, *i.e.*, not engaging in short-swing trading.

### 2.     The Rule 16a-2(a) Exemption is at Odds with the Plain Language of Section 16(b) Making the Exemption a Nullity

Congress allocated to the Commission the power to exempt from Section 16(b) liability any transaction "not comprehended within the purpose of this subsection."  15 U.S.C. §78p(b).  In 1991, the SEC adopted Rule 16a-2(a), 17 C.F.R. §240.16a-2(a), exempting from §16(b) liability transactions such as those in this case occurring before the time a person became a director of a corporate issuer.  Rule 16a-2(a) seeks to overrule the Second Circuit's decision in *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959), holding that a director is liable for short-swing profits under Section 16(b) if he was a director at the time of the sale even if at the time of the matching transaction less than six months earlier he was not yet a director.

The SEC's statutory authority with respect to §16(b) is limited to exempting "any transaction or transactions which the Commission by rules and regulations may exempt as ***not comprehended within the purpose of this subsection***."  15 U.S.C. §78p(b) (emphasis added). Therefore, to be a valid exercise of the SEC's authority, Rule 16a-2(a)  must only exempt transactions not within the statutory purpose of Section 16(b) based upon its "unambiguous [meaning] using 'traditional tools of statutory construction.'"  Defs. Memo. at 22 (quoting *Chevron*

*U.S.A. Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 842 (1984)); *see also United States v. Home Concrete & Supply, LLC*, 566 U.S. 478, 488 (2012) ("[i]f a court, *employing traditional tools of statutory construction*, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.") (emphasis in original) (quoting *Chevron*, 467 U.S. at 843 n. 9). "A regulation cannot stand if it is … contrary to the statute." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 86 (2002) (citations omitted).

Here, Congress' intention and purpose with respect to the §16(b) liability of directors can be determined using such traditional rules of statutory interpretation by applying the "*expressio unius est exclusio alterius*" cannon of statutory interpretation. *Adler v. Klawans*, 267 F.2d 840, 847 (2d Cir. 1959); *see also* Defs. Memo. at 21. *Expressio unius est exclusio alterius* constitutes exactly such a traditional tool of statutory interpretation. *See, e.g.*, *Bittner v. United States*, 598 U.S. ___, 143 S. Ct. 713 (2023) (citing *Department of Homeland Security v. MacLean*, 574 U.S. 383, 391 (2015); *Gallardo v. Marstiller*, 596 U. S. ___, 142 S. Ct. 1751, 1758-60 (2022)). Congress, therefore, clearly expressed its intention to hold corporate directors liable for short swing trading pellucidly in only requiring that they be a director on either the date of the purchase or sale. *Adler v. Klawans, supra*; *Feder v. Martin Marietta*, 406 F.2d at 268. In other words, Rule 16a-2(a) is directly contrary to the statute and, therefore, invalid.[4]

Nonetheless, Defendants contend that Rule 16a-2(a) represents a valid exercise of the SEC's rulemaking authority because the Second Circuit in *Adler* held open the possibility that the

---

[4]     Plaintiff notes that the Supreme Court has repeatedly refused to afford deference to the SEC's views with respect to its proffered interpretations of Section 16(b). *See, e.g., Gollust v. Mendell*, 501 U.S. 115, 122 (1991) (rejecting SEC view with respect to the requirements for standing in a §16(b) action*); Reliance Electric Co. v. Emerson Electric Co.*, 404 U.S. 418, 426-27 (1972) (rejecting SEC views with respect to when a person became a 10% beneficial owner subject to §16(b)); *Blau*, 368 U.S. at 413 (rejecting the Commission's views with respect to expanding Section 16(b) liability to cover partnerships of which a director is a member).

SEC could exempt such transactions in the future.  *See* Defs. Memo. at 21-22. That argument lacks

merit as the Second Circuit subsequently rejected that very same argument that *Adler* left open the

possibility of the SEC being able to provide such an exemption.  *Feder v. Martin Marietta*, 406

F.2d at 268.  Instead, the Second Circuit set aside an SEC rule providing an exemption to a person

who was not a director at both the time of the purchase and sale by explaining that:

> To be sure, the congressional belief that inside information could be abused, the
> belief that prompted the prophylactic enactment of § 16(b), is just as germane to
> the situation when a person is a director only at the time of purchase as when he is
> a director only at the time of sale. For, in the case of a director who resigns his
> directorship before the sale it is possible for both the purchase and sale to have been
> unfairly motivated by insider knowledge; whereas if the purchase were made prior
> to the directorship only the sale could be motivated by inside information. Clearly,
> therefore, a 'short swing' sale or purchase by a resigning director must be a
> transaction 'comprehended within the purpose of' § 16(a), and ***to the extent Rule
> X-16A-10 exempts such a transaction from § 16(b) the Rule is invalid***.

