**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | Case No. 1:22-cv-09327-DEH |

**RC VENTURES LLC AND RYAN COHEN'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**<u>AMENDED OMNIBUS MOTION TO DISMISS THE COMPLAINTS</u>**

WOLLMUTH MAHER & DEUTSCH LLP

David H. Wollmuth
Joshua M. Slocum
Maxwell G. Dillan
Yating Wang
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com
ywang@wmd-law.com

*Attorneys for Defendants RC Ventures LLC*
*and Ryan Cohen*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................3

    A.     The Parties. .................................................................................3

    B.     RCV Purchases BBBY Securities Between January and March 2022. .................3

    C.     RCV Enters into a Cooperation Agreement with BBBY in March 2022. .............4

    D.     In April 2022, BBBY Discloses a Reduced Share Count Due to Share Repurchases. ...............................................................................5

    E.     RCV Sells Its BBBY Securities in August 2022. ....................................6

    F.     The BBBY Board Rejects Plaintiffs' Demands......................................7

    G.     BBBY Files for Chapter 11 Bankruptcy and the Bankruptcy Court Confirms the Chapter 11 Plan. ........................................................................7

    H.     Procedural History ..........................................................................8

LEGAL STANDARDS.............................................................................................9

    A.     Rule 12(b)(1) ...........................................................................9

    B.     Rule 12(b)(6) ...........................................................................9

    C.     Section 16(b)..........................................................................10

ARGUMENT.......................................................................................................11

I.    The Court Lacks Subject Matter Jurisdiction Because Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases. .........................................11

    A.     Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases Because Their Common Stock in BBBY Was Canceled. ..........................11

    B.     Plaintiffs' Attempts to Manufacture Subject Matter Jurisdiction Despite Their Lack of a Financial Interest Fail.................................................13

II.    Plaintiffs Fail to State a Section 16(b) Claim Because the Cohen Defendants Were Not Statutory Insiders When They Acquired the Stock. ..................................15

    A.     Plaintiffs Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as "Beneficial Owners."....................................15

1.   To Be a "Beneficial Owner," a Defendant Must Have Actual or Constructive Knowledge that It Holds More Than Ten Percent of a Company's Outstanding Shares. ...........................................................16

2.   Plaintiffs Do Not Plausibly Allege that the Cohen Defendants Knew or Should Have Known that RCV Held More Than Ten Percent of BBBY's Shares When It Purchased BBBY Stock. ...............................18

B.   Plaintiffs Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as Directors. .......................................................21

1.   RCV Did Not Deputize Directors via the Cooperation Agreement. .........21

2.   Even If RCV Deputized Directors, It Still Would Not Be Liable for Short-Swing Profits Under Section 16(b). ................................................23

a.   Under SEC Rules, Section 16(b) Does Not Apply to Directors' Transactions Before They Became Directors. .............24

b.   All RCV's BBBY Purchases Predate the Cooperation Agreement. .................................................................................24

c.   RCV Can Rely on the D/O Exemption. ......................................25

i.    RCV is exculpated under Section 23(a). .........................25

ii.   *Adler* Does Not Foreclose the D/O Exemption.................26

iii.  The Exemption Is Entitled to *Chevron* Deference. ...........27

CONCLUSION....................................................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adler v. Klawans,*
    267 F.2d 840 (2d Cir. 1959) ................................................................. 25, 26, 27

*Altman v. Bedford Cent. Sch. Dist.,*
    245 F.3d 49 (2d Cir. 2001) ................................................................................ 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .......................................................................................... 10

*Avalon Holdings Corp. v. Gentile,*
    No. 18 Civ. 7291, 2019 WL 4640206 (S.D.N.Y. Sept. 24, 2019) ........................ 10

*Blau v. Lehman,*
    368 U.S. 403 (1962) .......................................................................................... 21

*Bruh v. Bessemer Venture Partners III L.P.,*
    464 F.3d 202 (2d Cir. 2006) .............................................................................. 28

*C.R.A. Realty Corp. v. Enron Corp.,*
    842 F. Supp. 88 (S.D.N.Y. 1994) ........................................................... 17, 21, 25

*Calenture, LLC v. Pulte,*
    No. 21 Civ. 402, 2022 WL 912947 (S.D.N.Y. Mar. 29, 2022) ............................ 22

*Carter v. HealthPort Techs.,*
    822 F.3d 47 (2d Cir. 2016) .................................................................................. 9

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency,*
    846 F.3d 492 (2d Cir. 2017) .............................................................................. 28

*Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) ................................................................................ 26, 27, 28

*Cook v. Colgate,*
    992 F.2d 17 (2d Cir. 1993) ................................................................................ 11

*Donoghue v. Astro Aerospace Ltd.,*
    No. 19-cv-7991, 2020 WL 6802844 (S.D.N.Y. Nov. 19, 2020) .......................... 12

*Espenscheid v. DirectSat USA, LLC,*
    688 F.3d 872 (7th Cir. 2012) ............................................................................ 14

iii

*Faber v. Metro. Life Ins. Co.*,
    648 F.3d 98 (2d Cir. 2011) ................................................................................... 10

*Foremost-McKesson, Inc. v. Provident Sec. Co.*,
    423 U.S. 232–50 (1976) ............................................................................... 15, 28

*Gollust v. Mendell*,
    501 U.S. 115 (1991) ................................................................................... *passim*

*Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*,
    298 F.3d 136 (2d Cir. 2002) ....................................................................... 24, 25

*Gryl v. Shire Pharms. Grp. PLC*,
    No. 00 Civ 9173, 2001 WL 1006628 (S.D.N.Y. Aug. 31, 2001) ......................... 24

*Hassoun v. Searls*,
    968 F.3d 190 (2d Cir. 2020) ............................................................................ 27

*Hu v. City of N.Y.*,
    927 F.3d 81 (2d Cir. 2019) ................................................................................ 3

*Huppe v. WPCS Int'l Inc.*,
    670 F.3d 214 (2d Cir. 2012) ............................................................................ 28

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 544 (S.D.N.Y. 2014) ............................................................... 10

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011) ............................................................................ 10

*In re WorldCom, Inc.*,
    351 B.R. 130 (Bankr. S.D.N.Y 2006) ............................................................... 13

*Jin v. Shanghai Original, Inc.*,
    990 F.3d 251 (2d Cir. 2021) ............................................................................ 14

*Katz v. Donna Karan Co.*,
    872 F.3d 114 (2d Cir. 2017) .............................................................................. 9

*Klein on Behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*,
    906 F.3d 215 (2d Cir. 2018) ....................................................................... 12, 15

*Klein on Behalf of Qlik Techs., Inc. v. Cadian Cap. Mgmt. LP*,
    No. 15 Civ. 8140, 2017 WL 4129639 (S.D.N.Y. Sept. 15, 2017) ......................... 12

*Levy v. Southbrook Int'l Invs., Ltd.*,
    263 F.3d 10 (2d Cir. 2001) ..........................................................................16

*Lowinger v. Morgan Stanley & Co.*,
    841 F.3d 122 (2d Cir. 2016) ........................................................................16

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ..........................................................................3

*Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*,
    545 U.S. 967 (2005) ...............................................................................26, 27

*Olagues v. Perceptive Advisors LLC*,
    902 F.3d 121 (2d Cir. 2018) ........................................................................10

*Packer v. Raging Cap. Mgmt., LLC*,
    981 F.3d 148 (2d Cir. 2020) ........................................................................21

*Poodry v. Tonawanda Band of Seneca Indians*,
    85 F.3d 874 (2d Cir. 1996) ............................................................................9

*Reliance Elec. Co. v. Emerson Elec. Co.*,
    404 U.S. 418 (1972) ......................................................................................21

*Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*,
    522 F.3d 242 (2d Cir. 2008) ...................................................................28, 29

*Rubenstein v. Int'l Value Advisers, LLC*,
    959 F.3d 541 (2d Cir. 2020) ........................................................................21

*Rubenstein v. Smith*,
    132 F. Supp. 3d 1201 (C.D. Cal. 2015) ......................................................12

*Rubenstein v. vTv Therapeutics, Inc.*,
    No. 15 Civ. 9752, 2017 WL 1194688 (S.D.N.Y. Mar. 30, 2017) ...............21

