## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | No. 1:22-cv-09327-DEH |

## PLAINTIFF JUDITH COHEN'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS AMENDED OMNIBUS MOTION TO DISMISS THE COMPLAINTS

Dated: November 22, 2023

SQUITIERI & FEARON, LLP
Lee Squitieri
305 Broadway, 7th Floor
New York, New York 10007
lee@sfclasslaw.com
(212) 421-6492

GARDY & NOTIS, LLP
James S. Notis
150 East 52nd Street, 11th Floor
New York, New York 10022
jnotis@gardylaw.com
(212) 905-0509

*Counsel for Plaintiff Judith Cohen*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................... iii

I. INTRODUCTION .......................................................................... 1

II. COHEN AM. CMPL'S SUBSTANTIVE ALLEGATIONS ..................................... 2

   A. Plaintiff Cohen Has Alleged Facts Supporting
      All Elements Of A Section 16 Claim ............................................... 2

    1. The Issues Conceded By RC In Its Amended Motion To Dismiss ................... 2

    2. RC Crosses The 10% Threshold And
       Keeps Buying BBB Securities Long After ...................................... 2

    3. Plaintiff Cohen Adequately Alleges That RC Knew It Crossed
       The 10% Threshold By February 26, 2022 ...................................... 5

    4. Plaintiff Cohen Has Adequately Alleged
       That RC Was A Director By Deputization ...................................... 6

      a. RC Mounts An Activist Campaign Against BBB ............................... 6

      b. RC And BBB Negotiate And Execute A
         "Cooperation Agreement" And RC Appoints Board Members .................... 7

    5. Less Than Six Months After Becoming A 16(b) 10% Owner, RC
       Plans And Executes A Profitable Exit From Its BBBY Investment ............... 8

ARGUMENT ............................................................................. 12

POINT I .............................................................................. 12

STANDARDS APPLICABLE TO MOTION ....................................................... 12

   A. Cohen Am. Cmpl.'s Allegations Of The Elements Of 16(b) ....................... 12

   B. The Standards On 12b-6 Motion ................................................ 13

   C. The Standards On The 12b-1 Motion ............................................ 14

POINT II ............................................................................. 15

SUBJECT MATTER JURISDICTION IS INTACT DESPITE
BBB'S BANKRUPTCY AND CONFIRMATION OF ITS PLAN ........................................ 15

A.  Plaintiff Cohen Has Pleaded Her Statutory Standing And Article III Standing ................ 15

B.  Plaintiff Cohen Had, And Still Has Sufficient
    "Financial Interest" Standing To Satisfy Article III Standing ............................................ 16

POINT III ........................................................................................................................ 19

RC WAS A 10% BENEFICIAL OWNER OF BBNY AS OF THE
TIME OF ITS PURCHASES AFTER FEBRUARY 26, 2022 .................................................... 19

POINT IV ........................................................................................................................ 23

THE COHEN AM. CMPL. CONTAINS SUFFICIENT FACTUAL ALLEGATIONS OF
ACTUAL AND CONSTRUCTIVE KNOWLEDGE THAT RC WAS A 10%
BENEFICIAL OWNER AT THE TIME OF ITS 16(b) PURCHASES ...................................... 23

POINT V .......................................................................................................................... 24

COHEN'S FACTUAL ALLEGATION OF RC'S "DIRECTOR BY
DEPUTIZATION" STATUS MAKES THEM LIABLE UNDER RULE 16(b) ........................ 24

POINT VI ........................................................................................................................ 25

RC'S SECTION 16(b) LIABILITY CAN ALSO BE BASED UPON THEIR
STATUS AS A DIRECTOR BY DEPUTIZATION ON THE SALE DATE ALONE .............. 25

POINT VII ....................................................................................................................... 26

NEITHER THE "D/O" EXEMPTION NOR SECTION 23(a) OF
THE EXCHANGE ACT CAN EARN RC A DISMISSAL OF THE CLAIMS ......................... 26

CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

.................................................................................................................................... Page(s)

**Cases**

*Adler v. Klawans*,
   267 F.2d 840 (2d Cir. 1959) ............................................................................... 25, 26

*Altman v. Bedford Cent. Sch. Dist.*,
   245 F.3d 49 (2d Cir. 2001) ....................................................................................... 18

*Aurecchoine v. Schoolman Transp. System, Inc.*,
   426 F.2d 635 (2d Cir. 2005) ................................................................................... 15

*Blau v. Lamb*,
   363 F.2d 507 (2d Cir. 1966) ............................................................................... 22, 24

*Bruh v. BessemerVenture Partners III, L.P.*,
   464 F.2d 202 (2d Cir. 2006) ................................................................................... 27

*C.R.A. Realty Corp. v. Enron. Corp.*,
   842 F. Supp. 88 (S.D.N.Y. 1994) ...................................................................... 22, 23

*Calenturem LLC v. Pulte*,
   No. 21-civ-402, 2002 WL 912947 (S.D.N.Y. March 29, 2022) ............................ 25

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
   467 U.S. 837 (1984) ................................................................................................ 26

*Citibank, N.A. v. K-H Corp.*,
   968 F.2d 1489 (2d Cir. 1992) ................................................................................. 20

*Donoghue v. Astro Aerospace, Ltd.*,
   No. 19 cv-7991, 2020 WL 6802844 (S.D.N.Y. Nov. 19, 2020) ............................ 18

*Donoghue v. Bulldog Investors Gen. P'ship.*,
   696 F3d 170 (2nd Cir. 2012) ............................................................................ 12, 21

*Donoghue v. Golden State Bancorp, Inc.*,
   No. 02 Civ. 2404, 2003 WL 22251338 (S.D.N.Y. Sept. 30, 2003) .......................................... 14

*Espenscheid v. DirectSat USA LLC*,
   688 F.3d 872 (7th Cir. 2012) .................................................................................................... 18

*Foremost Mckesson Inc. v. Provident Securities Co.*,
   423 U.S 232 (1976) .................................................................................................................. 12

*Gollust v. Mendell*,
   501 U.S. 115 (1991) ...................................................................................................... 15, 17, 18

*Gryl ex. rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*,
   298 F.3d 136 (2nd Cir. 2002) ................................................................................................. 25

*Hassoun v. Searls*,
   968 F.3d 190 (2d Cir. 2020) .................................................................................................... 25

*Huppe v. WPCCS Intern. Inc.*,
   670 F.3d 214 (2d Cir. 2012) .................................................................................................... 27

*In re Myovant Sciences. Ltd. Section 16(b) Litig.*,
   513 F. Supp. 3d 365 (S.D.N.Y. 2021) ............................................................................... 15, 16

*In re Worldcom Inc.*,
   351 B.R. 130 (Bankr. S.D.N.Y. 2006) .................................................................................... 18

*In Re: Luxottica Group S.p.A. Sec. Litig.*,
   293 F.Supp. 2d 224 (E.D.N.Y. 2006) ..................................................................................... 23

*Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*,
   No. 12 Civ. 2683 (RWS), 2013 U.S. Dist. LEXIS 129763
   (S.D.N.Y. Aug. 31, 2013) ....................................................................................................... 14

*Jin v. Shanghai Original, Inc.*,
   990 F.3d 251 (2d Cir. 2021) .................................................................................................... 18

*Kern County Land Co. v. Occidental Petr. Corp.*,
   411 U.S. 582 (1973) ................................................................................................................ 21

*Klawans v. YA Global Invs., L.P.*,
　　No. 10 Civ. 2108 (SRC), 2011 U.S. Dist. LEXIS 88535
　　(D.N.J. Aug. 10, 2011) ........................................................................................... 14

*Klein* ex rel. *QLIK Techs., Inc. v. QLIK Techs., Inc.*,
　　906 F.3d 215 (2d Cir. 2018) ............................................................................ 15, 18

*Lowinger v. Morgan Stanley & Co. LLC*,
　　841 F.3d 122 (2d Cir. 2016) ................................................................................. 21

*Magma Power Co. v. Dow Chem. Co.*,
　　136 F.3d 316 (2d Cir. 1998) ................................................................................. 21

*McKenna v. Wright*,
　　386 F.3d 432 (2d Cir. 2004) ................................................................................. 14

