**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | Case No. 1:22-cv-09327-DEH |

**RC VENTURES LLC AND RYAN COHEN'S**
**REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**AMENDED OMNIBUS MOTION TO DISMISS THE COMPLAINTS**

WOLLMUTH MAHER & DEUTSCH LLP

David H. Wollmuth
Joshua M. Slocum
Maxwell G. Dillan
Yating Wang
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com
ywang@wmd-law.com

*Attorneys for Defendants RC Ventures LLC*
*and Ryan Cohen*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

ARGUMENT......................................................................................................................2

I.     The Court Lacks Subject Matter Jurisdiction Because Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases. .........................................................2

II.    Plaintiffs Fail to State a Section 16(b) Claim Against the Cohen Defendants as Beneficial Owners. ...................................................................................................4

      A.    The Share Count Rule Applies to the Beneficial Ownership Determination. ...............................................................................................................4

      B.    The Cohen Defendants Were Not Beneficial Owners Under the Share Count Rule. ..................................................................................................................7

      C.    The Court Can Consider the Share Count Rule on this Motion. ...........................9

III.   Plaintiffs Fail to State a Section 16(b) Claim Against the Cohen Defendants as Directors.................................................................................................................10

      A.    Plaintiffs Do Not Plausibly Allege that the Cohen Defendants Were Directors by Deputization at the Time of the Purchase. ......................................11

      B.    The Cohen Defendants Are Exempt Under the D/O Exemption.........................12

CONCLUSION.................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adler v. Klawans*,
   267 F.2d 840 (2d Cir. 1959) ................................................................................................ 12

*Avalon Holdings Corp. v. Gentile*,
   597 F. Supp. 3d 640 (S.D.N.Y. 2022) ............................................................................. 9, 10

*Avalon Holdings Corp. v. Gentile*,
   2023 WL 6566810 (S.D.N.Y. Oct. 6, 2023) ...................................................................... 4, 5

*C.R.A. Realty Corp. v. Enron Corp.*,
   842 F. Supp. 88 (S.D.N.Y. 1994) ................................................................................. 6, 8, 9

*Calenture, LLC v. Pulte*,
   2022 WL 912947 (S.D.N.Y. Mar. 29, 2022) ................................................................ 11, 12

*Capitol Recs., LLC v. Vimeo, LLC*,
   826 F.3d 78 (2d Cir. 2016) ................................................................................................. 10

*Chechele v. Standard Gen. L.P.*,
   2021 WL 2853438 (S.D.N.Y. July 8, 2021) ......................................................................... 6

*Cogentrix Energy Power Mgmt., LLC v. FERC*,
   24 F.4th 677 (D.C. Cir. 2022) ............................................................................................ 13

*Donoghue v. Astro Aerospace Ltd.*,
   2020 WL 6802844 (S.D.N.Y. Nov. 19, 2020) ...................................................................... 3

*Feder v. Martin Marietta Corp.*,
   406 F.2d 260 (2d Cir. 1969) ............................................................................................... 13

*Gollust v. Mendell*,
   501 U.S. 115 (1991) .......................................................................................................... 2, 3

*Klein on Behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*,
   906 F.3d 215 (2d Cir. 2018) .............................................................................................. 2, 3

*In re WorldCom, Inc.*,
   351 B.R. 130 (Bankr. S.D.N.Y 2006) ................................................................................... 3

*Mercer v. Gupta*,
   712 F.3d 756 (2d Cir. 2013) ............................................................................................... 10

*Olagues v. Perceptive Advisors LLC,*
   902 F.3d 121 (2d Cir. 2018) .............................................................................6

*Packer v. Raging Cap. Mgmt., LLC,*
   981 F.3d 148, 154 (2d Cir. 2020) ...................................................................7

*Segen v. CDR-Cookie Acquisitions, L.L.C.,*
   2006 WL 59550 (S.D.N.Y. Jan. 4, 2006)......................................................12

*Strauss on Behalf of Servico, Inc. v. Am. Holdings, Inc.*
   902 F. Supp. 475 (S.D.N.Y. 1995) .................................................................5

