UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BED BATH & BEYOND INC. SECTION 16(b) LITIGATION | No. 22-cv-9327 (DEH) |

**REPLY BRIEF IN FURTHER SUPPORT OF THE
MOTION OF NOMINAL DEFENDANT BED BATH & BEYOND INC.
(n/k/a 20230930-DK-BUTTERFLY-1, INC.) FOR SUBSTITUTION AS PLAINTIFF AND
TO STAY CONSIDERATION OF THE AMENDED OMNIBUS MOTION TO DISMISS**

James A. Hunter
LAW OFFICE OF JAMES A.
    HUNTER
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA  19428
Phone: +1 (484) 437-5935
Email:  hunter@hunterkmiec.com

*Counsel for Nominal Defendant Bed Bath
    & Beyond Inc. (n/k/a 20230930-DK-
    Butterfly-1, Inc.)*

Joseph S. Allerhand
ALLERHAND & ODONER LLP
420 Lexington Avenue
Suite 2818
New York, NY  10170
Phone: +1 (646) 693-0550
Email: joseph@allerhand-odoner.com

*Counsel for Nominal Defendant Bed Bath
    & Beyond Inc. (n/k/a 20230930-DK-
    Butterfly-1, Inc.)*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................................. ii

INTRODUCTION ............................................................................................................................... 1

ARGUMENT ...................................................................................................................................... 2

I.    NO AUTHORITY ALLOWS PLAINTIFFS TO CONTINUE THIS
CASE IN THE FACE OF THE CONTROLLING TERMS OF THE PLAN ..................... 2

II.    BINDING PRECEDENT ENTITLES BB&B TO RULE 17(a)(3)
RELIEF, AND THE OPPOSITIONS IDENTIFY NO AUTHORITY
TO THE CONTRARY ............................................................................................................ 6

CONCLUSION ................................................................................................................................. 10

## TABLE OF AUTHORITIES

### Cases

*Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130 (2d Cir. 2009) .................................................. 10

*Blau v. Lamb*, 314 F.2d 618 (2d Cir. 1963) ............................................................................... 2, 3

*Bruce v. Citigroup Inc.*, 75 F.4th 297 (2d Cir. 2023) .................................................................. 10

*Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116 (2d Cir. 2008) ........................................ 4

*Davenport v. Dows*, 85 U.S. 626 (1873) ....................................................................................... 6

*Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170 (2d Cir. 2012) .................................... 3

*GAC Enters. v. Medaglia (In re Medaglia)*, 52 F.3d 451 (2d Cir. 1995) ....................................... 6

*Gilson v. Chock Full O'Nuts Corp.*, 331 F.2d 107 (2d Cir. 1964) .................................................. 5

*Greater N.Y. Mut. Ins. Co. v. Robbins Eye Ctr. P.C.*, No. 19-cv-1741 (MPS),
    2022 U.S. Dist. LEXIS 51798 (D. Conn. Mar. 23, 2022) ......................................................... 6

*In re Agway, Inc.*, Nos. 02-65872 etc.,
    2008 Bankr. LEXIS 3597 (N.D.N.Y. Bankr. July 18, 2008) .................................................... 5

*In re SunEdison, Inc.*, No. 16-10992 (SMB),
    2019 Bankr. LEXIS 1908 (S.D.N.Y. Bankr. 2019) ................................................................... 3

*iXL Enters. v. GE Capital Corp.*,
    167 F. App'x 824 (2d Cir. 2006) (summary order) ................................................................ 7, 9

*Kassner v. 2nd Ave. Delicatessen*, No. 04 CV 7274 (GBD),
    2005 U.S. Dist. LEXIS 7714 (S.D.N.Y. Apr. 27, 2005) ......................................................... 10

*Klein v. Qlik Techs., Inc.*, 906 F.3d 215 (2d Cir. 2018) ..................................................... 6, 8, 9, 10

*Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129 (2d Cir. 1984) .............................................. 8

*Pepper v. Litton*, 308 U.S. 295 (1939) ........................................................................................... 8

