UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE BED BATH & BEYOND INC.
SECTION 16(b) LITIGATION

22 Civ. 9327 (DEH)

**OPINION
AND ORDER**

DALE E. HO, United States District Judge:

Before the Court are Defendants RC Ventures LLC and Ryan Cohen's (collectively, "Defendants'") amended omnibus motion to dismiss ("Defs.' Mot."), ECF No. 64, as well as Nominal Defendant Bed Bath and Beyond's ("BBBY's") motion for substitution as plaintiff and to stay consideration of the amended omnibus motion to dismiss ("BBBY's Mot."), ECF No. 82. For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** BBBY's motion for substitution as the real party in interest and to stay consideration of the motion to dismiss.

## BACKGROUND

Plaintiffs Todd Augenbaum and Judith Cohen bring suit under Section 16(b) of the Securities Exchange Act, which "requires corporate insiders, including owners of more than ten percent of a company's stock [and directors], to disgorge what are colloquially known as short-swing profits, i.e., any profits made from buying and selling or selling and buying within a six-month period a security based on that company's stock." *Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*, 906 F.3d 215, 219 (2d Cir. 2018).[1] "Suits under 16(b) can be brought by the company that issues the relevant stock or, if the issuer shall fail or refuse to bring such suit

---

[1] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses unless otherwise indicated. Any references to Rules are to the Federal Rules of Civil Procedure.

within sixty days after request or shall fail diligently to prosecute the same thereafter, by any owner of any security of the issuer." *Id*.

Plaintiffs were shareholders of BBBY, a publicly traded company on the Nasdaq. Augenbaum Compl. ¶¶ 2, 4, ECF No. 1; Cohen Am. Compl, ECF No. 28. ¶ 7. Defendant Ryan Cohen is the manager of Defendant RC Ventures ("RCV"), an investment company. Augenbaum Compl. ¶ 3; Cohen Am. Compl. ¶ 9. Plaintiffs allege that during a six-month period, while Defendants beneficially owned 10% or more of BBBY's common stock and/or were directors of BBBY, Defendants earned windfall short-swing profits "while other investors in the Company's common stock . . . suffered a dramatic loss." *See* Augenbaum Compl. ¶ 1; Cohen Am. Compl. ¶ 1.

### A. Cooperation Agreement

On or around March 24, 2022, BBBY and Defendant Cohen entered into a Cooperation Agreement, pursuant to which Defendant Cohen would appoint three new members to BBBY's board of directors ("the Board") while Defendants maintained ownership of at least 4.04% of BBBY's then outstanding common stock. Cohen Am. Compl. ¶¶ 30, 32; *see also* Hunter Decl. Ex. B, ECF No. 85-2. The Cooperation Agreement, which terminated according to its terms in 2023, forbade BBBY from "assist[ing] in any lawsuit, claim or proceeding" against Defendants. *See* Hunter Decl. Ex. B §§ 2(a), 13, 14.

### B. District and Bankruptcy Court Proceedings

On August 2 and September 9, 2022, Plaintiffs made separate litigation demands on the Board. Augenbaum Compl. ¶ 32; Cohen Am. Compl. Ex. A, ECF No. 28-1. On October 21, 2022, BBBY declined Plaintiffs' request to file suit. Augenbaum Compl. ¶ 33; Cohen Am. Compl. Ex. B, ECF No. 28-2; Slocum Decl. Ex. 7, ECF No. 66-8. On October 31, 2022, and November 15, 2022, Plaintiffs filed separate suits as owners of BBBY securities against

Defendants.  *See* Augenbaum Compl.; Cohen Compl., ECF No. 1, *Cohen v. Cohen*, 22 Civ. 9733.  On December 12, 2022, the Court ordered the consolidation of Plaintiffs' suits against BBBY.  *See* Order, ECF No. 20.