*Id.* (emphasis added).[5]  The same result should take place here because, as is the case with former

SEC Rule X-16A-10, current SEC Rule 16a-2(a) seeks to exempt transactions by directors where

they were not beneficial owners both at the time of the purchase and sale, in contravention of the

plain meaning of Section 16(b) as established in *Adler v. Klawans*.

## C.  THE REMEDIAL PURPOSE OF §16(b) IS WELL-SERVED BY IMPOSING LIABILITY ON RCV IN THIS ACTION

Congress adopted Section 16(b) based upon evidence that "insiders actually manipulated

the market price of their stock by causing a corporation to follow financial policies calculated to

produce sudden changes in market prices in order to obtain short swing profits." *Interpretative*

---

[5]     The SEC's rationale for providing a broader exemption is that the director might not have
known that he (or she or it) would be subject to Section 16(b) liability at the time of the first
transaction.  *See* Defs. Memo. at 24 (quoting Securities Exchange Act Release No. 34-27148, 44
SEC Docket 526, §III.a.2 (Sept. 6, 1989)).  However, that rationale is a weak one given that Section
16(b) is a strict liability statute.  *See, e.g.*, *Feder v. Frost, supra*.  Moreover, an investor such as
RCV "may assure its non-liability under Section 16(b) by simply not engaging in short-swing
transactions." Romeo and Dye, *Comprehensive Section 16 Outline* at 117 (Dec. 2004).

*Release on Rules Applicable to Insider Reporting and Trading*, Exchange Act Release No. 18114, 1981 WL 31301, at *1 (Sept. 24, 1981). "Prohibiting short-swing trading by insiders with nonpublic information was an important part of Congress' plan in the [Exchange] Act to 'insure the maintenance of fair and honest markets' and to eliminate such trading." *Gollust*, 501 U.S. at 121 (quoting 15 U.S.C. §78b, citation omitted).

Congress believed that it would be difficult, if not impossible, to prove such actual speculative abuse by insiders, so "the only method Congress deemed effective to curb the evils of insider trading … a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Reliance Elec.*, 404 U.S. at 422; *see also* S. Thel, *The Genius of Section 16: Regulating the Management of Publicly Held Companies*, 42 Hastings L.J. 391, 433 & n.141 (1991). Accordingly, "Section 16(b) operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition." *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320-21 (2d Cir. 1998) (citing *Smolowe v. Delendo Corp.*, 136 F.2d 231, 235-36 (2d Cir. 1943) (quoting Rep. Corcoran, chief spokesman for the drafters and proponents of Section 16(b))).

Even though actual abuse of inside information is not an element of the claim, RCV's trading in BBBY securities implicates the concerns Congress expressed in enacting §16(b). BBBY is, or at least was during the relevant period, the precise type of small capitalization stock for which retail investors' trading activity is unrelated to fundamental value but, instead, trades based upon social media discourse. *See, e.g.*, Abraham Declaration, Ex. G at 119. Such stocks are often referred to as "meme stocks" and, indeed, BBBY Common Stock even has its own group on Reddit, a popular social media platform. *See* https://www.reddit.com/r/BBBY/; Abraham

Declaration Ex. G.  In the case of BBBY, the meme excitement centered on Cohen, the principal and managing member of RCV having taken a large stake in BBBY.  *See, e.g.*, Cplt. ¶¶13, 20.

RCV leveraged BBBY being a meme stock to its profitable advantage by filing a Schedule 13D amendment with the SEC on August 16, 2022, disclosing that it beneficially owned 11.8% of the outstanding shares of Common Stock, a change from its prior disclosure of purportedly beneficially owning only 9.8% of the outstanding shares of Common Stock.  *Compare Cplt.* ¶11 *with* ¶21.  The new disclosure acknowledged facts which already existed on March 7, 2022 and had been otherwise disclosed in a preliminary proxy statement filed with the SEC on June 1, 2022 (*id.* ¶16(b)) – more than two months earlier – and, therefore, unquestionably known to RCV as a sophisticated investor having Board representation.

BBBY shares reacted as one would expect a meme stock to react – by surging in price and volume of shares traded.  *Id.* ¶21.  RC Ventures took advantage of this price surge, dumping millions of shares at inflated prices.  *Id.* ¶23.  It was only after RCV successfully sold its shares at inflated prices to unsophisticated investors that RC Ventures disclosed that it was no longer a 10% beneficial owner of the Common Stock.  *Id.* ¶23.  Then almost on cue, two weeks later, BBBY disclosed its plan to raise capital (*id.* ¶25) which plausibly motivated RCV's rush to sell the BBBY securities it had purchased only months earlier.

## CONCLUSION

Therefore, for all the reasons set forth above and in Plaintiff's prior submissions, Defendants' motion to dismiss should be denied in its entirety.

Dated: March 24, 2023

By:  /s/  Jeffrey S. Abraham

Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 7th Avenue, 38th Floor
New York, New York 10123
Telephone: (212) 279-5050
Email: jabraham@aftlaw.com
          mklein@aftlaw.com