*SEC v. Nutra Pharma Corp.*,
    No. 18 Civ. 5459, 2022 WL 3912561 (E.D.N.Y. Aug. 31, 2022)................17

*Shattuck Denn Min. Corp. v. La Morte*,
    No. 67 CIV. 3222, 1974 WL 373 (S.D.N.Y. Mar. 8, 1974)........................22

*Smolowe v. Delendo Corp.*,
    136 F.2d 231 (2d Cir. 1943) ........................................................................15

*St. Clair-Hibbard v. Am. Fin. Tr., Inc.*,
   812 F. App'x. 36 (2d Cir. 2020) ........................................................................3

*Stratte-McClure v. Morgan Stanley*,
   598 F. App'x 25 (2d Cir. 2015) .....................................................................20

*Van Aalten v. Hurley*,
   176 F. Supp. 851 (S.D.N.Y. 1959) ................................................................26

## Constitutional Provisions

U.S. Const. Art. III, § 2, cl. 1 ........................................................................11

## Statutes

15 U.S.C. § 78p .................................................................................*passim*

15 U.S.C. § 78u-4 ....................................................................................14

15 U.S.C. § 78w ......................................................................................25

## Rules and Regulations

17 C.F.R. § 240.13d-1 ...................................................................... 7, 17, 19, 26

17 C.F.R. § 240.16a-1 ......................................................................... 16, 17, 18

17 C.F.R. § 240.16a-2 ............................................................................. 24, 26

Fed. R. Civ. P. 12(b)(1) .......................................................................*passim*

Fed. R. Civ. P. 12(b)(6) .......................................................................*passim*

Fed. R. Civ. P. 17(a)(3) ..............................................................................12

## Other Authorities

Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv)
(5th ed. 2019) ............................................................................ 7, 18, 19, 22

SEC Division of Corporation Finance, Compliance and Disclosure Interpretations,
Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007) ........... 18

SEC, Securities Exchange Act,
Release No. 34-27148, 44 SEC Docket 526, § III.A.2. (Sept. 6, 1989) .......................28

Defendants RC Ventures LLC ("RCV") and Ryan Cohen (collectively, the "Cohen Defendants") respectfully submit this memorandum of law in support of their amended omnibus motion to dismiss the complaints of Plaintiffs Todd Augenbaum and Judith Cohen in this consolidated action.

## INTRODUCTION

This Court lacks subject matter jurisdiction and should dismiss the cases because Plaintiffs' claims are moot. Section 16(b) of the Exchange Act is a strict liability statute that requires statutory insiders of an issuer to disgorge certain profits from purchases and sales of the issuer's securities made within six months. Supreme Court precedent confirms that a plaintiff invoking this statute must not only own a security of the issuer at the outset of litigation, but also must maintain a continuing financial interest in the litigation's outcome. *Gollust v. Mendell*, 501 U.S. 115, 122-23, 126 (1991). If the plaintiff fails to maintain such an interest, the case must be dismissed as moot.

That is exactly what happened here. Plaintiffs no longer own shares of Bed Bath & Beyond Inc. ("BBBY") stock following confirmation of BBBY's bankruptcy plan, which canceled all BBBY common stock. Plaintiffs own no other BBBY securities. Plaintiff Augenbaum has purportedly purchased stock in a creditor of BBBY, but that purchase is insufficient to confer standing under Section 16(b). The cases should be dismissed under Rule 12(b)(1).

But that is not all. The Cohen Defendants were not statutory insiders when the BBBY stock was purchased. Under longstanding SEC regulations and guidance, they were not 10% beneficial owners, and they were *never* officers or directors. That means Section 16(b) does not apply—full stop. Even putting Plaintiffs' constitutional standing deficiencies to the side, their claims still fail as a matter of law and should be dismissed under Rule 12(b)(6).

As BBBY recognized when it rejected Plaintiffs' demands to bring these claims, Plaintiffs' arguments fail under well-established law, on which investors routinely rely to structure their

investments. *First*, Plaintiffs argue that the SEC regulations confirming the Cohen Defendants were not 10% beneficial owners at the time of their BBBY purchases do not apply in a Section 16(b) case. This argument fails under controlling Second Circuit precedent and the regulations themselves, which unequivocally provide that an investor may rely on an issuer's publicly reported outstanding share count when calculating beneficial ownership percentages, absent a reason to believe that number is inaccurate. Plaintiffs do not plausibly allege that the Cohen Defendants had any reason to believe that the number of shares BBBY reported as outstanding was inaccurate.

*Second*, Plaintiffs claim that even if the Cohen Defendants were not 10% beneficial owners, they were nevertheless subject to Section 16(b) as "directors by deputization." Not only do Plaintiffs' allegations fail to support this theory generally, but the Cohen Defendants *certainly* were not "directors by deputization" at the time of their BBBY purchases. Absent statutory insider status at *both* the time of the purchase and sale, Section 16(b) does not apply. Even if the Cohen Defendants became "directors by deputization" at some later date—and they did not—Plaintiffs' alternative theory cannot support liability.

*Third*, Plaintiffs claim that the governing SEC regulations are invalid. That is wrong, too, but also irrelevant. Congress has expressly absolved any party from liability under the Exchange Act when that party acted in good faith conformity with an SEC rule or regulation, even if that rule or regulation is later changed or invalidated. That means even if Plaintiffs were right that the SEC's regulations are invalid—to be clear, they are wrong—Plaintiffs' claims would still fail.

The Court should reject Plaintiffs' invitation to ignore their lack of standing and their novel efforts to radically expand the reach of Section 16(b). These cases never should have been brought, and they cannot be prosecuted by Plaintiffs who have lost all financial interest in their outcome. The Court should dismiss the cases under Rule 12(b)(1) or 12(b)(6).

## BACKGROUND

This background is drawn from the Complaints[1] and assumed true only for this motion. *See Hu v. City of N.Y.*, 927 F.3d 81, 88 (2d Cir. 2019). It is also taken from "documents attached to or incorporated by reference in the complaint, legally required public disclosure documents filed with the SEC, and documents on which the plaintiff relied in bringing suit," *St. Clair-Hibbard v. Am. Fin. Tr., Inc.*, 812 F. App'x 36, 38 (2d Cir. 2020) (summary order) (citation omitted), and from public records from BBBY's Chapter 11 bankruptcy case. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

### A.     The Parties.

Plaintiffs are purported shareholders of Defendant BBBY and seek to recoup alleged short-swing profits from the Cohen Defendants on BBBY's behalf. *See* Augen. Compl. ¶¶ 1-2; Cohen Am. Compl. ¶¶ 1, 6. BBBY was a retailer that sold "merchandise in the home, baby, beauty, & wellness markets." Augen. Compl. ¶¶ 4, 6. Defendant RCV is a Delaware limited liability company headquartered in Florida. *Id.* ¶ 3. RCV's principal business is to hold Defendant Ryan Cohen's investments; Mr. Cohen also serves as RCV's manager. *Id.*

### B.     RCV Purchases BBBY Securities Between January and March 2022.

On March 7, 2022, RCV filed a Schedule 13D with the SEC, disclosing beneficial ownership of 9,450,100 shares of BBBY—consisting of 7,780,000 shares and 1,670,100 shares underlying call options. *See* Bed Bath & Beyond Inc., Beneficial Ownership Rep. (Sched. 13D) (March 7, 2022) (the "March 7 13D"), attached as Ex. 1 to the Declaration of Joshua M. Slocum

---

[1] The operative Complaints are the Complaint of Todd Augenbaum, ECF No. 1 (the "Augen. Compl.") and the Amended Complaint of Judith Cohen, ECF No. 28 ("Cohen Am. Compl."). We refer to them collectively as the "Complaints."

in Support of the Cohen Defendants' Amended Omnibus Motion to Dismiss the Complaints ("Slocum Decl."). The March 7 13D discloses that RCV purchased these securities between January 13, 2022 and March 3, 2022. *See id.* at Sched. A. Plaintiffs do not allege that RCV purchased—and in fact RCV did not purchase—another share or security of BBBY after March 3, 2022. *See id.*; Augen. Compl. ¶ 9; Cohen Am. Compl. ¶ 20.