*Meacham v. Knolls Atomic Power Lab.*,
　　554 U.S. 84 (U.S. 2008) ........................................................................................ 19

*Mercer v. Gupta*,
　　712 F.3d at 756 (2d Cir. 2018) ....................................................................... 13, 20

*Morrison v. Eminence Partners II LP*,
　　714 Fed. Appx. 14 (2nd Cir. 2017) ...................................................................... 15

*Nat'l Cable & Telecommunications Ass's v. Brad & Internation. Servs.*,
　　545 U.S. 967 (2005) ........................................................................................ 25, 26

*Olagues v. Perceptive Advisors LLC*,
　　902 F.3d 121 (2d Cir. 2018) ....................................................................... 20, 21, 22

*Packer v. Raging Cap. Mgmt., LLC*,
　　981 F.2d 148 (2d Cir. 2020) ................................................................................. 23

*Reliance Elec. Co. v. Emerson Elec. Co.*,
　　404 U.S. 418 (1972) ........................................................................................ 20, 22

*Roth v. Goldman Sachs Grp., Inc.*,
　　740 F.3d 865 (2d Cir. 2014) ................................................................................... 1

*Roth v. Jennings,*
   489 F.3d 499 (2d Cir. 2007) ................................................................... 20

*Rubenstein v. Smith*,
   132 F.Supp. 3d 1201 (C.D. Cal. 2015) .................................... 18, 23, 24

*Rubenstein v. vTV Therapeutics, Inc.*,
   No. 15 civ 9752, 2017 WL 1194688 (S.D.N.Y. Mar. 30, 2017) ............ 23

*SEC v. Nutra Pharma Corp.*,
   No. 18-civ-5459, 2022 WL 3912561 (E.D.N.Y. Aug. 31, 2022) ............ 21

*Shattuck Denn Mining Corp. v. LaMorte¸*
   No. 67-civ-3222, 1974 WL 373 (S.D.N.Y. Mar. 8, 1987) ...................... 25

*Smolowe et al. v. Delendo Corporation et al.*,
   136 F.2d 231 (2d Cir. 1943) ................................................................... 17

*Spokeo Inc v. Robins*,
   578 U.S. 330 136 S Ct. 1540 (2016) ................................................ 16, 19

*United States v. Home Concrete & Supply, LLC,*
   566 U.S. 478 (2012) ............................................................................... 26

*United States v. Windsor,* 570 U.S. 744 (2013) ......................................... 15

Plaintiff Judith Cohen ("JC" or "Plaintiff") submits this Memorandum of Law in Opposition to RC Ventures LLC and Ryan Cohen's ("RC") Motion in Support of Their Amended Omnibus Motion To Dismiss The Complaints ("RC MTD") (referring to the accompanying memorandum of RC as "Br. at ___").[1]

## I.

## <u>INTRODUCTION</u>

This is a single count action against RC under Section 16 of the Securities Exchange Act to disgorge insider trading profits on RC's purchases and sale of stock while it was a 10% owner and/or a deputized director of Bed Bath & Beyond Corporation ("BBBY") within six months. Plaintiff's Section 16 claims has four simple elements: "(1) a purchase; (2) a sale of securities; (3) by a statutory insider; and (4) within a six month period." *Roth v. Goldman Sachs Grp., Inc.*, 740 F.3d 865, 869 (2d Cir. 2014). Pleading a claim under Section 16 is also simple inasmuch as it is only subject to Fed. R. Civ. P. Rule 8's notice pleading requirements and Rule 9's requirement that knowledge of a Defendant need only be averred generally.

---

[1] RC's Amended MTD is directed jointly to JC's Amended Complaint (ECF No. 28) (the "Cohen Am. Cmpl.") and the initial complaint of Plaintiff Todd Augenbaum ("Augenbaum Cmpl.") (ECF No. 1, No. 22-cv-9327 (October 31, 2022)). The Cohen Am. Cmpl. was filed on February 13, 2023 and included numerous new paragraphs of factual allegations sourced from the amended complaint filed in *In Re Bed Bath & Beyond Corporation Securities Litigation* (U.S.D.C. D.C.) Case No. 1:22-cv-02541 (TNN) Docket No. 66, ("Securities Class Action Amended Complaint") filed January 28, 2023 and also included information from agreements between BBBY and RC filed with the SEC. The fourteen-page Augenbaum complaint was not amended. JC has, unlike co-plaintiff Augenbaum, filed a highly factually detailed amendment to her original complaint. Tellingly, in their "Omnibus" motion, in the sections addressing Defendants' constructive or actual knowledge that they passed the 10% insider threshold in late February 2022 (Br. 18-21) RC avoids any discussion of the factual allegations in Cohen's and in the director-by-deputization section (Br. 21-25). RC cites Cohen's Amended Complaint at ¶¶ 32-36, 60 but mainly to show that said facts can be rebutted by the extensive evidence to which RC cites such as The 2022 Proxy. (Br. at 22).

At the outset, it should be noted that Plaintiff's factual allegations demonstrate a sufficient factual basis for both statutory standing under 16(b) and Article III standing.

Recognizing the sufficiency of the factually detailed allegations of the Cohen Am. Cmpl., RC resorts to fact based arguments to (a) negate its status as a 10% beneficial owner and (b) negate its status as a director by deputization. RC's main line of attack on the pleading is to deny that they were "beneficial owners, directors or officers at the time of the purchases at issue." Br. at 1. RC argues it was not a 10% "beneficial owner" at the time of purchase because RC "relied" on BBBY's January 6, 2022 Quarterly Report on Form 10-Q which reported that as of November 27, 2021, BBY's outstanding share count was 96,337,713. RC here argues based on that published number RC was not a 10% owner at any time when it acquired BBBY securities. RC denies being a "director by deputization" but argues that even if RC was director by deputization, it matters not because it only became a director by deputization after it completed all its purchases and put two representatives on BBB's board.

RC is a classic short-swing profiteer seeking to evade its statutory liability by conflating various statutes, feigning ignorance of its 10% owner insider status in February 2021 and offering a "financial interest" standing argument which cannot withstand scrutiny under any analysis of statutory standing or Articles II standing jurisprudence.

In light of all the pleaded facts in the Cohen Am. Cmpl, RC's embrace of Exchange Act Section 23 for a "good faith" safe harbor, (even if the theory was legally tenable), must fail as the facts alleged demonstrate RC's lack of, indeed rejection of, any "good faith" actions or even attitude.

As the legal argument in opposition herein makes clear, Cohen's position is hardly a ". . . novel effort to radically expand the reach of Section 16(b)." Br. at 2.

## II.

## COHEN AM. CMPL'S SUBSTANTIVE ALLEGATIONS

**A.**   **Plaintiff Cohen Has Alleged Facts Supporting
All Elements Of A Section 16 Claim**

**1.**   **The Issues Conceded By RC In Its Amended Motion To Dismiss**

RC <u>does not</u> dispute that it was the beneficial owner of the securities as alleged in the Cohen Am. Cmpl.; <u>nor</u> does RC dispute the dates or amounts of purchase and sale; <u>nor</u> does RC dispute its pecuniary interest status as both purchaser and seller; <u>nor</u> does RC dispute that it profited from the purchase and sale of BBBY securities inside of six months.

**2.**   **RC Crosses The 10% Threshold And
Keeps Buying BBB Securities Long After**

On January 13, 2022, according to their own SEC filings, Defendants began to accumulate BBBY securities and based on publicly available data, and admission of counsel for RC Ventures LLC (ECF No. 12) as to the number of shares outstanding as of February 26, 2022, *i.e.*, 81,979,000, Defendants passed the 10% beneficial owner threshold with their purchases on or before February 26, 2022. Cohen Am. Cmpl. ¶ 11. Thereafter, RC acquired many hundreds of thousands of additional shares and options (Cohen Am. Cmpl. ¶¶ 20-21) all of which were sold within six months of purchase.

On March 7, 2022, Cohen filed a Schedule 13D that detail all of its acquisitions, dates, amounts and prices of a total of 9,450,100 shares of BBBY's stock, including 7,780,000 shares of common stock, as well as 1,670,100 shares underlying call options, the calls were American-

style options, with strike prices ranging from $60 to $80 and an expiration date of January 2023.