*Rubenstein v. Int'l Value Advisers, LLC,*
   959 F.3d 541 (2d Cir. 2020) ..........................................................................11

*Rubenstein v. Smith,*
   132 F. Supp. 3d 1201 (C.D. Cal. 2015) .........................................................3

*Rubenstein v. Very Hungry, LLC,*
   2015 WL 1509761 (D. Colo. Mar. 30, 2015)................................................11

*Rubenstein v. vTv Therapeutics, Inc.,*
   2017 WL 1194688 (S.D.N.Y. Mar. 30, 2017)................................................7

*Saks v. Franklin Covey Co.,*
   316 F.3d 337 (2d Cir. 2003) ............................................................................9

*Sesto v. Slaine,*
   171 F. Supp. 3d 194 (S.D.N.Y. 2016)...........................................................10

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
   547 F.3d 406 (2d Cir. 2008) ..........................................................................10

*Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.,*
   940 F.2d 685 (D.C. Cir. 1991)......................................................................13

*United States v. Johnson,*
   459 F.3d 990 (9th Cir. 2006) ..........................................................................9

**Statutes**

15 U.S.C. § 77k..................................................................................................9

15 U.S.C. § 78p...........................................................................................*passim*

15 U.S.C. § 78w...............................................................................................12

**Rules and Regulations**

17 C.F.R. § 240.10b5-1 ...................................................................................................9

17 C.F.R. § 240.13d-1 .............................................................................................4, 5, 10

17 C.F.R. § 240.16a-1 ..............................................................................................4, 5, 6

17 C.F.R. § 240.16a-2 .......................................................................................4, 5, 11, 12

Fed. R. Civ. P. 12(b)(1) .............................................................................................1, 13

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 10, 13

**Other Authorities**

1991 Adopting Release, 56 Fed. Reg. 7244 ............................................................5, 6

Black's Law Dictionary 40 (7th ed. 1999) .................................................................9

Jacobs, *The Williams Act—Tender Offers and Stock Accumulations* § 2:84 ..............................10

Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv)
(5th ed. 2019)..............................................................................................................7

SEC Division of Corporation Finance, Compliance and Disclosure Interpretations,
Exchange Act Section 16 and Related Rules and Forms, Interp. 209.02 (May 23, 2007)..............6

## INTRODUCTION

Plaintiffs' Section 16(b) claims are moot because Plaintiffs have failed to maintain a continuing financial interest in the outcome of their cases.[1] Plaintiffs do not dispute that their common stock in BBBY has been canceled. They advance two arguments to avoid dismissal on mootness grounds: (1) buying stock in a BBBY lender revived their lost standing and (2) a potential incentive fee or award of attorney's fees constitutes a sufficient financial interest in this case. Our opening brief debunked these arguments, and Plaintiffs have come forward with *no* authority in support. Indeed, their arguments contradict Second Circuit precedent. The Court should dismiss these cases under Rule 12(b)(1).

Plaintiffs have similarly failed to cite any authority supporting their claim that the Share Count Rule does not apply to Section 16(b). It is undisputed that, under the Share Count Rule, Defendants were not 10% beneficial owners when they bought their stock. The regulations themselves clearly provide that the Share Count Rule applies to Section 16(b), and courts have uniformly so found. Plaintiffs' argument would overturn the efficiency and predictability that the SEC intended to provide when it adopted the Share Count Rule. It should be rejected.

Finally, Plaintiffs urge the Court to invalidate decades-old SEC regulations, which clarify that directors are not subject to Section 16(b) for purchases that predate their directorship. There is no support for that argument either, but regardless, the Exchange Act expressly prohibits liability for anyone relying in good faith on then-existing SEC regulations, even if those regulations are later struck down. Plaintiffs simply ignore that statutory mandate. That is in addition to Plaintiffs' utter failure to allege *facts* plausibly showing that the Cohen Defendants were directors by "deputization" in the first place. The Court should dismiss these cases under Rule 12(b)(6).

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Cohen Defendants' amended omnibus motion to dismiss the Complaints ("Mot." or "Motion").

## ARGUMENT

### I.    The Court Lacks Subject Matter Jurisdiction Because Plaintiffs No Longer Have a Financial Interest in the Outcome of These Cases.