*Police & Fire Ret. Sys. v. Ambac Fin. Group, Inc.
    (In re Ambac Fin. Group, Inc.)*, No. 11 Civ. 7529 (NRB),
    2011 U.S. Dist. LEXIS 149610 (S.D.N.Y. Dec. 28, 2011) ...................................................... 8

*Prager v. Sylvestri*, 449 F. Supp. 425 (S.D.N.Y. 1978) ................................................................. 2

*Rosenberg v. XO Comms., Inc. (In re XO Comms., Inc.)*,
    330 B.R. 394 (S.D.N.Y. Bankr. 2005) ................................................................................... 3, 5

*Smolowe v. Delendo Corp.*, 136 F.2d 231 (2d Cir. 1943) .............................................................. 5

**Statutes**

11 U.S.C. § 523(a)(3) ........................................................................................................... 6

15 U.S.C. § 78p(b) ........................................................................................................ passim

**Rules**

Fed. R. Civ. P. 17(a)(3) ................................................................................................. passim

**Other Authorities**

Second Amended Joint Chapter 11 Plan
 of Bed Bath & Beyond Inc. and its Debtor Affiliates ................................................ passim

BB&B[1] respectfully submits this reply to the opposition briefs filed by the Cohen Defendants and Plaintiff Augenbaum and in further support of its motion (the "Motion") for substitution as plaintiff and to stay consideration of the amended omnibus motion to dismiss.[2]

## INTRODUCTION

The Motion makes enormous practical sense.  It will prevent a multiplicity of lawsuits on the exact same claim, which only BB&B now has standing to pursue under the Plan.  Neither of the oppositions addresses this obvious issue head-on or explains how the interests of judicial efficiency will be served by the Plan Administrator filing his own action with respect to the exact same claim advanced in these actions.

The oppositions have little to offer on the law, with the Cohen Defendants citing but one case in their entire brief.  *See* Cohen Defts. Br. at ii.  Rather than argue the law, the oppositions dwell on irrelevant considerations.  We are told that the Court should deny the Motion because Augenbaum would make a better plaintiff, *see* Augenbaum Br. at 8-9; because the Plan Administrator's motives are mercenary, *see* Cohen Defts. Br. at 10; because BB&B's prior management slighted Plaintiffs' case, *see id.* at 3-6, Augenbaum Br. at 8-9; and because BB&B can file its own complaint, *see* Augenbaum Br. at 2-3.  Even if these points were well taken (and they are not), they are irrelevant to the requirements of the Plan and Rule 17(a)(3).

The question presented by the Motion is straightforward: who now has the power to act on BB&B's behalf in this litigation?  The Plan's answer is equally straightforward: the Plan Administrator has the exclusive power to assert BB&B's cause of action under Section 16(b).

---

[1] Capitalized terms have the same meanings they were given in BB&B's principal brief. *See* Dkt. 83.  Opposition briefs are cited as "Augenbaum Br." and "Cohen Defts. Br.," while BB&B's own brief is cited as "BB&B Br."  Pincites rely on native pagination, except that bankruptcy filings are pincited using the court-stamped pagination in the ECF banner.

[2] Plaintiff Cohen has not contested the Motion.

BB&B's substitution is necessary to comply with the terms of the court-ordered Plan and ensure that BB&B's valuable cause of action is not lost from an infirmity in Plaintiffs' standing. Substitution also avoids a multiplicity of proceedings and conserves judicial resources. The Motion should be granted, and BB&B should be substituted as plaintiff.

**ARGUMENT**

**I.   NO AUTHORITY ALLOWS PLAINTIFFS TO CONTINUE THIS CASE IN THE FACE OF THE CONTROLLING TERMS OF THE PLAN**

Augenbaum's argument that substitution should be denied because the cause of action belongs to him, *see* Augenbaum Br. at 4 ("[O]wnership and control of the claim passed to Plaintiff Augenbaum."), is easily dispatched. Under Section 16(b), a stockholder plaintiff brings suit "in the name and in behalf of the issuer." 15 U.S.C. § 78p(b). The issuer "is the real party in interest and the stockholder plaintiff is but the mere vehicle of recovery." *Blau v. Lamb*, 314 F.2d 618, 619 (2d Cir. 1963) (internal quotation marks omitted). Even when suit is brought by a securityholder, the issuer remains "able to protect its interests by intervening into the action, if it so chooses." *Prager v. Sylvestri*, 449 F. Supp. 425, 429 (S.D.N.Y. 1978).