On April 25, 2023, while the District Court proceedings were ongoing, BBBY and its affiliates filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of New Jersey and subsequently filed a Suggestion of Bankruptcy on this docket.  *See generally* Bankr. Notice, ECF No. 50.  The filing notified the parties that Section 362(a) of the Bankruptcy Code operates as an automatic stay of, *inter alia*, judicial proceedings against the debtor—including those commenced before the Bankruptcy Court case was filed, *see id.* at 2—and that "any action taken against [BBBY and certain of its affiliates ("the Debtors," or "Wind-Down Debtors")] without obtaining from the Bankruptcy Court relief from the automatic stay may be void *ab initio*."  *Id.*

On April 27, 2023, Plaintiff Augenbaum filed a response in this Court to the suggestion of bankruptcy, arguing that "the Bankruptcy Code's automatic stay provision is not applicable" in this case.  ECF No. 51 at 1.[2]  Plaintiff Cohen joined that response one week later.  ECF No. 53 at 1.  Plaintiffs never filed a formal motion seeking relief from the Plan's automatic stay nor took any other substantial action to protect their Section 16(b) rights in the Bankruptcy Court.

On September 14, 2023, BBBY's Chapter 11 Plan ("the Plan" or "Bankruptcy Plan") was confirmed, with an effective date of September 29, 2023.  Hunter Decl. Ex. A at 1-3, ECF No. 85-1; *id*. at Ex. F at 2, ECF No. 85-2.  The Bankruptcy Plan held that each share of stock in BBBY was "canceled, released, and extinguished, and w[ould] be of no further force or effect and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the Plan on account of such Interests."  *Id.* at 102-03.  It provided that "all property of the Estates

---

[2] This number reflects the ECF page number.

shall vest in the Wind-Down Debtors, free and clear of all Liens, Claims, charges, or other encumbrances." Hunter Decl. Ex. A at ¶ 74.  It further provided that "all Causes of Action shall automatically vest in the Wind-Down Debtors," and appointed the Plan Administrator to be "the sole representative of, and [to] act for, the Wind-Down Debtors." *Id.* ¶¶ 95, 126.

Under the Plan, BBBY and the Plan Administrator were granted the right to "*exclusively* enforce any and all Causes of Action" and were deemed to have "the *exclusive* right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment" the same. *Id.* at 111 (emphases added).  The Plan effected the "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against "the Debtors or any of their assets or properties." *Id.* at 127.  The Plan defined a "Claim" as a claim under Section 101(5) of the Bankruptcy Code, as well as "any Cause of Action or liability asserted against a Debtor." *Id.* at 84.  It defined "Causes of Action" to include any "controversy, demand, right," or "suit," whether "assertable directly or derivatively." *Id.* at 83.  In bold letters, the Plan decreed that holders of these Claims and Causes of Action were "**permanently enjoined and precluded**" from "**commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan.**" *Id.* at 57, 132.

On October 10, 2023, Defendants sought leave to file a Rule 12(b)(1) motion to dismiss, citing the cancellation of Plaintiffs' stock pursuant to the Bankruptcy Plan. Oct. 6, 2023 Letter 1, ECF No. 58.  The Court granted Defendants leave to file an amended omnibus motion to dismiss under Rules 12(b)(1) and 12(b)(6) and stayed discovery pending resolution of the motion. Oct. 25, 2023 Order, ECF No. 61.

4

On November 6, 2023, this case was reassigned to the undersigned. *See* Notice of Reassignment, ECF No. 62. On November 8, 2023, Defendants filed an amended omnibus motion to dismiss. ECF No. 64. On November 22, 2023, counsel for BBBY, which Plaintiffs had named as a nominal defendant, appeared. *See* ECF No. 70. On December 6, 2023, BBBY filed a Rule 17(a)(3) Motion, seeking to substitute itself as the plaintiff in place of the existing Plaintiffs. ECF No. 82. Both motions are fully briefed before the Court.