The March 7 13D further states that RCV's 9,450,100 shares amounted to ownership of 9.8% of BBBY's then-outstanding shares—calculated based on BBBY's most recent share count disclosure. *See* Slocum Decl. Ex. 1 at Item 5(a) (ownership interest calculated "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form 10-Q filed with the Securities and Exchange Commission on January 6, 2022"). The March 7 13D also attaches a letter the Cohen Defendants had sent to BBBY's board of directors (the "Board"). *See id.* at Ex. 99.1. The letter calls for BBBY to enact certain changes to improve shareholder value, including spinning off BBBY's buybuy BABY business. *Id.*

C.    **RCV Enters into a Cooperation Agreement with BBBY in March 2022.**

On March 24, 2022, three weeks after RCV's last stock purchase, BBBY and RCV entered into a cooperation agreement. *See* Bed Bath & Beyond Inc., Current Rep., Ex. 10.1 (Form 8-K) (March 25, 2022) (the "Cooperation Agreement"), attached as Slocum Decl. Ex. 2. In the Cooperation Agreement, BBBY and RCV reiterated that RCV owned 9.8% of BBBY's outstanding shares. *See id.* at Recital 2 ("WHEREAS, as of the date hereof, [RCV] beneficially owns . . . 9,450,100 shares, or approximately 9.8% of the Common Stock issued and outstanding on the date hereof . . . .").

Under the Cooperation Agreement, BBBY agreed to increase the Board from eleven to fourteen directors. *Id.* § 1(a)(i)(A). BBBY agreed to add three independent directors to the Board— Marjorie L. Bowen, Shelly C. Lombard, and Benjamin Rosenzweig (the "New Directors")—until

BBBY's 2022 annual shareholder meeting, at which time BBBY would revert to an eleven-member Board, and BBBY would support the New Directors' re-election. *Id.* § 1(a)(i)(B). If a New Director resigned or was removed during the standstill period, then RCV also received the right to appoint a replacement, subject to the Board's approval and certain other conditions. *See id.* § 1(a)(ii). Two New Directors would also serve on a four-member strategy committee of independent directors to review strategic alternatives for the buybuy BABY business. *Id.* § 1(b)(i). In exchange, RCV agreed to "standstill restrictions" for a designated period. *Id.* § 2(a). During the standstill, RCV agreed to vote its shares in favor of the Board's nominated directors and in favor of the Board's recommendations—unless Institutional Shareholder Services Inc. and Glass Lewis & Co., LLC recommended against any Board proposals (other than the election of directors), provided that RCV could vote in its sole discretion on any extraordinary transactions. *Id.* § 1(e)(iii).

The Cooperation Agreement did not grant RCV any information rights or permit the New Directors to share confidential information with RCV. Rather, the Cooperation Agreement prohibited the New Directors from sharing confidential information with the Cohen Defendants. *Id.* § 1(d) (requiring the New Directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board").

**D.    In April 2022, BBBY Discloses a Reduced Share Count Due to Share Repurchases.**

In November 2021 and January 2022, BBBY disclosed that it was "accelerat[ing]" its previously announced $1 billion three-year share repurchase program—anticipating completing the program "by the end of fiscal 2021, two years ahead of schedule." Bed Bath & Beyond Inc., Current Rep., Ex. 99.3 (Form 8-K) (Nov. 2, 2021), attached as Slocum Decl. Ex. 3; *see* Augen. Compl. ¶¶ 7-8; Cohen Am. Compl. ¶ 18. BBBY's 2021 fiscal year ended on February 26, 2022. *See* Bed Bath & Beyond Inc., Annual Rep., 1 (Form 10-K) (Apr. 21, 2022), attached as Slocum

Decl. Ex. 4. BBBY disclosed that it "expect[ed] to repurchase the remaining $400 million of the program by the end of fiscal 2021, specifically over the third and fourth quarters." Augen. Compl. ¶ 7. And BBBY told investors that it estimated that it would repurchase $275 million in shares in the fourth quarter of 2021. *Id.* ¶ 8.

BBBY also disclosed that these contemplated buybacks were subject to "a variety of factors, including price, general business and market conditions, and alternative investment opportunities." Slocum Decl. Ex. 3 at Ex. 99.3; *see also id*. Ex. 4 at 36 ("Our share repurchase program could change, and could be influenced by several factors, including business and market conditions, such as the impact of the COVID-19 pandemic. . . . Any future share repurchases will be subject to the determination of the Board of Directors, based on an evaluation of our earnings, financial condition and requirements, business conditions and other factors . . . ."). These disclosures proved appropriate, because BBBY did *not* end up completing its $1 billion share repurchase program on schedule. *See* Bed Bath & Beyond Inc., Press Release (Form 8-K) at Ex. 99.1 (Apr. 13, 2022), attached as Slocum Decl. Ex. 5 (noting that the repurchase program was not completed until March 2022).

On April 21, 2022, nearly fifty days after RCV's last purchase of BBBY securities, BBBY disclosed that, because of the repurchases, the number of shares outstanding had decreased to 81,979,000 as of February 26, 2022 and 79,845,789 as of March 26, 2022. *See* Augen. Compl. ¶ 12; Slocum Decl. Ex. 4 at 2, 42. The subsequent disclosure of this reduced share count indicated that RCV had held 11.5% of BBBY's shares following its last purchase, and 11.8% of BBBY's shares by March 26, 2022. *See* Cohen Am. Compl. ¶ 26.

**E.    RCV Sells Its BBBY Securities in August 2022.**

On August 16 and August 17, 2022, RCV sold all the BBBY shares and options it had purchased between January and March 2022 at a profit. *See* Bed Bath & Beyond Inc., Am.

Beneficial Ownership Rep. (Sched. 13D/A) (Aug. 18, 2022), attached as Slocum Decl. Ex. 6.

**F.    The BBBY Board Rejects Plaintiffs' Demands.**

On August 2, 2022 and September 9, 2022 respectively, Plaintiffs Augenbaum and Cohen made litigation demands on BBBY's Board. Augen. Compl. ¶ 32; Cohen Am. Compl. Ex. A. BBBY rejected both demands. Augen. Compl. ¶ 33; Slocum Decl. Ex. 7; Cohen Am. Compl. Ex. B. Addressing Plaintiffs' demands, the Board reasoned that because RCV "did not become a beneficial owner . . . for the purposes of Section 16(b) until after making the purchase identified," and could rely on the number of shares outstanding as "set forth in the issuer's most recent quarterly or annual report," it could not be held liable as a 10% beneficial owner. Slocum Decl. Ex. 7 at 2; Cohen Am. Compl. Ex. B at 3 (both citing 17 C.F.R. § 240.13d-1(j)). BBBY rejected Plaintiffs' "directors by deputization" theory, noting that all New Directors were appointed *after* RCV had completed its purchases. *See* Slocum Decl. Ex. 7 at 2-3; Cohen Am. Compl. Ex. B at 3.

In its response to Plaintiff Augenbaum's letter, the Board also observed that "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold." Slocum Decl. Ex. 7 at 2 (quoting Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77 (5th ed. 2019)). It also observed the "heavy burden" imposed by the Supreme Court on those seeking to establish deputization "is not met because [RCV's] nominees to the Company's Board of Directors are independent of [RCV], and each possesses substantial prior experience serving as a director of other public companies." *Id.*

**G.    BBBY Files for Chapter 11 Bankruptcy and the Bankruptcy Court Confirms the Chapter 11 Plan.**

On April 23, 2023, BBBY and certain of its affiliates filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey. ECF Nos. 50, 50-1, 50-2. On

September 14, 2023, the Bankruptcy Court confirmed the Second Amended Joint Chapter 11 Plan of BBBY and its Debtor Affiliates (the "Plan"). *See* Findings of Fact, Conclusions of Law, and Order, *In re Bed Bath & Beyond Inc.*, No. 23-bk-13359-VFP (Bankr. D.N.J. Sept. 14, 2023), ECF No. 2172, attached as Slocum Decl. Ex. 8. The Plan wiped out the common stockholders of BBBY, defined as "Holders" of "Interests" in "BBB." *Id*. at Ex. A pp. 7, 12, 13. Specifically, it provided: "Each Allowed Interest in BBB shall be canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBB shall be entitled to any recovery or distribution under the Plan on account of such Interests." *Id.* at Ex. A pp. 26-27. Plaintiffs claim to have been common stockholders of BBBY and their holdings are thus subject to such treatment. Augen. Compl. ¶ 2; Cohen Am. Compl. ¶ 6.