Cohen Am. Cmpl. ¶ 21. RC acquired hundreds of thousands of shares after February 26, 2022:

| Nature of Transaction | Amount of Securities Purchased | Price per Share ($) | Date of Purchase |
|---|---|---|---|
| Purchase of Common Stock | 1,000,000 | 14.7690 | 01/13/2022 |
| Purchase of Common Stock | 500,000 | 15.2860 | 01/14/2022 |
| Purchase of Common Stock | 300,717 | 14.3930 | 01/20/2022 |
| Purchase of Common Stock | 99,283 | 13.0760 | 01/21/2022 |
| Purchase of Common Stock | 50,000 | 14.9100 | 01/25/2022 |
| Purchase of Common Stock | 200,000 | 15.0480 | 01/26/2022 |
| Purchase of Common Stock | 251,336 | 13.8440 | 01/27/2022 |
| Purchase of Common Stock | 440,981 | 14.4890 | 01/28/2022 |
| Purchase of Common Stock | 44,333 | 16.5810 | 01/31/2022 |
| Purchase of Common Stock | 609,941 | 16.4710 | 01/31/2022 |
| Purchase of Common Stock | 187,962 | 16.9760 | 02/01/2022 |
| Purchase of Common Stock | 156,574 | 17.1020 | 02/02/2022 |
| Purchase of Common Stock | 75,000 | 16.0790 | 02/04/2022 |
| Purchase of Common Stock | 83,873 | 16.2780 | 02/07/2022 |
| Purchase of Common Stock | 70,000 | 15.8230 | 02/14/2022 |
| Purchase of Common Stock | 30,000 | 16.2280 | 02/16/2022 |
| Purchase of Common Stock | 75,000 | 14.0310 | 02/22/2022 |
| Purchase of Common Stock | 367,833 | 15.2060 | 02/24/2022 |
| Purchase of Common Stock | 500,000 | 13.6600 | 02/24/2022 |
| Purchase of Common Stock | 500,000 | 14.5770 | 02/24/2022 |
| Purchase of Common Stock | 300,000 | 13.4260 | 02/24/2022 |
| Purchase of Common Stock | 542,621 | 16.2230 | 02/25/2022 |
| Purchase of Common Stock | 115,000 | 16.1140 | 02/25/2022 |
| Purchase of Common Stock | 500,000 | 16.6010 | 02/28/2022 |
| January 2023 Call Option ($60 Exercise Price) | 4,757 | 0.9324 | 02/28/2022 |
| January 2023 Call Option ($75 Exercise Price) | 243 | 0.7603 | 02/28/2022 |
| January 2023 Call Option ($60 Exercise Price) | 5,000 | 1.4693 | 03/01/2022 |
| January 2023 Call Option ($60 Exercise Price) | 1,500 | 1.4115 | 03/01/2022 |
| January 2023 Call Option ($75 Exercise Price) | 201 | 1.0803 | 03/01/2022 |
| January 2023 Call Option ($80 Exercise Price) | 5,000 | 0.7103 | 03/01/2022 |
| Purchase of Common Stock | 307,341 | 16.9429 | 03/01/2022 |
| Purchase of Common Stock | 311,660 | 16.7564 | 03/01/2022 |
| Purchase of Common Stock | 70,545 | 16.6800 | 03/01/2022 |
| Purchase of Common Stock | 69,516 | 17.2540 | 03/02/2022 |
| Purchase of Common Stock | 20,484 | 16.8090 | 03/03/2022 |

*Id.*

Cohen erroneously reported that he beneficially owned 9.8% of the total outstanding shares of BBB's stock, which Cohen stated in the Schedule 13D was based on the Company's 96.3 million shares outstanding as of November 27, 2021, as reported in BBB's then most recent Form 10Q for the quarter ended November 27, 2022 wherein it reported its outstanding share count as 96,337,73 filed on January 6, 2022.  Cohen Cmpl. ¶ 23. However, by February 26, 2022, BBB had completed its publicly reported stock repurchase program and any diligent market participant such as Defendants knew that the 96.3 million shares outstanding number was stale and did not reflect the lower number of outstanding shares resulting from the buyback as of February 22, 2022.

On and after August 16, 2022, but in any event within six months of RC's post February 26, 2022 acquisition of BBBY securities and while still 10% owners and/or director by deputization, RC sold a matching position of their entire purchases for more than the purchase price.  Cohen Cmpl. ¶ 14.The excess of the sales proceeds over the purchase price calculated at the lowest purchase price and highest sale price imputable to all sales constitutes the disgorgeable short swing profits under Rule 16(b).

### 3. Plaintiff Cohen Adequately Alleges That RC Knew It Crossed The 10% Threshold By February 26, 2022

On November 2, 2021, after the markets had closed for the day, BBBY issued a press release announcing that it would accelerate its $1 billion three-year share repurchase plan to conclude by the end of fiscal 2021 (ending February 26, 2022), two years ahead of a previously announced schedule.  Cohen Cmpl. ¶ 18. RC was aware of BBBY's $1 billion share repurchase program, which Ryan Cohen mentioned twice in his March 6 letter to the Company's board, and which had been covered widely in the financial press for months. *Id*. In the November 2, 2021 press release, BBBY disclosed that in the first (fiscal) six months (ended July 31, 2021) of the

2021 fiscal year, the Company executed approximately $225 million in repurchases with $100 million remaining under its $325 million plan for fiscal 2021 which was part of the three year $1 billion repurchase program. Cohen Am. Cmpl. ¶ 18.

Defendants knew or were reasonably able to calculate that they had become 10% owners at least by February 26, 2022 (or at least had reason to know the last published share count was inaccurate) because Defendants knew the dollar amount of stock buyback approved by the Board and knew the balance remaining as of the last BBBY SEC filing with an outstanding share count. Defendants also knew that BBBY publicly announced that it intended to expend all monies under existing buyback program by end of the fourth quarter for fiscal 2021-22, *i.e.*, February 26, 2022. Cohen Am. Cmpl. ¶¶ 23-28. Because of these repurchases, the Company's total outstanding shares decreased to approximately 81.98 million shares by February 26 and approximately slightly less than 80 million shares by March 26. Knowing trading volume and prices, Defendants had the means and opportunity to calculate that they had passed the 10% Rule 16 threshold by February 26, 2022.

Because of BBBY's repurchases, by February 26, 2022, RC's disclosed beneficial ownership of the Company exceeded 10% of the Company's total number of outstanding shares. By March 3, 2022 RC's total beneficial ownership stake had increased to 11.5%. As soon as RC's ownership stake exceeded 10%, he became a Section 16 insider.

### 4.    Plaintiff Cohen Has Adequately Alleged That RC Was A Director By Deputization

#### a.    RC Mounts An Activist Campaign Against BBBY

On March 24, 2022, BBBY and Cohen both filed public reports with the SEC announcing that they entered into a Cooperation Agreement ("CA") whereby BBBY permitted Cohen to appoint three new members to the Board and also required the creation of a four-member

"Strategy Committee" to oversee and review a strategic analysis of the Company's "BuyBuy Baby" banner. Cohen Am. Cmpl. ¶ 30.

> **b.**     **RC And BBB Negotiate And Execute A "Cooperation Agreement" And RC Appoints Board Members**

Pursuant to the CA, immediately after its execution, BBBY appointed three new directors selected by Defendants to be RC's representatives of the BBBY board: Marjorie L. Bowen, Shelly L. Lombard, and Benjamin Rosenweig (the "New Directors"). Cohen Am. Cmpl. ¶ 31. BBBY agreed to nominate each of the New Directors for election at the 2022 Annual Meeting. *Id.* BBBY knew the identity and backgrounds of the New Directors.  BBBY also agreed that three of its then current directors would not stand for reelection at the next annual meeting to make way for RC's appointees. The CA also gave Defendants the right to recommend a replacement director if any New Director was unable or unwilling to serve but <u>only</u> if Defendants maintained ownership of at least 4.04% of BBBY's then outstanding common stock or 3,900,000 shares. *Id.* at 32. Thus, the New Directors' primary mission was to protect Defendants' interest while such interest remained higher than 4.04% of the shares outstanding.  The CA also provided for creation of a Strategy Committee of the Board "to support the Board's" oversight and review of a strategic analysis of the "buybuy Baby business" consisting of four directors, two of whom would be New Directors.  *Id.* at 32. The disposition of the buybuy Baby business segment was Defendants' focus of their activist assault on BBBY in February/March 2022.