Plaintiffs do not dispute that their BBBY common stock has been canceled and is of no further force and effect. *Gollust* and *Qlik* therefore mandate that their claims be dismissed as moot.

Plaintiffs argue that a recent purchase of six shares of stock in Sixth Street, a creditor of BBBY (*see* ECF 74-3 (Abraham Decl.) Ex. J and ECF 76-1 (Squitieri Decl.) Ex. A), constitutes a continuing financial interest under *Gollust*. But as Plaintiffs concede, "the Supreme Court was not called upon to address" whether a plaintiff could maintain this interest by buying the stock of a creditor, Augen. Opp. at 22-23, and it did not issue the holding they advocate for. Neither has any other court. The Supreme Court held *only* that "a plaintiff, who properly instituted a § 16(b) action as the owner of a security of the issuer, may continue to prosecute the action after his interest in the issuer is *exchanged in a merger for stock in the issuer's new corporate parent*." *Gollust v. Mendell*, 501 U.S. 115, 118 (1991) (cleaned up; emphasis added). Nothing in *Gollust* sanctions Plaintiffs' misguided attempt to revive the Court's subject matter jurisdiction by buying stock in BBBY's creditor, and neither does any other case.

In *Qlik*, the Second Circuit confirmed that where an issuer was "bought out in an all-cash merger," it caused the plaintiff, who as here did not receive any stock in a surviving corporation, "to lose any financial interest in the litigation." *Klein on Behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 218 (2d Cir. 2018). The Second Circuit held that the claims of such a plaintiff cannot proceed, and absent a meritorious motion under Rule 17(a)(3), the case must be dismissed as moot. *Id.* at 225. Plaintiffs have no answer for *Qlik*. Plaintiff Cohen engages in misdirection, arguing that she had standing at the outset of the case. That is irrelevant because her claim became moot *afterwards*. Plaintiff Augenbaum does not even cite *Qlik*.

Plaintiff Cohen's attempts to distinguish *Donoghue* and *Rubenstein* fail. (Plaintiff Augenbaum, again, simply ignores them.) Both cases dismissed Section 16(b) claims as moot based on intervening circumstances that deprived the plaintiff of a financial stake in the outcome of the case. *See Donoghue v. Astro Aerospace Ltd.*, 2020 WL 6802844, at *1 (S.D.N.Y. Nov. 19, 2020) (defendant disgorged short-swing profits to the company); *Rubenstein v. Smith*, 132 F. Supp. 3d 1201, 1205 (C.D. Cal. 2015) (issuer assigned 16(b) claim to another corporation). Plaintiff Cohen tries to distinguish *Rubenstein* because it evaluated whether the plaintiff maintained a "financial interest" in the case, rather than a "concrete injury." That argument is puzzling, because maintaining a continuing financial interest is exactly what *Gollust* requires. And just as in *Donoghue*, there is no longer a live case or controversy between Plaintiffs and the Cohen Defendants here, so a potential interest in fees is not sufficient to avoid dismissal for mootness.

*In re WorldCom* is on point because it rejected a plaintiff's nearly identical attempt to revive his standing after his stock was canceled under a bankruptcy plan. 351 B.R. 130, 134-35 (Bankr. S.D.N.Y 2006); Mot. at 13-14. Plaintiffs observe that *WorldCom* was a derivative case under Rule 23.1, not a Section 16(b) case. True, but "[b]oth Section 16(b) and Rule 23.1 require a continuing financial interest" in the case or it will be dismissed as moot. *Qlik*, 906 F.3d at 225 n.6. And the *WorldCom* court squarely held that "independent" stockholdings in a successor company, which did not "flow" from the former interest in the predecessor company, do not constitute such a continuing financial interest. 351 B.R. at 135. That reasoning applies with even greater force here because Sixth Street is not the successor to BBBY. It is merely a creditor.

Plaintiffs fail to cite *any* on-point authority in support of their other alleged financial interests in the case—a potential incentive fee or attorney's fees. If those "interests" sufficed, a Section 16(b) case could never become moot, in conflict with the holdings in *Gollust* and *Qlik*.