The Plan comports with this authority and dictates the result here. It provides that "all Causes of Action shall automatically vest in [BB&B]." Hunter Decl. [Dkt. 85] ex. A at 109. It then names the Plan Administrator "the sole representative of" BB&B, with "the exclusive right" to "initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action . . . without the consent or approval of any third party." *Id.* at 108, 110. These "Causes of Action" include any "demand, right, action, [or] suit" of "any kind or character whatsoever," whether "assertable directly or derivatively." *Id.* at 83.

Despite these plain and broad terms, Augenbaum argues that his cause of action is not subject to or controlled by the Plan because it was not "derivative" of the debtor's estate but

emanated from "'a statutory enabling right directly empowering an issuer's security holder.'" Augenbaum Br. at 5 (quoting *Rosenberg v. XO Comms., Inc. (In re XO Comms., Inc.)*, 330 B.R. 394, 430 (S.D.N.Y. Bankr. 2005)). This argument lacks merit. As a long line of Second Circuit authority makes clear, whether a claim is direct or derivative for bankruptcy purposes turns not on the origin of the cause of action or who "owns" it but on whose injury is redressed:

> A derivative claim is based on "a secondary effect from harm done to [the debtor]," while a direct claim involves a particularized injury that can be "directly traced to [the third party's] conduct." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d at 704; *accord Tronox, Inc. v. Kerr-McGee Corp. (In re Tronox, Inc.)*, 855 F.3d 84, 100 (2d Cir. 2017); *Marshall v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 740 F.3d 81, 89 (2d Cir. 2014). If the claim is a general one with no particularized injury, and any creditor could bring the same claim, the trustee (here, the Trust) is the proper person to assert it. *Tronox*, 855 F.3d at 100; *St. Paul*, 884 F.2d at 701.

*In re SunEdison, Inc.*, No. 16-10992 (SMB), 2019 Bankr. LEXIS 1908, at *18 (S.D.N.Y. Bankr. 2019) (alterations in original).

A Section 16(b) claim is plainly derivative under this framework. The party directly injured by short-swing trading is not the stockholder but the issuer. *See Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 177-78 (2d Cir. 2012). The stockholder serves merely as the "vehicle" for redress. *Blau*, 314 F.2d at 619. The cause of action belongs in common to all the issuer's securityholders, any of whom can seek the same recovery on "behalf of the issuer." 15 U.S.C. § 78p(b). Such a claim clearly qualifies as "derivative" in bankruptcy. It belonged to BB&B's estate and can only be pursued now by the Plan Administrator.

Even if Augenbaum were somehow correct that the Section 16(b) claims did not belong to BB&B's estate,[3] the outcome would be the same because any of his so-called "direct" rights

---

[3] The record refutes Augenbaum's last-ditch argument that Judge Gardephe already "adopted" the position that the Section 16(b) claim is "*not* property of the bankruptcy estate." Augenbaum Br. at 7. The docket shows that the Court took no action on Augenbaum's position. No motions followed the suggestion of bankruptcy, and no relief was sought or ordered.

in those claims were released by the Plan.  The Plan worked a "complete settlement, compromise, and release" of "Claims, Interests, and Causes of Action of any nature whatsoever" against the debtors or their property.  Hunter Decl. [Dkt. 85] ex. A at 127.  That property included BB&B's Section 16(b) cause of action.  *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008).  To say that Augenbaum's claims could not be released because they were not property of the estate makes no more sense than to say that a bankruptcy plan cannot release claims of shareholders under the federal securities laws against the debtor which of course happens all the time.  In other words, even if the Section 16(b) claim once belonged to Plaintiffs, the Plan has extinguished that claim.