### C. Plaintiffs' Post-Bankruptcy Plan Purchases

Sixth Street Specialty Lending, Inc. ("Sixth Street"), a publicly traded company, acquired BBBY's debt as a creditor. *See* Oct. 6, 2023 Pre-Motion Letter Ex. 1, ECF No. 58-1. At some point thereafter, in or around October 2023, Plaintiffs acquired equity in Sixth Street. *See* Oct. 12, 2023 Letters, ECF Nos. 59, 60; *see also* Abraham Decl., Ex. J, ECF No. 74-3 (providing proof of Plaintiff Augenbaum's purchase of Sixth Street equity); Squitieri Decl. Ex. A, ECF No. 76-1 (providing proof of Plaintiff Cohen's purchase of same).

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996). "A case is moot, and accordingly the federal courts have no jurisdiction over the litigation, when the parties lack a legally cognizable interest in the outcome" because they no longer "have a personal stake in the litigation." *Fox v. Bd. of Trs. of the State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). In other words, Courts may "only entertain complaints from a complainant with a concrete stake— and not just a 'keen interest'—in the outcome of the litigation." *Klein*, 906 F.3d at 220 (citing *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013)).

Rule 17 provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "[T]here plainly should be no dismissal where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997) (citing Fed. R. Civ. P. 15 Advisory Committee Notes (1966)). By its terms, the rule allows a motion to be denied as untimely if the movant fails to file within "a reasonable time" after a standing objection is raised. *NCUA Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 256 (2d Cir. 2018). Otherwise, Rule 17(a) motions "should be liberally allowed when the change is *merely formal* and in *no way alters* the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics*, 106 F.3d at 20 (emphases added); *see also Klein*, 906 F.3d at 218 ("Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from the plaintiffs or unfairness to the defendants.").

## DISCUSSION

The Court determines that Plaintiffs' claims have become moot. Pursuant to its "constitutional power to substitute a real party in interest to avoid mooting [the] case," the Court then considers BBBY's motion for substitution. *See Klein*, 906 F.3d at 219, 226. For the reasons discussed herein, that motion is denied. Accordingly, this case is dismissed.

### A. Plaintiffs' Claims are Moot

"Federal courts have no constitutional power to consider a moot case, which does not present a live controversy . . . . We thus have a duty to consider mootness *nostra sponte*." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013). There is no longer a case or controversy in a Section 16(b) case where the party bringing suit fails to maintain "some

6

*continuing* financial interest in the outcome of the litigation." *See Gollust v. Mendell*, 501 U.S. 115, 123, 126 (1991) (emphasis added); *see also Klein*, 906 F.3d at 218 (holding that a plaintiff's claim was moot where it lost "any financial interest in the litigation."). Plaintiffs had standing as BBBY shareholders at this suit's commencement. But as explained below, their Section 16(b) action became moot following confirmation of BBBY's Bankruptcy Plan.

The confirmation of a Chapter 11 bankruptcy plan "bind[s] the debtor . . . and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan." 11 U.S.C. § 1141(a); *see also Celli v. First Nat'l Bank (In re Layo)*, 460 F.3d 289, 293 (2d Cir. 2006). "[A] confirmed plan holds the status of a binding contract between the debtor and its creditors," or investors, which courts outside bankruptcy are not at liberty to alter. *See In re Victory Mkts.*, 221 B.R. 298, 303 (B.A.P. 2d Cir. 1998). As with any contract, a bankruptcy plan must be interpreted according to its plain terms, which control if unambiguous. *See id.* ("Where the language of the plan is unequivocal, therefore, a Court must adopt the plain and natural meaning only of the words contained within the text of the instrument itself.").