The Effective Date of the Plan was September 29, 2023. *See* Notice of Entry of Order and Occurrence of Effective Date, *In re Bed Bath & Beyond Inc.*, No. 23-bk-13359-VFP (Bankr. D.N.J. Sept. 29, 2023), ECF No. 2311, attached as Slocum Decl. Ex. 9. As of that date, Plaintiffs' common stock was "canceled" and "of no further force or effect," and Plaintiffs are not "entitled to any recovery or distribution" under the Plan. Slocum Decl. Ex. 8 at Ex. A pp. 26-27.

### H.    Procedural History

Plaintiff Augenbaum filed his Complaint on October 31, 2022 naming RCV and BBBY as Defendants. ECF No. 1. Plaintiff Cohen filed her Complaint on November 15, 2022, naming RCV and Ryan Cohen as Defendants, and BBBY as a nominal defendant. *Cohen v. Cohen*, No. 22-cv-09733-DEH (S.D.N.Y.), ECF No. 1. On December 12, 2022, the Court consolidated the Augenbaum and Cohen actions. ECF No. 20. On January 26, 2023, the Court denied Plaintiffs' motions to appoint a lead plaintiff and counsel. ECF No. 27. On February 13, 2023, Plaintiff Cohen filed her Amended Complaint. ECF No. 28. The next day, the Court granted the Cohen Defendants' request for leave to file an omnibus motion to dismiss the Complaints under Rule

12(b)(6). ECF No. 34.

The Cohen Defendants' omnibus motion to dismiss the Complaints was fully briefed by April 10, 2023. ECF Nos. 41-49. While the motion was pending, the Bankruptcy Court confirmed the Plan, and it went effective on September 29, 2023. Slocum Decl. Exs. 8-9. After an exchange of pre-motion letters, the Court granted the Cohen Defendants leave to file an amended omnibus motion of up to 30 pages to dismiss the Complaints under Rule 12(b)(1) and Rule 12(b)(6). ECF No. 61.

## LEGAL STANDARDS

### A.    Rule 12(b)(1)

"[A] Rule 12(b)(1) motion challenging subject matter jurisdiction may be either facial or fact-based." *Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)). A facial attack "challenges the sufficiency of the jurisdictional facts alleged, not the facts themselves." *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 887 n.15 (2d Cir. 1996). "However, a defendant may also make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the plaintiffs' pleading." *Katz*, 872 F.3d at 119 (internal quotations omitted). If a defendant makes a fact-based challenge, proffering evidence which "reveal[s] the existence of factual problems in the assertion of jurisdiction," then plaintiffs must come "forward with evidence of their own to controvert that presented by the defendant." *Carter*, 822 F.3d at 57. "If the extrinsic evidence presented by the defendant is material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.* "[T]he plaintiff has the burden of proving by a preponderance of evidence that subject matter jurisdiction exists." *Katz*, 872 F.3d at 120.

### B.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter . . .

to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). To be plausible, a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts must draw all reasonable inferences in the plaintiff's favor and assume all well-pleaded factual allegations to be true, they are not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (citation omitted).

### C.    Section 16(b)

Section 16(b) requires certain individuals defined as "insiders" to "disgorge short-swing profits obtained by trading in the securities of the corporation." *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018). Liability "requires (1) a purchase and (2) a sale of securities (3) by a statutory insider (4) within a six-month period." *Avalon Holdings Corp. v. Gentile*, No. 18 Civ. 7291, 2019 WL 4640206, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotations omitted). Along with directors and officers, one such statutory insider is a "beneficial owner"—i.e., one "who owns more than 10 percent of the corporation's equity securities." *Olagues*, 902 F.3d at 125 (citing 15 U.S.C. § 78p(a)(1), (b)). Because Section 16(b) is a "strict liability" statute, courts are "reluctant to exceed a literal, 'mechanical' application of the statutory text in determining who may be subject to liability." *Id.* at 126. The "strict liability remedy should be employed cautiously to avoid unfair application." *Id.*; *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 544, 551 (S.D.N.Y. 2014) (Section 16(b) is "a blunt instrument" and "must be confined within narrowly drawn limits") (internal quotations omitted). This comports with the general principle that strict liability statutes should be interpreted narrowly and against liability. *See, e.g.*, *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (statutes that "give[] rise to liability more readily" apply "more narrowly").

## ARGUMENT

**I.     The Court Lacks Subject Matter Jurisdiction Because Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases.**

These cases must be dismissed under Rule 12(b)(1) because they are moot. Plaintiffs launched these actions based on their alleged status as common stockholders of BBBY. Augen. Compl. ¶ 2; Cohen Am. Compl. ¶ 6. But their common stock has been canceled under the Plan effective as of September 29, 2023, and they are entitled to no recovery or distribution under the Plan going forward. As a result, Plaintiffs have failed to maintain a continuing financial interest in the outcome of the cases. Precedent in this circuit requires dismissal under the mootness doctrine.

**A.     Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases Because Their Common Stock in BBBY Was Canceled.**

Article III of the Constitution limits the Court's jurisdiction to matters that present actual cases or controversies. U.S. Const. Art. III, § 2, cl. 1. This limitation not only means that when a plaintiff sues in federal court, the plaintiff must have standing to pursue the asserted claims, but it "also generally means that if the plaintiff loses standing at any time during the pendency of the proceedings in the district court or in the appellate courts, the matter becomes moot, and the court loses jurisdiction." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001). "While the standing doctrine evaluates [a plaintiff's] personal stake as of the outset of the litigation, the mootness doctrine ensures that the [plaintiff's] interest in the outcome continues to exist throughout the life of the lawsuit." *Id.* (citing *Cook v. Colgate,* 992 F.2d 17, 19 (2d Cir. 1993)). "Thus, even as to claims that plaintiffs originally had standing to assert, the court must determine whether those claims remain live controversies or have become moot." *Id.*

For Section 16(b) cases, this means that a plaintiff must be the "owner of [a] security of the issuer at the time the suit is instituted," and maintain "some continuing financial interest in the outcome of the litigation." *Gollust*, 501 U.S. at 122-23, 126 (alteration in original) (internal

quotations omitted). The Supreme Court explained that the reason for this rule is two-fold: to further Section 16(b)'s "remedial purposes by ensuring that enforcing parties maintain the incentive to litigate vigorously, and to avoid the serious constitutional question that would arise from a plaintiff's loss of all financial interest in the outcome of the litigation he had begun." *Id.* at 126. Applying this rule, the Second Circuit held in *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.* that when an issuer was "bought out in an all-cash merger," it caused the plaintiff, who did not receive any stock in the surviving corporation, "to lose any financial interest in the litigation." 906 F.3d 215, 218 (2d Cir. 2018).[2] That in turn rendered the case moot unless a plaintiff who still had a financial stake in the litigation could be substituted in pursuant to Rule 17(a)(3). *Id*. But absent a meritorious motion for substitution, the Second Circuit held that the district court needed to "dismiss the matter for want of jurisdiction." *Id*. at 223; *see also Rubenstein v. Smith*, 132 F. Supp. 3d 1201, 1205 (C.D. Cal. 2015) (dismissing Section 16(b) claim under Rule 12(b)(1) because assignment of claim by issuer deprived stockholder of "any financial interest in the outcome of this case"); *cf. Donoghue v. Astro Aerospace Ltd*., No. 19-cv-7991, 2020 WL 6802844, at *1 (S.D.N.Y. Nov. 19, 2020) (dismissing Section 16(b) case as moot under Rule 12(b)(1)).[3]

Much like the plaintiff in *Qlik*, Plaintiffs lost any financial interest in the outcome of these cases after their common stock was canceled. Plaintiffs initiated these actions as holders of the

---

[2] The underlying facts in *Qlik* are set forth in the district court's opinion. No. 15 Civ. 8140, 2017 WL 4129639 (S.D.N.Y. Sept. 15, 2017). At the start of that suit, the plaintiff had standing as an owner of the common stock of Qlik, but while it was pending, however, Qlik was acquired by another company under a merger agreement that canceled "each share of Qlik common stock." *Id.* at *2.