Acknowledging that the New Directors were placed on the BBBY board to primarily serve as representatives of Defendants' interests rather than BBBY's interests, BBBY and Defendants agreed to "Standstill Provisions" designed to prevent the New Directors from exercising certain rights or engaging in certain actions on behalf of Defendants, such as proxy solicitations, for the life of the CA. Cohen Am. Cmpl. ¶ 33.

In a March 25, 2022 press release, Defendants admitted that the results of the CA was that BBBY "management and the Board" were "willing to promptly embrace our ideas and look forward to supporting them in the year ahead."  Cohen Am. Cmpl. ¶ 34. Accordingly, it is reasonable to infer that the mission of the New Directors was to implement "our [*i.e.*, Defendants'] ideas."

In June 2022, BBBY CEO Mark Tritton ("Tritton") was relieved of his officer and director duties at BBBY.  Bloomberg reported that Defendants "pushed the board" to fire Tritton.[2] Cohen Am. Cmpl. ¶ 35.

The foregoing facts establish that, or at least raise a compelling inference that the New Directors performed their director duties for the benefit of Defendants after they were deputized to serve as Defendants' representatives on BBBY's board of directors and thus for Rule 16(b) purposes Defendants are "directors."

### 5.    Less Than Six Months After Becoming A 16(b) 10% Owner, RC Plans and Executes a Profitable Exit From Its BBBY Investment

When the markets opened on Monday, August 15, 2022 BBBY's stock continued to rise, opening at $15 per share and rising by 23.55% to close at $16 per share, with a trading volume of 164.66 million shares, more than double the number of shares traded on the previous trading day. By closing at $16 per share, the price of BBBY's common stock reached a value just above the minimum price that Cohen needed to be able to profit by selling his holdings.  Cohen Am. Cmpl. ¶ 40.

Although RC's newly filed Form 3 on August 15th and its August 16th Schedule 13D/A showed that it beneficially owned the same amount of shares that it owned months earlier,

---

[2] https://www.bloomberg.com/news/articles/2022-06-29/bed-bath-beyond-recovery-prospects-look-bleak-as-ryan-cohen-hangs-in?leadSource=uverify+wall.

reporting by some financial news outlets suggested that filing revealed Ryan Cohen had increased his stake in the company. Cohen Am. Cmpl. ¶¶ 41-44.

Following RC's filing of the August 16 Schedule 13D/A, BBBY's stock price surged by more than 70% to an intraday high of $28.04 per share amid multiple halts due to volatility, closing 29% higher than the previous day at $20.65 per share. That day, trading volume soared to more than 395 million shares compared to only about 80 million shares outstanding, more than double the 164 million shares traded the previous day. *Id.* at 44. The following day, *Bloomberg* published an article entitled, "Bed Bath & Beyond 40% Rally Is Supercharged by Retail Money," reporting that retail traders bought an all-time high of $73.2 million of the stock on August 16, 2022 bringing their total net purchases in three weeks to $171.4 million, according to data compiled by Vanda Research.[3]

Unbeknownst to investors, however, RC sold 5 million shares of BBBY stock on August 16, 2022, representing 64% of his holdings, at prices between $18.06 and $26.45, for total proceeds of roughly $105.84 million, as follows:

| Nature of the Transaction | Securities Sold | Price per Security ($) | Date of Sale |
|---|---|---|---|
| Sale of Common Stock | 446,399 | 18.6848 | 08/16/2022 |
| Sale of Common Stock | 812,448 | 19.4817 | 08/16/2022 |
| Sale of Common Stock | 1,443,818 | 20.7834 | 08/16/2022 |
| Sale of Common Stock | 1,059,021 | 21.4209 | 08/16/2022 |
| Sale of Common Stock | 795,559 | 22.7093 | 08/16/2022 |
| Sale of Common Stock | 169,335 | 23.3293 | 08/16/2022 |
| Sale of Common Stock | 103,901 | 24.8685 | 08/16/2022 |
| Sale of Common Stock | 104,077 | 25.5918 | 08/16/2022 |
| Sale of Common Stock | 65,442 | 26.2713 | 08/16/2022 |

Cohen Am. Cmpl. ¶ 45.

---

[3] https://www.bloomberglaw.com/product/blaw/document/RGRZKZDWRGG5?crite-ria_id=ddc558747700b97b45d4271144932a51&searchGuid=bc3ad964-eb13-4aaf-ad4b-fb12bb48c3c8.

On August 17, 2022, investors continued to buy millions of shares of BBBY stock, unaware that RC had already sold nearly his entire holdings the day before.  Cohen Am. Cmpl. ¶ 46. That day, BBBY's stock price opened at $26.93, rising to an intraday high of $30 before closing up by 11.77% at $23.08 per share, with trading volume of more than 261 million shares.  *Id.* According to *Bloomberg,* retail investors continued to drive BBBY's rally, reporting that BBBY's stock was the most purchased asset on Fidelity on August 17, 2022, with buy orders that markedly outpaced those to sell and net purchases that were more than double the size for Tesla, Inc., the next most-bought stock.[4] *Bloomberg* continued: "That demand mirrors the optimism expressed on day trader chatroom StockTwits where Bed Bath & Beyond has the number one trending ticker and on Reddit's WallStreetBets where it continued to be the most discussed company." *Id.* at 46.

Throughout the day on August 17, 2022 however, and unbeknownst to investors, RC sold the rest of his holdings of BBBY securities, selling his remaining 2.78 million shares at prices between $23.06 and $29.99, for a total amount of about $72.17 million, as follows:

| Nature of the Transaction | Securities Sold | Price per Security ($)[5] | Date of Sale |
|---|---|---|---|
| Sale of Common Stock | 189,689 | 23.7337 | 08/17/2022 |
| Sale of Common Stock | 512,185 | 24.6266 | 08/17/2022 |
| Sale of Common Stock | 896,238 | 25.4997 | 08/17/2022 |
| Sale of Common Stock | 610,828 | 26.4432 | 08/17/2022 |
| Sale of Common Stock | 323,483 | 27.5756 | 08/17/2022 |
| Sale of Common Stock | 140,788 | 28.5122 | 08/17/2022 |
| Sale of Common Stock | 106,789 | 29.2192 | 08/17/2022 |

Cohen Am. Cmpl. ¶ 49.

---

[4] https://www.bloomberg.com/news/articles/2022-08-17/bed-bath-beyond-s-492-rally-is-supercharged-by-retail-traders.

[5] According to RC's later-filed amended Schedule 13D dated August 18, 2022, these prices represent a weighted average price of shares sold in multiple transactions at prices ranging from $23.06 to $29.99.

That same day, RC also sold all his call options at prices from $6.4 to $8.9, for a total amount of $112,733.30. RC's sales earned him a total profit of approximately $58.64 million, before taxes, compared to his purchases just five months earlier.[6] Cohen Am. Cmpl. ¶ 48.