Their cited cases either addressed standing of a class representative to appeal denial of class certification or did not even address standing at all. Nor is there merit to Plaintiff Augenbaum's novel and unsupported argument that the loss of value in his BBBY stock is a financial interest in the outcome of this case. The remedy under Section 16(b) would be disgorgement of trading profits to BBBY's estate, not compensation to BBBY's former stockholders for their alleged losses.

## II.   Plaintiffs Fail to State a Section 16(b) Claim Against the Cohen Defendants as Beneficial Owners.

But even if Plaintiffs' claims had not become moot, Plaintiffs nevertheless fail to state a Section 16(b) claim against the Cohen Defendants because they were not 10% beneficial owners at the time of the BBBY purchases. Rule 16a-1, which defines relevant terms for all of Section 16, expressly states that the term "beneficial owner" means "any person who is deemed a beneficial owner pursuant to section 13(d) of the Act *and the rules thereunder*." 17 C.F.R. § 240.16a-1(a)(1) (emphasis added); Mot. at 15-16. The "rules thereunder" (*i.e.*, under Section 13(d)) allow investors to rely on the number of outstanding shares provided "in the issuer's most recent quarterly or annual report, and any current report subsequent thereto" to determine whether they are beneficial owners, unless they know that the number was wrong in the report itself. 17 C.F.R. § 240.13d-1(j). This is the Share Count Rule and the Cohen Defendants properly relied on it to determine that they were not 10% beneficial owners. Mot. at 16-21. Plaintiffs have raised no reason for the Court to disregard it here.

### A.    The Share Count Rule Applies to the Beneficial Ownership Determination.

Plaintiffs claim that the Share Count Rule does not apply because neither Rule 16a-1 (defining terms for Section 16) nor Rule 16a-2 (describing "persons and transactions subject to Section 16") mentions it. Augen. Opp. at 6-7; Cohen Opp. at 20. That is wrong. Rule 16a-1 expressly incorporates Section 13(d) and "the rules thereunder." *See Avalon Holdings Corp. v.*

*Gentile*, 2023 WL 6566810, at *2 (S.D.N.Y. Oct. 6, 2023) ("[Defendants'] liability turns on their being 'beneficial owners' of more than 10% of the companies' stock. . . . [T]he term is defined in regulations promulgated by the SEC" and "shall mean any person who is deemed a beneficial owner under section 13(d) of the Act.") (citing 17 C.F.R. § 240.16a-1(a)(1) and applying Rule 13d-3(a) to determine beneficial ownership). It is beyond dispute that the Share Count Rule is one of the rules under Section 13(d). Rule 16a-1, in turn, defines the terms that apply to "section 16 of the Act and the rules thereunder." 17 C.F.R. § 240.16a-1. One of those "rules" is Rule 16a-2, which governs the "persons and transactions subject to section 16." *Id*. § 240.16a-2. The Share Count Rule unambiguously applies to Rule 16a-2.

Plaintiff Augenbaum mischaracterizes *Strauss on Behalf of Servico, Inc. v. Am. Holdings, Inc.*, 902 F. Supp. 475 (S.D.N.Y. 1995). Augen. Opp. at 7. In *Strauss*, the issuer's annual report and quarterly reports had different share counts, and its quarterly reports had internal inconsistencies because the cover pages reported different share counts than the balance sheets. 902 F. Supp. at 476. The court appropriately looked to the predecessor to the Share Count Rule for guidance, but the Rule does not say what to do when these disclosures have internal inconsistencies. *Id.* at 478-79. Therefore, the court applied the motion to dismiss standard and used the share count most favorable to plaintiff. *Id.* at 479-81. *Strauss* does not reject the Share Count Rule for Section 16(b) actions—quite the opposite.

Plaintiff Augenbaum claims that the SEC's Adopting Release for Rule 16a-1 clarifies that the Rule "only" imports certain portions of the Section 13(d) analysis into Section 16, but not the Share Count Rule. Augen. Opp. at 6. The Adopting Release itself dispels that argument:

> *As proposed, the rules adopted today define ten percent holders under section 16 as persons deemed ten percent holders under section 13(d) of the Exchange Act and the rules thereunder*. The section 13(d) analysis, *such as* the exclusion of non-voting securities and counting only those derivative securities exercisable or

> convertible within 60 days, are imported into the ten percent holder determination for section 16 purposes.