Augenbaum's protest that he "does not make any claim or assert any cause of action against [BB&B]" is belied by his submissions.  Augenbaum Br. at 6.  His response to the amended motion to dismiss claims fees from BB&B's recovery, and indeed relies on those fees to avoid mootness.  *See* Dkt. 73 at 23 ("The continuing financial interest standard is also satisfied by Plaintiff being free to seek a modest fee upon the successful outcome of this action.").  His opposition to this Motion likewise adverts to fees "payable from any recovery."  Augenbaum Br. at 7.  So Augenbaum made a demand on BB&B, sued BB&B when the demand was not met, served BB&B with compulsory process, and now claims fees out of any recovery BB&B may obtain.  This is the stuff that "Claims" and "Causes of Action" are made of.  *See* Hunter Decl. [Dkt. 85] ex. A at 84 (defining "Claim"); *id.* at 83 (defining "Causes of Action").

Equally unpersuasive is Augenbaum's contention that his fees will be paid not by BB&B but by some putative "common fund."  Augenbaum Br. at 7.  This is not a class action, and there will be no "common fund."  The statute makes the Cohen Defendants' profit "recoverable *by the issuer*."  15 U.S.C. § 78p(b) (emphasis added); *see also Smolowe v. Delendo Corp.*, 136 F.2d

231, 239 (2d Cir. 1943) ("Recovery runs not to the stockholder, but to the corporation.").[4] That recovery belonged to BB&B's estate in bankruptcy. *See XO Comms.*, 330 B.R. at 431 ("[T]he proceeds, or right thereto, of the Section 16(b) Action are property of the estate . . . ."). It follows that when Augenbaum raised a prepetition claim for attorneys' fees, he raised a prepetition claim against BB&B's estate.

It makes no difference that a claim for attorney's fees is payable only at recovery. The Second Circuit locates the stockholder's right to attorney's fees in a "remedial incident[]" to the Section 16(b) cause of action. *Gilson v. Chock Full O'Nuts Corp.*, 331 F.2d 107, 109 (2d Cir. 1964). Because the right to attorney's fees inheres in the statutory right, pleading a Section 16(b) case pleads a claim to attorney's fees. That prepetition claim was barred when Plaintiffs failed to prove it in bankruptcy. *See In re Agway, Inc.*, Nos. 02-65872 etc., 2008 Bankr. LEXIS 3597, at *21 (N.D.N.Y. Bankr. July 18, 2008) ("'[I]f the creditor incurs the attorneys' fees postpetition in connection with exercising or protecting a prepetition claim that included a right to recover attorneys' fees, the fees will be prepetition in nature, constituting a contingent prepetition obligation that became fixed postpetition when the fees were incurred.'" (indirectly quoting 5 Collier on Bankruptcy § 4553.03[1][i] (15th ed. updated 2007))).

Augenbaum's suggestion that his claim was not scheduled because BB&B "did not believe that it was part of [the] Estate at the time the Plan was filed," Augenbaum Br. at 6, is a nonstarter. Were Augenbaum correct, then Plaintiff Cohen's claim would not have been

---

[4] Augenbaum cites *Smolowe* for his "common fund" theory, *see* Augenbaum Br. at 7, but those words never appear in the Second Circuit's opinion. To the contrary, *Smolowe* confirms that attorney's fees are "payable out of the funds *accruing to the corporation*." 136 F.2d at 241 (emphasis added). The only other case Augenbaum cites for his novel theory is *Boeing v. Van Gemert*, 444 U.S. 472 (1980), but that was a class action rather than a Section 16(b) case, and thus provides no support.

scheduled either, yet it was. *See* Hunter Decl. [Dkt. 85] ex. C at 421. Augenbaum's contention that his claims against BB&B and its Section 16(b) asset had to be scheduled to be released, *see* Augenbaum Br. at 6, also hits a dead end. The Plan's plain terms disallow unscheduled claims for which no proof of claim was filed. *See* Hunter Decl. [Dkt. 85] ex. A at 86. The Bankruptcy Code makes no exception from discharge for unscheduled debts if a creditor had (as Augenbaum did) actual knowledge of the bankruptcy and sufficient time to file a proof of claim. *See* 11 U.S.C. § 523(a)(3); *GAC Enters. v. Medaglia (In re Medaglia)*, 52 F.3d 451, 453 (2d Cir. 1995).