Here, the plain language of the Bankruptcy Plan states that all shares in BBBY were "canceled, released, and extinguished, and will be of no further force or effect and no Holder of Interests in BBBY shall be entitled to any recovery or distribution under the Plan on Account of such Interests" as of the effective date, September 29, 2023. Slocum Decl. Ex. 8 at 102-03. The Plan effected a "complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever" against the debtors or their property. Hunter Decl. Ex. A at 127. And it decrees that the holders of claims, interests, and causes of action against BBBY are "permanently enjoined and precluded" from "commencing or continuing in any manner any action or other proceeding of any kind on

7

account of or in connection with or with respect to any such Claims, Interests, Causes of Action or liabilities discharged, released, exculpated, or settled pursuant to the Plan." *Id.* at 131.

In light of the extinguishment of Plaintiffs' shares in BBBY pursuant to the Bankruptcy Plan, Plaintiffs fail to establish "some continuing financial interest in the outcome of this litigation." *Gollust*, 501 U.S. at 126. *See also Klein*, 906 F.3d at 218 (after the accused company "was bought out in an all-cash merger," the shareholder—who did not receive any stock in the surviving corporation—"los[t] any financial interest in the litigation."). Accordingly, the Court concludes that intervening circumstances—BBBY's bankruptcy and the effectuation of the Plan—have rendered Plaintiffs' claims moot. *See id.* at 221 (holding that cases become moot "if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, *at any point* during litigation after its initiation.") (emphasis added).

Plaintiffs do not dispute that their BBBY common stock has been canceled and is of no further force and effect. *See generally* Augenbaum's Mem. in Opp'n of Mot. to Dismiss ("Augenbaum Opp'n"), ECF No. 73; Cohen's Mem. in Opp'n of Mot. to Dismiss ("Cohen Opp'n"), ECF No. 75. Instead, Plaintiffs offer four theories to attempt to establish their "continuing financial interest" in this suit. As discussed below, each fails.

First, Plaintiffs argue that a purchase of stock in Sixth Street, a BBBY creditor, constitutes a continuing financial interest in this suit's outcome sufficient to overcome mootness. *See* Cohen Opp'n 16; Augenbaum Opp'n 22-23. The Court adopts the reasoning in *In re WorldCom, Inc.*, 351 B.R. 130 (Bankr. S.D.N.Y. 2006), which considered and rejected the same argument. There, the court held that the plaintiff lost standing to bring a derivative claim where, as here, his shares in a company were "canceled" and he would "receive no distributions" under the company's reorganization plan. *Id*. at 134-35. The plaintiff could not thereafter revive his standing by independently acquiring an interest in a surviving company that merged with the

reorganized debtor, because that interest did not "flow from [his] former interest as a shareholder" of the debtor.  *Id.* at 135.  Here, Plaintiffs have similarly failed to establish that their purchase of stock in BBBY's creditor, Sixth Street, "flow[ed] from [Plaintiffs'] former interest as [] shareholder[s]" of BBBY, and the Court therefore concludes that Plaintiffs' equity in Sixth Street is not a continuing financial interest under Section 16(b) sufficient to overcome mootness. *Id*.

Plaintiffs' reliance on *Gollust* is unavailing.  As Plaintiff Augenbaum concedes, "the Supreme Court [in *Gollust*] was not called upon to address" whether a plaintiff could maintain a financial interest in a suit by buying the stock of a creditor.  *See* Augenbaum Opp'n at 22-23.  In *Gollust*, the Supreme Court held only that "a plaintiff, who properly instituted a § 16(b) action as the owner of a security of the issuer, may continue to prosecute the action after his interest in the issuer is *exchanged* in a merger for stock in the issuer's new *corporate parent*."  501 U.S. at 118 (emphasis added); *see also id.* at 127-28.  Here, by contrast, Plaintiffs have an interest in BBBY's creditor (rather than in its acquirer), which they obtained via an unrelated transaction (rather than through an exchange of stock).  The Court is aware of no case that stands for the proposition that a plaintiff may overcome mootness by independently buying stock in a creditor of an entity after the plaintiff's equity in the entity was extinguished.