[3] There would be no valid motion for substitution under Rule 17(a)(3). All the stock of BBBY has been canceled, so no other stockholder could step in. And BBBY already "thoroughly investigat[ed]" the Cohen Defendants' transactions and rightly concluded that they "do not give rise to liability under Section 16(b)." Cohen Am. Compl. Ex. B; *see also* ECF No. 19 (joining the Cohen Defendants' arguments that "the complaint fails to state a claim"). Nor have the Plaintiffs argued that such a motion could be made.

common stock of BBBY. Augen. Compl. ¶ 2; Cohen Am. Compl. ¶ 6. As of September 29, 2023,

however, Plaintiffs' common stock in BBBY was "canceled" and "of no further force or effect"

under the Plan. Slocum Decl. Ex. 8 at Ex. A pp. 26-27. Plaintiffs are not "entitled to any recovery

or distribution" under the Plan going forward. *Id.* And Plaintiffs did not receive any stock in any

surviving corporation (there is none—the debtor is winding down). *Id.* As a result, Plaintiffs cannot

meet the bedrock requirement that they maintain "some continuing financial interest in the

outcome of this litigation." *Gollust*, 501 U.S. at 126. These cases are thus moot and should be

dismissed for want of subject matter jurisdiction.

> **B.     Plaintiffs' Attempts to Manufacture Subject Matter Jurisdiction Despite Their
> Lack of a Financial Interest Fail.**

In their pre-motion letters, Plaintiffs advance three arguments to try to avoid the mootness

doctrine. All three are futile. First, Plaintiffs argue that a purchase of stock in Sixth Street Specialty

Lending, Inc., a creditor of BBBY, constitutes a continuing financial interest. ECF No. 59 at 1;

ECF No. 60 at 2. Plaintiffs rely on *Gollust*, but it does not support their argument.

The Supreme Court held in *Gollust* that "a plaintiff, who properly 'instituted [a § 16(b)

action as] the owner of [a] security of the issuer,' may continue to prosecute the action *after his

interest in the issuer is exchanged* in a merger for stock in the issuer's new corporate parent."

*Gollust*, 501 U.S. at 118 (alterations in original) (emphasis added). In *Gollust*, the issuer's shares

were exchanged for a combination of cash and stock in an acquiring corporation, whose sole asset

post-merger was the issuer. *Id.* at 119, 127-28. The Supreme Court did not hold that a plaintiff

maintains a continuing financial interest after its stock holdings in the issuer are canceled by

*separately* purchasing stock in a different entity.

Plaintiffs' argument was considered and rejected in *In re WorldCom, Inc.*, 351 B.R. 130,

134-35 (Bankr. S.D.N.Y 2006). There, the Court held that the plaintiff lost derivative standing

where, as here, his shares in company were "canceled" and he would "receive no distributions" under the reorganization plan, and the plaintiff could not revive his standing by buying an interest in a surviving company that merged with the reorganized debtor because that interest did not "flow from [his] former interest as a shareholder" of the debtor. *Id.* Similarly, Plaintiff Augenbaum's supposed purchase of stock in BBBY's creditor is not a "continuing financial interest" and cannot confer standing under Section 16(b) because it did not "flow from [his] former interest as a shareholder" of BBBY.[4] The Court should reject Plaintiffs' attempt to revive their standing by buying stock in BBBY's creditor.

Second, Plaintiffs argue that their statutory interest under 15 U.S.C. § 78u-4(a)(4) in a potential incentive award constitutes a continuing financial interest. ECF No. 59 at 1; ECF No. 60 at 2. Plaintiffs rely on *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021) and *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012). But *Jin* is not a Section 16(b) case, nor does it hold that an incentive award creates a continuing financial interest in such a case—it merely states in dictum that during an appeal, a class action plaintiff "may have some . . . interest in a potential incentive award for his service as class representative." 990 F.3d at 259 n.12. *Espenscheid* is similarly inapposite. It is not a Section 16(b) case either and only found that the class action plaintiffs there had a sufficient interest in appealing the decertification of the class because in settling their claims they reserved the right to seek an incentive award as class representatives if they succeeded on appeal. 688 F.3d at 874. Neither case holds that a potential incentive award under 15 U.S.C. § 78u-4(a)(4) constitutes a sufficient financial interest in the outcome of a Section 16(b) suit. If it did, then a plaintiff would always have such an interest in a

---

[4] Plaintiff Judith Cohen's pre-motion letter does not state that she bought stock in Sixth Street. *See* ECF No. 60 at 2.

Section 16(b) suit, in direct conflict with the holdings in *Gollust* and *Qlik.*

Third, Plaintiff Cohen argues that her statutory right to attorney's fees constitutes a continuing financial interest. ECF No. 60 at 2. This argument fails for the same reason as Plaintiffs' contention that a potential incentive award constitutes a continuing financial interest—if the statutory right to attorney's fees constituted such an in interest, then a plaintiff's Section 16(b) suit would never be moot. *Gollust* and *Qlik* squarely foreclose this argument. Plaintiff Cohen relies on *Smolowe v. Delendo Corp.*, 136 F.2d 231 (2d Cir. 1943). While *Smolowe* was a Section 16(b) suit, it dealt with the interpretation of the statute, *id.* at 234, and the only reason the court discussed attorney's fees was to determine whether the plaintiff was entitled to them. *Id.* at 241. *Smolowe* said nothing about whether a party's statutory right to attorney's fees constitutes a continuing financial interest to maintain a Section 16(b) suit.

The Court should reject Plaintiffs' invitation to ignore their loss of standing, and it should dismiss these cases as moot.

## II.    Plaintiffs Fail to State a Section 16(b) Claim Because the Cohen Defendants Were Not Statutory Insiders When They Acquired the Stock.

The cases should also be dismissed under Rule 12(b)(6) because Plaintiffs fail to state a Section 16(b) claim. Plaintiffs allege that RCV and (according to Plaintiff Cohen) Ryan Cohen are liable under Section 16(b) as "beneficial owners" and directors of BBBY. *See* Augen. Compl. ¶ 1; Cohen Am. Compl. ¶ 1. The governing SEC regulations foreclose this argument.

### A.    Plaintiffs Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as "Beneficial Owners."

Under Section 16(b), a defendant is liable for short-swing profits only if the defendant was a beneficial owner *both* when they purchased and sold the relevant securities. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale . . . ."); *see also Foremost-McKesson,*

*Inc. v. Provident Sec. Co.*, 423 U.S. 232, 249–50 (1976) ("We hold that, in a purchase–sale sequence, a beneficial owner must account for profits only if he was a beneficial owner before the purchase.") (internal quotations omitted). Plaintiffs fail to state a Section 16(b) claim against the Cohen Defendants as beneficial owners because they do not adequately allege that RCV was a beneficial owner when it *purchased* BBBY securities.[5]

> 1.   **To Be a "Beneficial Owner," a Defendant Must Have Actual or Constructive Knowledge that It Holds More Than Ten Percent of a Company's Outstanding Shares.**

The SEC regulations governing whether a party is a beneficial owner under Section 16(b) are clear. Section 16(b) itself "does not define the term 'more than 10% beneficial owner.'" *Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 14 (2d Cir. 2001). Instead, whether one qualifies as a beneficial owner under this statute is determined using the same definition of beneficial ownership as Section 13(d). *See Lowinger v. Morgan Stanley & Co.*, 841 F.3d 122, 130 (2d Cir. 2016); *see also* 17 C.F.R. § 240.16a-1(a)(1) ("[T]he term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder. . . .").

The regulations implementing Section 13(d) permit a party to rely on an issuer's most recent public disclosures to calculate its share counts in determining its beneficial ownership:

> For the purpose of sections 13(d) and 13(g), any person, in determining the amount of outstanding securities of a class of equity securities, *may rely upon information set forth in the issuer's most recent quarterly or annual report*, and any current report subsequent thereto, filed with the Commission pursuant to this Act, *unless he knows or has reason to believe that the information contained therein is inaccurate.*

---

[5] Plaintiff Cohen alleges that Mr. Cohen is jointly and severally liable with RCV as a beneficial owner because he had "power to vote and dispose of the Shares reported owned by" RCV. *See* Cohen Am. Compl. ¶ 57; Slocum Decl. Ex. 1 at Item 5(b). Because Plaintiffs do not state a claim against RCV as a beneficial owner, Plaintiff Cohen's claim against Mr. Cohen as a beneficial owner must also be dismissed.