Sixteen minutes after markets closed on August 18, 2022, RC filed another amended Schedule 13D, which finally disclosed that he had liquidated his entire position in BBBY securities, selling his remaining stock and call options on August 17, 2022. Cohen Am. Cmpl. ¶ 50. RC's filing listed the following transactions:

| Nature of the Transaction | Securities Sold | Price per Security ($) | Date of Sale |
|---|---|---|---|
| Sale of Common Stock | 446,399 | 18.6848 | 08/16/2022 |
| Sale of Common Stock | 812,448 | 19.4817 | 08/16/2022 |
| Sale of Common Stock | 1,443,818 | 20.7834 | 08/16/2022 |
| Sale of Common Stock | 1,059,021 | 21.4209 | 08/16/2022 |
| Sale of Common Stock | 795,559 | 22.7093 | 08/16/2022 |
| Sale of Common Stock | 169,335 | 23.3293 | 08/16/2022 |
| Sale of Common Stock | 103,901 | 24.8685 | 08/16/2022 |
| Sale of Common Stock | 104,077 | 25.5918 | 08/16/2022 |
| Sale of Common Stock | 65,442 | 26.2713 | 08/16/2022 |
| Sale of Common Stock | 189,689 | 23.7337 | 08/17/2022 |
| Sale of Common Stock | 512,185 | 24.6266 | 08/17/2022 |
| Sale of Common Stock | 896,238 | 25.4997 | 08/17/2022 |
| Sale of Common Stock | 610,828 | 26.4432 | 08/17/2022 |
| Sale of Common Stock | 323,483 | 27.5756 | 08/17/2022 |
| Sale of Common Stock | 140,788 | 28.5122 | 08/17/2022 |
| Sale of Common Stock | 106,789 | 29.2192 | 08/17/2022 |
| Sale of 01/23 Call Option ($60 Strike Price) | 7,475 | 6.5466 | 08/17/2022 |
| Sale of 01/23 Call Option ($60 Strike Price) | 3,782 | 8.6177 | 08/17/2022 |
| Sale of 01/23 Call Option ($75 Strike Price) | 444 | 5.6596 | 08/17/2022 |
| Sale of 01/23 Call Option ($80 Strike Price) | 3,826 | 5.3433 | 08/17/2022 |
| Sale of 01/23 Call Option ($80 Strike Price) | 1,174 | 7.0264 | 08/17/2022 |

*Id*. at ██.

---

[6] This figure is based on the weighted average prices of shares bought and sold by RC from January to August 2022, as disclosed in his Schedule 13D filings. *Id*. at footnote 9.

After the market learned about RC's sales, BBBY's stock price immediately collapsed, sliding by 46% in afterhours trading, and closing at $11.03 on August 19, 2022, representing a 40.54% drop from the previous day, with a trading volume of 136.5 million. Cohen Am. Cmpl. ¶ 52.

Defendants' sales in August 2022 took place only days before several material adverse events occurred at BBBY which were not made public when Defendants sold their shares and which Defendants could only have known from the New Directors. Such information included BBB's preparation for a dilutive "at-the-market" offering of 12 million shares or 15% of BBB's outstanding shares; the fact that BBBY suppliers had restricted or halted shipments because of BBBY's failure to make payments and that BBBY's credit insurance had been revoked; and that BBBY had decided not to sell or spinoff buybuy Baby.  None of the foregoing became public knowledge before August 19, 2022. Cohen Am. Cmpl. ¶ 60.

Thus, the timing of Defendants' sales appears to have been the product of a plan to sell all of their holdings before the imminent release of material adverse nonpublic information on or after August 18, 2022. *Id.*

## ARGUMENT

## POINT I

## STANDARDS APPLICABLE TO THIS MOTION

### A.    Cohen Am. Cmpl.'s Allegations Of The Elements Of 16(b)

Section 16(b) is an absolute liability statute. *See e.g. Foremost Mckesson Inc. v. Provident Securities Co.*, 423 U.S 232, 251 (1976); *Donoghue v. Bulldog Investors Gen. P'ship.* 696 F.3d 170, 174 (2nd Cir. 2012) which provides:

> For the purpose of preventing the unfair use of information which may have been obtained by … [a] beneficial owner [of 10% or more of any class of equity security],

director or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer … within any period of less than six months … shall inure to and be recoverable by the issuer, irrespective of any intent on the part of such beneficial owner, director or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period not exceeding six months.

The Cohen Am. Cmpl. establishes RC's liability under Section 16(b): RC's became 10% beneficial owners on or before February 26, 2022.[7] Cohen Am. Cmpl. ¶¶ 11, 22, 30. After February 25, 2022, RC acquired millions of shares of BBBY securities in multiple transactions. As a result of a reduction in BBBY's outstanding common stock share count from BBBY's share repurchases in December 2021 and January and February of 2022, by February 25, 2022, RC's beneficial ownership of the BBBY securities exceeded 10% of BBBY's total number of outstanding common shares. Cohen Am. Cmpl. ¶¶ 20, 22, 30. After that date, all of RC's purchases were Rule 16(b) eligible purchases. *See* Cohen Am. Cmpl. ¶ 20 (purchase data post-dating February 25, 2022). RC becomes a director by deputization. Within six months of February 26, 2022, RC sold all of its BBBY securities. Cohen Am. Cmpl ¶¶ 33-37, 39). By the time of RC's sales in August 2022, it was <u>still</u> a 10% owner <u>and</u> also a director by deputization.[8]

### B.     The Standards On 12(b)(6) Motion

In deciding the motion, the Court is limited to the facts "appearing on the face of the complaint." *Mercer v. Gupta*, 712 F.3d at 756, 759 (2d Cir. 2018)). In addition, Plaintiff is entitled

---

[7] RC's counsel admitted that BBBY's outstanding share count as of February 25, 2022 was 81,979,000. (citing ECF No. 12).

[8] RC does not challenge its liability under a scenario in which RC was a 10% owner for all its post February 25, 2022 purchase and was <u>either</u> or <u>both</u> of a director by deputization <u>or</u> 10% owner at time of sale. Plaintiff Cohen alleges that even if RC was not a director by deputization at the time of purchase or sale, its 10% status as of the time of first sale (Cohen Am. Cmpl. ¶¶ 45-50) makes all sales matchable against all post February 26, 2022 purchases.

to all reasonable inferences from the facts alleged. *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The plausibility standard and Rule 8 ("short plain statement") and Rule 9 ("knowledge may be averted generally") control here. The plausibility standard "is not intended to be an onerous burden, as plaintiffs need only allege facts sufficient in order to 'nudge[ ] their claims across the line from conceivable to plausible.'" *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*, No. 12 Civ. 2683 (RWS), 2013 U.S. Dist. LEXIS 129763 (S.D.N.Y. Aug. 31, 2013) (quoting *Twombly*, 550 U.S. at 570). In the context of a 16(b) action, there is no requirement to allege precise purchases and sales amounts on specific dates in order to satisfy the plausibility requirement of Rule 8(a). A complaint pleading the general parameters of ownership, purchases and sales is sufficient to state a claim under 16(b) based upon the *Twombly* standard. *See e.g., Klawans v. YA Global Invs., L.P.*, No. 10 Civ. 2108 (SRC), 2011 U.S. Dist. LEXIS 88535 (D.N.J. Aug. 10, 2011).[9] *Accord Donoghue v. Golden State Bancorp, Inc.*, No. 02 Civ. 2404, 2003 WL 22251338 at *1 (S.D.N.Y. Sept. 30, 2003) (sustaining the first claim for relief notwithstanding the failure to specify either a price for the relevant sales or the amount of profit realized.")

## C.   The Standards On The 12(b)(1) Motion

In reviewing a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court must accept all material factual allegations in the complaint as true. *See Atlantic Mut. Ins.*, 968 F.2d at 198. The standard for evaluation a plaintiff's constitutional standing is to construe the complaint in plaintiff's favor and accept as true all material factual allegations therein. *Donovan v. Bulldog Investors,* 696 F.3d at 173. The plaintiff bears the burden of proving

---

[9] The specific facts alleged in *Klawans* deemed sufficient were that: (1) in June 2006, the defendant owned approximately 32 million shares; (2) between November 29, 2006 and August 16, 2007, the defendant acquired approximately 41 million shares by converting Series C stock; and (3) on or about October 12, 2007, the defendant owned approximately 50 million shares. *Klawonn* at *16.

by a preponderance of the evidence that subject matter jurisdiction exists. *Aurecchoine v. Schoolman Transp. System, Inc.*, 426 F.2d 635, 638 (2d Cir. 2005).