1991 Adopting Release, 56 Fed. Reg. 7244 (emphasis added). Contrary to Plaintiff Augenbaum's argument, the examples following "such as" in this passage are clearly not exhaustive. Indeed, as the court in *C.R.A. Realty Corp. v. Enron Corp.* found when examining this Adopting Release, "[t]he intent of the SEC to define 'ten percent' under Section 16 as it is defined under Section 13(d) could not be clearer." 842 F. Supp. 88, 91 (S.D.N.Y. 1994). It therefore rejected the argument by the plaintiff (similar to Plaintiffs' arguments here) that Rule 16a-1 incorporated only "the definition of 'beneficial owner' found in Section 13(d)" but not "the rules defining 'ten percent' under Section 13(d)." *Id.*

Plaintiff Augenbaum argues that the SEC's interpretive guidance (Interp. 209.02, discussed in Mot. at 18) is "entitled to no deference beyond whatever persuasive value it might have." Augen. Opp. at 8 (quotations and alterations omitted). It is true that the SEC's interpretations of its own regulations are not binding, but "they are nonetheless persuasive," and "courts in this Circuit have relied upon SEC Compliance and Disclosure Interpretations and similar informal guidance in assessing a defendant's potential liability under Section 16(b)." *Chechele v. Standard Gen. L.P.*, 2021 WL 2853438, at *7 (S.D.N.Y. July 8, 2021).

Plaintiff Cohen's argument that the Share Count Rule does not apply to Section 16(b) because it is a strict liability statute is misguided. Cohen Opp. at 20-22. Section 16(b) is only strict in the sense that a defendant's state of mind is not relevant. *See Olagues v. Perceptive Advisors LLC*, 902 F.3d 121, 126 (2d Cir. 2018). That has nothing to do with whether Defendants were subject to Section 16(b) at the time of their stock purchases. To the contrary, the strict liability nature of the statute means it "should be employed cautiously to avoid unfair application." *Id.*

**B.** **The Cohen Defendants Were Not Beneficial Owners Under the Share Count Rule.**

The Cohen Defendants were not beneficial owners under the Share Count Rule. Mot. at 17-20. Plaintiffs do not dispute that the Cohen Defendants properly calculated RCV's ownership as equal to 9.8% according to BBBY's most recent quarterly report on January 6, 2022 as permitted under the Share Count Rule. Plaintiffs instead seek to avoid the Share Count Rule solely on the ground that the Cohen Defendants supposedly knew or should have known that the share count disclosed in the quarterly report was inaccurate because BBBY publicly announced a general plan to repurchase shares. Augen. Opp. at 9-12; Cohen Opp. at 5-6, 23. Their arguments fail.

Plaintiffs' briefs simply ignore Romeo & Dye, which is the leading Section 16(b) treatise. It explains that "an issuer's announcement of a stock repurchase program is not enough to charge a person with knowledge of the precise date on which the issuer later repurchases enough of its outstanding shares to push that person over the ten percent threshold." Romeo & Dye, *Section 16 Treatise and Reporting Guide* § 2.03(3)(j)(iv) n.77 (5th ed. 2019) (quoted in Mot. at 19-20). Plaintiffs likewise do not explain how the Cohen Defendants can be charged with knowledge when the uncertainty surrounding BBBY's plan made it impossible for any investor to determine whether or when the reported share count would change. Mot. at 19. While Plaintiff Augenbaum contends that there was no reason to believe that BBBY was not following through with the plan, Augen. Opp. at 12, the qualifiers in BBBY's public filings that the plan might not proceed as announced no doubt do just that. Slocum Decl. Exs. 3-4, 10. Indeed, BBBY did not follow through on its plan. Slocum Decl. Ex. 5.