## II. BINDING PRECEDENT ENTITLES BB&B TO RULE 17(a)(3) RELIEF, AND THE OPPOSITIONS IDENTIFY NO AUTHORITY TO THE CONTRARY

Augenbaum maintains that the denial of substitution would not prejudice BB&B, *see* Augenbaum Br. at 2-3, but that is wrong. Even if BB&B filed its own complaint, it could not control the prosecution of the case or feasibly settle a claim simultaneously litigated by another claimant. *See Greater N.Y. Mut. Ins. Co. v. Robbins Eye Ctr. P.C.*, No. 19-cv-1741 (MPS), 2022 U.S. Dist. LEXIS 51798, at *40 (D. Conn. Mar. 23, 2022) (finding "material prejudice" in conduct that deprived a party of "the opportunity to investigate the claim, to participate in and control aspects of the litigation, and to pursue settlement"). BB&B also risks preclusion from any substantive rulings against Plaintiffs. *Cf. Davenport v. Dows*, 85 U.S. 626, 627 (1873) ("It would be wrong, in case the shareholder were unsuccessful, to allow the corporation to renew the litigation in another suit . . . ."). And any attorney's fees and incentive awards Plaintiffs seek for redundant work in their own case will reduce BB&B's recovery.

But even if Augenbaum were right on the facts he would be wrong on the law because Rule 17(a)(3) does not require a showing of prejudice. The terms of the rule make no mention of prejudice, and *Klein*'s formulation of the legal standard made no mention of it either. *See Klein v. Qlik Techs., Inc.*, 906 F.3d 215, 218 (2d Cir. 2018) ("Rule 17(a)(3) allows substitution of the

real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants."). The *Klein* court similarly rejected Augenbaum's theory that substitution can be granted under Rule 17(a)(3) only for an "'understandable mistake'" in naming a party. *Compare* Augenbaum Br. at 2 (quoting *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 421 (2d Cir. 2015)), *with Klein*, 906 F.3d at 218 ("There is no 'honest mistake' requirement . . . ."). Neither prejudice nor an "understandable mistake" played any part in the *iXL* decision either. *See iXL Enters. v. GE Capital Corp.*, 167 F. App'x 824 (2d Cir. 2006) (summary order).

Augenbaum contends that *iXL* came out the way it did only because the plaintiff failed to oppose substitution in the District Court, *see* Augenbaum Br. at 5, but that is not so. The Second Circuit conspicuously overlooked the plaintiff's procedural default, finding that his opposition to substitution "fail[ed] on the merits" even under "*de novo* review." *iXL*, 167 F. App'x at 826. The reasoning of the opinion focused entirely on bankruptcy law:

> Pursuant to Section 541 of the Bankruptcy Code, the corporate debtor in possession is properly substituted for an individual shareholder as the plaintiff in a derivative action because Section 541 renders all of the debtor's causes of action the exclusive property of the bankruptcy estate. Although the Bankruptcy Code provides that a shareholder may, in limited circumstances, pursue a derivative action on behalf of the bankrupt, some proceeding in the bankruptcy court must take place before a shareholder can assert the right directly.
>
> Rosenberg does not assert that he has ever pursued any such proceedings in the bankruptcy court, let alone received permission from it to pursue a derivative action. Under these circumstances, Rosenberg fails to demonstrate any legal error in the district court's order substituting iXL for Rosenberg.

*Id.* at 826-27 (internal quotation marks and citations omitted).