Second, Plaintiffs argue that their statutory interest under 15 U.S.C. § 78u-4(a)(4) in a potential incentive reward for service as a class representative constitutes a continuing financial interest in this case.  Neither of the two class action suits on which they rely—*Jin v. Shanghai Original, Inc.*, 990 F.3d 251 (2d Cir. 2021), and *Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872 (7th Cir. 2012), s*ee* Augenbaum Opp'n 23-24; Cohen Opp'n 18—supports their position. *Jin* was a putative class action under the New York Labor Law concerning whether a plaintiff who prevails on his individual claims retained a continuing interest in the litigation sufficient to

9

have standing to appeal the district court's decision decertifying the class. *See* 990 F.3d at 254. There, the Second Circuit hypothesized without deciding that the plaintiff may have "retained some economic interest" to appeal via a "potential incentive award for his service as class representative," had he raised the claim. *Id.* at 259 n.12. *Espenscheid* was also a labor law case; there, the Seventh Circuit held that the plaintiffs, despite settling their individual claims, retained a sufficient interest in the case to appeal the decertification of their class because they had reserved the right to seek an incentive award as class representatives if they succeeded on appeal. 688 F.3d at 874. Neither of these cases is a Section 16(b) case, and neither stands for the proposition that a potential incentive award under 15 U.S.C. § 78u-4(a)(4) constitutes a sufficient financial interest in the outcome of a Section 16(b) suit to overcome mootness due to the extinguishment of a plaintiff's interest in the issuer.[3]

Relatedly, Plaintiff Cohen argues that her statutory right to attorney's fees constitutes a continuing financial interest in a Section 16(b) suit. Cohen Opp'n 17.[4] The Court is aware of no caselaw in support of that proposition. Plaintiff Cohen cites *Smolowe v. Delendo Corp.*, 136 F.2d 231 (2d Cir. 1943), which says nothing about whether a party's statutory right to attorney's fees constitutes a continuing financial interest to maintain a Section 16(b) suit and instead dealt "solely" with "the construction and constitutionality of Sec[tion] 16(b)," *id.* at 234. Ultimately, Plaintiffs' claims for attorney's fees, expenses, and incentive awards are contingent claims against BBBY's estate within the meaning of the Bankruptcy Code and the Plan. *See* 11 U.S.C.

---

[3] The Court also notes that it is unclear how Plaintiffs (or any other former BBBY shareholders) could continue to serve as representative plaintiffs, given the extinguishment of all BBBY shares under the Plan.

[4] Plaintiff Cohen appears to argue in the alternative that she is only required to demonstrate that she was a holder of the corporation's security at the time the action was instituted. *See* Cohen Opp'n 17, ECF No. 75. While this no doubt establishes standing under Section 16(b), it is, as discussed herein, insufficient to overcome mootness.

§ 101(5)(A) (defining a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured"); Hunter Decl. Ex. A at 84 (defining a "Claim" as, among other things, "a claim, as defined in section 101(5) of the Bankruptcy Code"). The Plan extinguished those claims, as discussed above.

Finally, Plaintiff Augenbaum argues, without citation to any authority, that "[e]ven if he were not entitled to an incentive award, Plaintiff's loss of the value of BBBY Common Stock, which he held through cancellation to create a common fund, should be a reimbursable expense from any judgment or settlement obtained, which also gives Plaintiff a continuing financial interest in this Action." Augenbaum Opp'n 23-24. It is not clear to the Court how such an attenuated relationship to the action would confer a continued financial stake in this litigation's outcome, and the Court is unaware of any caselaw supporting this claim.

A Section 16(b) claim cannot be maintained by plaintiffs who have been "divested of any interest in the outcome of the litigation." *Gollust*, 501 U.S. at 124. That is the situation here, as BBBY's Bankruptcy Plan canceled Plaintiffs' stock in BBBY. As discussed, Plaintiffs' alternative theories purporting to establish their continuing financial interest in this suit fail. Accordingly, their claims have become moot.