17 C.F.R. § 240.13d-1(j) (emphasis added) (the "Share Count Rule"). Although the Share Count Rule appears in the regulations governing "Filing of Schedules 13D and 13G," it states that it applies "[f]or the purpose of sections 13(d) and 13(g)." *Id.*; *see also SEC v. Nutra Pharma Corp.*, No. 18 Civ. 5459, 2022 WL 3912561, at *13 (E.D.N.Y. Aug. 31, 2022) ("The number of outstanding shares found in the company's most recent quarterly, annual, or current reports filed with the SEC is used to calculate whether [Section 13(d)'s] 1% or 5% thresholds have been reached.") (citing 17 C.F.R. § 240.13d-1(j)). The Share Count Rule thus governs how to determine the percentage of shares beneficially owned under Section 16(b). *See* 17 C.F.R. § 240.16a-1(a)(1) ("[T]he term 'beneficial owner' shall mean any person who is deemed a beneficial owner pursuant to section 13(d) of the Act and the rules thereunder . . . .").[6] The Share Count Rule has been in place for decades and investors rely on it to determine whether they are subject to Section 16 reporting obligations and short-swing liability.

Under the Share Count Rule, even if an investor holds more than 10% of a company's shares, it is not a beneficial owner subject to Section 16(b) disgorgement, so long as it (1) owns less than 10% of the number of outstanding shares disclosed in the company's most recent SEC filing, and (2) could not have known (based on public filings) that it holds more than 10% of outstanding shares. *See C.R.A. Realty Corp. v. Enron Corp.*, 842 F. Supp. 88, 91 (S.D.N.Y. 1994) ("Although the newly available information indeed reveals that [defendant] held ten percent of Enron's convertible preferred stock on December 31, 1991, [defendant's] ownership on that date does not subject it to disgorgement of short-swing profits because [defendant] had no way of knowing of its ten percent status at that time."). Put differently, an investor who "is not a ten

---

[6] The plain language of this regulation directly contradicts Plaintiff Cohen's unsupported assertion that individuals can rely on the publicly reported number of shares outstanding "[f]or purposes of Section 13, but not for purposes of Section 16(b)." *See* Cohen Am. Compl. ¶ 15.

percent owner based on" the issuer's most recent SEC filing "is free to engage in transactions in the issuer's securities *without regard for Section 16*" until a new SEC filing shows "a reduction in the number of shares outstanding sufficient to make the person a ten percent owner"—unless "the person otherwise knows that he or she has become a ten percent owner." Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) (emphasis added); *see also* SEC Division of Corporation Finance, Compliance and Disclosure Interpretations, Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007) (investor becomes a "beneficial owner" under Rule 16a-1 "within ten days after information in the company's most recent quarterly, annual or current report indicates the amount of securities outstanding following the buy-back" brought them above 10% "[i]f the person does not have advance awareness of the buy-back and/or its consequences").

**2. Plaintiffs Do Not Plausibly Allege that the Cohen Defendants Knew or Should Have Known that RCV Held More Than Ten Percent of BBBY's Shares When It Purchased BBBY Stock.**

Plaintiffs do not allege facts showing that the Cohen Defendants had actual or constructive knowledge that RCV owned more than 10% of BBBY's outstanding shares in late February and early March 2022. RCV purchased its final shares on March 3, 2022. *See* Slocum Decl. Ex. 1 at Sched. A. On March 7, 2022, RCV filed a Schedule 13D, disclosing beneficial ownership of 9,450,100 BBBY shares, or 9.8% of outstanding shares. *Id.* at Item 5(a). The March 7 13D discloses that RCV calculated its ownership percentage based on the number of shares reported in BBBY's November 27, 2021 quarterly report—the most recent share count disclosure available at the time of RCV's final share purchases. *See id.* (ownership percentage "based upon 96,337,713 Shares outstanding as of November 27, 2021 as reported in the Issuer's Quarterly Report on Form

10-Q").[7] Under the Share Count Rule, RCV was entitled to rely on the share count in BBBY's most recent 10-Q, unless RCV knew or should have known that the share count was inaccurate. *See* 17 C.F.R. § 240.13d-1(j).

Plaintiffs allege no facts showing that the Cohen Defendants knew or should have known about the share count reduction in late February or early March 2022. BBBY did not disclose that it had only 81,979,000 shares outstanding as of February 26, 2022, until *April 2022*, almost fifty days after RCV's last purchases. *See* Augen. Compl. ¶ 12. Moreover, even the Cooperation Agreement language—which the Cohen Defendants agreed upon with BBBY *several weeks after* RCV's last March 2022 purchases—states that RCV owns "9.8% of the Common Stock issued and outstanding on the date hereof." Slocum Decl. Ex. 2 at Recital 2. The Cooperation Agreement, *signed by BBBY*, confirms that the Cohen Defendants had every reason to believe that RCV continued to own 9.8% of BBBY's outstanding shares as of March 24, 2022, three weeks after its last purchase. BBBY certainly did not suggest that the calculation was incorrect.

Plaintiffs plead only that BBBY announced its accelerated buyback program in November 2021 and January 2022. *See* Augen. Compl. ¶¶ 7-8; Cohen Am. Compl. ¶¶ 18-19. But as noted in the leading Section 16(b) treatise, "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold." Romeo &

---

[7] SEC filings show that six other entities made Section 13 filings in the month of February 2022, each relying on the same share count from the Quarterly Report to calculate their percent interest. *See*, *e.g.*, https://www.sec.gov/Archives/edgar/data/895421/000089542122000132/0000895421-22-000132-index.html (Morgan Stanley disclosing a 7.3% interest at 7,011,265 shares); https://www.sec.gov/Archives/edgar/data/1364742/000083423722007880/0000834237-22-007880-index.html (BlackRock disclosing a 17.2% interest at 16,527,076 shares); https://www.sec.gov/Archives/edgar/data/1009268/000110465922022706/0001104659-22-022706-index.html (D.E. Shaw & Co, L.P. disclosing a 0.6% interest at 552,294 shares).

Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77.

The facts surrounding BBBY's repurchase announcement illustrate the sound rationale for this rule. The Cohen Defendants could not know the exact timing and amount of BBBY's share repurchases when RCV bought BBBY securities in February and March 2022 for three reasons:

- BBBY's public filings expressly warned that its announced share repurchases might not take place on the anticipated timeline or at all. *See* Slocum Decl. Ex. 3 (repurchases subject to "a variety of factors, including price, general business and market conditions, and alternative investment opportunities"); Bed Bath & Beyond Inc., Quarterly Rep. 24 (Form 10-Q) (Jan. 6, 2022), attached as Slocum Decl. Ex. 10 ("The Company's share repurchase program could change, and could be influenced by several factors . . . Any future share repurchases will be subject to the determination of the Board of Directors, based on an evaluation of the Company's earnings, financial condition and requirements, business conditions and other factors . . . .").

- BBBY expressed the scale of its repurchases only in dollars and not in the number of shares repurchased. *See, e.g.*, Augen. Compl. ¶ 8 ("$275 million in Common Stock during Q4'2021"). And BBBY's stock price fluctuated significantly and constantly throughout the relevant period making it impossible to predict exactly how many shares BBBY would repurchase based on the disclosed dollar amounts. *See* Slocum Decl. Ex. 11.[8]

- Any calculation of the impact of the announced share repurchase program on

---

[8] Courts may consider publicly available stock price data upon a motion to dismiss. *See Stratte-McClure v. Morgan Stanley*, 598 F. App'x 25, 27 (2d Cir. 2015) (summary order).

BBBY's outstanding share count would assume that the program would be completed on time, which it was not. *See* Slocum Decl. Ex. 5.