## POINT II

### SUBJECT MATTER JURISDICTION[10] IS INTACT DESPITE BBB'S BANKRUPTCY AND CONFIRMATION OF ITS PLAN

#### A.    Plaintiff Cohen Pleaded Her Statutory Standing And Article III Standing

Defendants subject matter jurisdiction argument is as imprecise as it is wrong. It claims to be a jurisdictional argument but RC does not argue the separate stands of statutory standing under Section 16(b), *see Morrison v. Eminence Partners II LP*, 714 Fed. Appx. 14, 16 (2nd Cir. 2017) (identifying 16(b) standing as requiring only ownership of securities at time of suit even if plaintiff is deprived of stock post-suit), or Article III standing under the Constitution, *In Re Myovant Scis. Ltd. Section 16(b) Lit.*, 513 F. Supp. 3d 365 (S.D.N.Y. 2021) (discussing Article III standing "concrete injury" requirement in Rule 16(b) context) or "prudential standing," *United States v. Windsor*, 570 U.S. 744 (2013).[11]

Instead, RC seizes upon the "financial interest" language in *Gollust v. Mendell*, 501 U.S. 115 (1991) (Br. at 11-13) to argue that standing was lost because "financial interest" plaintiffs was lost in the bankruptcy. RC avoids any substantive analysis of statutory standing or Article III standing for the obvious reason that Plaintiffs can here satisfy both requirements.

Defendants' misinterpretation of the Second Circuit's 2018 opinion in *Klein* on behalf of *QLIK Technologies Inc., supra* is the same misinterpretation debunked in 2021 by Judge Koetl's

---

[10] Defendants do not appear to challenge either plaintiffs' statutory standing. Statutory standing is beyond this view here in as much as plaintiffs have both established this ownership of BBB common stock at the time of sweet and making of demands. *See Gollust v. Mendell*, 501 U.S. 115, 124, (16(b) plaintiff required to own securities of the issuer <u>only</u> at the time the 16(b) action is "instituted").

[11] RC does not raise any prudential standing arguments.

opinion in *In re Myovant Sciences. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 368 (S.D.N.Y. 2021) In *Myovant*, Judge Koeltl correctly analyzed the Second Circuit's *QLIK* holding as being consistent with the holding in *Donoghue v. Bulldog Investors*, 696 F.3d at 180 (2d Cir. 2012) where it was held that "short swing trading in violation of Section 16(b) causes injury sufficient for constitutional standing." *Myovant* then went on to analyze how the *Donoghue* fact pattern fit the "concrete injury" constitutional standing requirements articulated by the Supreme Court in *Spokeo Inc v. Robins*, 578 U.S. 330 136 S Ct. 1540 (2016).

Here likewise, there is the same concrete injury to the issuer plus injury accruing to BBBY from RC's actions as set forth in the Securities Class Action. *See supra* at footnote 1.

**B.     Plaintiff Cohen Had, And Still Has, Sufficient "Financial Interest" Standing To Satisfy Article III Standing**

The RC asserts that the cancellation of the BBBY shares in the confirmed bankruptcy plan divested Cohen of any "financial interest" in the outcome of this suit because Cohen "do[es] not stand to receive any distributions from the BBBY estate." RC's argument incorrectly assumes and argues that the "stock" and/or "distributions" are the only form of "financial interest" that will satisfy Article III standing in a Rule 16(b) suit.  They are incorrect as numerous decisions make clear.

Here, the bankruptcy court filings disclose that BBBY's debt is owned by Sixth Street Specialty Lending, Inc., as disclosed in an exhibit previously filed by RC. ECF No. 58-1. That entity is a publicly traded company, with shares trading under the ticker symbol "TSLX" on the New York Stock Exchange. Plaintiff Cohen has acquired TLSX equity, constituting a sufficient interest in the outcome of this litigation, thereby satisfying the standing requirements of Section 16(b). *See* Declaration of Lee Squitieri dated November 22, 2023, Exhibit A.

*Gollust* made it crystal clear that a 16(b) plaintiff need only be a holder of the Company's security at the time the action is instituted. *Gollust* at 124. Thus, the cancelation of BBBY stock in the bankruptcy is irrelevant. The next condition is "financial interest in the outcome of the litigation." *Gollust* at 126-127. Of that condition, the *Gollust* Court said: "...in light of the congressional policy of <u>lenient standing</u> [of 16(b)], we will not read any further consideration into the statute, beyond the requirements that a 16(b) plaintiff maintains a financial interest in the outcome of the litigation sufficient to motivate its prosecution and avoid constitutional standing difficulties." *Id*. at 27. The interest may be "indirect" and indeed as "attenuated" as a bondholder's interest "since any recovery by the issuer will increase the value of the bond only because the issuer may become a slightly better credit risk." *Id*. Indeed, before *Gollust*, the Second Circuit in *Smolowe et al. v. Delendo Corporation et al.*, 136 F.2d 231 (2d Cir. 1943), held that a plaintiff could maintain a 16(b) action regardless of the fact that "he can receive no tangible benefits." *Id*. at 241. The Second Circuit in *Smolowe* went on to note the financial benefit to that plaintiff of his entitlement to attorney's fees and expenses under the statute. *Id*. Thus, plaintiff's statutory right to attorney's fees here is a sufficient financial interest to defeat the Rule 12(b)(1) motion.

Also consistent with *Gollust*, a sufficient financial interest exists through a plaintiff's acquisition of the entity which owns BBBY's debt such as Sixth Street Specialty Lending, Inc. ("TSLX"). *See Gollust* at 127 (holding that a plaintiff's indirect interest in an entity which acquired the issuer's interest in the 16(b) suit suffices as a financial interest).   The plaintiff's acquisition of TSLX <u>after</u> TSLX acquired BBBY's interest suffices. *See* Arnold S. Jacobs, Section 16 of the Securities Exchange Act, Chapter 3, VIII at 3:36, Capacity and Standing to Sue, at page 3-298 ("standing" includes also "any person who purchased a security of a surviving corporation before or after the merger.") (West Group 7/2002).

Also, plaintiff's statutory interest in a potential incentive award is sufficient under 15 U.S.C. 78 u-4(a)(4) and *Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021) (recognizing but not deciding the issue) and *Espenscheid v. DirectSat USA LLC*, 688 F.3d 872 (7th Cir. 2012) (the prospect of [an award] though probabilistic rather than certain suffices to confer standing "for a federal claim").

Defendants' selection of authorities reeks of desperation. RC's citations to *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001) (Br. at 11) stands only for general proposition of standing and does not deal with any of the nuances of the cases determining a 12b-1 motion in a Rule 16(b) lawsuit context. Likewise, *Klein* ex rel. *QLIK Techs., Inc. v. QLIK Techs., Inc.*, 906 F.3d 215, 218 (2d Cir. 2018); *Rubenstein v. Smith*, 132 F.Supp. 3d 1201, 1205 (C.D. Cal. 2015); *Donoghue v. Astro Aerospace, Ltd.*, No. 19 cv-7991, 2020 WL 6802844, at *1 (S.D.N.Y. Nov. 19, 2020) and *In re Worldcom Inc.*, 351 B.R. 130, 134-135 (Bankr. S.D.N.Y. 2006) are similarly unavailing. Defendants cite *In Re WorldCom, supra*, for the proposition that plaintiffs have lost all standing after BBBY's bankruptcy court confirmed plan because the plan did not grant any specific rights to the plaintiffs here. But *WorldCom* is a very poor precedent, inapplicable here in fact because it concerned a "derivative action under Georgia law" *Id.* at n.3. Obviously, it was a traditional Fed. R .Civ. P. 23.1 claim action, and as such, the 23.1 and Georgia law standing requirements discussed in *WorldCom* are not relevant here. *See e.g.*, "The standing requirement for shareholder derivative suits are not applicable to a 16(b) plaintiff." *Mendell in Behalf of Viacom, Inc. v. Gollust*, 909 F.2d 724 (2nd Cir 1990) (citations omitted). RC's citation to *Donohue v. Astroairspace, supra* is likewise inapplicable here because its holding is in the context of a mootness of the claim created by prior disgorgement of the short swing profits of which were the subject of the action. In that context, the court held that an interest in attorneys fees merits no

Article III standing "where none exists on the merits of the underlying claim." *Id*. at *1 (citations omitted). Here the merits of the underlying claim are intact. Similarly, *Rubenstein v. Smith*, Supra, a 2015 opinion from the Central District of California is an out of jurisdiction opinion based on "financial interest" as a basis for Article III standing rather than the "concrete injury" basis for Article III standing analyzed by *Myovant* using the *Spokeo* holding in the 16(b) context.