Nor do Plaintiffs grapple with the relevant authority directing courts to employ Section 16(b) cautiously to avoid unfairness. Mot. at 20. Plaintiffs do not dispute that *Packer* and *Rubenstein* mandate that courts employ Section 16(b) narrowly, and they do not dispute that

7

consistent with this mandate, *C.R.A. Realty* rejected the same argument that they make here. Plaintiff Augenbaum tries to duck the holding of *C.R.A. Realty* on the ground that changes in the reported share count there "could not be predicted" because any such changes were not in the defendant's control. Augen. Opp. at 12. But this situation is no different—the Cohen Defendants were not in control of BBBY's share repurchase plan and changes in BBBY's reported share count could not be predicted with any reliability. Mot. at 19. Plaintiff Cohen does not even dispute that *C.R.A. Realty* is factually similar; she argues only that it was a summary judgment decision but offers no support for why the Court should disregard its reasoning here. Cohen Opp. at 23.

Finally, Plaintiffs fail to show that the language in the Cooperation Agreement does anything other than confirm that the Cohen Defendants had every reason to believe that RCV continued to own 9.8% of BBBY's outstanding shares as of March 24, 2022, three weeks after its last purchase. Slocum Decl. Ex. 2 at Recital 2. Plaintiff Augenbaum claims that the Cohen Defendants cannot rely on the Cooperation Agreement because it does not address the Share Count Rule, and the Cohen Defendants were not allowed to stipulate as to their compliance with the Share Count Rule. Augen. Opp. at 11. This is irrelevant. The terms of the Cooperation Agreement simply do not address the Share Count Rule. That fact has no probative bearing on the Rule's application here.

At bottom, Plaintiffs seek to charge the Cohen Defendants with constructive knowledge by proposing that the Court broadly expand the reach of Section 16(b). While they claim only "[s]imple math" was required here, they are in fact asking the Court to impose a new rule that finds no support in Section 16(b) jurisprudence. Augen. Opp. at 10-11; Cohen Opp. at 5-6. In particular, they propose that an issuer's most recently disclosed share count may be relied on only if there is no other indication of a *subsequent* change in outstanding shares. This interpretation would destroy

the Share Count Rule entirely because almost all companies see a change in their share count after their periodic or current report because of stock compensation issuances, forfeitures, repurchases, and other transactions. In the event that any such changes are announced, Plaintiffs' theory would require significant investors to ask the issuer for its current share count before any stock purchase. That would be "needlessly inefficient" and "inconsistent with the SEC's goal of streamlining and minimizing compliance costs." *C.R.A. Realty*, 842 F. Supp. at 91 (quotations omitted).

### C. The Court Can Consider the Share Count Rule on this Motion.

Plaintiffs' final argument is that the Share Count Rule is an affirmative defense that the Cohen Defendants have the burden of proving. Augen. Opp. at 9; Cohen Opp. at 19-20. The text and purpose of the Share Count Rule show that it is not an affirmative defense.

The language of the Share Count Rule places no burden of proof on the defendant; it simply defines whether a defendant falls under Section 16(b). When Congress or the SEC wishes to establish a securities statute or rule as an affirmative defense, they know how to make that clear. *See United States v. Johnson*, 459 F.3d 990, 997 (9th Cir. 2006) ("Congress knows how to create an affirmative defense when it wishes to do so."); *see also, e.g.*, 15 U.S.C. § 77k(b) ("no person, other than the issuer, shall be liable as provided therein who shall sustain the burden of proof . . . ."); 17 C.F.R. § 240.10b5-1(c) ("Affirmative defenses. . . . a person's purchase or sale is not on the basis of material nonpublic information if the person making the purchase or sale demonstrates that . . . ."). The Share Count Rule contains no similar language.

The purpose of the Share Count Rule is also inconsistent with an affirmative defense. "An affirmative defense is defined as 'a defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) (quoting Black's Law Dictionary 40 (7th ed. 1999)). "If an argument can at most negate an element of the plaintiff's

claim, it is not appropriately considered an affirmative defense." *Avalon Holdings Corp. v. Gentile*, 597 F. Supp. 3d 640, 650 (S.D.N.Y. 2022) (quoting *Sesto v. Slaine*, 171 F. Supp. 3d 194, 206 (S.D.N.Y. 2016)). Here, whether the Cohen Defendants "were more-than 10% beneficial owners" at the time of their stock purchases "are elements of Plaintiffs' claims." *Id.* Their invocation of the Share Count Rule is therefore "not an affirmative defense, but simply a partial denial of Plaintiffs' claims." *Id.*[2]