*iXL* may not be binding, but it is correct.[5] The Second Circuit decided *iXL* by summary

---

[5] Augenbaum finds the citation to *iXL* "highly problematic" because it is a "non-precedential decision." Augenbaum Br. at 3. That is a curious stand from counsel who cited the

order precisely because the case broke no new ground. The courts have long held that the debtor's fiduciary — here the Plan Administrator — assumes in bankruptcy rights previously wielded derivatively by the debtor's stockholders. *See* BB&B Br. at 10 (citing *Pepper v. Litton*, 308 U.S. 295, 307 (1939); *Mitchell Excavators, Inc. v. Mitchell*, 734 F.2d 129, 131 (2d Cir. 1984); and *Police & Fire Ret. Sys. v. Ambac Fin. Group, Inc. (In re Ambac Fin. Group, Inc.)*, No. 11 Civ. 7529 (NRB), 2011 U.S. Dist. LEXIS 149610, at *8 (S.D.N.Y. Dec. 28, 2011)).

The Cohen Defendants' charge that BB&B's belated decision to join the litigation "was deliberate and tactical," Cohen Defts. Br. at 9, is belied by the record on this Motion. In his declaration, the Plan Administrator attests that he retained new counsel to investigate the matter afresh because that is what the Plan called for. *See* Decl. of Michael I. Goldberg [Dkt. 84] ¶¶ 3-8. That sworn statement, which neither opposition rebuts, shows that BB&B did not change its view of the case out of "bad faith" or "to deceive or prejudice the defendants," *Klein*, 906 F.3d at 226 (internal quotation marks omitted), but because BB&B came under new management with a new mandate. Essentially the same facts justified substitution in *Klein*. *See id.* ("A third-party investor bought Qlik, resulting both in Klein losing her interest in the litigation and Qlik changing its corporate mind about whether to litigate on its own behalf.").

Also incorrect is the Cohen Defendants' contention that substitution would "waste resources and impose unnecessary costs" by forcing them to re-brief their motion to dismiss.

---

same opinion in their own brief a few years ago. *See* Pltf.'s Mem. of Law in Opp. to Defts.' Mtn. to Dismiss and Strike, *Morrison v. Eminence Capital, LLC*, 2016 U.S. Dist. Ct. Motions LEXIS 2834, at *35 (S.D.N.Y. July 29, 2016) (No. 16-cv-3351-RA) (citing *iXL*, 167 F. App'x at 826, for the proposition that "a Section 16(b) action is a corporate asset"). As BB&B observed in its main brief, the Court has already found *iXL* worthy of reliance. *See Police & Fire Ret. Sys. v. Ambac Fin. Group, Inc. (In re Ambac Fin. Group, Inc.)*, No. 11 Civ. 7529 (NRB), 2011 U.S. Dist. LEXIS 149610, at *8 (S.D.N.Y. Dec. 28, 2011) (citing *iXL* for the proposition that stockholder derivative claims accrue to the issuer's estate in bankruptcy), *cited in* BB&B Br. at 10 & 11 n.4. Augenbaum apparently has no response to *Ambac* since his brief never mentions it.

Cohen Defts. Br. at 1-2, 10.  In fact, denial of the Motion will only increase litigation costs on all parties and the Court.  As Augenbaum observes, *see* Augenbaum Br. at 2-3, BB&B can always file its own complaint.  Denying the Motion would therefore increase the number of actions and attendant litigation burdens on the Cohen Defendants, forcing them to defend the existing two actions plus a third, new action on top of that.  Substitution under Rule 17(a)(3) is the more economical outcome for both the Cohen Defendants and the Court.