**B. BBBY's Motion is Denied**

Ordinarily, when a case becomes moot, a district court no longer has subject matter jurisdiction and must dismiss the case. *See Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994). However, "[a] district court determining whether a case has become moot maintains jurisdiction to determine whether a substitute plaintiff would avoid that result." *Klein*, 906 F.3d at 218. As discussed, "Rule 17(a)(3) allows substitution of the real party in interest so long as doing so does not change the substance of the action and does not reflect bad faith from

11

the plaintiffs or unfairness to the defendants," *id*., and "where substitution of the real party in interest is necessary to avoid injustice." *Advanced Magnetics*, 106 F.3d at 20.

On the record before the Court, BBBY has not established that these factors weigh in its favor. The Court has no way of ascertaining whether BBBY's substitution would "change the substance of the action," because BBBY filed its motion for substitution without attaching any proposed amended complaint. *See Klein*, 906 F.3d at 218. BBBY represents in its briefing that its substitution would be "merely formal" because it "intends to pursue the same Section 16(b) claim against the same defendants." BBBY's Mot. 13. Whether it seeks to pursue the same claim is not, however, the end of the Court's analysis. The Court must also determine whether the change in party in any way "alters the original complaint's factual allegations as to the events or the participants." *Advanced Magnetics*, 106 F.3d at 20. BBBY notably declines to state whether it seeks to alter the facts on which this case is brought. Instead, it holds out the possibility that it might, stating that upon its substitution, "it will seek leave to file an amended complaint," without specifying how the amended complaint might differ from the operative ones in this case. BBBY's Mot. 13 n.5. BBBY cannot have it both ways: it cannot claim that its substitution as plaintiff "is a merely formal change in the alignment of the parties" while representing that it seeks to amend its pleadings in a manner it declines to specify. *Id*. at 13.

"Even if [BBBY's] proposed substitution m[et] [Rule 17] requirements, it should be denied if it is being proposed in bad faith." *Klein*, 906 F.3d at 226. "[A] party's failure to submit a proposed amended complaint or a new pleading demonstrates a lack of good faith." *Gulley v. Dzurenda*, 264 F.R.D. 34, 36 (D. Conn. 2010); *see also State Trading Corp. of India Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) (imputing a lack of good faith to plaintiff in part because plaintiff "did not file a proposed amended complaint" when it sought leave to amend); *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1197 (7th Cir. 1985)

12

(noting that "the normal procedure is for the proposed amendment or new pleading to be submitted" with the motion for leave to amend, and that failure to do so "indicates a lack of diligence and good faith").  The Court cannot conclude that BBBY has acted in good faith here, where BBBY claims both that its substitution would be "merely formal," *Advanced Magnetics*, 106 F.3d at 20, while representing that it will seek leave to amend its pleadings in an unspecified manner.

Finally, the Court cannot conclude that granting substitution is "necessary to avoid injustice" here, where nothing would preclude BBBY from filing its own complaint.  *See Klein*, 906 F.3d at 226.  The limitations period for a Section 16(b) claim is "two years after the date such profit was realized."  15 U.S.C. §78p(b).  Here, Defendants are alleged to have realized short-swing profits on or around August 16, 2022, less than two years ago.  BBBY may, therefore, avoid any theoretical prejudice to its economic interest by filing its own timely Section 16(b) action.

## CONCLUSION

For the reasons given herein, the Court concludes that Plaintiffs' claims are moot and grants Defendants' motion to dismiss.  The Court also denies BBBY's motion for substitution and to stay consideration of the motion to dismiss.[5]

The Clerk of Court is respectfully directed to terminate ECF Nos. 64 and 82 and to close the case.

SO ORDERED.

---

[5] In light of the Court's determination on mootness, and its denial of the motion for substitution, the Court declines to address the Rule 12(b)(6) arguments raised by Defendants.  *See* Defs.' Mem. of L. in Supp. of Am. Omnibus Mot. to Dismiss 15-27, ECF No. 65.

Dated: June 11, 2024
New York, New York

_____
DALE E. HO
United States District Judge