"It would be unjust and would not promote the purpose of Section 16(b) to treat" RCV "as a company insider, subject to disgorgement, at a time when" it "was unable to know of that status and behave accordingly." *C.R.A.*, 842 F. Supp. at 91; *see also Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 404, 418 (1972) (investors are entitled to "structure[]" their "transaction[s] with the intent of avoiding liability" as long as "the method used to 'avoid' liability is one permitted by the statute"). To impose liability under Section 16(b) based on unconfirmed, imprecise, and highly qualified, announced plans of the issuer would radically expand the obligations of investors under this strict liability statute and violate the mandate that it be applied "cautiously" and "narrowly." *Packer v. Raging Cap. Mgmt., LLC*, 981 F.3d 148, 154 (2d Cir. 2020); *see also Rubenstein v. vTv Therapeutics, Inc.*, No. 15 Civ. 9752, 2017 WL 1194688, at *3 (S.D.N.Y. Mar. 30, 2017) (Section 16(b) is "construed narrowly to favor the insider").

### B. Plaintiffs Fail to State a Section 16(b) Claim for Short-Swing Profits Against the Cohen Defendants as Directors.

Plaintiffs also allege that the Cohen Defendants are liable under Section 16(b) because they were directors of BBBY under a "director by deputization" theory. *See* Augen. Compl. ¶ 1; Cohen Am. Compl. ¶ 1. This theory also fails.

### 1. RCV Did Not Deputize Directors via the Cooperation Agreement.

Under a "'director by deputization' theory," an investor becomes "a statutory insider when it deputizes an individual to serve as its representative on an issuer's board of directors." *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 550 (2d Cir. 2020). That turns on whether the shareholder "actually functioned as a director" because the appointee "who had been deputized" performed the "director's duties not for himself but for" the shareholder. *Blau v.*

*Lehman*, 368 U.S. 403, 410 (1962). Plaintiffs' conclusory allegations about RCV's deputization of the New Directors are devoid of any facts showing that the Cohen Defendants "actually functioned as directors" of BBBY. *See* Augen. Compl. ¶ 29; Cohen Am. Compl. ¶¶ 32-36.

In determining whether an investor should be considered a "director by deputization," courts consider several factors, including:

> (1) Whether the shareholding entity recommended the director for election or appointment to the board; (2) Whether the shareholding entity recommended the director for the purpose of protecting or representing the entity's interests rather than for the purpose of guiding or enhancing the issuer's business activities; (3) Whether the director regularly gained access to material nonpublic information about the issuer; (4) Whether the director shared the confidential information with the shareholding entity; and (5) Whether the shareholding entity used the information to inform its investment strategy regarding the issuer's securities.

*Calenture, LLC v. Pulte*, No. 21 Civ. 402, 2022 WL 912947, at *3-4 (S.D.N.Y. Mar. 29, 2022) (citing Romeo & Dye, *Section 16 Treatise and Reporting Guide*, 229–30). Plaintiffs plead the existence of only one of these factors: that RCV appointed the New Directors. Augen. Compl. ¶ 14. Without more, this allegation is insufficient, especially considering that the appointed directors were independent of both BBBY management *and* RCV. *See Shattuck Denn Min. Corp. v. La Morte*, No. 67 CIV. 3222, 1974 WL 373, at *3 (S.D.N.Y. Mar. 8, 1974) (plaintiff failed to establish deputization because "[t]here were no affairs of the partnerships which [the director] was protecting or policies which he was seeking to promote" while serving on the issuer's board of directors); *see also* Bed Bath & Beyond Inc., Definitive Proxy, 8 (DEF 14A) (June 1, 2022), attached as Slocum Decl. Ex. 12 (New Directors are independent).

While Plaintiff Cohen tries to plead that the New Directors were recommended to protect the Cohen Defendants' interests rather than BBBY's interests, her allegations are conclusory and predicated on a series of unsupported "inferences." She alleges that because (1) RCV could recommend a replacement for a departing New Director under the Cooperation Agreement, (2)

22

BBBY and RCV agreed to certain standstill provisions under the Cooperation Agreement, (3) the Cohen Defendants stated publicly that BBBY was "willing to promptly embrace our ideas," and (4) a news article reported that the Cohen Defendants "pushed the [BBBY] Board" to fire its CEO, "it is reasonably inferable" that the New Directors performed their duties for the Cohen Defendants. *See* Cohen Am. Compl. ¶¶ 32-26. But Plaintiff Cohen does not explain why these allegations support this inference and no plausible explanation is apparent. Similarly, the fact that the New Directors sat on a committee of independent directors tasked with reviewing strategic alternatives for buybuy BABY, *id.* ¶ 32, supports the inference that they were "guiding or enhancing the issuer's business activities," rather than protecting the Cohen Defendants' interests. And despite the Cohen Defendants' alleged focus on a "disposition of the buybuy BABY business segment," *id.*, and the New Directors seats on the strategy committee, Plaintiff Cohen does not allege (nor could she) that the business was ever sold.[9]

Plaintiffs' "director by deputization" theory is thus unsupported by any factual allegations and cannot support a Section 16(b) claim.

### 2. Even If RCV Deputized Directors, It Still Would Not Be Liable for Short-Swing Profits Under Section 16(b).

Even if RCV "deputized" the New Directors, it still would not qualify as a statutory insider under Section 16(b) at the time of its purchases of BBBY shares. This is because RCV did not

---

[9] Plaintiff Cohen also alleges that the sales at issue were timed in advance of adverse events for BBBY, leading to the "inference" that RCV sold because it was acting on inside information. *Id.* ¶ 60. That RCV sold before an already-floundering BBBY experienced further difficulties hardly supports this inference. This is especially true considering that the Cooperation Agreement did not give RCV any information rights and expressly prohibits the New Directors from sharing confidential information with the Cohen Defendants. *See* Slocum Decl. Ex. 2 § 1(d) (requiring the appointed directors "to strictly adhere to the policies on confidentiality, insider trading and conflicts of interest imposed on all members of the Board"). Neither Plaintiff alleges that the New Directors violated this provision, or their obligations as directors, by providing the Cohen Defendants with inside information.

enter into the Cooperation Agreement through which it appointed the New Directors until three weeks *after* its last purchase of BBBY securities.

> ### a.   Under SEC Rules, Section 16(b) Does Not Apply to Directors' Transactions Before They Became Directors.

Directors and officers generally are not liable under Section 16(b) for transactions that occurred before they became directors or officers. Under SEC regulations, there is only a "single circumstance in which an individual can be held liable for short-swing transactions conducted prior to his becoming an officer or director of the issuer." *Gryl ex rel. Shire Pharms. Grp. PLC v. Shire Pharms. Grp. PLC*, 298 F.3d 136, 141 n.3 (2d Cir. 2002) (citations omitted). The governing SEC regulation provides that a director is not liable for transactions predating its directorship unless they occur in the six months before the issuer's initial Section 12 registration:

> A transaction(s) carried out by a director or officer in the six months prior to the director or officer becoming subject to section 16 of the Act shall be subject to section 16 of the Act and reported on the first required Form 4 *only if* the transaction(s) occurred within six months of the transaction giving rise to the Form 4 filing obligation *and* the director or officer became subject to section 16 of the Act solely as a result of the issuer registering a class of equity securities pursuant to section 12 of the Act.

17 C.F.R. § 240.16a-2(a) (emphasis added) (the "D/O Exemption"). Courts dismiss Section 16(b) claims predicated on a transaction that predates a defendant's directorship unless the transaction meets this requirement. *See Gryl v. Shire Pharms. Grp. PLC*, No. 00 Civ 9173, 2001 WL 1006628, at *2 (S.D.N.Y. Aug. 31, 2001) (dismissing because "a director is not liable under 16(b) for a transaction that took place prior to his or her becoming a director").

> ### b.   All RCV's BBBY Purchases Predate the Cooperation Agreement.

The D/O Exemption bars Plaintiffs' claims even if their "director by deputization" theory were correct. RCV's last BBBY share purchases predated its execution of the Cooperation Agreement under which it appointed the New Directors by several weeks. *Compare* Slocum Decl.