## POINT III

### RC WAS A 10% BENEFICIAL OWNER OF BBBY AS OF THE TIME OF ITS PURCHASES AFTER FEBRUARY 26, 2022

In elaborating on their "10% beneficial owner" argument, RC again conflates the Cohen Am. Cmpl. and the Augenbaum Cmpl. by arguing "Plaintiffs' fail to plead facts showing either actual or constructive knowledge on the part of the Cohen Defendants that RCV owned more than 10% of BBBY's shares at the time of its purchases." Br. at 11; *see also* Br. at 14 ("the complaints do not allege facts showing that the Cohen Defendants had actual or constructive knowledge that RC owned more than 10% of BBBY's outstanding shares in late February and early March 2022."). The Cohen Am. Cmpl., however, does allege facts sufficient to plead RC's "actual or constructive knowledge."

RC relies on the "safe harbor of Rule 13d-18(f); 17 C.F.R. 240.13d-1(f), Br. at 8, 12, 13, 14. A "safe harbor" being an "exemption" is thus an affirmative defense. *See*, *e.g.*, *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (U.S. 2008) ("[w]hen a proviso . . . carves an exception out of the body of a statute . . . those who set up such exception must prove it.") (citations and quotes omitted). To assert the safe harbor however, RC must show its reliance was justified because the safe harbor is not available if RC knew or had reason to believe the share outstanding information was inaccurate. RC offers only conclusory argument of counsel to support its defense. By contrast, Plaintiff Cohen has numerous factual allegations demonstrating that RC knew the

information RC "relied" upon was inaccurate. *Mercer v. Gupta*, 712 F.3d 756, 759 (2nd Cir. 2013) (an exemption from 16(b) liability is an "affirmative defense"). It is well-settled that a Rule 12(b)(6) motion to dismiss predicated on an affirmative defense may be granted only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992).

RC argues that Section 16 liability is co-extensive (and reaches no further than) the reporting obligation under Section 13. But RC ignores the fact that purposes of Section 13, but not for purposes of Section 16(b), a filer may rely upon the issuer's latest share count in its latest SEC filing.  Rule 16a-2, which describes who is subject to Section 16, (17 C.F.R. 240.16a-2) contains no reference to the Rule 13d-1(f) safe harbor relied upon by RC. Accordingly, even if a filer does not "believe" he/she/it has become a 10% owner for Section 16(b) purposes, it is not the subjective belief of the filer that governs his/her/its liability under Section 16(b), it is the numbers that govern. *See Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 426 (1972) (the Court rejected the notion that 16(b) would not apply if a holder became a 10% owner "'involuntarily,' as for example, by legal succession or by reduction in the total number of outstanding shares of the corporation"). For instance, the SEC has explained that "[f]ollowing a company's buyback of its stock, a person who previously owned less than 10 percent of the company's stock may own more than 10 percent of the stock without having purchased additional shares."  *Exchange Act Section 16 and Related Rules and Forms*, S.E.C. (Aug. 11, 2010).[12]

The Second Circuit has held that 16(b) applies "irrespective of any intent on the part of [the 16(b) trader.]" *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 125 (2d Cir. 2018); *Roth v. Jennings*, 489 F.3d 499, 507 (2d Cir. 2007) holding that Rule 16(b) liability does not "require

---

[12] https://www.sec.gov/divisions/corpfin/guidance/sec16interp.

proof of intent to profit…" quoting *Kern County Land Co. v. Occidental Petr. Corp.*, 411 U.S. 582, 595 (1973).

RC argues that "beneficial ownership of under 16(b) is determined using the same definition of beneficial ownership as Section 13(d) citing, *Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 130 (2d Cir. 2016) and 17 C.F.R. § 240.16(a)1(a)(1). Br. at 12, and that thus the "Share Count Rule" operates to preclude RC becoming a 10% beneficial owner for Section 15 purposes after it passed the 10% threshold <u>because</u> RC did not know it had crossed the 10% owner threshold. Br. at 12-14. *Lowinger, supra* is inapposite because it did not even analyze any exemptions, let alone the one relied upon here by RC. RC also cites *SEC v. Nutra Pharma Corp.*, No. 18-civ-5459, 2022 WL 3912561 at *13 (E.D.N.Y. Aug. 31, 2022).

RC seeks to be shielded from 16(b) liability by their self-serving assertion of ignorance of their status as 10% owners after February 26, 2022. But to recognize ignorance as a bar to disgorgement, or even as a defense for a violator to plead and prove would run contrary to Section 16's purpose and statutory structure. *See e.g., Donoghue v. Bulldog Investors*, 696 F.3d at 177 ("Section 16(b) operates without regard to whether the statutory fiduciaries were actually privy to inside information or whether they traded with the intent to profit from such information"); *Magma Power Co. v. Dow Chem. Co.*, 136 F.3d 316, 320-2 (2d Cir 1998) ("[16b] operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart . . . .").[13]

---

[13] By introducing the fact-intensive element of a knowing crossing of the 10% threshold before a buyer can be subject to Section 16(b), RC is attempting to do exactly what Circuit Court Judge Lynch warned against in *Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 122 (2d Cir. 2018):

> Courts have generally read the statute, a strict liability restriction on insider trading, precisely and mechanically according to its express terms. But litigants have increasingly called on this Court, with some success to apply Section 16(b) in flexible ways to keep pace with an ever changing financial system. <u>We have been wrong</u>

RC cites the 17 C.F.R. 240 13d-1(f) (page 17) interpretations in *C.R.A. Realty Corp. v. Enron. Corp.,* 842 F. Supp. 88, 91 (S.D.N.Y. 1994); but that cannot trump Supreme Court and Second Circuit authority. First, *C.R.A. Realty* has never been cited for the proposition that 16(b) liability attaches <u>only</u> if the insider subjectively "knows" it is an insider. Second, the authority cited by *C.R.A.* (supra at 89) does not have any such holding either directly nor by implication. In any event *C.R.A.* is a Rule 56 motion decision, not a Rule 12(b)(6) motion.

Even if the language of Section 16(b) viewed through Defendants' Section 13 lens <u>could</u> admit of some ambiguity, RC's urgent plea to impute a knowledge element into Section 16 is not the method for deciding this issue. Judge Lynch in *Olagues*, 902 F.3d at 128, recognized this in noting:

> Where we cannot determine the reach of Section 16(b) and its accompanying regulations by reliance on their text alone, the Supreme Court has instructed they "are to be given the construction that best serves the congressional purpose of curbing short swing speculation by corporate insiders" consistent with "the congressional design of predicating liability upon an objective measure of proof" *Id*. at 128, citing *Reliance Elec*., 404 U.S. at 424-425.

The Second Circuit favors the "relatively automatic operation" of Section 16(b). *Olagues* at 131, quoting *Blau v. Lamb*, 363 F.2d 507, 516 (2d Cir. 1966).

---

however of straying beyond the plain meaning of the statute and its accompanying regulations, particularly where doing so would precipitate a fact-intensive inquiry contrary to statutory design.

*Id*. (emphasis supplied).

**POINT IV**

**THE COHEN AM. CMPL. CONTAINS SUFFICIENT FACTUAL
ALLEGATIONS OF ACTUAL AND CONSTRUCTIVE KNOWLEDGE THAT
RC WAS A 10% BENEFICIAL OWNER AT THE TIME OF ITS 16(b) PURCHASES**

RC argues that "the Complaints do not allege facts showing that the Cohen Defendants had actual or constructive knowledge that RCV owned more than 10% of BBBY's outstanding shares in late February or early March 2022."

RC refuses to acknowledge, or challenge the factual sufficiency of other factual allegations in the Cohen Am. Cmpl. *See* Section II at "B" "Plaintiff Cohen Adequately Alleges That RC Knew It Crossed the 10% Threshold By February 26, 2022." Knowledge of such publicly available information is imputed to RC. *See In Re: Luxottica Group S.p.A. Sec. Litig.*, 293 F.Supp. 2d 224, 235 (E.D.N.Y. 2006).

The legal support offered by RC is unavailing. *Packer v. Raging Cap. Mgmt., LLC*, 981 F.2d 148, 154 (2d Cir. 2020) involved very fact specific issues of delegation of authority; *Rubenstein v. vTV Therapeutics, Inc.*, No. 15 civ 9752, 2017 WL 1194688 at *3 (S.D.N.Y. Mar. 30, 2017) described a claim involving a complex agreement to transfer shares not constituting a Section 16 sale; *C.R.A.*, *supra* at 91 was a summary judgment ruling.