Finally, even if the Share Count Rule were an affirmative defense, it still warrants dismissal. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (Rule 12(b)(6) dismissal based on an affirmative defense is appropriate when it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the claims are barred). The facts alleged in the Complaints, and documents incorporated therein by reference, demonstrate that (i) the Cohen Defendants were not 10% owners according to BBBY's most recent public share count and (ii) public information (the only basis through which Plaintiffs allege that the Cohen Defendants knew or should have known that they were 10% holders) did not provide them with actual or constructive knowledge that RCV was a 10% holder at the time of its BBBY purchases.

## III. Plaintiffs Fail to State a Section 16(b) Claim Against the Cohen Defendants as Directors.

Plaintiffs fail to allege facts showing that Cohen Defendants were directors by deputization, but even if they had adequately done so, it would be irrelevant because it would have occurred *after* the Cohen Defendants purchased their BBBY shares. Mot. at 22-24. The Cohen Defendants

---

[2] Plaintiffs' authorities do not say otherwise. *See* Jacobs, *The Williams Act—Tender Offers and Stock Accumulations* § 2:84 ("Rule 13d-1(j) does not state whether or not the quoted words are an affirmative defense."); *Capitol Recs., LLC v. Vimeo, LLC*, 826 F.3d 78, 94 (2d Cir. 2016) (different safe harbor provision); *Mercer v. Gupta*, 712 F.3d 756, 759 (2d Cir. 2013) (same).

are thus exempt from liability under the D/O Exemption, which provides that directors cannot be held liable for transactions that predate their directorship. 17 C.F.R. § 240.16a-2(a).

### A.   Plaintiffs Do Not Plausibly Allege that the Cohen Defendants Were Directors by Deputization at the Time of the Purchase.

The parties agree that five factors are relevant in determining whether directors were deputized. *See* Augen. Opp. at 12-14. But Plaintiffs allege only one of those factors—that RCV appointed the New Directors to the Board. Their attempts to plead the others are based on conclusory assertions or unsupported inferences. *See* Mot. at 21-22. Because they fail to sufficiently plead deputization, their claims can be dismissed at the pleading stage. *See, e.g.*, *Rubenstein v. Int'l Value Advisers, LLC*, 959 F.3d 541, 550 (2d Cir. 2020).

Plaintiff Augenbaum's attempt to distinguish *Rubenstein v. Very Hungry, LLC* on factual grounds is misplaced. Augen. Opp. at 14. While the issue of deputization arose in *Rubenstein* on a defense rather than on a claim, it is nevertheless instructive. The defendant tried to prove that it had deputized a director such that it could rely on an exemption (not relevant here) under Rule 16b-3(d). The director, however, "did not have dispositive power over [defendant's] investment" in the company, was "nominated to the board at the suggestion of [defendant]," was "directly compensated" and "reimbursed . . . for expenses" by the issuer and not defendant, and was "described to shareholders in public filings submitted to the SEC as an 'independent' director under [the relevant] rules." 2015 WL 1509761, at *2-3 (D. Colo. Mar. 30, 2015). Based on these allegations, the court found that it did not have a sufficient factual basis to find that the defendant's appointed director was deputized. *Id.* The same conclusion is warranted here.

Plaintiffs' cases are not contrary. *Calenture, LLC v. Pulte* does not hold that deputization claims *cannot* be dismissed at the pleading stage. Augen. Opp. at 13. And the denial of the motion in that case was based not only on the defendants' right to "communicat[e] privately with the

Board," but also on allegations that the deputized director's tenure was a "continuation of [his predecessor]'s role," which involved sharing confidential information with defendants. 2022 WL 912947, at *5 (S.D.N.Y. Mar. 29, 2022). Nor does *Segen v. CDR-Cookie Acquisitions, L.L.C.* hold that the appointment of a director is sufficient to allege deputization. Augen. Opp. at 13-14. *Segen* involved not just director appointments, but also the purchase of a *controlling interest* in the company. 2006 WL 59550, at *1 (S.D.N.Y. Jan. 4, 2006). Plaintiffs do not plead similar facts.