### III.     THE OPPOSITIONS' REMAINING ARGUMENTS LACK MERIT

None of the oppositions' remaining arguments, many of which wander far afield of the issues presented by the Motion, has merit.  Neither the Plan nor Rule 17(a)(3) countenances denial of substitution on the ground that BB&B's prior management rejected Plaintiffs' demands.  *See* Augenbaum Br. at 8; Cohen Defts. Br. at 3-5.  If the refusal of a demand were grounds to deny substitution, then both *Klein* and *iXL* were wrongly decided, for demands were rejected in those cases too.  *See Klein*, 906 F.3d at 219; *id.* at 228 (rejecting the view that an issuer should be "disallowed from joining a suit under Rule 17(a)(3) merely because it had rejected a shareholder's demand"); Supp. Mem. of Law [Dkt. 70] at 2, *Rosenberg v. iXL Enters., Inc.*, No. 01-cv-2051 (D. Conn. filed Feb. 4, 2004) ("iXL refused a demand properly made by Rosenberg . . . .").  Augenbaum's characterization of BB&B as "the worst-positioned candidate to prosecute the §16(b) claim," Augenbaum Br. at 8, is further undercut by the other responses to the Motion.  If BB&B really were ill-suited to prosecute this case, then the Cohen Defendants would not have opposed substitution and Plaintiff Cohen would not have acquiesced in it.

Augenbaum argues that a stay should be denied unless BB&B can explain "whether and, if so, how, it would address the issues differently."  Augenbaum Br. at 1.  Once again, neither Rule 17(a)(3) nor any other authority requires such an explanation.  As BB&B earlier explained, BB&B Br. at 15, the requested stay is necessary to implement the rule, which bars dismissal

"*until . . . a reasonable time has been allowed* for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3) (emphasis added).[6] To dismiss a claim for flaws that could be cured through substitution would defy the rule's text and defeat its purpose. *See Kassner v. 2nd Ave. Delicatessen*, No. 04 CV 7274 (GBD), 2005 U.S. Dist. LEXIS 7714, at *12-*13 (S.D.N.Y. Apr. 27, 2005) ("Instead of dismissing the debtor's case, it is generally preferable to permit the bankruptcy trustee to be substituted, as the named plaintiff, in place of the debtor.").

Finally, the Cohen Defendants insist that substitution should be denied as futile, *see* Cohen Defts. Br. at 12-13, but they offer no authority that the merits are properly considered on a motion for substitution. *Cf. Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (admonishing courts not to reach merits before appointing a representative under Rule 17(c)(2)). BB&B has never endorsed the amended omnibus motion to dismiss, and it makes no difference that BB&B's predecessor management backed an earlier — and now moot — version of the motion. The *Klein* court did not consider the issuer before it to be bound by the litigation decisions of its predecessor management, and there is even less reason to consider BB&B bound. A fresh start is the essence of American bankruptcy. *See, e.g.*, *Bruce v. Citigroup Inc.*, 75 F.4th 297, 298-99 (2d Cir. 2023). The Plan embodies BB&B's fresh start, and should be honored.

## CONCLUSION

BB&B's motion for substitution as plaintiff and to stay consideration of the amended omnibus motion to dismiss should be granted.

---

[6] Because Rule 17(a)(3) gives logical and temporal priority to a motion to substitute over a motion to dismiss, there is no merit to Augenbaum's contention that the Court cannot "avoid deciding RCV's Rule 12(b)(1) motion by allowing substitution *before* determining that Plaintiff Augenbaum lacks standing." Augenbaum Br. at 4; *see also Klein*, 906 F.3d at 223 (explaining that dismissal is required only if the "jurisdictional void" cannot first be filled by substitution).

-11-

Dated: January 10, 2024

| | |
|---|---|
| /s/ James A. Hunter | /s/ Joseph S. Allerhand |
| James A. Hunter | Joseph S. Allerhand |
| LAW OFFICE OF JAMES A. HUNTER | ALLERHAND & ODONER LLP |
| 200 Barr Harbor Drive, Suite 400 | 420 Lexington Avenue |
| West Conshohocken, PA  19428 | Suite 2818 |
| Phone: +1 (484) 437-5935 | New York, NY  10170 |
| Email: hunter@hunterkmiec.com | Phone: +1 (646) 693-0550 |
| | Email: joseph@allerhand-odoner.com |
| *Counsel for Nominal Defendant Bed Bath & Beyond Inc. (n/k/a 20230930-DK-Butterfly-1, Inc.)* | *Counsel for Nominal Defendant Bed Bath & Beyond Inc. (n/k/a 20230930-DK-Butterfly-1, Inc.)* |