Ex. 2 (Cooperation Agreement dated March 24, 2022), *with* Augen. Compl. ¶ 9 (RCV's last purchase on March 3, 2022). And RCV did not become subject to Section 16 solely as a result of BBBY registering securities under Section 12. The "single circumstance" under the D/O Exemption in which a party can be held liable for transactions predating its directorship thus does not exist here even if RCV deputized the New Directors. *Gryl ex rel. Shire Pharms.*, 298 F.3d at 141 n.3.

<div align="center">

**c.      RCV Can Rely on the D/O Exemption.**

</div>

Plaintiffs argue that RCV cannot rely on the D/O Exemption because it conflicts with a Second Circuit decision from 1959 interpreting Section 16(b)'s text. *See* Augen. Compl. ¶¶ 30-31 (citing *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959)); *see also* ECF No. 46 at 14-16; ECF No. 49 at 20-22. Plaintiffs claim the D/O Exemption exceeded the SEC's rulemaking authority and thus RCV cannot rely on it in determining Section 16 reporting obligations and short-swing liability. *Id.* Plaintiffs are wrong.

<div align="center">

**i.      RCV is exculpated under Section 23(a).**

</div>

As an initial matter, Plaintiffs' attempts to impose liability on RCV for relying on an allegedly invalid SEC regulation conflicts with Section 23(a) of the Exchange Act. Section 23(a) provides that "[n]o provision of this chapter [i.e., the Exchange Act] imposing any liability shall apply to any act done or omitted in good faith in conformity with a rule, regulation, or order of the [SEC] . . . notwithstanding that such rule, regulation, or order may thereafter be amended or rescinded or determined by judicial or other authority to be invalid for any reason." 15 U.S.C. § 78w(a)(1). As explained above, RCV acted in conformity with the D/O Exemption in determining that it was not a director for Section 16(b) purposes. Because there are no well-pled allegations of bad faith, the Cohen Defendants are exculpated under Section 23(a) even if the Court accepts Plaintiffs' argument that the D/O Exemption is invalid. *See, e.g., C.R.A.*, 842 F. Supp. at 92

<div align="center">

25

</div>

("Because Rule 13d-1(e) is relied upon by investors when they make investment decisions, the court should look only to the information available at the time of [defendant's] actions when determining [defendant's] liability for those actions. This approach is consistent with Section 23(a)(1) of the Act . . . No evidence suggests that [defendant] failed to act in good faith and in conformity with Rule 13d-1(e) during the period in question."); *Van Aalten v. Hurley*, 176 F. Supp. 851, 855 (S.D.N.Y. 1959) (explaining Section 23(a)'s "purpose is to broadly protect those who understandably rely upon a duly promulgated rule of an administrative agency, notwithstanding that such rule is thereafter invalidated.").

### ii.    *Adler* Does Not Foreclose the D/O Exemption.

At any rate, Plaintiffs are wrong that the D/O Exemption is invalid under *Adler*. In 1959, the Second Circuit held that "Section 16(b) is applicable to a short-swing transaction even though the person involved was a director only at the time of the sale and not at the time of the purchase." *Adler*, 267 F.2d at 847. In so holding, the Second Circuit applied the "*expressio unius est exclusio alterius*" canon of construction. *Id.* at 845. It reasoned that because Section 16(b) says that it applies only when beneficial owners have such status at both the purchase *and* sale and does not say the same for directors and officers, Congress did not intend for Section 16(b) to apply in the same way to directors and officers. *Id.* In 1991, the SEC bridged the gap between these two categories of insiders by enacting the D/O Exemption, thus immunizing directors from Section 16(b) liability for purchases of a company's securities before becoming a director just like beneficial owners. *See* 17 C.F.R. § 240.16a-2(a).

*Adler* does not foreclose the D/O Exemption. "A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet*

*Servs.*, 545 U.S. 967, 982 (2005); *accord Hassoun v. Searls*, 968 F.3d 190, 199 (2d Cir. 2020). While the Second Circuit determined in *Adler* that a then-existing SEC regulation did not exempt directors from Section 16(b) liability for transactions prior to becoming directors, it left open the possibility that the SEC could adopt such a (contrary) regulation. *Adler*, 267 F.2d at 847 ("Perhaps the Commission has the power to do so under the last clause of the subsection. We need not decide whether it does or not, however, since we find that it has not sought to exercise that power.") (internal citations omitted). The Second Circuit thus did not find that Section 16(b) unambiguously requires directors to disgorge short-swing profits for transactions entered into before becoming directors and its holding in *Adler* does not prevent a contrary SEC regulation entitled to *Chevron* deference. *See Brand X*, 545 U.S. at 982.

### iii.    The Exemption Is Entitled to *Chevron* Deference.

Because "prior precedent does not categorically prohibit" the D/O Exemption, *Hassoun*, 968 F.3d at 200, it is analyzed under the two-step procedure for determining deference to agency statutory interpretations, *see Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). First, the court assesses if the statute is unambiguous using "traditional tools of statutory construction." *Id.* at 842-43 n.9. If the statute is unambiguous, then the court "must give effect to the unambiguously expressed intent of Congress." *Id*. at 843. But "if the statute is silent or ambiguous," then the court asks if the regulation is "a permissible construction of the statute." *Id.*

***Silence and Ambiguity***. Section 16(b)'s text does not reveal an "unambiguously expressed intent of Congress" about whether a director must be liable for transactions predating their directorship. *Id.* at 842-43. Section 16(b) expressly delegates to the SEC the power to exempt transactions from liability, and it is silent on the contours of those exemptions. *See* 15 U.S.C. § 78p(b) ("This subsection shall not be construed to cover . . . any transaction or transactions which

the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."). Not only did "Congress explicitly delegate[] to the Commission the policymaking authority to exempt certain transactions," but it "took the further step of admonishing the courts that the statute 'shall not be construed' otherwise." *Bruh v. Bessemer Venture Partners III L.P.*, 464 F.3d 202, 208 (2d Cir. 2006); *see also Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 220 (2d Cir. 2012) (SEC has "broad exemptive authority under [Section 16(b)] not shared by the courts"). Because "Congress clearly left open a 'gap' in Section 16(b) for the SEC to fill," courts proceed to the second *Chevron* step in evaluating exemptions. *Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 242, 249 (2d Cir. 2008) (citations omitted). Courts "give *Chevron* deference to the SEC's opinion on whether the transactions exempted" under its rules "are comprehended within the purpose of Section 16(b)." *Id.* The "SEC's views are entitled to 'controlling weight' unless the regulation is 'arbitrary, capricious, or manifestly contrary to the statute.'" *Id.* (quoting *Chevron*, 467 U.S. 837, 843-44).[10]

> ***Reasonableness***. The SEC reasonably determined that the D/O Exemption furthers Section 16(b)'s purpose. The SEC enacted the D/O Exemption because it would be "unnecessarily harsh" to subject directors and officers to strict liability "even though they may not have known at the time of the transactions that they would become officers or directors in the future." SEC, Securities Exchange Act, Release No. 34-27148, 44 SEC Docket 526, § III.A.2. (Sept. 6, 1989); *see also Foremost-McKesson*, 423 U.S. at 252 ("[S]erving the congressional purpose does not require

---

[10] While *Chevron* uses the terms "arbitrary" and "capricious" regarding evaluations of express delegations of authority, courts analyze "initial interpretation[s]" of statutes by applying a "reasonableness" standard to the agency's decisionmaking and rationale under the second step of the *Chevron* analysis rather than a more heightened standard that evaluates whether a rule is procedurally defective because of "flaws in the agency's decisionmaking process." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Env't Prot. Agency*, 846 F.3d 492, 521-25 (2d Cir. 2017) (citations omitted).

resolving every ambiguity in favor of liability under § 16(b) . . . [T]he legislative history of § 16(b) indicates that by adding the exemptive provision Congress deliberately expressed a contrary choice."). This determination is reasonable and entitled to deference. *Roth*, 522 F.3d at 249.

## CONCLUSION

For these reasons, the Court should dismiss the Complaints under Rule 12(b)(1) or Rule 12(b)(6).

Dated:  November 8, 2023

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Joshua M. Slocum*
David H. Wollmuth
Joshua M. Slocum
Maxwell G. Dillan
Yating Wang
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com
ywang@wmd-law.com

*Attorneys for Defendants RC Ventures LLC and Ryan Cohen*