**POINT V**

**COHEN'S FACTUAL ALLEGATION OF RC'S "DIRECTOR BY DEPUTIZATION" STATUS MAKES THEM LIABLE UNDER RULE 16(b)[14]**

RC argues that <u>both</u> plaintiffs' directors by deputization claims must fail. [15] RC argues that the "core inquiry is whether the shareholder actually functioned as a director because the appointee who had been deputized performed the directors duties not for himself but for the shareholder." Br. at 21 citing *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 550 (2d Cir. 2020); *Blau v. Lehman*, 368 U.S. 403, 410 (1962). RC attacks "Plaintiffs' barebones allegations regarding RCV's deputization of the New Directors" and points at the Augenbaum's Cmpl.'s sole allegation (¶ 29) and also the five factually detailed Cohen Am. Cmpl. ¶¶ 32-36. *Id*. at 18.

As to Cohen Am. Cmpl.'s five factually detailed allegations of deputization, RC does not challenge their sufficiency but instead makes very specific factual counter-arguments, Br. at 18-19 and fn.10, which cannot be considered on a motion to dismiss Thus, RC contends that the Cohen Am. Cmpl's director by deputization allegations do not make them "statutory insiders" because "Plaintiffs' bare bones allegations regarding RCV's deputization of New Directors are conclusory and devoid of facts showing that the Cohen Defendants <u>actually functioned as directors</u> of BBBY" Br. at 17-18 citing Augenbaum Cmpl. ¶ 29 and Cohen Am. Cmpl. ¶¶ 32-36 (emphasis supplied). But the Cohen Am. Cmpl. is rich in detail demonstrating RC was a director by deputization. *See* Cohen Am. Cmpl. at ¶¶ 30-39; 45, alleging facts which demonstrate the factors to considered. *See Feder*, supra at 264; *Roth v. Perseus LLC*, 2006 WL 2129331 at *9-10

---

[14] Of course, since RC was <u>still</u> a 10% owner at time of sale, its sales can all be matched to its post February 26, 2022 purchases. *See* Cohen Am. Cmpl. ¶ 60.

[15] RC enlists the BBBY Board's responses to both plaintiffs Section 16 demands as to why BBB refused to bring these claims. Br. at 8-9. Those references are not relevant here because under the applicable agreements between BBBY and RC, BBBY is prohibited from bringing any action against RC. Tellingly, BBBY while it was viable never tried to take over these claims.

(S.D.N.Y. July 13, 2006) *aff'd*, 522 F.2d 241 (2d Cir. 2008). The question is a question of fact. *Feder* supra at 265-266.

   In support, RC cites *Calenturem LLC v. Pulte*, No. 21-civ-402, 2002 WL 912947 at *3-4 (S.D.N.Y. March 29, 2022), which holds that deputization is a question of fact in denying the motion to dismiss; *Shattuck Denn Mining Corp. v. LaMorte*¸ No. 67-civ-3222, 1974 WL 373 at *3 (S.D.N.Y. Mar. 8, 1987), actually supports Plaintiff Cohen because the deputization facts pleaded therein are not as detailed as those in the Cohen Am. Cmpl.

## POINT VI

## RC'S SECTION 16(b) LIABILITY CAN ALSO BE BASED UPON THEIR STATUS AS A DIRECTOR BY DEPUTIZATION ON THE SALE DATE ALONE

   RC also argues that <u>if</u> it became a director by deputization it only became one after the Cooperation Agreement was entered into. Br. at 20-24. That being the case, RC argues that since it was <u>not</u> a director <u>both</u> at the time of purchase <u>and</u> sale it cannot be liable under Section 16. For the sake of this argument, RC ignores its status as a 10% beneficial owner at the time of the purchases.

   RC cites *Gryl ex. rel. Shire Pharm. Grp. PLC v. Shire Pharm. Grp. PLC*, 298 F.3d 136, 141 n.3 (2nd Cir. 2002); 17 C.F.R. 240.16a-2(a). G*ryl v. Shire Pharms Corp. PLC*, No. 00-civ-9179, 2001 WL 1006628 at *2 (S.D.N.Y. Aug. 31, 2001); *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959); *Nat'l Cable & Telecommunications Ass's v. Brad & Internation. Servs.*, 545 U.S. 967, 982 (2005); accord *Hassoun v. Searls*, 968 F.3d 190, 199 (2d Cir. 2020).

   Section 16(b) creates liability for directors, officers and 10% or more beneficial owners of any class of an issuer's securities. The statute carves out an exception to such liability where a 10% beneficial owner "was not such both at the time of the purchase and sale ... of the security" but has no such carve out for a director. The U.S. Court of Appeals for the Second Circuit,

utilizing the principle of expression *unius est exclusion alterius*, held that "Section 16(b) is applicable to a short swing transaction even though the person involved was a director only at the time of the sale and not at the time of the purchase." *Adler v. Klawans*, 267 F.2d 840, 847 (2d Cir. 1959).

**POINT VII**

**NEITHER THE "D/O" EXEMPTION NOR SECTION 23(a) OF**
**THE EXCHANGE ACT CAN EARN RC A DISMISSAL OF THE CLAIMS**

Defendant claims an exemption from liability based upon its trading in BBBY securities based upon Rule 16a-2(a), 17 C.F.R. §240.16a-2(a). However, that exemption is inconsistent with the language of §16(b). Cohen Am, Cmpl. ¶ 30 (citing *Adler v. Klawans*, 267 F.2d 840, 847 (2d Cir. 1959)). SEC Rule 16a-2(a), 17 C.F.R. 240.16a-2(a), adopted in 1991, sought to overrule *Adler v. Klawans* by limiting the need for a director to report and, therefore, be subject to Section 16(b) liability, for trades occurring before the time the person is appointed a director. That portion of Rule 16a-2(a) is inconsistent with the statutory language of Section 16(b) as interpreted by the Second Circuit and, therefore, represents an invalid exercise of the SEC's rulemaking authority. *See, e.g., United States v. Home Concrete & Supply, LLC*, 566 U.S. 478, 488 (2012) ("[i]f a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.") (quoting *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). The SEC, therefore, cannot exempt such transactions by rule. *See, e.g., Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Services*, 545 U.S. 967, 1004 (2005) (agency cannot promulgate rule inconsistent with statutory language); *Feder*, 406 F.2d at 268 (short-swing profits earned by a person who was only a director at the time of one of the transactions comprehended within the purpose of §16(b)

and, therefore, "to the extent [an SEC Rule] exempts such a transaction from §16(b) the Rule is invalid.")

RC cites cases involving SEC regulations, *Bruh v. BessemerVenture Partners III, L.P.*, 464 F.2d 202, 208 (2d Cir. 2006); *Huppe v. WPCCS Intern. Inc.*, 670 F.3d 214, 220 (2d Cir. 2012); *Roth ex rel. Beacon Power Corp. v. Perseus L.L.C.*, 522 F.3d 342, 29 (2d Cir. 2008) and RC provides the misleading impression in its brief (Br. at 23) that *Roth*, supra; *Bruh* supra, and *Huppe* supra, all stand for the proposition that the Rule 16(a)-2(a) "D/O Exemption" trumps all. Certainly, the SEC has the power to exempt "certain transaction" but here with respect to Rule 16(a)-2(a) because the statute as a whole (Section 16) unambiguously provides, by inclusion with respect to 10% owners coupled with silence as to directors, that director Section 16 liability only requires the director to be such at either, but not both time of sale or purchase.

## CONCLUSION

For all the foregoing reasons, Defendants' motion to dismiss should be denied.

Dated: November 22, 2023

**SQUITIERI & FEARON, LLP**

By: s/ *Lee Squitieri*
    Lee Squitieri
305 Broadway, 7th Floor
New York, New York 10007
lee@sfclasslaw.com
(212) 421-5492

27

James S. Notis
**GARDY & NOTIS, LLP**
150 East 52nd Street, 11th Floor
New York, New York 10022
jnotis@gardylaw.com
(212) 905-0509

*Counsel for Plaintiff Judith Cohen*