Because Plaintiffs fail to sufficiently plead four of the five relevant factors for deputization, they cannot maintain a Section 16(b) claim against the Cohen Defendants as purported directors.

### B.     The Cohen Defendants Are Exempt Under the D/O Exemption.

Even if the Court were to find that Plaintiffs sufficiently alleged that the Cohen Defendants were directors by deputization, it would not matter. The D/O Exemption shields directors from Section 16(b) liability predicated on transactions that predate their directorships. 17 C.F.R. § 240.16a-2(a). Plaintiffs' sole response is that the D/O Exemption is an invalid exercise of the SEC's rulemaking authority. This argument fails.

As an initial matter, neither Plaintiff responds to the Cohen Defendants' showing that imposing Section 16(b) liability for complying with an allegedly invalid SEC regulation conflicts with Section 23(a) of the Exchange Act. 15 U.S.C. § 78w(a)(1). Plaintiffs thus concede that, even if the Court were to find that the D/O Exemption was an invalid exercise of the SEC's rulemaking authority, the Cohen Defendants still cannot be liable under Section 16(b). Mot. at 24-25.

At any rate, Plaintiffs are wrong that the D/O Exemption was an invalid exercise of the SEC's rulemaking authority. Mot. at 25-27. *Adler v. Klawans*, 267 F.2d 840 (2d Cir. 1959)—which Plaintiffs argue forecloses the D/O Exemption—specifically left open the possibility that the SEC could enact regulations exempting directors from Section 16(b) liability for transactions prior to becoming directors. Mot. at 26-27. And because Section 16(b) expressly delegates to the SEC the

power to exempt transactions from liability, and is silent on the contours of those exemptions, the Court need only determine whether the D/O Exemption is a permissible construction of Section 16(b). The D/O Exemption is such a permissible construction. Mot. at 25-27.[3]

Plaintiffs' contention that the Second Circuit "subsequently closed the door" for the SEC to exempt directors misreads *Feder v. Martin Marietta Corp.*, 406 F.2d 260 (2d Cir. 1969). The issue in *Feder* was whether Section 16(b) liability existed where a deputized director was seated at the time of his purchase but not at the time his sale. *Id.* at 266. The court held that the statute's coverage of a "resigning director" was consistent with congressional intent because "it is possible for both the purchase and sale to have been unfairly motivated by insider knowledge." *Id.* at 268. This cannot be true where, as here, the directors were allegedly deputized weeks *after* the Cohen Defendants completed their purchases. *Feder* thus does not prohibit the D/O Exemption.

## CONCLUSION

In Section 16(b) and its implementing regulations, Congress and the SEC established a clear, predictable framework for investors to plan their stock purchases and sales. This framework minimizes transaction costs and insulates investors from the threat of unfair surprise when they rely on SEC regulations. Plaintiffs ask the Court to overturn that. It should not. The Court should dismiss the Complaints under Rule 12(b)(1) or Rule 12(b)(6).

---

[3] Although these conclusions follow from the plain language of Section 16(b) and its legislative history, it also bears noting that the *expressio unius* canon, relied upon by Plaintiffs, does not generally apply in the context of agency statutory interpretation. *See Texas Rural Legal Aid, Inc. v. Legal Servs. Corp.*, 940 F.2d 685, 694 (D.C. Cir. 1991) (*expressio unius* "has little force in the administrative setting"); *accord Cogentrix Energy Power Mgmt., LLC v. FERC*, 24 F.4th 677, 683 (D.C. Cir. 2022).

Dated:  December 1, 2023

Respectfully submitted,

WOLLMUTH MAHER & DEUTSCH LLP

*/s/ Joshua M. Slocum*
David H. Wollmuth
Joshua M. Slocum
Maxwell G. Dillan
Yating Wang
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
dwollmuth@wmd-law.com
jslocum@wmd-law.com
mdillan@wmd-law.com
ywang@wmd-law.com

*Attorneys for Defendants RC Ventures LLC*
*and Ryan Cohen*